# EXHIBIT 12

# SENATE COMMITTEE ON PUBLIC SAFETY
Senator Steven Bradford, Chair
2021 - 2022 Regular

**Bill No:** SB 264  **Hearing Date:** March 16, 2021
**Author:** Min
**Version:** February 24, 2021
**Urgency:** No  **Fiscal:** Yes
**Consultant:** GC

**Subject:** *Firearms: state and county property*

## HISTORY

Source: Author

Prior Legislation: AB 893 (Gloria), Ch. 731, Stats. of 2019
SB 221 (Wiener), 2017, vetoed
SB 475 (Leno), 2013, vetoed
SB 585 (Leno), 2009, vetoed
AB 2948 (Leno), 2008, failed passage on the Senate Floor
SB 1733 (Speier), 2004, failed passage on the Assembly Floor
AB 295 (Corbett), Ch. 247, Stats. of 1999
AB 1107 (Ortiz), 1997, failed passage in Assembly Appropriations

Support: American Academy of Pediatrics, California; Brady Orange County; Canyon Democrats; Democrats of Greater Irvine; HB Huddle; Laguna Beach Democratic Club; Laguna Woods Democratic Club; NeverAgainCA; Office of Chair Nathan Fletcher, San Diego County Board of Supervisors; San Diegans for Gun Violence Prevention; City of San Diego; Santa Barbara Women's Political Committee; Women for American Values and Ethics Action Fund; Women For: Orange County

Opposition: California Rifle and Pistol Association; California Sportsman's Lobby, Inc.; National Rifle Association – Institute for Legislative Action; National Shooting Sports Foundation, INC.; Outdoor Sportsman's Coalition of California; Safari Club International - California Chapter; Western Fairs Association

## PURPOSE

*The purpose of this legislation is to prohibit the sale of firearms on state or county property.*

*Existing law* provides that bringing or possessing a firearm within any state or local public building is punishable by imprisonment in a county jail for not more than one year, or in the state prison, unless a person brings any weapon that may be lawfully transferred into a gun show for the purpose of sale or trade. (Pen. Code §§ 171b subd. (a), 171b subd. (b)(7)(A).)

**182**

*Existing law* prohibits the sale, lease, or transfer of firearms without a license, unless the sale, lease, or transfer is pursuant to operation of law or a court order, made by a person who obtains the firearm by intestate succession or bequest, or is an infrequent sale, transfer, or transfer, as defined. (Pen. Code § 26500, 26505, 26520.)

*Existing law* excludes persons with a valid federal firearms license and a current certificate of eligibility issued by the Department of Justice from the prohibitions on the sale, lease, or transfer of used firearms, other than handguns, at gun shows or events. (Pen. Code § 26525.)

*Existing law* permits licensed dealers to sell firearms only from their licensed premises and at gun shows. (Pen. Code § 26805.)

*Existing law* states that a dealer operating at a gun show must comply with all applicable laws, including California's waiting period law, laws governing the transfer of firearms by dealers, and all local ordinances, regulations, and fees. (Pen. Code § 26805.)

*Existing law* states that no person shall produce, promote, sponsor, operate, or otherwise organize a gun show, unless that person possesses a valid certificate of eligibility from the Department of Justice. (Pen. Code § 27200.)

*Existing law* specifies the requirements that gun show operators must comply with at gun shows, including entering into a written contract with each gun show vendor selling firearms at the show, ensuring that liability insurance is in effect for the duration of a gun show, posting visible signs pertaining to gun show laws at the entrances of the event, and submitting a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers to the Department of Justice, as specified. (Pen. Code §§ 27200, 27245.)

*Existing law* specifies that unless a different penalty is expressly provided, a violation of any provision of the Food and Agricultural code is a misdemeanor. (Food and Agr. Code, § 9.)

*This bill* prohibits a state or county officer or employee, or operator, lessee, or licensee of any state or county property, from contracting for, authorizing, or allowing the sale of any firearm, firearm precursor part, or ammunition on state or county property or in the buildings that sit on state or county property or property otherwise owned, leased, occupied, or operated by the state or county.

