# EXHIBIT 13

Date of Hearing:   July 13, 2021
Counsel:                Matthew Fleming

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 264 (Min) – As Amended June 15, 2021

**SUMMARY:** Prohibits the sale of any firearm, firearm precursor part, or ammunition on state property. Specifically, **this bill**:

1) Prohibits a state officer or employee, or operator, lessee, or licensee of any state property, shall not contract for, authorize, or allow the sale of any firearm, firearm precursor part, or ammunition on state property or in the buildings that sit on state property or property otherwise owned, leased, occupied, or operated by the state.

2) Provides that the prohibition does not apply to any of the following:

   a) A gun buyback event held by a law enforcement agency;

   b) The sale of a firearm by a public administrator, public conservator, or public guardian within the course of their duties;

   c) The sale of a firearm, firearm precursor part, or ammunition on state property that occurs pursuant to a contract that was entered into before January 1, 2022; and,

   d) The purchase of ammunition on state property by a law enforcement agency in the course of its regular duties.

3) Makes Legislative findings and declarations.

**EXISTING LAW**:

1) Prohibits the sale, lease, or transfer of firearms without a license, unless the sale, lease, or transfer is pursuant to operation of law or a court order, made by a person who obtains the firearm by intestate succession or bequest, or is an infrequent sale, transfer, or transfer, as defined. (Pen. Code, §§ 26500, 26505, & 26520.)

2) Excludes persons with a valid federal firearms license and a current certificate of eligibility issued by the Department of Justice (DOJ) from the prohibitions on the sale, lease, or transfer of used firearms, other than handguns, at gun shows or events. (Pen. Code, § 26525.)

3) Permits licensed dealers to sell firearms only from their licensed premises and at gun shows. (Pen. Code, § 26805.)

4) States that a dealer operating at a gun show must comply with all applicable laws, including California's waiting period law, laws governing the transfer of firearms by dealers, and all

**189**

local ordinances, regulations, and fees. (Pen. Code, § 26805.)

5) Specifies the requirements that gun show operators must comply with at gun shows, including entering into a written contract with each gun show vendor selling firearms at the show, ensuring that liability insurance is in effect for the duration of a gun show, posting visible signs pertaining to gun show laws at the entrances of the event, and submitting a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers to the Department of Justice, as specified. (Pen. Code, §§ 27200, 27245.)

6) States that no person shall produce, promote, sponsor, operate, or otherwise organize a gun show, unless that person possesses a valid certificate of eligibility from the DOJ. (Pen. Code, § 27200.)

**FISCAL EFFECT**: Unknown.

**COMMENTS**:

1) **Author's Statement**: According to the author, "County fairgrounds are intended to be family friendly venues. Instead, they've become known for hosting gun shows. While the Second Amendment protects the rights of individuals to bear arms, it does not require our great State of California to use taxpayer-owned property to disseminate more deadly firearms into our communities. Given the clear linkage between the sale of guns and the likelihood of gun violence in a community, our state must stop being in the business of selling guns. Unfortunately, all too often this year, we've seen headline after headline of terrible tragedies throughout the nation and California — two shootings in my district and in San Jose in May. Enough is enough."

2) **Gun Shows**: A "gun show" is a trade show for firearms. At gun shows, individuals may buy, sell, and trade firearms and firearms-related accessories. These events typically attract several thousand people, and a single gun show can have sales of over 1,000 firearms over the course of one weekend. (Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), *Gun Shows: Brady Checks and Crime Gun Traces*, January 1999, available at: https://www.atf.gov/file/57506/download, [as of March 18, 2019].)

