# EXHIBIT 16

## SENATE COMMITTEE ON PUBLIC SAFETY
**Senator Steven Bradford, Chair**
**2021 - 2022  Regular**

| | | | | |
|---|---|---|---|---|
| **Bill No:** | SB 915 | **Hearing Date:** | March 8, 2022 | |
| **Author:** | Min | | | |
| **Version:** | February 2, 2022 | | | |
| **Urgency:** | No | **Fiscal:** | Yes | |
| **Consultant:** | AB | | | |

**Subject:  *Firearms:  state property***

### HISTORY

Source:          Author

Prior Legislation:      SB 264 (Min), Ch. 684, Stats. of 2021
AB 893 (Gloria), Ch. 731, Stats. of 2019
SB 221 (Wiener), 2017, vetoed
SB 475 (Leno), 2013, vetoed
SB 585 (Leno), 2009, vetoed
AB 2948 (Leno), 2008, failed passage on the Senate Floor
SB 1733 (Speier), 2004, failed passage on the Assembly Floor
AB 295 (Corbett), Ch. 247, Stats. of 1999
AB 1107 (Ortiz), 1997, failed passage in Assembly Appropriations

Support:        Brady Orange County; Brady United Against Gun Violence, Ventura County
Chapter; Democratic Club of Cornejo Valley; Friends Committee on Legislation of
California; Laguna Woods Democratic Club; NeverAgainCA; San Diego County
Board of Supervisors; Santa Barbara Women's Political Committee; Ventura
County; Violence Prevention Coalition of Orange County

Opposition:     Black Brant Group; Cal-ore Wetlands and Waterfowl Council; California Bowmen
Hunters/State Archery Association; California Chapter Wild Sheep Foundation;
California Deer Association; California Houndsmen for Conservation; California
Rifle and Pistol Association; California Sportsman's Lobby, INC.; California
Waterfowl Association; Gun Owners of California; National Rifle Association –
Institute for Legislative Action; Nor-cal Guides and Sportsmen's Association;
Outdoor Sportsmen's Coalition of California; Peace Officers Research Association
of California; Rocky Mountain Elk Foundation; Safari Club International –
California Chapters; San Diego County Wildlife Federation; San Francisco Bay
Area Chapter - Safari Club International; Tulare Basin Wetlands Association

### PURPOSE

***The purpose of this legislation is to prohibit the sale of firearms, firearm precursor parts and
ammunition on state property.***

*Existing law* provides that bringing or possessing a firearm within any state or local public
building is punishable by imprisonment in a county jail for not more than one year, or in the state

**204**

prison, unless a person brings any weapon that may be lawfully transferred into a gun show for the purpose of sale or trade. (Pen. Code §§ 171b subd. (a), 171b subd. (b)(7)(A).)

*Existing law* prohibits the sale, lease, or transfer of firearms without a license, unless the sale, lease, or transfer is pursuant to operation of law or a court order, made by a person who obtains the firearm by intestate succession or bequest, or is an infrequent sale, transfer, or transfer, as defined. (Pen. Code § 26500, 26505, 26520.)

*Existing law* excludes persons with a valid federal firearms license and a current certificate of eligibility issued by the Department of Justice from the prohibitions on the sale, lease, or transfer of used firearms, other than handguns, at gun shows or events. (Pen. Code § 26525.)

*Existing law* permits licensed dealers to sell firearms only from their licensed premises and at gun shows. (Pen. Code § 26805.)

*Existing law* states that a dealer operating at a gun show must comply with all applicable laws, including California's waiting period law, laws governing the transfer of firearms by dealers, and all local ordinances, regulations, and fees. (Pen. Code § 26805.)

*Existing law* states that no person shall produce, promote, sponsor, operate, or otherwise organize a gun show, unless that person possesses a valid certificate of eligibility from the Department of Justice. (Pen. Code § 27200.)

