1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
   Telephone: (562) 216-4444
4  Email: cmichel@michellawyers.com

5  Attorneys for Plaintiffs B&L Productions, Inc., California Rifle & Pistol
   Association, Incorporated, Gerald Clark, Eric Johnson, Chad Littrell, Jan Steven
6  Merson, Asian Pacific American Gun Owner Association, Second Amendment Law
   Center, Inc.

7
   Donald Kilmer-SBN 179986
8  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
9  Caldwell, Idaho 83607
   Telephone: (408) 264-8489
10 Email: Don@DKLawOffice.com

11 Attorney for Plaintiff Second Amendment Foundation

12            IN THE UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 B&L PRODUCTIONS, INC., d/b/a        CASE NO.: 8:22-cv-01518 JWH (JDEx)
   CROSSROADS OF THE WEST;
15 GERALD CLARK; ERIC JOHNSON;        **MEMORANDUM OF POINTS &**
   CHAD LITTRELL; JAN STEVEN          **AUTHORITIES IN SUPPORT OF**
16 MERSON; CALIFORNIA RIFLE &         **PLAINTIFFS' MOTION FOR**
   PISTOAL ASSOCIATION,               **PRELIMINARY INJUNCTION**
17 INCORPORATED; ASIAN PACIFIC
   AMERICAN GUN OWNERS               Hearing Date:    January 6, 2023
18 ASSOCIATION; SECOND               Hearing Time:    9:00 a.m.
   AMENDMENT LAW CENTER, INC.;       Courtroom:       9D
19 and SECOND AMENDMENT             Judge:           John W. Holcomb
   FOUNDATION,
20                                   Action Filed:    August 12, 2022
                    Plaintiffs,
21
             v.
22
   GAVIN NEWSOM, in his official
23 capacity as Governor of the State of
   California; ROB BONTA, in his official
24 capacity as Attorney General of the
   State of California; KAREN ROSS, in
25 her official capacity as Secretary of
   California Department of Food &
26 Agriculture and in his personal capacity;
   TODD SPITZER, in his official
27 capacity as District Attorney of Orange
   County; 32nd DISTRICT
28 AGRICULTURAL ASSOCIATION;
   DOES 1-10;
                    Defendants.

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

Table of Contents ...................................................................................... i

Table of Authorities ................................................................................. ii

Introduction ............................................................................................. 1

Factual Background .................................................................................. 2

I.   State-Law Regulation of Gun Shows in California ............................ 2

II.  The Gun Show Experience ............................................................... 3

III. The OC Fair & Event Center and the Crossroads Gun Show ........... 3

IV.  The Challenged Statutes .................................................................. 4

Legal Standard ........................................................................................ 5

Argument ................................................................................................. 6

I.   Plaintiffs Are Likely To Succeed on the Merits of Their Claims ...... 6

    A.   The Challenged Statutes Violate Plaintiffs' First Amendment Rights to Free Speech, Association, and Assembly ........................................... 6

        1.   The Challenged Statutes Restrict Protected Expression .............. 7

        2.   The Fairgrounds Is a Public Forum ........................................... 10

        3.   The Challenged Statutes Are Content-based and Viewpoint-discriminatory ......................................................................... 11

        4.   The Challenged Statutes Cannot Survive Heightened Scrutiny . 15

    B.   The Challenged Statutes Violate Plaintiffs' Right to Equal Protection 20

    C.   The Challenged Statutes Violate Plaintiffs' Second Amendment Right to Sell and Acquire Protected Arms for Lawful Purposes ......... 21

II.  The Remaining Preliminary Injunction Factors Warrant Relief ...... 24

    A.   Plaintiffs Will Suffer Irreparable Harm ................................... 24

    B.   The Balance of Equities and Public Interest Warrant Relief .......... 24

Conclusion ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. United States*,
   250 U.S. 616 (1919)................................................................18

*Am. Civ. Libs. Union v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) .....................................................25

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) .....................................................6

*Andrews v. State*,
   50 Tenn. 165 (1871)................................................................23

*Ark. Writers' Project v. Ragland*,
   481 U.S. 221 (1987)................................................................11

*Ashcroft v. Am. Civ. Libs. Union*,
   542 U.S. 656 (2004)................................................................11

*B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n ("B&L I")*,
   394 F. Supp. 3d 1226 (S.D. Cal. 2019)...............................9, 11, 12, 14

*B&L Prods., Inc. v. Newsom*,
   S.D. Cal. No. 3:21-cv-01718 .....................................................12

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963).................................................................15

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983).................................................................20

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)................................................................18

*Cal. Med. Ass'n v. FEC*,
   453 U.S. 182 (1981)................................................................15

*Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n*,
   447 U.S. 557 (1980)................................................................15

ii

*Chalk v. U.S. Dist. Ct.*,
  840 F.2d 701 (9th Cir. 1998) ...................................................................6

*Cleburne v. Cleburne Living Ctr., Inc.*,
  472 U.S. 432 (1985)...............................................................................7

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985)............................................................................6, 7

*Craig v. Boren*,
  429 U.S. 190 .........................................................................................5

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)................................................................8, 19, 21

*Duncan v. Becerra*,
  970 F.3d 1133 (9th Cir. 2020) ...........................................................23

*Edwards v. City of Coeur D'Alene*,
  262 F.3d 856 (9th Cir. 2001) .............................................................19

*Eisenstadt v. Baird*,
  405 U.S. 438 (1972)...............................................................................5

*Elrod v. Burns*,
  427 U.S. 347 (1976)............................................................................24

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) .............................................................23

*Frisby v. Schultz*,
  487 U.S. 474 (1988)............................................................................18

*Frohwerk v. United States*,
  249 U.S. 204 (1919)............................................................................17

*Grosjean v. Am. Press Co.*,
  297 U.S. 233 (1936)............................................................................20

*Grutter v. Bollinger*,
  539 U.S. 306 (2003)............................................................................16

*Heller v. District of Columbia*,
  670 F.3d 1244 (2011)..........................................................................21

iii

TABLE OF AUTHORITIES

*Hunt v. City of Los Angeles,*
    601 F. Supp. 2d 1158 (C.D. Cal. 2009) ................................................8

*Hustler Magazine v. Falwell,*
    485 U.S. 46 (1988)......................................................................6

*Index Newsps. LLC v. U.S. Marshalls Serv.,*
    977 F.3d 817 (9th Cir. 2020) .......................................................24

*Interpipe Contracting, Inc. v. Becerra,*
    898 F.3d 879 (9th Cir. 2018) .......................................................14

*Jackson v. City & Cty. of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) .......................................................22

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) .....................................................24

*Konigsberg v. State Bar of Cal.,*
    366 U.S. 36 (1961)....................................................................22

*Kuba v. 1-A Agr. Ass'n,*
    387 F.3d 850 (9th Cir. 2004) .......................................................16

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010)........................................................19, 21, 22

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) .......................................................24

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue,*
    460 U.S. 575 (1983)..................................................................20

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    -- U.S. --, 142 S. Ct 2111 (2022) ..................................13, 21, 22, 23

*NAACP v. Ala. ex rel. Patterson,*
    357 U.S. 449 (1959)....................................................................6

*Nken v. Holder,*
    556 U.S. 418 (2009)..................................................................24

*Nordyke v. King,*
    681 F.3d 1041 (9th Cir. 2012) .................................................12, 13

TABLE OF AUTHORITIES

*Nordyke v. Santa Clara County*,
110 F.3d 707 (9th Cir. 1997) ...................................................................12, 13

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U.S. 37 (1983)..............................................................................................11

*Police Dep't of Chic. v. Mosley*,
408 U.S. 92 (1972)......................................................................................11, 20

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)...........................................................................................14

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)..............................................................................11, 12, 15

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) .......................................................................25

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995)...........................................................................................12

*Schenck v. United States*,
249 U.S. 47 (1919)..............................................................................................17

*Se. Promos., Ltd. v. Conrad*,
420 U.S. 546 (1975)...........................................................................................15

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011)...........................................................................................15

*Teixeira v. Cty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) .........................................................................23

*Texas v. Johnson*,
491 U.S. 397 (1989)..............................................................................................8

*United States v. Alvarez*,
567 U.S. 709 (2012)..............................................................................................8

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000)........................................................................................7, 15

*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008)..................................................................................................6

**Statutes**

18 U.S.C. § 922 ..........................................................................................2

Cal. Pen. Code § 26805 ............................................................................2

Cal. Pen. Code § 26815 ............................................................................2

Cal. Pen. Code § 27200 ............................................................................2

Cal. Pen. Code § 27205 ............................................................................2

Cal. Pen. Code § 27220 ............................................................................2

Cal. Pen. Code § 27240 ............................................................................2

Cal. Pen. Code § 27310 ............................................................................2

Cal. Pen. Code § 27545 ............................................................................2

Cal. Pen. Code § 27573 .......................................................................4, 5

Cal. Pen. Code § 27575 ............................................................................4

Cal. Pen. Code § 28215 ............................................................................2

**Other Authorities**

27 C.F.R. § 478.100 ..................................................................................3

11A Charles Alan Wright et al., Federal Practice and Procedure §
    2948.1 (2d ed. 1995) ........................................................................24

U.S. Const., amend. I .......................................................................*passim*

U.S. Const., amend. II......................................................................*passim*

U.S. Const., amend. XIV .......................................................20, 21, 25

**INTRODUCTION**

A gun show is a public gathering where people assemble and engage in lawful expressive activity. Anyone can attend, though minors must come with an adult. Thousands of these shows take place in towns throughout the United States, in American Legion halls, public auditoriums, fairground exposition halls, flea markets, farmer's markets, and vacant commercial buildings. Licensed gun dealers, who must comply with all state and federal gun laws, display and sell firearm-related products; they are the anchor and main attraction of gun shows. Other vendors sell historical pieces, rare coins, military memorabilia, jewelry, home décor, camping equipment, fudge, jerky, and books. Still other vendors market services like gun-smithing, self-defense courses, and guided hunting trips. Second Amendment commerce may be the main attraction, but patrons are also there to engage in speech about firearms, preservation of their rights, and to enjoy the fellowship of like-minded people.

California objects to this long-standing commercial and cultural event taking place on public property, in which the Second Amendment plays such a central role. To that end, the State recently enacted a pair of laws banning any event on state-owned properties if firearms, ammunition, or "firearm precursor parts" are to be sold. The stated purpose and actual effect of these laws is to ban gun shows on state-owned property. But the State cannot establish that its ban is necessary to stop a known safety problem. There is no evidence that California's gun shows—already *more* heavily regulated than other avenues for firearm sales—pose some unique threat to public safety. And California has identified no other compelling interest that might justify its ban. Instead, the legislative history reveals the legislators' bare desire to make a "value statement" about guns and gun shows and to get California out of the business of profiting from such events. In short, California's animus for Plaintiffs, their commerce in lawful products, and the cultural aspects of these events is the not-so-hidden motivation behind the State's action.

Plaintiffs thus move to enjoin the Challenged Statutes because they restrain

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

1    First Amendment activity in a public forum, and because they violate Plaintiffs'

2    fundamental rights to keep and bear arms and to equal protection under the law.

