C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs B&L Productions, Inc., California Rifle & Pistol Association, Incorporated, Gerald Clark, Eric Johnson, Chad Littrell, Jan Steven Merson, Asian Pacific American Gun Owner Association, Second Amendment Law Center, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST; GERALD CLARK; ERIC JOHNSON; CHAD LITTRELL; JAN STEVEN MERSON; CALIFORNIA RIFLE & PISTOAL ASSOCIATION, INCORPORATED; ASIAN PACIFIC AMERICAN GUN OWNERS ASSOCIATION; SECOND AMENDMENT LAW CENTER, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; KAREN ROSS, in her official capacity as Secretary of California Department of Food & Agriculture and in his personal capacity; TODD SPITZER, in his official capacity as District Attorney of Orange County; 32nd DISTRICT AGRICULTURAL ASSOCIATION; DOES 1-10;<br><br>　　　　　　Defendants. | CASE NO.: 8:22-cv-01518 JWH (JDEx)<br><br>**DECLARATION OF TRACY OLCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:　January 6, 2023<br>Hearing Time:　9:00 a.m.<br>Courtroom:　　9D<br>Judge:　　　　John W. Holcomb<br><br>Action Filed:　　August 12, 2022 |

1

DECLARATION OF TRACY OLCOTT

# DECLARATION OF TRACY OLCOTT

1. I, Tracy Olcott, am the President and General Manager of Plaintiff B & L Productions d/b/a Crossroads of the West Gun Shows ("Crossroads"). I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. Crossroads is a for-profit event promotion company, incorporated under the laws of the state of Utah, with its headquarters in Kaysville, Utah. Crossroads has been operating event promotion shows in venues across the state of California for over 30 years.

3. Before the adoption and enforcement of SB 264, Crossroads produced, promoted, planned, and implemented the Crossroads of the West Gun Show, a recurring, legal, safe, and responsible gun-show event held four-to-five times every year at Orange County Fair & Event Center ("the Fairgrounds").

4. I believe that our gun show events—which are heavily regulated by federal, state, and local law and by rules set by the Fairgrounds—promote public safety. They do not endanger it. For they encourage attendees to engage in lawful, convenient, transparent firearm transfers in the state of California, instead of elsewhere.

5. Indeed, Crossroads has a long history of complying with all applicable federal, state, and local laws, as well as all Fairgrounds rules for vendors and contractors. In fact, not one of these authorities has ever reprimanded or refused to work with Crossroads due to failures in safety or compliance. It was not until gun control groups began pressuring local fair boards and state legislators) to end gun shows that this decades-long relationship with the Fairgrounds ended.

6. Like most state-owned venues we have worked with throughout California, the Fairgrounds had long given Crossroads, as a veteran event producer, a "first right of refusal" to hold dates for our annual shows to manage the calendar until dates could be secured by a formal contract with the Defendant 32nd District

1  Agricultural Association ("the District"). Having held successful events throughout
2  2021 and given our long history at the Fairgrounds, we had no reason to doubt that
3  the District would recant its longstanding promise to hold dates.
4      7.    But because of the adoption and enforcement of SB 264, the District
5  refused to place the approval of our 2022 event contracts on its agendas in
6  September, October, November, or December 2021. And since SB 264 took effect in
7  January 2022, we have been unable to get District staff to work with us in good faith
8  to propose event dates and/or begin the process for reserving the facility. This
9  refusal is detrimental to our long relationship with the Fairgrounds, our business,
10 and our relationship with all of the vendors who may now book shows elsewhere to
11 keep their businesses viable.
12     8.    But for the adoption and enforcement of SB 264 and SB 915—and the
13 District's implementation of these laws by refusing to contract with Crossroads—we
14 would continue to produce, promote, plan, and implement the Crossroads of the
15 West Gun Show event at the Fairgrounds. And because the business model of gun
16 shows relies on the participation and support of vendors who sell firearms,
17 ammunition, and related products, we would open our events to sales of *lawful*
18 firearms, ammunition, and firearm precursor parts. We have never hosted a gun
19 show without such vendors. Such an event is not within our business model, and
20 even if it were, the scale of such events would be so small as to now require a
21 location like the Fairgrounds
22     9.    That said, in order to salvage our longstanding relationship with the
23 District, mitigate damages, and continue planning and promoting our family-friendly
24 events till our legal claims could be heard, I offered to attempt to hold events
25 without the sales of firearms, ammunition, or firearm precursor parts in compliance
26 with SB 264—even though such an event is *not* the business model of gun shows
27 and would *not* be financially successful. Defendant District, however, dragged its
28 fee and refused to provide or approve contracts for dates in 2022 and beyond.