*This bill* makes the following findings and declarations:

- Some state properties, such as fairgrounds in District Agricultural Associations (DAAs), lease a portion of their fairgrounds to entities that sponsor marketplaces popularly known as "gun shows," at which firearms and ammunition and other items are sold to the public approximately five times a year on average among state fairgrounds.

- The United States has experienced many gun-related tragedies with increasing severity and frequency in the last 30 years, including mass murders at Columbine High School, Sandy Hook Elementary School, and Marjory Stoneman Douglas High School, and an increasing rate of suicide by gun among all levels of society.

- Various California cities, such as the Cities of Del Mar, Solana Beach, and Encinitas have adopted resolutions requesting that their local Del Mar Fairgrounds (DMFG) Board

**183**

- discontinue leasing any portion of its property for use as a gun show. A committee appointed by the Board of Directors of the 22nd DAA to study gun shows conducted research, including inspection tours of the Del Mar Gun Show by members of the committee as well as by several other members of the DMFG Board.

- In direct response to this community concern, Assembly Member Todd Gloria passed AB 893 into law, banning gun shows from the DMFG, setting a precedent for gun show legislation in California.

- Gun shows bring grave danger to a community, and the following dangerous incidents, among others, have occurred at gun shows, including, but not limited to, an official vendor accused of trafficking illegal firearms, sales of firearms to individuals registered in the Department of Justice Bureau of Firearms Armed Prohibited Persons System, and illegal importation of large-capacity magazines.

- Promoters maintain relationships with a core group of vendors, some selling guns and some selling other merchandise, who travel as the schedule dictates from city to city and state to state and in the west, for example, many of the same vendors can be seen at Crossroads of the West Gun Shows from San Francisco, California, to Tucson, Arizona.

**COMMENTS**

**1. Need for This Bill**

According to the author:

> The urgency for common-sense gun safety remains prevalent during the COVID-19 pandemic, as 2020 saw a record high in gun-related deaths. Over 19,000 individuals died of gun violence in 2020, up nearly 25% from 2019.[1] According to the Giffords Law Center to Prevent Gun Violence, gun shows often create the opportunity to "circumvent gun safety laws" and are a common venue for straw purchases and illegal gun transfers.[2] Additionally, a Bureau of Alcohol, Tobacco, and Firearms report described gun shows as a "major trafficking channel" and found that gun shows were the second largest source of illegally trafficked firearms.[3]
>
> SB 264 would prohibit the sale of firearms and ammunition on state and county property. The bill ensures California is not profiting of the sale of firearms and that taxpayer dollars are not being used to promote the distribution of firearms.

---

[1] Garcia-Navarro, L. (2021, January 3). 2020 Was A Record-Breaking Year For Gun-Related Deaths In The U.S. *NPR*. https://www.npr.org/2021/01/03/952969760/2020-was-a-record-breaking-year-for-gun-related-deaths-in-the-us#:~:text=According%20to%20the%20Gun%20Violence,jump%20from%20the%20year%20before

[2] Gun Shows. (2020, December 01). *Giffords Law* Center. https://giffords.org/lawcenter/gun-laws/policy-areas/gun-sales/gun-shows/

[3] "Following the Gun: Enforcing Federal Laws Against Firearms Traffickers," Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, June 2000. http://www.nfaoa.org/documents/ATF-%20Following%20the%20Gun,%20Enforcing%20Federal%20Laws%20Against%20Firearms%20Traffickers.pdf

**184**

### 2. Gun Shows

Gun shows are essentially a flea market for firearms. At gun shows, individuals may buy, sale, and trade firearms and fire-arms related accessories. These events typically attract several thousand people, and a single gun show can have sales of over 1,000 firearms over the course of one weekend.[4]

According to the NRA's Institute for Legislative Action, less than one percent of inmates incarcerated in state prisons for gun crimes acquired their firearms at a gun show.[5] However, gun shows rank second to corrupt dealers as a source for illegally trafficked firearms. Though violent criminals do not buy most of their guns directly from gun shows, gun shows are "the critical moment in the chain of custody for many guns, the point at which they move from the somewhat-regulated legal market to the shadowy, no-questions-asked illegal market."[6]