According to the NRA's Institute for Legislative Action (NRA-ILA), less than one percent of persons incarcerated in state prisons for gun crimes acquired their firearms at a gun show. (NRA-ILA, https://www.nraila.org/get-the-facts/background-checks-nics.) However, according to a report published by UC Davis, gun shows have been identified as a source for illegally trafficked firearms. (https://www.ucdmc.ucdavis.edu/vprp/pdf/IGS/IGS1web.pdf, [as of March 20, 2019].) Though violent criminals do not appear to regularly purchase their guns directly from gun shows, gun shows have received criticism as being "the critical moment in the chain of custody for many guns, the point at which they move from the somewhat-regulated legal market to the shadowy, no-questions-asked illegal market." (Gerney, *The Gun Debate 1 Year After Newtown*, Center for American Progress, December 13, 2013, available at: http://www.americanprogress.org/issues/guns-crime/report/2013/12/13/80795/the-gun-debate-1-year-after-newtown/, [as of March 18, 2019].)

190

In 1999, California enacted the nation's broadest legislation to increase oversight at gun shows. AB 295 (Corbett), Chapter 247, Statutes of 1999, the Gun Show Enforcement and Security Act of 2000, added a plethora of requirements for gun shows. To obtain a certificate of eligibility from the DOJ, a promoter must certify that he or she is familiar with existing law regarding gun shows; obtain at least $1,000,000 of liability insurance; provide an annual list of gun shows the applicant plans to promote; pay an annual fee; make available to local law enforcement a complete list of all entities that have rented any space at the show; submit not later than 15 days before the start of the show an event and security plan; submit a list to DOJ of prospective vendors and designated firearms transfer agents who are licensed dealers; provide photo identification of each vendor and vendor's employee; prepare an annual event and security plan; and require all firearms carried onto the premises of a show to be checked, cleared of ammunition, secured in a way that they cannot be operated, and have an identification tag or sticker attached. AB 295 also provided for a number of penalties for a gun show producer's willful failure to comply with the specified requirements.

In California, gun transactions at gun shows are treated no differently than any other private party transaction. This means that such transfers must be completed through a licensed California dealer. Such a transfer requires a background check and is subject to the mandatory ten day waiting period prior to delivering the firearm to the purchaser. California's strict gun show regulations may help to prevent increases in firearm deaths and injuries following gun shows. (See Ellicott C. Matthay, et al., "In-State and Interstate Associations Between Gun Shows and Firearm Deaths and Injuries," Annals of Internal Medicine (2017) Vol. 1 Iss. 8.)

3) **Banning Gun Shows on State Agricultural Land**: There have been several legislative attempts to regulate gun shows in Agricultural District 1A in San Mateo and San Francisco Counties at a location commonly known as the "Cow Palace." SB 221 (Wiener) of 2018, SB 475 (Leno) of 2013, SB 585 (Leno) of 2009, and others, all attempted to either ban gun shows at the Cow Palace altogether, or require prior approval from the county Board Supervisors prior to entering into a contract for holding a gun show there. All three attempts were vetoed by then-Governors Schwarzenegger and Brown.

Then, in 2019, AB 893 (Gloria) Chapter 731, Statutes of 2019, added a section to the Food and Agricultural Code that prohibits the sale of firearms and ammunition at the Del Mar Fairgrounds, effectively terminating the possibility for future gun shows at the Del Mar Fairgrounds. AB 893 was signed into law by Governor Newsom. This bill would expand the provisions of AB 893 by including all state property within the prohibition on the sale or transfer of firearms and ammunition.

4) **Constitutional Implications**: A federal judge recently ruled that California's ban on the AR-15 assault rifle is unconstitutional. (*See Miller v. Bonta,* (June 4, 2021) U.S. Dist. LEXIS 105640.) *Miller* becomes the third federal district court decision to find a California firearms regulation unconstitutional under the Second Amendment to the United States Constitution, joining *Rhode v. Becerra* (S.D. Cal., 2020) 445 F. Supp. 3d 902 (ammunition background checks), and *Duncan v. Becerra* (9th Cir., 2020) 970 F.3d 1133 (high-capacity magazines). All three of these decisions were made by the same federal judge. *Duncan* was upheld by the Ninth Circuit Court of Appeals, but is now pending a rehearing *en banc*. *Rhode* and *Miller* have been stayed pending further proceedings.