*Existing law* specifies the requirements that gun show operators must comply with at gun shows, including entering into a written contract with each gun show vendor selling firearms at the show, ensuring that liability insurance is in effect for the duration of a gun show, posting visible signs pertaining to gun show laws at the entrances of the event, and submitting a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers to the Department of Justice, as specified.  (Pen. Code §§ 27200, 27245.)

*Existing law* provides that an officer, employee, operator, lessee or licensee of the 32nd District Agricultural Association shall not contract for, authorize, or allow the sale of any firearm, firearm precursor part, or ammunition on the property or in the buildings that comprise the Orange County (OC) Fair and Event Center, in the County of Orange, the City of Costa Mesa, or any successor or additional property owned, leased or otherwise occupied or operated by the district. (Pen. Code §27575(a).)

*Existing law* exempts the following from the prohibition in Penal Code § 27575(a):

- A gun buyback event held by a law enforcement agency.
- The sale of a firearm by a public administrator, public conservator, or public guardian within the course of their duties
- The sale of a firearm, firearm precursor part, or ammunition on state property that occurs pursuant to a contract that was entered into before January 1, 2022.
- The purchase of ammunition on state property by a law enforcement agency in the course of its regular duties. (Pen. Code §27575(b).)

*Existing law* specifies that unless a different penalty is expressly provided, a violation of any provision of the Food and Agricultural code is a misdemeanor.  (Food and Agr. Code, § 9.)

*This bill* prohibits a state officer or employee, or operator, lessee, or licensee of any state property from contracting for, authorizing, or allowing the sale of any firearm, firearm precursor part, or ammunition on state property or property otherwise owned, leased, occupied, or operated by the state.

*This bill* exempts the following from the prohibition above:
- A gun buyback event held by a law enforcement agency.
- The sale of a firearm by a public administrator, public conservator, or public guardian within the course of their duties
- The sale of a firearm, firearm precursor part, or ammunition on state property that occurs pursuant to a contract that was entered into before January 1, 2023.
- The purchase of ammunition on state property by a law enforcement agency in the course of its regular duties.

# COMMENTS

## 1. Need for This Bill

According to the author:

> "County fairgrounds are meant to be a safe and welcome space for community gatherings. Instead, these tax-payer owned properties are used to facilitate the sales of guns and ammunition. According to the Giffords Law Center to Prevent Gun Violence, gun shows often create the opportunity to "circumvent gun safety laws" and are a common venue for straw purchases and illegal gun transfers.
>
> Additionally, a Bureau of Alcohol, Tobacco, and Firearms report described gun shows as a "major trafficking channel" and found that gun shows were the second largest source of illegally trafficked firearms. The state should not play a role in facilitating or profiting off of the sales of these deadly weapons. Instead, the creation of statewide safeguards is necessary to ensure fairgrounds remain safe, family-friendly venues."

## 2. Gun Shows Generally

Gun shows are essentially a flea market for firearms. At gun shows, individuals may buy, sale, and trade firearms and related accessories. These events typically attract several thousand people, and a single gun show can have sales of over 1,000 firearms over the course of one weekend.[1]

According to the NRA's Institute for Legislative Action, less than one percent of inmates incarcerated in state prisons for gun crimes acquired their firearms at a gun show.[2] However, gun shows rank second to corrupt dealers as a source for illegally trafficked firearms. Though violent criminals do not buy most of their guns directly from gun shows, gun shows are "the critical moment in the chain of custody for many guns, the point at which they move from the somewhat-regulated legal market to the shadowy, no-questions-asked illegal market."[3]

---

[1] Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/file/57506/download.
[2] NRA-ILA, https://www.nraila.org/get-the-facts/background-checks-nics.
[3] Center for American Progress, http://www.americanprogress.org/issues/guns-crime/report/2013/12/13/80795/the-gun-debate-1-year-after-newtown/.