**FACTUAL BACKGROUND**

3

4    **I.    STATE-LAW REGULATION OF GUN SHOWS IN CALIFORNIA**

5            California has one of the most rigorous regulatory regimes for commerce in

6    firearms and ammunition in the United States. That is, perhaps, most true for the sale

7    of such products at gun shows, where laws regulating commerce in firearms is in

8    many ways at their strictest. From requiring that event promoters provide law

9    enforcement with a complete list of all firearm retailer vendors, Cal. Penal Code §§

10   27205, 27220, to mandating that they maintain minimum insurance policies, *id.* §

11   27200, and dictating what written warnings must be posted throughout the venue, *id.* §

12   27240(a), California law covers all manner of conduct at gun shows. *See* App'x A (for

13   a more complete list of the myriad state laws regulating gun shows).

14           To be clear, no law that applies to the lawful sale of firearms and ammunition at

15   permanent retail locations in California is excused at gun shows. Cal. Penal Code §

16   27310. Firearm purchasers at gun shows are subject to the same background checks,

17   *id.* § 28215, same 10-day waiting period, *id.* § 26815(a), same proof of residency

18   requirement, 18 U.S.C. § 922(a)(3), (b)(3), same *everything*. Critically, no firearm

19   transfers may lawfully take place at any gun show absent narrow exceptions

20   applicable only to law enforcement. Licensed dealers may begin the process onsite,

21   but purchasers must pick up their firearm offsite *after* all prerequisites for the sale

22   have been met.[1] In short, there is no "gun show loophole" in California.

23           More to the point, California has not amended or repealed its "Gun Show

24   Enforcement and Security Act of 2000," Cal. Penal Code §§ 27200, *et seq.*, which was

25

---

26   [1] Cal. Penal Code § 27310 (requiring all firearm transfers at gun shows to comply
     with state and federal law); *id.* § 26805 (prohibiting the sale and transfer of a firearm
27   by a licensed dealer at any location other than the dealer's licensed premises but
     allowing dealer to prepare documents at a gun show); *id.* § 27545 (requiring all
28   transactions to be processed through a licensed dealer).

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

1  specifically intended to make gun shows at least as, if not safer than, firearm

2  transactions at brick-and-mortar stores. This, of course, means that gun shows are still

3  lawful in California—as long as they take place on private property.

4  **II.    THE GUN SHOW EXPERIENCE**

5      Gun show events are like modern bazaars—conventions of like-minded people

6  who meet in a public forum set aside by the government for all manner of speech and

7  commerce. Gun shows include the exchange of products, ideas, knowledge, services,

8  education, entertainment, and recreation. *See also* 27 C.F.R. § 478.100(b). At gun

9  shows, like-minded people come together to explore the lawful uses of firearms,

10  including self-defense, hunting, target shooting, safety training, gunsmithing, and

11  appreciation of firearms. Clark Decl. ¶¶ 4-10; Johnson Decl. ¶¶ 4-10; Littrell Decl. ¶¶

12  4-9; Merson Decl. ¶¶ 7-10; Minnich Decl. ¶¶ 6-10 ; Olcott Decl. ¶¶ 11-17.

13  Organizations share information, speakers give lectures, trainers hold classes, and

14  patrons discuss gun rights. Minnich Decl. ¶¶ 6-10; Lopez Decl. ¶ 5-6; Michel Decl. ¶¶

15  6-7; Gottlieb Decl. ¶ 4. Candidates for office even attend to discuss politics,

16  government, and law with their constituents. Olcott Decl. ¶ 14.

17      In short, gun shows are a celebration of America's "gun culture," an essential

18  outgrowth of the rights that flow from the Second Amendment. Participating in that

19  culture is one of the primary reasons people attend gun shows. Without the anchor of

20  commerce in firearms and related products at these shows, however, patronage will

21  dwindle and the events will disappear. Littrell Decl. ¶ 10; Merson Decl. ¶ 11; Olcott

22  Decl. ¶ 18. Many (maybe most) of the people who attend gun shows are there to

23  engage in commerce with experienced firearm retailers that they cannot access

24  elsewhere. Thus, vendors who sell firearms and related products are the backbone of

25  the gun show business model. Olcott Decl. ¶ 8. If licensed dealers cannot lawfully sell

26  their products at these events, there is no financial incentive for them to attend. *Id*.

27  **III.   THE OC FAIR & EVENT CENTER AND THE CROSSROADS GUN SHOW**

28      The state of California owns the OC Fair & Event Center ("the Fairgrounds").

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

FAC ¶ 77. The state vests authority to manage the Fairgrounds with Defendant 32nd District Agricultural Association ("DAA"). *Id.* Defendant Karen Ross, the Secretary of the Department of Food & Agriculture, directly oversees the operation of the DAA. *Id.* ¶ 79. The Department maintains policies for operating all DAAs in the state, including the use of the Fairgrounds by the public to host small and large-scale events, including conventions, expos, concerts, festivals, and trade shows. *Id.*

Plaintiff Crossroads has operated popular, safe, legal, and family-friendly gun show events as a business in California for over 30 years. Olcott Decl. ¶ 2. It has long produced events at the Fairgrounds where like-minded people, including the individual and vendor plaintiffs, gather to engage in lawful speech and commerce necessary for the exercise of the Second Amendment, as well as other forms of political, educational, and commercial speech . *Id.* ¶¶ 6, 11-12. Gun show vendors are often the same licensed vendors with brick-and-mortar stores in the community, operate legally over the internet, and are authorized by the government to conduct lawful commerce in firearms. *Id.* ¶ 16. They sell legal products and enjoy attending gun shows so they can interact with their customers in a meaningful way. *Id.* ¶¶ 16, 18; Merson Decl. ¶¶ 5,7; Littrell Decl. ¶¶ 4,6.

## IV.   THE CHALLENGED STATUTES

On October 8, 2021, Defendant Governor Gavin Newsom signed SB 264 (Min), amending the California Penal Code to add section 27575, which forbids anyone to "contract for, authorize, or allow the sale of any firearm, firearm precursor part, or ammunition on the property or in the buildings that comprise" the Fairgrounds. Req. Jud. Ntc., Ex. 9. The law took effect on January 1, 2022, but any event already under contract before the effective date is exempt from the law. *Id.*

In July 2022, the Legislature adopted SB 915 (Min), amending the California Penal Code to add section 27573, which similarly bans "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm, firearm precursor part, or ammunition on state property or in the buildings that sit on state property ...." *Id.*, Ex.

16. The law takes effect on January 1, 2023, but any event under contract before that date is exempt. *Id.*

While SB 264 and SB 915 (together, "the Challenged Statutes") were intended to end gun shows on publicly owned property, as the legislative history makes clear, the laws' express target is the buying and selling of firearms, ammunition, and "firearms precursor parts." *Id.*, Exs. 9, 16; *see generally id.*, Exs. 14-22. The banning of gun shows, however, has long been the goal of politicians and lobbyists who dubiously claim they believe it is wrong for the state to benefit from the sale of firearms. Essentially, even though the Challenged Statutes do not expressly state that they ban gun shows, that is exactly what they do.

Because the Challenged Statutes effectively deny Plaintiffs the use of state-owned facilities that are otherwise available for use by the public, they violate each Plaintiff's right to engage in free speech, association, and assembly, and their right to equal protection under the law. The Challenged Statutes deny Plaintiffs Clark, Johnson, Littrell, and Merson, and the organizational plaintiffs, CRPA, APAGOA, 2ALC, and SAF, of a vital opportunity to assemble and engage in pure speech about the rights and responsibilities of gun owners, the Second Amendment, and political activism with like-minded individuals. They also strip Plaintiff Crossroads of the right to promote expressive gun show events, acting as a "clearinghouse" for both political and commercial speech. They no doubt strip Plaintiffs Littrell and Merson, as well as members of CRPA, of vital opportunities to engage in lawful commercial speech, including the offer, acceptance, and exchange of consideration for the sales of firearms and related products. And, finally, they burden the rights of the individual plaintiffs to acquire protected arms and of the vendors to sell those products and who seek to defend the rights of their customers to purchase them. *See Craig v. Boren*, 429 U.S. 190, 196-97 (citing *Eisenstadt v. Baird*, 405 U.S. 438 (1972)).

## LEGAL STANDARD

"The basic function of a preliminary injunction is to preserve the status quo

pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain relief, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)(quoting *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008)).

**ARGUMENT**

**I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

**A.   The Challenged Statutes Violate Plaintiffs' First Amendment Rights to Free Speech, Association, and Assembly**

The First Amendment embodies a national commitment to "robust political debate." *Hustler Magazine v. Falwell*, 485 U.S. 46, 51 (1988). To that end, the First Amendment protects the right to free speech. U.S. Const. amend. I. It also protects freedom of the press, religion, and "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *Id.* "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by groups association, as the [Supreme] Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1959). Thus, modern First Amendment jurisprudence often merges the analysis for free speech with the rights of assembly and free association.

To determine whether a government restriction violates the First Amendment, courts must first decide whether the First Amendment protects the restricted speech. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). If it does, the court must then "identify the nature of the forum [in which one seeks to engage in expressive activity], because the extent to which the [g]overnment may limit access depends on whether the forum is public or nonpublic." *Id.* Finally, the court must "assess whether the [government's] justifications for exclusion from the

relevant forum satisfy the requisite standard." *Id.*

Under this analysis, the Challenged Statutes are unconstitutional. For Plaintiffs seek to not only to sell firearms, ammunition, and firearms parts. They seek to engage in all manner of protected expression related to the lawful use of firearms—as they have done at the Fairgrounds for decades. *See* Olcott Decl. ¶¶ 2, 12-15. The State's prohibition on commerce in arms at all state-owned properties is a thinly veiled ban on Plaintiffs' gun show events and constitutes content- and viewpoint-based censorship of Plaintiffs' message. Worse yet, the evidence shows that the Challenged Statutes are motivated by the State's animus for Plaintiffs and their message. *See Cleburne v. Cleburne Living Ctr., Inc.*, 472 U.S. 432 (1985). For these reasons, the Court should apply the highest scrutiny to California's gun show ban and strike down the Challenged Statutes when the State fails to "prov[e] the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

### 1. The Challenged Statutes Restrict Protected Expression

Gun shows bring together like-minded people to engage in all manner of protected speech. Attendees at Crossroads' gun shows congregate to explore the lawful uses of firearms, including self-defense, hunting, target shooting, safety training, gunsmithing, and appreciation of firearms. Second Amendment groups share information, speakers give lectures, trainers hold classes, and participants engage others, including candidates for public office, in discussions about gun rights. And, of course, retailers offer firearms and related goods for sale. *See supra* p. 3.

But this Court need not take Plaintiffs' claims that gun shows are deeply expressive at face value. The State's relentless pursuit to ban them, without evidence that they are a direct source of evil, is itself an inference that they are imbued with symbolic value—even by the State itself. Couple this with the public statements made by some defendants and other state actors, and the gun show's symbolic value evolves

from inference to admission.[2] Indeed, California's hostility to all things related to the Second Amendment creates the nexus between Plaintiffs' First Amendment and equal protection claims and the viewpoint-based culture war declared by the State.