10. In order to preserve our decades-long relationship with and reputation in the Orange County community, I also attempted find other facilities near the Fairgrounds that could accommodate our large-scale event. But after speaking to several different possible alternative venues, we determined that there are no similar venues in the area that can accommodate both the size of our gun show events and the multiple dates that we require.

11. As the promoter of the Crossroads of the West Gun Show at the Venue, Crossroads has an important job in bringing together for-profit vendors, nonprofit organizations, politicians, and individuals to participate in all manner of political, educational, and commercial speech related to the acquisition of firearms and their lawful uses, including self-defense, hunting, target shooting, safety training, gunsmithing, and appreciation of firearms as art, historical objects, and technological artifacts.

12. Indeed, our gun show events regularly host Second Amendment civil rights organizations, like Plaintiffs California Rifle & Pistol Association, Incorporated, Asian Pacific American Gun Owner Association, Second Amendment Law Center, Inc., and the Second Amendment Foundation. As vendors, these organizations engage with attendees to increase their membership base, promote their programs, including firearm safety training, competitive and recreational shooting events, and fundraisers, and to engage in firearm-related political and educational speech. Crossroads assists these vendors in promoting their messages by allowing them to place materials at the ticket booths or hand out information to participants as they enter the event.

13. Our gun show events also regularly include speakers who give lectures about, inter alia, hunting, firearm safety, and state and federal firearms law. And our events also sometimes includes self-protection training classes.

14. Candidates for political office have attended our gun shows to discuss politics, the government, and the law with constituents who are part of the "gun

culture." Registering attendees to vote or gathering signatures for ballot initiatives also regularly occurs in these public forums.

15. Our gun show events also include various retailer vendors, including those who sell firearms, ammunition, firearm parts, and firearm-related accessories. These vendors often participate in commercial speech with gun show attendees who are in the market to buy a firearm or other item. They also educate attendees, who may or may not be in the market for a firearm-related product, about available products and impart their knowledge to potential buyers who may not otherwise have ready access to an experienced retailer.

16. Firearm retailer vendors at our gun shows are often the same licensed vendors that have brick-and-mortar stores in the community, operate legally over the internet, and are registered with the state as lawful businesses.

17. B & L participates in and is a member of the "gun culture," a discrete and identifiable group of people and organizations, who share a desire to exercise fundamental rights protected by the Second Amendment. Members of the "gun culture" also seek to participate in public discourse and share in the benefits of public resources like the use of the Venue. Participating in that culture is one of the primary reasons people attend gun shows, and it is a driving force behind B & L's continued promotion of such events.

18. That said, if our vendors unable to sell firearms, ammunition, and firearm precursor parts at the Fairgrounds pursuant to SB 264 and SB 915, there is little to no financial incentive for these businesses to participate as vendors at our gun shows. That is because our firearm and ammunition retailer vendors rely heavily on product sales at the gun shows to offset the costs of vendor fees, employee compensation, and necessary overhead. If they can no longer afford to participate in gun shows because of the inability to turn a profit, it will end the gun shows. Lack of vendors and the absence of firearms and ammunition sales will make it less enticing for attendees to spend the day at the gun shows with their families.

19. SB 264 and SB 915 will diminish, for Crossroads, and in the aggregate for the community that comprises the "gun culture," the dissemination of information, speech, and commerce related to the exercise of constitutional rights under the First Amendment and Second Amendment at the Fairgrounds.

20. SB 264 and SB 915 diminish our vendors' ability to carry on lawful commerce and their ability to engage with others in the dissemination of information that is related to both their business,

21. What's more, because the effect of SB 264 and SB 915 has been to ban gun shows altogether, it also restricts our vendors and our attendees' right to engage with other like-minded people through political and commercial speech.

22. Due to the enforcement of SB 264 and SB 9915 and the shuttering of gun shows, Crossroads has sustained and (unless this Court enjoins enforcement of these laws) will continue to sustain lost profits and lost opportunity.

23. If this Court were to enjoin the enforcement of SB 264 and SB 915, allowing Plaintiff Crossroads' gun show events to return to the Fairgrounds, Crossroads would immediately resume efforts to contract with the District and hold gun show events at the Fairgrounds. And because the business model of gun shows relies on the participation and support of vendors who sell firearms, ammunition, and related products, we would open our events to sales of *lawful* firearms, ammunition, and firearm precursor parts.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on November 15, 2022.

/s/ Tracy Olcott
Tracy Olcott
Declarant

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *B & L Productions, Inc., et al. v. Newsom, et al.*
Case No.: 8:22-cv-01518 JWH (JDEx)

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

    I am not a party to the above-entitled action. I have caused service of:

**DECLARATION OF TRACY OLCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Nicole J. Kau, Deputy Attorney General
nicole.kau@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
    *Attorney for Defendants*

    I declare under penalty of perjury that the foregoing is true and correct.

Executed November 16, 2022.

*/s/ Laura Palmerin*
Laura Palmerin