Concerns about gun shows extend beyond the state. A report by the Government Accountability Office regarding gun trafficking to Mexico confirmed that many traffickers buy guns at gun shows.[7] 87 percent of firearms seized by Mexican authorities and traced in the last 5 years originated in the United States, according to data from DOJ's Bureau of Alcohol, Tobacco, Firearms and Explosives. According to United States and Mexican government officials, these firearms have been increasingly more powerful and lethal in recent years. Many of these firearms come from gun shops and gun shows in south-west border-states.[8]

### 3. Gun Show Regulations in California

AB 295 (Corbett, Chapter 247, Statutes of 1999), the Gun Show Enforcement and Security Act of 2000, added a number of requirements for gun shows. To obtain a certificate of eligibility from the DOJ, a promoter must certify that he or she is familiar with existing law regarding gun shows; obtain at least $1 million of liability insurance; provide an annual list of gun shows the applicant plans to promote; pay an annual fee; make available to local law enforcement a complete list of all entities that have rented any space at the show; submit not later than 15 days before the start of the show an event and security plan; submit a list to DOJ of prospective vendors and designated firearms transfer agents who are licensed dealers; provide photo identification of each vendor and vendor's employee; prepare an annual event and security plan; and require all firearms carried onto the premises of a show to be checked, cleared of ammunition, secured in a way that they cannot be operated, and have an identification tag or sticker attached. AB 295 also provided for a number of penalties for a gun show producer's willful failure to comply with the specified requirements. California's strict gun show regulations may help to prevent increases in firearm deaths and injuries following gun shows. (See Ellicott C. Matthay, et al., "*In-State and Interstate Associations Between Gun Shows and Firearm Deaths and Injuries*," Annals of Internal Medicine (2017) Vol. 1 Iss. 8.)

In addition to state laws regulating gun shows, a total ban on gun shows on county property is within the scope of a county's authority. "Under California Government Code section 23004(d), a county is given substantial authority to manage its property, including the most fundamental decision as to how the property will be used and that nothing in the gun show statutes evince

---

[4] Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/file/57506/download.
[5] NRA-ILA, https://www.nraila.org/get-the-facts/background-checks-nics.
[6] Center for American Progress, http://www.americanprogress.org/issues/guns-crime/report/2013/12/13/80795/the-gun-debate-1-year-after-newtown/.
[7] https://www.gao.gov/assets/680/674570.pdf.
[8] https://www.ucdmc.ucdavis.edu/vprp/pdf/IGS/IGS1web.pdf.

intent to override that authority. The gun show statutes do not mandate that counties use their property for such shows. If the county does allow such shows, it may impose more stringent restrictions on the sale of firearms than state law prescribes." (*Nordyke v. Santa Clara County* (9th Cir. Cal. 1997) 110 F.3d 707, 766.) However, counties do not have authority to prohibit gun shows on state property such as Cow Palace.

### 4. Banning of Gun Shows on State Agricultural Land

There have been several legislative attempts to regulate gun shows on State Agricultural Land—most notably, SB 475 (Leno, 2014) and SB 585 (Leno, 2010), which were both vetoed.

SB 585 would have prohibited gun shows at Cow Palace. SB 585 would have additionally required the Cow Palace DAA to replace gun show events with non-firearm or non-ammunition related events. In his veto message, Governor Schwarzenegger stated that SB 585 would "set a confusing precedent at the state level by statutorily prohibiting one [DAA] from selling firearms and ammunition, a legal and regulated activity, while allowing other DAAs to continue to do so. In addition, [SB 585] would result in decreased state and local tax revenues by restricting events at the Cow Palace." Unlike SB 585, this bill will not impair any of Cow Palace's ongoing contracts because, if chaptered, it will not become operative until January 1, 2020.