This bill is also likely to generate constitutional challenges. Opponents to the bill have cited to the Ninth Circuit Court of Appeals, which has held that "an offer to sell firearms or ammunition" is constitutionally protected commercial speech under the First Amendment to the United States Constitution. (*Nordyke v. Santa Clara County* (2009) 110 F.3d 707, 710.) This bill does not specifically prohibit "an offer" to sell guns or ammunition, but it does prohibit contracting for such a transaction. Opponents assert that such a prohibition constitutes impermissible viewpoint discrimination. They also state that this bill unduly burdens rights guaranteed by the Second Amendment.

5) **Argument in Support**: According to >

6) **Argument in Opposition**: According to >

7) **Related Legislation**: AB 311 (Ward) would prohibit a vendor at a gun show or event from possessing, displaying, offering to sell, selling, or transferring a firearm precursor part. AB 311 was held in the Assembly Appropriations Committee suspense file.

8) **Prior Legislation**:

a) AB 893 (Gloria) Chapter 731, Statutes of 2019, prohibited the sale of firearms and ammunitions at the Del Mar Fairgrounds in the County of San Diego and the City of Del Mar.

b) SB 221 (Wiener) of the 2017-18 Legislative Session, would have prohibited the sale of firearms and ammunitions at the Cow Palace located in San Mateo County and San Francisco County. SB 221 was vetoed by Governor Brown.

c) SB 475 (Leno), of the 2013-14 Legislative Session, would have required gun shows at the Cow Palace to have prior approval of both the Board of Supervisors of the County of San Mateo and the City and County of San Francisco, as specified. SB 475 was vetoed by Governor Brown.

d) SB 585 (Leno), of the 2009-10 Legislative Session, would have prohibited events at which any firearm or ammunition is sold at the Cow Palace, as specified. SB 585 was vetoed by Governor Schwarzenegger.

e) AB 2948 (Leno), of the 2007-08 Legislative Session, would have prohibited the sale of firearms or ammunition at the Cow Palace. AB 2948 failed passage on the Senate Floor.

f) SB 1733 (Speier), of the 2003-04 Legislative Session, would have required gun shows at the Cow Palace to have prior approval of both the Board of Supervisors of the County of San Mateo and the City and County of San Francisco, as specified. SB 1733 failed passage on the Assembly Floor.

g) AB 295 (Corbett), Chapter 247, Statutes of 1999, established the Gun Show Enforcement and Security Act of 2000, which includes a number of requirements for producers that promote gun shows.

h) AB 1107 (Ortiz), of the 1997-98 Legislative Session, would have authorized any city, county or agricultural association to prohibit gun sales at gun shows or events. AB 1107 failed in the Assembly Appropriations Committee.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

American Academy of Pediatrics, California
Brady Orange County
Canyon Democrats
City of Solana Beach
Democrats of Greater Irvine
Hb Huddle
Laguna Beach Democratic Club
Laguna Woods Democratic Club
League of Women Voters of California
Neveragainca
Office of Chair Nathan Fletcher, San Diego County Board of Supervisors
Peace and Justice Commission From St Mark Presbyterian Church in Newport Beach
San Diegans for Gun Violence Prevention
San Diego; City of
Santa Barbara Women's Political Committee
The Violence Prevention Coalition of Orange County
Women for American Values and Ethics Action Fund
Women For: Orange County

**Oppose**

Black Brant Group, the
Cal-ore Wetlands and Waterfowl Council
California Bowmen Hunters/state Archery Association
California Deer Association
California Houndsmen for Conservation
California Rifle and Pistol Association, INC.
California Sportsman's Lobby, INC.
California Statewide Law Enforcement Association
California Waterfowl Association
Gun Owners of California, INC.
National Rifle Association - Institute for Legislative Action
National Shooting Sports Foundation, INC.
Nor-cal Guides and Sportsmen's Association
Outdoor Sportsmen's Coalition of California
Peace Officers Research Association of California (PORAC)
Rural County Representatives of California
Safari Club International - California Chapters
San Diego County Wildlife Federation
San Francisco Bay Area Chapter - Safari Club International

193

Tulare Basin Wetlands Association
Western Fairs Association

1 private individual

**Analysis Prepared by**: Matthew Fleming / PUB. S. / (916) 319-3744