Concerns about gun shows extend beyond the state. A report by the Government Accountability Office regarding gun trafficking to Mexico confirmed that many traffickers buy guns at gun shows.[4] In fact, 87% of firearms seized by Mexican authorities and traced in the last 5 years originated in the United States, according to data from DOJ's Bureau of Alcohol, Tobacco, Firearms and Explosives. According to United States and Mexican government officials, these firearms have been increasingly more powerful and lethal in recent years. Many of these firearms come from gun shops and gun shows in south-west border-states.[5]

### 3.   Gun Show Regulations in California

AB 295 (Corbett, Chapter 247, Statutes of 1999), the Gun Show Enforcement and Security Act of 2000, added a number of requirements for gun shows. To obtain a certificate of eligibility from the DOJ, a promoter must certify that he or she is familiar with existing law regarding gun shows; obtain at least $1 million of liability insurance; provide an annual list of gun shows the applicant plans to promote; pay an annual fee; make available to local law enforcement a complete list of all entities that have rented any space at the show; submit not later than 15 days before the start of the show an event and security plan; submit a list to DOJ of prospective vendors and designated firearms transfer agents who are licensed dealers; provide photo identification of each vendor and vendor's employee; prepare an annual event and security plan; and require all firearms carried onto the premises of a show to be checked, cleared of ammunition, secured in a way that they cannot be operated, and have an identification tag or sticker attached. AB 295 also provided for a number of penalties for a gun show producer's willful failure to comply with the specified requirements. California's strict gun show regulations may help to prevent increases in firearm deaths and injuries following gun shows. (See Ellicott C. Matthay, et al., "*In-State and Interstate Associations Between Gun Shows and Firearm Deaths and Injuries*," Annals of Internal Medicine (2017) Vol. 1 Iss. 8.)

In addition to state laws regulating gun shows, a total ban on gun shows on county property is within the scope of a county's authority. "Under California Government Code section 23004(d), a county is given substantial authority to manage its property, including the most fundamental decision as to how the property will be used and that nothing in the gun show statutes evince intent to override that authority. The gun show statutes do not mandate that counties use their property for such shows. If the county does allow such shows, it may impose more stringent restrictions on the sale of firearms than state law prescribes." (*Nordyke v. Santa Clara County* (9th Cir. Cal. 1997) 110 F.3d 707, 766.)  However, counties do not have authority to prohibit gun shows on state property such as the Cow Palace in Daly City.

### 4.   Banning of Gun Shows on State Agricultural Land

There have been several legislative attempts to regulate gun shows on State Agricultural Land— most notably, SB 475 (Leno, 2014) and SB 585 (Leno, 2010), which were both vetoed.

SB 585 would have prohibited gun shows at Cow Palace. SB 585 would have additionally required the Cow Palace District Agricultural Association (DAA) to replace gun show events with non-firearm or non-ammunition related events. In his veto message, Governor Schwarzenegger stated that SB 585 would "set a confusing precedent at the state level by statutorily prohibiting one [DAA] from selling firearms and ammunition, a legal and regulated activity, while allowing

---

[4] https://www.gao.gov/assets/680/674570.pdf.
[5] https://www.ucdmc.ucdavis.edu/vprp/pdf/IGS/IGS1web.pdf.

other DAAs to continue to do so. In addition, [SB 585] would result in decreased state and local tax revenues by restricting events at the Cow Palace." This bill would apply to all DAAs equally.

Another attempt to prohibit gun sales at Cow Palace was similarly vetoed by Governor Brown. SB 475 would have permitted gun shows at Cow Palace only upon prior approval by resolution adopted by both the Board of Supervisors of the County of San Mateo and the Board of Supervisors of the City and County of San Francisco. SB 475 was vetoed by because it required the Cow Palace DAA to obtain approval from the County of San Mateo and the City and County of San Francisco prior to entering into a contract for a gun show on state property. In his veto message, Governor Brown stated, "I encourage all [DAAs] to work with their local communities when determining their operations and events. [SB 475], however, totally pre-empts the Board of Directors of the Cow Palace from exercising its contracting authority whenever a gun show is involved. I prefer to leave these decisions to the sound discretion of the Board." Under SB 475, the Cow Palace DAA would have been permitted to host gun shows, but only at the discretion of San Francisco and San Mateo counties. In practice, SB 475 would have allowed the Board of Cow Palace to permit some approved gun shows, and required it to prohibit other non-county-approved gun shows. In comparison, this bill instead completely prohibits all gun shows at Cow Palace.