In short, gun shows held in the public commons *themselves* convey a particularized message, and the intended audience understands that message. *Texas v. Johnson*, 491 U.S. 397 (1989). That message—in the face of California's droning assertions in the Challenged Statutes (and just about everywhere else) that guns are bad—*is that guns really are good*. They facilitate the exercise of a fundamental right to self-defense. *District of Columbia v. Heller*, 554 U.S. 570 (2008). And, just like books, religious symbols, and fellowship with like-minded Americans, gun shows are entitled to the First Amendment protections that book fairs, concerts, and revival meetings enjoy at state-owned venues, like the Fairgrounds.

The First Amendment no doubt protects Plaintiffs' intended expression. It is not obscene, defamatory, or fraudulent. It does not advocate for imminent lawless action or solicit others to commit crimes. Nor does it constitute fighting words or true threats. None of the communications or expressive activities at gun shows are among those unprotected classes of speech. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012). To the contrary, it involves lawful speech that ranges from purely political to commercial—and it all pertains to the exercise and preservation of the right to keep and bear arms. What's more, and seemingly dispositive on the core issues here, when "the sale of merchandise [is] inextricably intertwined with a religious, political, ideological, or philosophical message, [it] is fully protected by the First Amendment." *Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158, 1176 (C.D. Cal. 2009), *aff'd in*

---

[2] *See, e.g.*, Assem. Pub. Safety Committee Hrg., Mar. 16, 2021, at 4:01:22, *available at* https://www.assembly.ca.gov/media/assembly-public-safety-committee20210713/video (last accessed Aug. 4, 2022) (comments from Senator Min, the author of SB 264, that SB 264 is a value statement about gun shows that the state must make); Barvir Decl., Ex. 30 (letter from Governor Newsom to the 22nd District Agricultural Association decrying the sale of firearms as perpetuating the gun culture); *id.*, Ex. 34 (letter from Assembly Member Gloria articulating a social theory that the right to buy and sell guns tends to promote gun violence).

*part*, 638 F.3d 703 (9th Cir. 2011). *This is the business model of gun shows*.

The Challenged Statutes banish this lawful, protected speech from the Fairgrounds and all other state-owned venues. While they purport to ban only the sale of firearms, "firearm precursor part," and ammunition, the laws' intent and effect is to ban gun shows from publicly owned spaces altogether. The State fully understands this. And it also understands the role gun shows play in Second Amendment culture. Indeed, the Attorney General's office defended the 22nd DAA's moratorium on gun shows at the Del Mar Fairgrounds, which was held to violate the First Amendment and enjoined by the court sua sponte. *B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n ("B&L I")*, 394 F. Supp. 3d 1226 (S.D. Cal. 2019). Yet for some reason California's lawyers were unable to convince the Legislature (or the Governor) that the First Amendment has not since been repealed. Instead, the State schemed to knock out the commercial cornerstone of gun shows, knowing that doing so would destroy the pro-Second Amendment cultural experience these events are known for.

Senator Min *repeatedly* admitted that banning gun shows was the purpose of both SB 264 and SB 915. Upon the passage of SB 915, he boasted that "[l]ast year we laid the foundation for this moment with a *ban on gun shows* at the Orange County Fairgrounds. Today, I am proud to announce that California will become the *first in the nation to enact a total ban statewide*." Barvir Decl., Ex. 27 (emphasis added); *see also id.*, Ex. 26 (Min's official press release noting that "SB 264 would effectively put a stop to most gun shows on county fairgrounds").[3]

Senator Min wrote to Defendant DAA in September 2021, warning members not to interfere with his bill that would ban sales of firearms, ammunition, and

---

[3] The bills' legislative history is littered with similar references to banning gun shows. *See, e.g.*, Req. Jud. Ntc., Ex. 10 at 3 ("Assembly Member Todd Gloria passed AB 893 into law, *banning gun shows from the [Del Mar Fairgrounds]*, setting a preceding for gun show legislation in California"); *id.*, Ex. 12 at 3 (identifying a similar bill, AB 893, which "prohibits the sale of firearms and ammunition at the Del Mar Fairgrounds, effectively terminating the possibility for future gun shows at the Del Mar Fairgrounds"); Ex. 19 at 3 (same).

1    "firearm precursor parts" at the Fairgrounds. Barvir Decl., Ex. 31. In his letter, Min

2    addressed the board members' concerns that SB 264 unfairly targeted the Fairgrounds,

3    explaining that his bill was no different from earlier attempts to ban gun shows:

> While Item 6A expresses a concern that SB 264 "exclusively
> targets the 32nd DAA," *such action to ban gun shows at a
> single fairground site has recent precedent*. In 2019, Gov.
> Newsom signed Assembly Bill 893 (Gloria) into law, ending
> the sale of firearms and ammunition at the Del Mar
> Fairgrounds, operated by the 22nd District Agricultural
> Association.

8    *Id.* (emphasis added).

9        In that same letter, Min threatened District board members with individual

10   liability lawsuits should they move to approve contracts for gun shows. *Id.* Naturally,

11   Defendant DAA then ignored Plaintiff Crossroads' repeated requests to consider and

12   approve its 2022 event contracts before SB 264's January 1, 2022, effective date.

13   Olcott Decl. ¶¶ 7-8. And since then, District staff have refused to work with Plaintiff

14   Crossroads in good faith to schedule events in 2022 and beyond—even though

15   Crossroads has offered (in mitigation of its damages) to hold events without sales of

16   firearms, ammunition, or "firearm precursor parts" in compliance with the Challenged

17   Statutes until its claims can be heard. *Id.* ¶¶ 9-10. Gun shows have thus not taken

18   place at the Fairgrounds since SB 264 took effect, extinguishing not only the

19   otherwise lawful sales of firearms and related products, but the varied political,

20   ideological, and educational speech that takes at such events. *Id.* ¶¶ 7-8.

21       In short, the Challenged Statutes target Plaintiffs' lawful and protected pro-gun

22   speech and have effectively excluded that speech at the Fairgrounds and all other

23   state-owned properties. The Court should thus move to the next step of the First

24   Amendment analysis—whether the Fairgrounds is a public or nonpublic forum.

25             **2.    The Fairgrounds Is a Public Forum**

26       The Fairgrounds is state-owned property maintained for public use. Barvir

27   Decl., Ex. 28. It hosts all manner of expressive events, including concerts, festivals,

28   and fairs, and Defendant DAA actively promotes public use of the property. *Id.*

10

Indeed, promotional materials boast that the Fairgrounds "is a 150-acre event venue

that hosts over 150 events and attracts approximately 4.3 million visitors annually.

[The] versatile multi-use property can be transformed to fit a variety of events from

small private events to large-scale trade shows and festivals." *Id.*, Ex. 29 at 2. Having

been "opened [by the State] for use by the public as a place for expressive activity," it

is, at minimum, a "designated public forum." *Perry Educ. Ass'n v. Perry Loc.*

*Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also B&L I*, 394 F. Supp. 3d at 1246

(Del Mar Fairgrounds is a public forum). In such forums, content-based speech

prohibitions must survive strict scrutiny, meaning that they must be "necessary [and

narrowly drawn] to serve a compelling state interest." *Perry*, 460 U.S. at 45-46.

### 3. The Challenged Statutes Are Content-based and Viewpoint-discriminatory

"[A]bove all else, the First Amendment means that the government has no

power to restrict expression because of its message, its ideas, its subject matter, or its

content." *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 95 (1972)(collecting cases).

The Constitution thus "demands that content-based restrictions on speech be presumed

invalid … and that the Government bear the burden of showing their constitutionality.

... This is true even when [the Legislature] twice has attempted to find a constitutional

means to restrict, and punish, the speech in question." *Ashcroft v. Am. Civ. Libs.*

*Union*, 542 U.S. 656, 660 (2004); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 163

(2015) (holding that content-based speech restrictions are presumptively

unconstitutional and subject to strict scrutiny). Indeed, a finding that a government

burden on speech is content-based, is often outcome determinative. *See, e.g.*, *Ark.*

*Writers' Project v. Ragland*, 481 U.S. 221, 231-33 (1987).

Government restrictions that selectively ban speech based on its subject matter

are content-based regulations. *See Mosley*, 408 U.S. at 95-96. "Whether laws define

regulated speech by particular subject matter or by its function or purpose, they are

subject to strict scrutiny." *Reed*, 576 U.S. at 156. What's more, "[g]overnment

discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.' " *Id.* at 168 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). The Challenged Statutes are plainly content-based and, likely, viewpoint-discriminatory.

We have been here before. In 1995, Santa Clara County tried to ban gun shows at its fairgrounds by using a lease provision to ban the sale—but not the possession—of guns at that facility. In *Nordyke v. Santa Clara County*, 110 F.3d 707, 713 (9th Cir. 1997), the Ninth Circuit held that a ban on the "sale" of firearms on county-owned fairgrounds was overbroad because it abridged commercial speech associated with the sale of lawful products. Firearms are still lawful products in California 25 years after that decision. Thus, the analysis of the Challenged Statutes must begin with what is already settled law in this circuit: *the state may not ban the sale of firearms at gun shows held at government-owned fairgrounds open for public use*. *Id.* at 710.

In 1999, Alameda County passed an ordinance banning the possession—but not the sale—of firearms at its fairgrounds. The defendants in *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) apparently relied on the dicta from *Nordyke v. Santa Clara County*, 110 F.3d at 710-11, "that because the County has not enacted an ordinance to prohibit such sales," the First Amendment protected the commercial speech associated with a sale. During en banc proceedings, the County reversed its earlier interpretation of its own ordinance to permit the possession of firearms at its fairgrounds during gun shows. And since gun sales were never forbidden, the Nordyke's gun shows could resume at the Alameda County Fairgrounds. *Nordyke v. King*, 681 F.3d at 1045-46.

In 2018, the 22nd Agricultural District imposed a moratorium on gun shows at the Del Mar Fairgrounds, which was handily struck down by the district court on First Amendment grounds. *B&L I*, 394 F. Supp. 3d at 1249. Undaunted, the California legislature is now (still) trying to ban gun shows at Del Mar through AB 893. A lawsuit challenging that law is pending in the Southern District. *B&L Prods. v.*

*Newsom*, S.D. Cal. No. 3:21-cv-01718 (AJB-DDL).

Now we've come full circle. More than 20 years after Santa Clara County tried to ban gun shows at their fairgrounds by banning language associated with a commercial transaction, California is still trying to ban gun shows once again[4] by outlawing sales—but not possession—of firearms on public property. But there has been superseding, intervening constitutional events since then—namely the Supreme Court's decisions defining the rights protected by the Second Amendment, including its latest opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, -- U.S. --, 142 S. Ct 2111, 2134-35 (2022). What law from the Founding era, or the immediate post-Civil War era, can California cite that forbids two people, who may lawfully possess firearms on public property, from uttering the words necessary to buy, sell, or trade firearms while standing on public property? Again, even if a binding "contract" for a sale is made in that instant, the execution of the contract under state law requires licensed firearms dealers to complete the transaction, and even then, the firearm can only be delivered 10-days later at a licensed dealer's brick-and-mortar store. *See supra*, p. 2.