Another attempt to prohibit gun sales at Cow Palace was similarly vetoed by Governor Brown. SB 475 would have permitted gun shows at Cow Palace only upon prior approval by resolution adopted by both the Board of Supervisors of the County of San Mateo and the Board of Supervisors of the City and County of San Francisco. SB 475 was vetoed by because it required the Cow Palace DAA to obtain approval from the County of San Mateo and the City and County of San Francisco prior to entering into a contract for a gun show on state property. In his veto message, Governor Brown stated, "I encourage all [DAAs] to work with their local communities when determining their operations and events. [SB 475], however, totally pre-empts the Board of Directors of the Cow Palace from exercising its contracting authority whenever a gun show is involved. I prefer to leave these decisions to the sound discretion of the Board." Under SB 475, the Cow Palace DAA would have been permitted to host gun shows, but only at the discretion of San Francisco and San Mateo counties. In practice, SB 475 would have allowed the Board of Cow Palace to permit some approved gun shows, and required it to prohibit other non-county-approved gun shows. In comparison, this bill instead completely prohibits all gun shows at Cow Palace.

In 2018, SB 221 (Wiener) contained very similar provisions to this bill. SB 221 would have prohibited any officer, employee, operator, or lessee of Agriculture District 1-A, from contracting for, authorizing, or allowing the sale of any firearm or ammunition at the Cow Palace property in San Mateo County and San Francisco County. Like this bill, SB 221 had an implementation date in 2020 and exempted law enforcement firearm buy-back events. Unlike this bill, SB 221 failed to exempt existing contracts to host firearms events. SB 221 was vetoed by Governor Brown with the following veto message:

> This bill would prohibit the sale of firearms and ammunition at the District Agricultural Association 1A, commonly known as the Cow Palace.
>
> This bill has been vetoed twice over the last ten years, once by myself, and once by Governor Schwarzenegger.
>
> The decision on what kind of shows occur at the Cow Palace rests with the local

**186**

  board of directors which, incidentally, represents a broad cross section of the community. They are in the best position to make these decisions.

Then, in 2019 AB 893 (Gloria) added a section to the Food and Agricultural Code that prohibits the sale of firearms and ammunitions at the Del Mar Fairgrounds. By default, a violation of any provision of the Food and Agricultural code is a misdemeanor, unless otherwise specified. Therefore, this bill would effectively terminate the possibility for future gun shows at the Del Mar Fairgrounds. This bill was signed into law by Governor Newsom and Chaptered as 731 in the Statutes of 2019.

This bill would add county and state property to the provisions of SB 893 (Gloria).

### 5. Argument in Support

According to the Santa Barbara Women's Political Committee:

> We support legislation that promotes community safety and are aware that under current law gun shows have brought dangerous incidents to our community. These include but are not limited to the following: an official vendor being accused of trafficking illegal firearms, sales of firearms to individuals registered in the Department of Justice Bureau of Firearms Prohibited Persons System, and illegal importation of large-capacity magazines. Recent years have seen an alarming increase of gun violence including mass murders that have devastated communities at large. By prohibiting gun shows on state properties, SB 264 would open these properties to more family-friendly venues and avoid the use of taxpayer dollars to facilitate placing more guns on our streets.

### 6. Argument in Opposition

According to the Western Fairs Association

> SB 264 would prohibit all sales of firearms and ammunition at events held at all District Agricultural Associations and county fairgrounds beginning in 2022. This prohibition will not enhance public safety as current law already requires all firearm transactions at events hosted at fairgrounds to be subject to the same stringent standards as required in a dealer's store. All firearms transactions that take place on a fairground are subject to the ten-day waiting period while requiring the firearm to remain in the possession of the transacting dealer until that period ends and the Department of Justice has completed the required background check. District Agricultural Associations (DAAs) and county fairs receive minimal support annually from the State Budget. Fairs are expected to generate their own revenues from trade shows, livestock auctions, concerts, etc. Each fair hosts events of interest to the communities they serve. Prohibiting gun shows on state and county property not only eliminates a legal venue for the sale of firearms and ammunition under the watchful eye of law enforcement and in full compliance with state law, but it also harms the finances of California's Fair Network.

-- END –