In 2018, SB 221 (Wiener) contained very similar provisions to this bill. SB 221 would have prohibited any officer, employee, operator, or lessee of Agriculture District 1-A, from contracting for, authorizing, or allowing the sale of any firearm or ammunition at the Cow Palace property in San Mateo County and San Francisco County. Like this bill, SB 221 exempted law enforcement firearm buy-back events. Unlike this bill, SB 221 failed to exempt existing contracts to host firearms events. SB 221 was vetoed by Governor Brown with the following veto message:

> This bill would prohibit the sale of firearms and ammunition at the District Agricultural Association 1A, commonly known as the Cow Palace.
>
> This bill has been vetoed twice over the last ten years, once by myself, and once by Governor Schwarzenegger.
>
> The decision on what kind of shows occur at the Cow Palace rests with the local board of directors which, incidentally, represents a broad cross section of the community. They are in the best position to make these decisions.

Then, in 2019 AB 893 (Gloria) added a section to the Food and Agricultural Code that prohibits the sale of firearms and ammunitions at the Del Mar Fairgrounds.  By default, a violation of any provision of the Food and Agricultural code is a misdemeanor, unless otherwise specified. Therefore, this bill effectively terminated the possibility for future gun shows at the Del Mar Fairgrounds.  AB 893 was signed into law by Governor Newsom and Chaptered as 731 in the Statutes of 2019.

## 5.   SB 264 (Min, 2021)

SB 264 (Min, Ch. 684, Stats. of 2021) as initially introduced was almost identical to this bill, and would have enacted a similar statewide ban on firearm and ammunition sales on state property. That measure was subsequently amended to include precursor parts – which can be assembled into so-called "ghost guns" – in the prohibition on sales, and to exempt several governmental

functions and contractual obligations from the prohibition. The scope of SB 264 was ultimately limited by amendments taken in Assembly Appropriations Committee, confining the measure's applicability to firearm, precursor part and ammunition sales in Orange County. This bill renews the author's efforts to enact a statewide ban, and retains the exemptions and ban on precursor part sales from the final version of SB 264.

## 6.  Related Legislation

AB 1769 (Bennett) establishes a ban similar to that created by this bill, but limited to sales of firearms, precursor parts and ammunition in Ventura County. AB 1769 awaits a hearing in the Assembly Committee on Public Safety.

## 7.  Argument in Support

According to the Santa Barbara Women's Political Committee:

> "[…] Under current law gun shows have brought dangerous incidents to our community, including such incidents as sales of firearms to individuals registered in the Department of Justice Bureau of Firearms Prohibited Persons System, illegal importation of large-capacity magazines, and more. Our nation continues to endure an alarming increase of gun violence including mass murders that have devastated communities. By prohibiting gun shows on state properties, SB 915 would help to restore these properties to more family-friendly venues. It would also curtail the use of taxpayer dollars to facilitate placing more guns on our streets."

## 8.  Argument in Opposition

According to the National Rifle Association Institute for Legislative Action:

> "In order for a person to purchase any firearm in California, they must possess a firearm safety certificate, pass a criminal background check and wait 10 days prior to receipt. The involvement of a licensed dealer is generally required for all firearms sales/transfers in addition to the sale or transfer of firearm precursor parts or ammunition, absent very narrow and limited circumstances. The restrictions on the sale and transfer of firearms, firearm precursor parts and ammunition applies to gun shows as well. Transactions at these events require strict adherence to the law and the process for completing the transfer is no different than if it had occurred at a nearby brick and mortar shop.

> Studies have shown that firearms acquired at gun shows are not any more likely to be used in crime. This legislation fails to adequately balance the need to prohibit all gun shows at state controlled property versus the interests of the gun shows' promoters, vendors and attendees – individuals who will now be left with limited venues to convene to share in their mutual interest in the shooting sports in a commercial setting."

**-- END –**