Because the Challenged Statutes forbid anyone to "*contract for, authorize, or allow **the sale** of any firearm, firearm precursor part, or ammunition*" at state-owned venues—a restriction applicable only to commercial speech about such products—the Challenged Statutes are virtually identical to the county's actions in *Nordyke v. County of Santa Clara*. And since *Bruen* essentially affirms the result (if not the rationale) of *Nordyke v. King*, California is out of options for banning gun shows at public venues. The State has not repealed its gun-show specific statutes, nor can it address the conundrum of how gun shows at private venues that comply with those regulations are safe, but if they take place on public land, they are a menace. And if merely engaging in commercial talk about firearms, regardless of venue, already

---

[4] A complete list of lawsuits that gun show bans have spawned would fill a page. The sheer number of attempts by anti-gun politicians to outlaw gun shows is itself proof that the symbolic nature of gun shows as a cultural event inspires the attempts to ban them.

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

1    complies with federal and state laws designed to address public safety, what's left to

2    regulate? The exchange of ideas of those who participate in "gun culture."

3          Even so, the Challenged Statutes target gun shows and the protected conduct

4    that takes place at such events for banishment, while leaving virtually all other manner

5    of expressive conduct untouched. The State is plainly treating gun shows differently

6    from other events, like auto shows, home shows, and beer and wine shows, allowing

7    them to continue unabated despite the well-documented public safety risks associated

8    with items on display and sold at such events. Automobile accidents killed more than

9    500 youth between 15 and 24 on California's highways in 2017 alone. Req. Jud. Ntc.,

10   Ex. 25 at 164-65. That same year, 24 toddlers drowned in pools and spas. *Id.* at 163.

11   And abuse of alcohol, regularly sold by Defendant District and imbibed at the

12   Fairgrounds, poses a well-known threat to public health and safety. *See id.* at 165. On

13   the other hand, the State bans gun shows at the Fairgrounds even though less than 1%

14   of criminals admit to obtaining firearms at gun shows, and less than 2% of all gun

15   transactions in California begin at gun shows. *Id.*, Ex. 10 at 53, Ex. 23 at 133, Ex. 24

16   at 157. This strongly suggests that the Challenged Statutes are about animus for "gun

17   culture" and not a genuine concern for public safety. Ultimately, the State's allowance

18   of virtually all events *except* gun shows is a corner it cannot walk itself out from.

19         What's more, "because the speech at gun shows is likely to be predominantly, if

20   not exclusively, favorable to guns and gun rights, '[i]n its practical operation,' the

21   [Challenged Statutes go] 'beyond mere content discrimination, to actual viewpoint

22   discrimination.'" *B&L I*, 394 F. Supp. 3d at 1246 (quoting *R.A.V. v. City of St. Paul*,

23   505 U.S. 377, 391 (1992)). "A regulation engages in viewpoint discrimination when it

24   regulates speech based on the specific motivating ideology or perspective of the

25   speaker." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018)

26   (internal quotation marks and citation omitted). "When the government targets not

27   subject matter, but particular views taken by speakers on a subject, the violation of the

28   First Amendment is all the more blatant." *Id.* at 829. And normally, this conclusion is

all but dispositive. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 571 (2011).[5]

For these reasons, the Challenged Statutes can only stand if they satisfy the most exacting standard of judicial review. But no matter what level of scrutiny applies, the result is the same—the State cannot "prov[e] the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).

### 4.   The Challenged Statutes Cannot Survive Heightened Scrutiny

Because the Challenged Statutes are content-based restrictions (and prior restraints) on protected speech in a public forum, strict scrutiny must apply. Under strict scrutiny, the State must prove its restriction is narrowly tailored to further a compelling interest. *Reed*, 576 U.S. at 156. But even if the Court were to hold that the Challenged Statutes ban *only* commercial speech, the result is the same. Commercial speech receives First Amendment protection if it is not misleading and concerns a lawful activity. *Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-64 (1980). Burdens on such speech are constitutional *only* if they directly advance a substantial government interest and are not broader than necessary to serve that interest. *Id.* at 564. The Challenged Statutes are *far* broader than necessary to serve any legitimate government interest. Indeed, they directly ban sales of all firearms, ammunition, and "firearm precursor parts"—and the commercial speech necessarily attendant to such sales—on public property instead of simply enforcing the many laws that regulate the sales of such products without restricting speech at all.

First, the State has no sufficient interest in restricting gun shows and the expressive conduct and association that takes place at such events. A "compelling government interest" is an *actual interest* in addressing an *actual problem*. *See*

---

[5] Similarly, when a government refuses to allow some groups to use a designated public forum based on disapproval of the message, courts often consider the government action a "prior restraint" on free speech. *Se. Promos., Ltd. v. Conrad*, 420 U.S. 546 (1975). "Prior restraints" naturally abridge the freedom of speech and are thus "particularly suspect." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Only in the face of an acute government interest, and only when the limitation is no broader than necessary to achieve that interest, should the Court uphold a prior restraint. *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 203 (1981).

1    *Grutter v. Bollinger*, 539 U.S. 306, 331-36 (2003). The State will likely claim that the

2    Challenged Statutes are necessary to address public safety concerns related to gun

3    violence. And while the government generally has a compelling interest in public

4    safety, the State's interest must be authentic and sincerely invoked. "[M]erely

5    invoking interests  ... is insufficient. The government must also show that the

6    proposed communicative activity endangers those interests." *Kuba v. 1-A Agr. Ass'n*,

7    387 F.3d 850, 859 (9th Cir. 2004) (citation omitted). Indeed, the government must

8    have an *actual interest* in addressing an *actual problem. See Grutter*, 539 U.S. at 331-

9    336. The State's mere recital of classic "substantial" interests does not outweigh the

10   evidence of pretext for the real and improper interest—the State's disdain for "gun

11   culture" and those who participate in it at gun shows. That much is clear from the

12   legislative history of the Challenged Statutes.

13        Neither SB 264 nor SB 915 cite any peer reviewed studies for their public

14   safety pretexts. Req. Jud. Ntc., Exs. 1, 9. They put forth no admissible evidence that

15   Plaintiffs' gun shows are the source of "grave danger to the community." At most, SB

16   264 makes vague claims that "dangerous incidents" have taken place at guns shows,

17   including "an official vendor accused of trafficking illegal firearms, sales of firearms

18   to individuals registered in the [DOJ] Bureau of Firearms Armed Prohibited Persons

19   System, and illegal importation of large-capacity magazines." *Id.*, Ex. 9 at 47. But the

20   legislature made no effort to show that such incidents are common or unique to gun

21   shows in California—where gun shows are regulated *at least* as heavily as retailers

22   operating out of brick-and-mortar stores. And the State cannot show that gun shows

23   held in compliance with state law are somehow safe if held on private property, but

24   unsafe if held on public property.

25        Instead, the Challenged Statutes' legislative history reveals only general

26   concerns about gun violence occurring all over the country and legislators' beliefs that

27   the state should not profit from sales of firearms and ammunition. *See, e.g.*, Req. Jud.

28

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

Ntc., Ex. 1 at 3-4, Ex. 9 at 46-47, Ex. 10 at 51-53, Ex. 17 at 94-95.[6] Indeed, SB 264

opens with a list of tragedies—none of which were carried out with firearms traced to

gun show events at the Fairgrounds. *Id.*, Ex. 9. And while a SB 264 bill analysis cited

a 13-year-old study that identified gun shows as a source of illegally trafficked

firearms, *id.*, Ex. 2 at 3, the study links no illegally trafficked firearm to gun shows at

the Fairgrounds (or *any* gun show in California, for that matter). This is unsurprising

because, as the study itself finds, "[m]uch of the concern about gun shows as a source

of crime guns focuses on private party gun sales, *since no background checks are

conducted and no records are kept*." Barvir Decl., Ex. 33 at 32. But such concerns are

irrelevant in California where all private party transfers—*even those started at gun

shows*—must be processed by a licensed firearm dealer and are subject to background

checks and registration under state law. *See supra* p. 2 & n.1.

      The same VPRP study also tries to implicate licensed retailers operating at gun

shows as sources of crime guns in America, claiming that "30% of dealers with gun

show sales, but 22% of all dealers, had previously had a crime gun traced to them."

Barvir Decl., Ex. 33 at 33. But it expressly recognizes that "***in California, where both

gun shows themselves and gun commerce generally are regulated, sales at gun

shows <u>are not a risk factor</u> among licensed retailers for disproportionate sales of

crime guns***." *Id.* (double emphasis added). Plaintiffs could go on for pages

establishing that the state's "evidence" supporting the Challenged Statutes' public

safety interests is mere window dressing.

      At best, the monster of the State's imagination appears to be a theory that

commercial activities associated with gun shows have a "bad tendency" to promote

lawless conduct. *See, e.g.*, *Schenck v. United States*, 249 U.S. 47 (1919); *Frohwerk v.*

_____

[6]  *See also* Sen. Pub. Safety Committee Hrg., Mar. 16, 2021, at 3:20:18, available
at https://www.senate.ca.gov/media-archive/default?title=Public+Safety& startdate=
03%2F16%2F2021&enddate=03%2F17%2F2021 (last accessed Aug. 4, 2022) (Min's
remarks that, even if there were zero unlawful acts at guns shows, "there is a principal
that taxpayers should not be utilized, and taxpayer venues should not be utilized to
promulgate the distribution of more guns in our communities.")

*United States*, 249 U.S. 204 (1919). But the theory that fundamental rights can be squelched based on speculation about motives and bad tendencies began losing traction over 100 years ago in *Abrams v. United States*, 250 U.S. 616 (1919). Modern doctrine requires incitement to immediate unlawful conduct before fundamental rights must yield to any state interest. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

Ultimately, the State's "actual interest" was animus for America's gun culture and those who take part in it. This is evidenced by Newsom's 2018 letter of support for AB 893 (Gloria), which ended gun shows at the Del Mar State Fairgrounds. He wrote: "Permitting the sale of firearms and ammunition on state-owned property *only perpetuates America's gun culture* at a time when 73% of Californians support gun reform measures and 73% of California [sic] cite concern about the threat of mass shootings in our schools." Req. Jud. Ntc., Ex. 14 at 77 (emphasis added); Barvir Decl., Ex. 30. It is also reflected in Senator's Min's testimony before the Senate Public Safety Committee that SB 264 is "symbolic" and makes a statement that the state does not endorse "our taxpayer venues being used to sell more guns in our communities."[7] And in his remarks to the Assembly Committee on Public Safety, where he argued that ending gun shows on state-owned property is a value statement that California must make.[8] One thing is clear: the State's "actual interest" was simply in banning gun shows and the expression that take place at them. This is not a legitimate public interest, let alone a compelling or significant one.

But even if the State could point to some sufficient interest in public safety, it cannot prove that the Challenged Statutes are sufficiently tailored to that end. To meet the requirement of narrow tailoring, the government must target the exact wrong it seeks to remedy, and no more. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A statute

---

[7] *Sen.* Pub. Safety Committee Hrg., Mar. 16, 2021, at 4:12:59, available at https://www.senate.ca.gov/media-archive/default?title=Public+Safety&startdate=03%2F16%2F2021&enddate=03%2F17%2F2021 (last accessed Aug. 4, 2022).

[8] *See* Assem. Pub. Safety Committee Hrg., Mar. 16, 2021, at 4:01:22, available at https://www.assembly.ca.gov/media/assembly-public-safety-committee20210713/video (last accessed Aug. 4, 2022).

is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."). In analyzing public safety regulations designed to mitigate concrete public safety concerns, *a ban is necessarily overbroad. See Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 863-66 (9th Cir. 2001).

The ban at issue is especially bad, because Crossroads has operated safe and legal gun shows in California for decades. Olcott Decl. ¶¶ 2-3. The events are largely incident-free, and there is no evidence that they create a unique risk to public safety. *Id.* ¶¶ 4-5; *see also* Barvir Decl., Ex. 32. Indeed, in September 2018, the Public Safety Director for the 22nd DAA reported that:

> As Chief of Security for the 22nd DAA, I routinely inspect the gun show and on a regular basis communicate with the San Diego Sheriff's Department re: compliance with all the applicable laws and regulations …. I recently spoke to Detective Jaime Rodriguez … who supervises the four Deputies assigned to the gun show security detail and Detective Stacey Smith who is assigned to the Sheriff's Licensing Division. ***Both Detectives said the Crossroads of the West Gun Show is in complete compliance with all the local, State and Federal laws that govern gun shows and that there have not been any violations of law.***

Barvir Decl., Ex. 32 at 216.

To the contrary, SB 264's "evidence" of lawlessness at California's gun shows is borderline frivolous. It consists of vague references to a handful of non-violent crimes related to firearm acquisition, including the presence of a single vendor *accused* of trafficking illegal firearms. These unsupported examples are all the State can marshal in support of banning *all* future lawful commerce in arms at state-owned venues. Admittedly, any crime is undesirable, but these crimes are not qualitatively or quantitatively serious enough to justify banning all future lawful arms commerce at the Fairgrounds. Complete prohibition is starkly disproportionate to and unnecessarily restrictive of the vast amounts of First Amendment protected activity that take place at gun shows. Especially when such activity is the predicate to exercising another fundamental civil right. *See Heller*, 554 U.S 770; *McDonald v. City of Chicago*, 561 U.S. 742 (2010). A restriction of this scope is simply "more extensive than the

Constitution permits" because of how "marginal [the] degree of protection" the law might achieve is. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 73 (1983). The State can give no reason, except one steeped in animus, that all sales of firearms and related products—and gun shows themselves—at the Fairgrounds must cease.

Because the State cannot meet its burden under any level of scrutiny, the Challenged Statutes  unconstitutionally restricts Plaintiffs' rights to free speech, free association, and free assembly. Plaintiffs are thus likely to succeed on the merits of their First Amendment claims.

### B.     The Challenged Statutes Violate Plaintiffs' Right to Equal Protection

Because the Challenged Statutes single out Plaintiffs because of the content of their speech, they violate not only their rights to free speech, assembly, and association, they *also* violate Plaintiffs' rights under the Equal Protection Clause. U.S. Const. amend. XIV. The Supreme Court, long ago, recognized that *both* the Equal Protection Clause *and* the First Amendment forbid the government from granting "the use of a forum to people whose views it finds acceptable, but deny[ing] use to those wishing to express less favored or more controversial views." *Mosley*, 408 U.S. at 96. Indeed, the Court held, the government "may not select which issues are worth discussing or debating in public facilities." *Id. "Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say*." *Id.* (emphasis added). If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. *See generally, Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936); *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983).

Here, the Challenged Statutes, which target only members of the "gun culture" who attend gun shows like those promoted by Plaintiff Crossroads, are undeniably infused with the State's desire to harm this politically unpopular group. Once again, the District cannot justify its moratorium under either strict or intermediate scrutiny

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

1  for purposes of the First Amendment, and it cannot justify it under the Equal

2  Protection Clause either. Because the moratorium is not narrowly tailored to serve

3  some compelling government interest, it unconstitutionally denies Plaintiffs equal

4  protection under the law. It is invalid and must be enjoined.

### C.   The Challenged Statutes Violate Plaintiffs' Second Amendment Right to Sell and Acquire Protected Arms for Lawful Purposes

7  In 2008, the Supreme Court held that the Second Amendment protects an

8  individual right to keep and bear arms. *Heller*, 554 U.S. 570. *Heller* described the

9  right to self-defense as the "central component" of the Second Amendment right. *Id*.

10  at 628. Two years later, the Supreme Court confirmed that said right is fundamental

11  and then, through the Fourteenth Amendment, incorporated it to protect against state

12  and local infringement. *McDonald*, 561 U.S. 742. *Heller* and *McDonald* established a

13  "text, history, and tradition" framework for analyzing Second Amendment questions.

14  *Heller*, 554 U.S. at 595; *McDonald*, 561 U.S. at 799; *see also Heller v. District of*

15  *Columbia* ("*Heller II*"), 670  F.3d 1244, 1271 (2011) (Kavanaugh, J., dissenting).

16  Indeed, the *Heller* Court assessed historical evidence to determine the prevailing

17  understanding of the Second Amendment at the time of its ratification in 1791, and

18  afterward. 554 U.S. at 606-19. Based on that assessment, the Court held that a D.C.

19  law prohibiting possession of handguns, the most common firearm in the nation,

20  lacked a Revolutionary Era analogue, did not fit the historical understanding of the

21  right, and therefore violated the core of the Second Amendment. *Id.* at 629.

22  In June 2022, the Supreme Court reaffirmed the validity of this history-based

23  approach. *Bruen*, 142 S. Ct. at 2134-35. The Court expressly rejected the once-popular

24  "two-step" test for analyzing Second Amendment claims, under which courts would

25  (1) determine whether a challenged law restricts conduct within the scope of the

26  Second Amendment, as informed by text, history, and tradition, and then (2) apply a

27  means-end balancing test, like intermediate scrutiny, depending on how close the

28  restricted conduct comes to the "core" right and the severity of the challenged law's

burden. *Id.* at 2126. The Court declared that *"[d]espite the popularity of this two-step approach, it is one step too many."* *Id.* at 2127 (emphasis added). The Constitution instead "demands a test rooted in the Second Amendment's text, as informed by history." *Id.* As the Court explained, "reliance on history to inform the meaning of constitutional text ... is ... more legitimate, and more administrable, than asking judges to 'make difficult empirical judgments' about 'the costs and benefits of firearms restrictions." *Id.* at 2130 (quoting *McDonald*, 561 U.S. at 790-91 (plurality opinion)).

Thus, when faced with a Second Amendment challenge, courts must begin by asking whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If it does, "the Constitution presumptively protects that conduct," *id.* at 2130, and the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127. To do so, the government must "identify a well-established and representative historical analogue" to the regulation it seeks to defend. *Id.* at 2133. In other words, the state must establish that (1) the Challenged Statutes share common features with historically analogous regulations from the eighteenth to the mid-nineteenth centuries; (2) those analogous regulations were prevalent, not historical outliers; and (3) the modern regulation and the historical analogues are "relevantly similar"—that is, similar in both "how" they operated and "why." *Id.* Only if the government can meet that heavy burden "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126, 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Under this test, the State cannot come close to meeting its burden. The threshold question is whether the State's ban on selling firearms, ammunition, and firearm parts implicates keeping and bearing arms under the Second Amendment. And the answer, of course, is that it does. The Ninth Circuit has long held that the Second Amendment extends to the right to acquire the arms, ammunition, and accessories necessary for exercising Second Amendment rights. *See Jackson v. City & Cty. of San*

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

*Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014) (hollow-point ammunition); *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) (ammunition magazines over 10 rounds); *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (discussing authorities acknowledging the right to acquire arms); *see also Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (holding that the Second Amendment "implies a corresponding right to acquire and maintain proficiency" with arms). These authorities are consistent with *Heller*'s favorable citation to *Andrews v. State*, 50 Tenn. 165, 178 (1871), which recognized that the "right of keep arms … necessarily involves the right to *purchase* and use them in such a way as is usual .…" (emphasis added).

Any argument that acquisition of firearms, ammunition, or firearm parts does not implicate the Second Amendment's plain text under *Bruen* is not only unfaithful to *Bruen* but also offends well-established authority in the Ninth Circuit and beyond. Without question, acquiring arms is the predicate activity to keeping and bearing them. Thus, the Challenged Statutes implicate the "plain text" of the Second Amendment—the individual right of "ordinary, law-abiding, adult citizens" to keep and bear arms. *Bruen*, 142 S. Ct. at 2129.

Because the Constitution presumptively protects Plaintiffs' right to acquire firearms, ammunition, and firearm parts, "the government must [now] justify [the Challenged Statutes] by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. The State will not meet this lofty burden. Indeed, it is hard to imagine how the State could demonstrate that the Challenged Statutes fits analogously among the historical canon of laws that regulated the public's right to acquire common arms. There simply is no subscribed, representative tradition of historical regulations that prohibited the acquisition of firearms, ammunition, and firearm parts that would be "relevantly similar" to the burden imposed by the Challenged Statutes. So the laws must fall.

/ / /

/ / /

## II.  THE REMAINING PRELIMINARY INJUNCTION FACTORS WARRANT RELIEF

### A.  Plaintiffs Will Suffer Irreparable Harm

If this Court concludes that Plaintiffs are likely to succeed on any one of their alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). In the First Amendment context, such harm is particularly acute. Indeed, the Supreme Court has long held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

### B.  The Balance of Equities and Public Interest Warrant Relief

When the government is a party, the last two factors—the balance of equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court's inquiry thus weighs the interests of Plaintiffs, the government, and the public, balancing the relative harms to each should preliminary relief be granted or denied. The Ninth Circuit has long held that when challenging government action that affects the exercise of constitutional rights—especially First Amendment freedoms—"[t]he balance of equities and the public interest … tip sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). For "[i]t is always in the public interest to prevent the violation of a party's constitutional rights. *Index Newsps. LLC v. U.S. Marshalls Serv.*, 977 F.3d 817 (9th Cir. 2020). Indeed, there is a "'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional [law] … would infringe not only the free expression interests of plaintiffs, but also the interests of other people' subjected to the same restrictions." *Id.* (citation omitted). On the other hand, "the public interest

1  is not harmed by preliminarily enjoining … a law that is probably unconstitutional."

2  *Am. Civ. Libs. Union v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).

3      Enjoining the enforcement of the Challenged Statutes will end the irreparable

4  harm Plaintiffs are now suffering, including the violation of their rights under the

5  First, Second, and Fourteenth Amendments. But not only Plaintiffs' rights are at stake,

6  so too are the rights of all people seeking to engage in protected expression barred by

7  the State's gun show ban, as well as those who seek to hear the messages the state has

8  banished. These interests far outweigh whatever burden the State might trot out. For

9  the state "cannot suffer harm from an injunction that merely ends an unlawful practice

10  or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*,

11  715 F.3d 1127, 1145 (9th Cir. 2013). To be sure, the State may have a general public

12  safety interest in preventing "gun violence." But enforcement of the Challenged

13  Statutes does not serve those interests in any meaningful (or appropriately tailored)

14  way—particularly because the State can readily further such goals by enforcing

15  existing laws directly regulating gun show events on public property.

## CONCLUSION

17      For these reasons, the Court should grant Plaintiffs' Motion for Preliminary

18  Injunction and enjoin the enforcement of the Challenged Statutes while this matter

19  progresses on the merits.

20  Dated: November 16, 2022        **MICHEL & ASSOCIATES, P.C.**

21                                */s/ Anna M. Barvir*

22                                Anna M. Barvir
Counsel for Plaintiffs B&L Productions, Inc.,
California Rifle & Pistol Association,

23                                Incorporated, Gerald Clark, Eric Johnson, Chad
Littrell, Jan Steven Merson, Asian Pacific

24                                American Gun Owner Association, Second
Amendment Law Center, Inc.

25  Dated: November 16, 2022        **LAW OFFICES OF DONALD KILMER, APC**

26                                */s/ Donald Kilmer*

27                                Donald Kilmer
Counsel for Plaintiff Second Amendment
Foundation

28

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

## ATTESTATION OF E-FILED SIGNATURES

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: November 16, 2022          */s/ Anna M. Barvir*
                                   Anna M. Barvir

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

# APPENDIX A: STATE LAWS RE: GUN SHOWS IN CALIFORNIA
## TABLE OF CONTENTS

Cal. Penal Code § 26805...................................................................... 3

Cal. Penal Code § 27200...................................................................... 5

Cal. Penal Code § 27205...................................................................... 7

Cal. Penal Code § 27210...................................................................... 9

Cal. Penal Code § 27215......................................................................11

Cal. Penal Code § 27220......................................................................12

Cal. Penal Code § 27225......................................................................14

Cal. Penal Code § 27230......................................................................16

Cal. Penal Code § 27235......................................................................17

Cal. Penal Code § 27240......................................................................19

Cal. Penal Code § 27245......................................................................21

Cal. Penal Code § 27305......................................................................23

Cal. Penal Code § 27310......................................................................24

Cal. Penal Code § 27315......................................................................26

Cal. Penal Code § 27320......................................................................27

Cal. Penal Code § 27325......................................................................28

Cal. Penal Code § 27335......................................................................29

Cal. Penal Code § 27340......................................................................30

Cal. Penal Code § 27345......................................................................32

Cal. Penal Code § 27350......................................................................33

Cal. Penal Code § 27400......................................................................34

Cal. Penal Code § 27405......................................................................35

Cal. Penal Code § 27410......................................................................36

Cal. Penal Code § 27415......................................................................37

Cal. Penal Code § 27545.................................................................38

Cal. Penal Code § 30347.................................................................40

Cal. Penal Code § 30348.................................................................41

Cal. Penal Code § 30350.................................................................42

Cal. Penal Code § 30352.................................................................43

Cal. Penal Code § 30360.................................................................46

# Cal Pen Code § 26805

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 2 Issuance, Forfeiture, and Conditions of License to Sell, Lease, or Transfer Firearms at Retail (Arts. 1 — 6)**
- **Article 2 Grounds for Forfeiture of License (§§ 26800 — 26915)**

## § 26805. Business of licensee conducted only in buildings designated on license; Gun show or event or specified events; Delivery

**(a)** Except as provided in subdivisions (b) and (c), the business of a licensee shall be conducted only in the buildings designated in the license.

**(b)**

**(1)** A person licensed pursuant to Sections 26700 and 26705 may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at any gun show or event, as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, or its successor, if the gun show or event is not conducted from any motorized or towed vehicle. A person conducting business pursuant to this subdivision shall be entitled to conduct business as authorized herein at any gun show or event in the state, without regard to the jurisdiction within this state that issued the license pursuant to Sections 26700 and 26705, provided the person complies with all applicable laws, including, but not limited to, the waiting period specified in subdivision (a) of Section 26815, and all applicable local laws, regulations, and fees, if any.

**(2)** A person conducting business pursuant to this subdivision shall publicly display the person's license issued pursuant to Sections 26700 and 26705, or a facsimile thereof, at any gun show or event, as specified in this subdivision.

**(c)**

**(1)** A person licensed pursuant to Sections 26700 and 26705 may engage in the sale and transfer of firearms other than handguns, at events specified in Sections 27900 and 27905, subject to the prohibitions and restrictions contained in those sections.

**(2)** A person licensed pursuant to Sections 26700 and 26705 may also accept delivery of firearms other than handguns, outside the building designated in the license, provided the firearm is being donated for the purpose of sale or transfer at an auction, raffle, or similar event specified in Section 27900.

**(d)** The firearm may be delivered to the purchaser, transferee, or person being loaned the firearm at one of the following places:

**(1)** The building designated in the license.

**(2)** The places specified in subdivision (b) or (c).

**(3)** The place of residence of, the fixed place of business of, or on private property owned or lawfully possessed by, the purchaser, transferee, or person being loaned the firearm.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 7 (AB 809), effective January 1, 2012; Stats 2019 ch 738 § 16 (SB 376), effective January 1, 2020.

# Cal Pen Code § 27200

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27200. Requirement of certificate of eligibility to organize gun show

**(a)** No person shall produce, promote, sponsor, operate, or otherwise organize a gun show or event, as specified in subdivision (b) of Section 26805, unless that person possesses a valid certificate of eligibility from the Department of Justice.

**(b)** Unless the department's records indicate that the applicant is a person prohibited from possessing firearms, a certificate of eligibility shall be issued by the Department of Justice to an applicant provided the applicant does all of the following:

**(1)** Certifies that the applicant is familiar with the provisions of this article and Article 2 (commencing with Section 27300).

**(2)** Ensures that liability insurance is in effect for the duration of an event or show in an amount of not less than one million dollars ($1,000,000).

**(3)** Provides an annual list of the gun shows or events that the applicant plans to promote, produce, sponsor, operate, or otherwise organize during the year for which the certificate of eligibility is issued, including the date, time, and location of the gun shows or events.

**(c)** If during that year the information required by paragraph (3) of subdivision (b) changes, or additional gun shows or events will be promoted, produced, sponsored, operated, or otherwise organized by the applicant, the producer shall notify the Department of Justice no later than 30 days prior to the gun show or event.

**(d)** The Department of Justice shall adopt regulations to administer the certificate of eligibility program under this section.

**(e)** The Department of Justice shall recover the full costs of administering the certificate of eligibility program by fees assessed applicants who apply for certificates. A licensed gun show producer shall be assessed an annual fee of eighty-five dollars ($85) by the department.

**(f)** It is the intent of the Legislature that the certificate of eligibility program established pursuant to this section be incorporated into the certificate of eligibility program established pursuant to Section 26710 to the maximum extent practicable.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27200 continues the first sentence of former Section 12071.1(a) without substantive change.
Subdivision (b) continues the second sentence of former Section 12071.1(a) without substantive change.
Subdivision (c) continues former Section 12071.1(b) without substantive change.
Subdivisions (d) and (e) continue former Section 12071.1(d) without substantive change.
Subdivision (f) continues former Section 12071.1(q) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Sections 16520 ("firearm"), 16800 ("licensed gun show producer").

# Cal Pen Code § 27205

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27205. List of entities renting or intending to rent space at gun show or event

**(a)** Before commencement of a gun show or event, the producer thereof shall, upon written request from a law enforcement agency with jurisdiction over the facility, make available to that agency, within 48 hours or a later time specified by the agency, a complete and accurate list of all persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms, or processing the sale or transfer of ammunition.

**(b)** The producer shall thereafter, upon written request, for every day the gun show or event operates, within 24 hours or a later time specified by the requesting law enforcement agency, make available to that agency an accurate, complete, and current list of the persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms, or processing the sale or transfer of ammunition.

**(c)** Subdivisions (a) and (b) apply to any person, entity, or organization, regardless of whether that person, entity, or organization participates in the entire gun show or event, or only a portion thereof.

**(d)** The information that may be requested by the law enforcement agency with jurisdiction over the facility, and that shall be provided by the producer upon request, includes, but is not limited to, the following information relative to a vendor who offers for sale any firearms manufactured after December 31, 1898, or any ammunition:

**(1)** The vendor's complete name.

**(2)** A driver's license or identification card number.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 1 (AB 1669), effective January 1, 2020.

▼Annotations

A7

| Notes |
| --- |

**Amendments:**
**2019 Amendment (ch 736):**

Added ", or processing the sale or transfer of ammunition" in (a) and (b); and in the introductory language of (d), substituted "includes," for "may include,", added "any" and added ", or any ammunition".

| Commentary |
| --- |

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27205 continues the first paragraph of former Section 12071.1(f) without substantive change.
Subdivision (b) continues the second paragraph of former Section 12071.1(f) without substantive change.
Subdivision (c) continues the third paragraph of former Section 12071.1(f) without substantive change.
Subdivision (d) continues former Section 12071.1(g) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Section 16520 ("firearm").

# Cal Pen Code § 27210

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27210. Event and security plan and schedule

**(a)** The producer and facility's manager of a gun show or event shall prepare an annual event and security plan and schedule that shall include, at a minimum, the following information for each show or event:

**(1)** The type of show or event, including, but not limited to, antique or general firearms and ammunition.

**(2)** The estimated number of vendors offering firearms or ammunition for sale or display.

**(3)** The estimated number of attendees.

**(4)** The number of entrances and exits at the gun show or event site.

**(5)** The location, dates, and times of the show or event.

**(6)** The contact person and telephone number for both the producer and the facility.

**(7)** The number of sworn peace officers employed by the producer or the facility's manager who will be present at the show or event.

**(8)** The number of nonsworn security personnel employed by the producer or the facility's manager who will be present at the show or event.

**(b)** The annual event and security plan shall be submitted by either the producer or the facility's manager to the Department of Justice and the law enforcement agency with jurisdiction over the facility.

**(c)** If significant changes have been made since the annual plan was submitted, the producer shall, not later than 15 days before commencement of the gun show or event, submit to the department, the law enforcement agency with jurisdiction over the facility site, and the facility's manager, a revised event and security plan, including a revised list of vendors that the producer knows, or reasonably should know, will be renting tables, space, or otherwise participating in the gun show or event.

**(d)** The event and security plan shall be approved by the facility's manager before the event or show, after consultation with the law enforcement agency with jurisdiction over the facility.

**(e)** A gun show or event shall not commence unless the requirements of subdivisions (b), (c), and (d) are met.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2014 ch 103 § 9 (AB 1798), effective January 1, 2015; Stats 2015 ch 303 § 415 (AB 731), effective January 1, 2016; Stats 2019 ch 736 §

2 (AB 1669), effective January 1, 2020.

---

▼Annotations

---

| Notes |

• ⬇Amendments:

⬆Amendments:

**2014 Amendment:**

Substituted (1) "facility's manager" for "facility manager" in the introductory clause of subd (a); and (2) "facility's manager" for "facilities manager" in subd (a)(7).

**2015 Amendment:**

(1) Added the comma after "show or event" in subd (a)(1); and (2) amended subd (e) by (a) substituting "A" for "No"; and (b) adding "not".

**2019 Amendment (ch 736):**

Added "and ammunition" in (a)(1); and added "or ammunition" in (a)(2).

---

| Commentary |

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27210 continues former Section 12071.1(h) without substantive change.
Subdivision (b) continues the first sentence of former Section 12071.1(i) without substantive change.
Subdivision (c) continues the second sentence of former Section 12071.1(i) without substantive change.
Subdivision (d) continues the third sentence of former Section 12071.1(i) without substantive change.
Subdivision (e) continues the fourth sentence of former Section 12071.1(i) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Section 16520 ("firearm").
**2014—**
Section 27210 is amended to standardize the references to the facility's manager for the site of the gun show or event.

A10

# Cal Pen Code § 27215

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27215. Notification to vendors

The producer of a gun show or event shall be responsible for informing prospective gun show vendors of the requirements of this article and of Article 2 (commencing with Section 27300) that apply to vendors.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27215 continues former Section 12071.1(j) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).

# Cal Pen Code § 27220

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27220. Submission of prospective vendor and designated firearms transfer agent lists

**(a)** Within seven calendar days of the commencement of a gun show or event, but not later than noon on Friday for a show or event held on a weekend, the producer shall submit a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers or ammunition vendors to the Department of Justice for the purpose of determining whether these prospective vendors and designated firearms transfer agents possess valid licenses and are thus eligible to participate as licensed dealers or ammunition vendors at the show or event.
**(b)** The department shall examine its records and if it determines that a dealer's or vendor's license is not valid, it shall notify the show or event producer of that fact before the show or event commences.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 3 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added "or ammunition vendors" twice in (a); and added "or vendor's" in (b).

> Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27220 continues the first sentence of former Section 12071.1(k) without substantive change. Subdivision (b) continues the second sentence of former Section 12071.1(k) without substantive change.

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27245 (punishment).

See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

# Cal Pen Code § 27225

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27225. Failure to cooperate by vendor

If a licensed firearms dealer or ammunition vendor fails to cooperate with a producer of a gun show or event, or fails to comply with the applicable requirements of this article or Article 2 (commencing with Section 27300), that person shall not be allowed to participate in that show or event.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 4 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27230

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27230. Failure to cooperate by producer

If a producer fails to comply with Section 27215 or 27220, the gun show or event shall not commence until those requirements are met.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼ Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27230 continues former Section 12071.1(m) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).

# Cal Pen Code § 27235

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27235. Written contracts required

Every producer of a gun show or event shall have a written contract with each gun show vendor selling firearms or ammunition at the show or event.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 5 (AB 1669), effective January 1, 2020.

▼Annotations

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added "or ammunition".

Commentary

**Law Revision Commission Comments:**
**2010—**

A17

Section 27235 continues former Section 12071.1(n) without substantive change.

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27245 (punishment).

See Section 16520 ("firearm").

# Cal Pen Code § 27240

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27240. Posting of signs required

**(a)** The producer of a gun show or event shall require that signs be posted in a readily visible location at each public entrance to the show containing, but not limited to, the following notices:

**(1)** This gun show follows all federal, state, and local firearms, ammunition, and weapons laws, without exception.

**(2)** Any firearm carried onto the premises by any member of the public will be checked, cleared of any ammunition, and secured in a manner that prevents it from being operated, and an identification tag or sticker will be attached to the firearm before the person is allowed admittance to the show.

**(3)** No member of the public under the age of 18 years shall be admitted to the show unless accompanied by a parent, grandparent, or legal guardian.

**(4)** All firearms transfers between private parties at the show shall be conducted through a licensed dealer in accordance with applicable state and federal laws.

**(5)** Persons possessing firearms of ammunition at this facility shall have in their immediate possession government-issued photo identification, and display it upon request to any security officer or any peace officer, as defined in Section 830.

**(6)** All ammunition transfers between private parties at the show shall be conducted through a licensed dealer or ammunition vendor in accordance with applicable state and federal laws.

**(b)** The show producer shall post, in a readily visible location at each entrance to the parking lot at the show, signage that states: "The transfer of firearms or ammunition on the parking lot of this facility is a crime."

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 6 (AB 1669), effective January 1, 2020.

▼Annotations

A19

Notes

**Amendments:**
**2019 Amendment (ch 736):**

Added ", ammunition," in (a)(1); in (a)(5), added "of ammunition" and substituted "shall" for "may"; added (a)(6); and added "or ammunition" in (b).

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27240 continues former Section 12071.1(o) without substantive change.
Subdivision (b) continues former Section 12071.1(p) without substantive change.
For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).
For the consequences of violating this article, see Section 27245 (punishment).
See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

# Cal Pen Code § 27245

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 1 Gun Show or Event (§§ 27200 — 27245)**

## § 27245. Willful failure to comply; Penalty

**(a)** A willful failure by a gun show producer to comply with any of the requirements of this article,
except for the posting of required signs, shall be a misdemeanor punishable by a fine not to exceed
two thousand dollars ($2,000), and shall render the producer ineligible for a gun show producer
license for one year from the date of the conviction.
**(b)** A willful failure of a gun show producer to post signs as required by this article shall be a
misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000) for the first offense
and not to exceed two thousand dollars ($2,000) for the second or subsequent offense, and with
respect to the second or subsequent offense, shall render the producer ineligible for a gun show
producer license for one year from the date of the conviction.
**(c)** Multiple violations charged pursuant to subdivision (a) arising from more than one gun show or
event shall be grounds for suspension of a producer's certificate of eligibility pending adjudication of
the violations.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Subdivision (a) of Section 27245 continues former Section 12071.1(e)(1) without substantive change.
Subdivision (b) continues former Section 12071.1(e)(2) without substantive change.
Subdivision (c) continues former Section 12071.1(e)(3) without substantive change.
A violation of the predecessor of this article (former Section 12071.1) counts as a prior offense in determining the
appropriate punishment under this section. See Section 16015 (determining existence of prior conviction).

For exceptions to provisions in this article and Article 2 (commencing with Section 27300), see Article 3 (commencing with Section 27400).

# Cal Pen Code § 27305

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27305. Written certification by vendors

All gun show or event vendors shall certify in writing to the producer that they:

**(a)** Will not display, possess, or offer for sale any firearms, ammunition, knives, or weapons for which
possession or sale is prohibited.

**(b)** Acknowledge that they are responsible for knowing and complying with all applicable federal, state,
and local laws dealing with the possession and transfer of firearms or ammunition.

**(c)** Will not engage in activities that incite or encourage hate crimes.

**(d)** Will process all transfers of firearms through licensed firearms dealers as required by state law.

**(e)** Will process all sales or transfers of ammunition through licensed firearms dealers or ammunition
vendors as required by state law.

**(f)** Will verify that all firearms in their possession at the show or event will be unloaded, and that the
firearms will be secured in a manner that prevents them from being operated except for brief periods
when the mechanical condition of a firearm is being demonstrated to a prospective buyer.

**(g)** Have complied with the requirements of Section 27320.

**(h)** Will not display or possess black powder, or offer it for sale.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736
§ 7 (AB 1669), effective January 1, 2020.

A23

# Cal Pen Code § 27310

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27310. Firearm and ammunition transfer or sale requirements

**(a)** All firearms and ammunition transfers or sales at a gun show or event shall be conducted in accordance with applicable state and federal laws.
**(b)** Commencing July 1, 2022, the Department of Justice may inspect any firearm dealers, ammunition vendors, or manufacturers participating in a gun show or event in order to ensure compliance with subdivision (a). The department may adopt regulations to administer the application and enforcement provisions of this chapter.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 8 (AB 1669), effective January 1, 2020; Stats 2020 ch 273 § 1 (AB 2061), effective January 1, 2021.

▼Annotations

Notes

- ⬇**Amendments:**
⬆**Amendments:**
**2019 Amendment (ch 736):**

Substituted "and ammunition transfers or sales" for "transfers".

**2020 Amendment (ch 273):**

Added designation (a) and inserted "conducted" following "shall be"; and added (b).

A24

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27310 continues former Section 12071.4(c) without substantive change.

For exceptions to provisions in this article and Article 1 (commencing with Section 27200), see Article 3 (commencing with Section 27400).

For the consequences of violating this article, see Section 27350 (punishment).

See Section 16520 ("firearm").

# Cal Pen Code § 27315

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27315. Sales of ammunition

Sales of ammunition at a gun show or event shall comply with all applicable laws, including Sections 30347, 30348, 30350, 30352, and 30360.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 9 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27320

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27320. Information required from vendor

**(a)** Before commencement of a gun show or event, each vendor who will offer for sale any firearms manufactured after December 31, 1898, or any ammunition, shall provide to the producer all of the following information relative to the vendor, the vendor's employees, and other persons, compensated or not, who will be working or otherwise providing services to the public at the vendor's display space:

**(1)** The person's complete name.

**(2)** The person's driver's license or state-issued identification card number.

**(3)** The person's date of birth.

**(4)** The person's certificate of eligibility number pursuant to Section 26915 or 30347 of the Penal Code.

**(b)** The producer shall keep the information at the onsite headquarters of the show or event for the duration of the show or event, and at the producer's regular place of business for two weeks after the conclusion of the show or event. The producer shall make the information available upon request to any sworn peace officer for purposes of the officer's official law enforcement duties.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 10 (AB 1669), effective January 1, 2020.

A27

# Cal Pen Code § 27325

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27325. Name tag required

At any gun show or event, each vendor and each employee of a vendor shall wear a name tag indicating first and last name.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Cal Pen Code § 27335

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27335. Minors prohibited unless accompanied by parent or guardian

No member of the public who is under the age of 18 years shall be admitted to, or be permitted to remain at, a gun show or event unless accompanied by a parent or legal guardian. Any member of the public who is under the age of 18 years shall be accompanied by that person's parent, grandparent, or legal guardian while at the show or event.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Cal Pen Code § 27340

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27340. Persons bringing firearms or ammunition to gun show or event

**(a)** Persons other than show or event security personnel, sworn peace officers, or vendors, who bring any firearm or any ammunition that is separate from a firearm onto the gun show or event premises shall sign in ink the tag or sticker that is attached to the firearm prior to being allowed admittance to the show or event, as provided for in subdivision (b) and (c).

**(b)** All firearms carried onto the premises of a gun show or event by members of the public shall be checked, cleared of any ammunition, secured in a manner that prevents them from being operated, and an identification tag or sticker shall be attached to the firearm, prior to the person being allowed admittance to the show. The identification tag or sticker shall state that all firearms transfers between private parties at the show or event shall be conducted through a licensed dealer in accordance with applicable state and federal laws. The person possessing the firearm shall complete the following information on the tag before it is attached to the firearm:

**(1)** The gun owner's signature.

**(2)** The gun owner's printed name.

**(3)** The identification number from the gun owner's government-issued photo identification.

**(c)** Any ammunition carried onto the premises of a gun show or event by members of the public shall be checked and secured in a manner that prevents the ammunition from being discharged. An identification tag or sticker shall be attached to the ammunition prior to the person being allowed admittance to the show. The identification tag or sticker shall state that all ammunition transfers between private parties at the show or event shall be conducted through a licensed dealer or ammunition vendor in accordance with applicable state and federal laws. The person possessing the ammunition shall complete the following information on the tag before it is attached to the ammunition:

**(1)** The ammunition owner's signature.

**(2)** The ammunition owner's printed name.

**(3)** The identification number from the ammunition owner's government-issued photo identification.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736 § 11 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27345

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27345. Persons possessing firearms or ammunition carrying identification

Any person who possesses a firearm or ammunition at a gun show or event shall have government-
issued photo identification in immediate possession, and shall display it upon request to any security
officer or peace officer.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2019 ch 736
§ 12 (AB 1669), effective January 1, 2020.

# Cal Pen Code § 27350

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 2 Gun Show Enforcement and Security Act of 2000 (§§ 27300 — 27350)**

## § 27350. Violations of article

**(a)** Unless otherwise specified, a first violation of this article is an infraction.

**(b)** Any second or subsequent violation of this article is a misdemeanor.

**(c)** Any person who commits an act the person knows to be a violation of this article is guilty of a misdemeanor for a first offense.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

A33

# Cal Pen Code § 27400

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27400. Exceptions for transfers to authorized law enforcement representative

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

**(b)** Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

**(c)** Within 10 days of the date a handgun, and commencing January 1, 2014, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 23 (AB 809), effective January 1, 2012.

A34

# Cal Pen Code § 27405

## Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27405. Exceptions for loans of firearms in specified circumstances

Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the loan of a firearm if all of the following conditions are satisfied:

**(a)** The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

**(b)** The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

**(c)** The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

# Cal Pen Code § 27410

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27410. Exceptions for transfer of firearms from law enforcement agency to peace officer

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

**(b)** Within 10 days of the date that a handgun, and commencing January 1, 2014, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted in AFS. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 24 (AB 809), effective January 1, 2012.

# Cal Pen Code § 27415

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 3 Gun Show or Event (Arts. 1 — 3)**
- **Article 3 Exceptions Relating to Law Enforcement (§§ 27400 — 27415)**

## § 27415. Exceptions for transfers of firearms from law enforcement agency to retiring peace officer

**(a)** Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

**(b)** Within 10 days of the date that a handgun, and commencing January 1, 2014, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted in AFS. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2011 ch 745 § 25 (AB 809), effective January 1, 2012.

# Cal Pen Code § 27545

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 6 Sale, Lease, or Transfer of Firearms (Chs. 1 — 6)**
- **Chapter 4 Crimes Relating to Sale, Lease, or Transfer of Firearms (Arts. 1 — 7)**
- **Article 1 Crimes Relating to Sale, Lease, or Transfer of Firearms (§§ 27500 — 27590)**

## § 27545. Transaction where neither party holds a dealer's license

Where neither party to the transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

▼Annotations

Commentary

**Law Revision Commission Comments:**
**2010—**
Section 27545 continues former Section 12072(d) without substantive change.
For exceptions to this provision, see Article 2 (commencing with Section 27600) and Article 6 (commencing with Section 27850). See also Section 28000 (circumstances that may be reported to Department of Justice in prescribed format).
For the consequences of violating this section, see Section 27590 (punishment for violation of article).
See Sections 16520 ("firearm"), 26700 ("dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive").

## Notes to Decisions

**1. Generally**

A38

To prove a violation of former Pen C § 12072(d), the People need not prove a defendant knew or should have known that the other party to the firearms transaction was unlicensed. Thus, in a prosecution of defendant for unlawfully transferring a firearm under former Pen C § 12072(d), the prosecution was not required to prove that defendant, who was not a licensed dealer, knew that the person who purchased a firearm from him was also unlicensed. People v. Vaughn (Cal. App. 1st Dist. Oct. 3, 2014), 230 Cal. App. 4th 322, 178 Cal. Rptr. 3d 595, 2014 Cal. App. LEXIS 892.

# Cal Pen Code § 30347

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## §  30347. Ammunition vendor's agents and employees; Certificate of eligibility from Department of Justice; Limitation on scope of employment for specified persons

**(a)** An ammunition vendor shall require any agent or employee who handles, sells, delivers, or has under his or her custody or control any ammunition, to obtain and provide to the vendor a certificate of eligibility from the Department of Justice issued pursuant to Section 26710. On the application for the certificate, the agent or employee shall provide the name and address of the ammunition vendor with whom the person is employed, or the name and California firearms dealer number of the ammunition vendor if applicable.

**(b)** The department shall notify the ammunition vendor in the event that the agent or employee who has a certificate of eligibility is or becomes prohibited from possessing ammunition under subdivision (a) of Section 30305 or federal law.

**(c)** An ammunition vendor shall not permit any agent or employee who the vendor knows or reasonably should know is a person described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title or Section 8100 or 8103 of the Welfare and Institutions Code to handle, sell, deliver, or have under his or her custody or control, any ammunition in the course and scope of employment.

A40

# Cal Pen Code § 30348

### Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30348. Sale of ammunition by licensed vendor; Licensed premises requirement; Gun shows and events

**(a)** Except as provided in subdivision (b), the sale of ammunition by a licensed vendor shall be conducted at the location specified in the license.

**(b)** A vendor may sell ammunition at a gun show or event if the gun show or event is not conducted from any motorized or towed vehicle.

**(c)** For purposes of this section, "gun show or event" means a function sponsored by any national, state, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.

**(d)** Sales of ammunition at a gun show or event shall comply with all applicable laws including Sections 30347, 30350, 30352, and 30360.

## History

Adopted by voters, Prop. 63 § 8.11, effective November 9, 2016.

# Cal Pen Code § 30350

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30350. Transfer of ammunition without assistance of vendor or employee

An ammunition vendor shall not sell or otherwise transfer ownership of, offer for sale or otherwise offer to transfer ownership of, or display for sale or display for transfer of ownership of any ammunition in a manner that allows that ammunition to be accessible to a purchaser or transferee without the assistance of the vendor or an employee of the vendor.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amendment approved by voters, Prop. 63 § 8.12, effective November 9, 2016.

# Cal Pen Code § 30352

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30352. Information necessary for transfer of ammunition

**(a)** Commencing July 1, 2019, an ammunition vendor shall not sell or otherwise transfer ownership of any ammunition without, at the time of delivery, legibly recording the following information on a form to be prescribed by the Department of Justice:

**(1)** The date of the sale or other transfer.

**(2)** The purchaser's or transferee's driver's license or other identification number and the state in which it was issued.

**(3)** The brand, type, and amount of ammunition sold or otherwise transferred.

**(4)** The purchaser's or transferee's full name and signature.

**(5)** The name of the salesperson who processed the sale or other transaction.

**(6)** The purchaser's or transferee's full residential address and telephone number.

**(7)** The purchaser's or transferee's date of birth.

**(b)**

**(1)** Commencing July 1, 2019, an ammunition vendor shall electronically submit to the department the information required by subdivision (a) for all sales and transfers of ownership of ammunition. The department shall retain this information in a database to be known as the Ammunition Purchase Records File. Except as provided in paragraph (2), this information shall remain confidential and may be used by the department and those entities specified in, and pursuant to, subdivision (b) or (c) of Section 11105, through the California Law Enforcement Telecommunications System, only for law enforcement purposes. The ammunition vendor shall not use, sell, disclose, or share the information for any other purpose other than the submission required by this subdivision without the express written consent of the purchaser or transferee.

**(2)** The information collected by the department as provided in paragraph (1) shall be available to researchers affiliated with the California Firearm Violence Research Center at UC Davis following approval by the institution's governing institutional review board, when required. At the department's discretion, and subject to Section 14240, the data may be provided to any other nonprofit bona fide research institution accredited by the United States Department of Education or the Council for Higher

A43

Education Accreditation for the study of the prevention of violence, following approval by the institution's governing institutional review board or human subjects committee, when required, for academic and policy research purposes. Material identifying individuals shall only be provided for research or statistical activities and shall not be transferred, revealed, or used for purposes other than research or statistical activities, and reports or publications derived therefrom shall not identify specific individuals. Reasonable costs to the department associated with the department's processing of that data may be billed to the researcher. If a request for data or letter of support for research using the data is denied, the department shall provide a written statement of the specific reasons for the denial.

**(c)** Commencing on July 1, 2019, only those persons listed in this subdivision, or those persons or entities listed in subdivision (e), shall be authorized to purchase ammunition. Prior to delivering any ammunition, an ammunition vendor shall require bona fide evidence of identity to verify that the person who is receiving delivery of the ammunition is a person or entity listed in subdivision (e) or one of the following:

**(1)** A person authorized to purchase ammunition pursuant to Section 30370.

**(2)** A person who was approved by the department to receive a firearm from the ammunition vendor, pursuant to Section 28220, if that vendor is a licensed firearms dealer, and the ammunition is delivered to the person in the same transaction as the firearm.

**(d)** Commencing July 1, 2019, the ammunition vendor shall verify with the department, in a manner prescribed by the department, that the person is authorized to purchase ammunition. If the person is not listed as an authorized ammunition purchaser, the vendor shall deny the sale or transfer.

**(e)** Subdivisions (a) and (d) shall not apply to sales or other transfers of ownership of ammunition by ammunition vendors to any of the following, if properly identified:

**(1)** An ammunition vendor.

**(2)** A person who is on the centralized list of exempted federal firearms licensees maintained by the department pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of Title 4 of Part 6.

**(3)** A person who purchases or receives ammunition at a target facility holding a business or other regulatory license, provided that the ammunition is at all times kept within the facility's premises.

**(4)** A gunsmith.

**(5)** A wholesaler.

**(6)** A manufacturer or importer of firearms or ammunition licensed pursuant to Chapter 44 (commencing with Section 921) of Part I of Title 18 of the United States Code, and the regulations issued pursuant thereto.

**(7)** An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale or other transfer of ownership is for exclusive use by that government agency, and, prior to the sale, delivery, or transfer of the handgun ammunition, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser, transferee, or person otherwise acquiring ownership is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that individual is employed.

**(8)**

A44

**(A)** A properly identified sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, or properly identified sworn federal law enforcement officer, who is authorized to carry a firearm in the course and scope of the officer's duties.

**(B)**

**(i)** Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a full-time paid peace officer who is authorized to carry a firearm in the course and scope of the officer's duties.

**(ii)** The certification shall be delivered to the vendor at the time of purchase or transfer and the purchaser or transferee shall provide bona fide evidence of identity to verify that the purchaser transferee is the person authorized in the certification.

**(iii)** The vendor shall keep the certification with the record of sale and submit the certification to the department.

**(f)** The department is authorized to adopt regulations to implement the provisions of this section.

## History

Added Stats 2010 ch 711 §  6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amendment approved by voters, Prop. 63 § 8.13, effective November 9, 2016; Amended Stats 2016 ch 55 § 12, effective January 1, 2017; Stats 2021 ch 253 § 11 (AB 173), effective September 23, 2021.

A45

# Cal Pen Code § 30360

Copy Citation

Deering's California Codes are current through all 770 Chapters of the 2021 Regular
Session.

- **Deering's California Codes Annotated**
- **PENAL CODE (§§ 1 — 34370)**
- **Part 6 Control of Deadly Weapons (Titles 1 — 4)**
- **Title 4 Firearms (Divs. 1 — 12)**
- **Division 10 Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Chs. 1 — 10)**
- **Chapter 1 Ammunition (Arts. 1 — 5)**
- **Article 3 Ammunition Vendors (§§ 30342 — 30365)**

## § 30360. False entries in records

Commencing February 1, 2011, a vendor shall not knowingly make a false entry in, fail to make a
required entry in, fail to obtain the required thumbprint, or otherwise fail to maintain in the required
manner, records prepared in accordance with Section 30352. If the right thumbprint is not available,
then the vendor shall have the purchaser or transferee use the left thumb, or any available finger, and
shall so indicate on the form.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012.

A46

# CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *B & L Productions, Inc., et al. v. Gavin Newsom, et al.*
Case No.: 21CV1718 AJB KSC

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Nicole J. Kau, Deputy Attorney General
nicole.kau@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
   *Attorney for Defendants*

I declare under penalty of perjury that the foregoing is true and correct. Executed November 16, 2022.

Laura Palmerin

CERTIFICATE OF SERVICE