1  ROB BONTA
   Attorney General of California
2  R. MATTHEW WISE
   Supervising Deputy Attorney General
3  NICOLE J. KAU
   Deputy Attorney General
4  State Bar No. 292026
    300 South Spring Street, Suite 1702
5   Los Angeles, CA  90013-1230
    Telephone:  (213) 269-6220
6   Fax:  (916) 731-2125
    E-mail:  Nicole.Kau@doj.ca.gov
7  *Attorneys for Defendants Governor Gavin Newsom,*
   *Attorney General Rob Bonta, Secretary Karen Ross,*
8  *and 32nd District Agricultural Association*

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14  **B&L PRODUCTIONS, INC., d/b/a**          8:22-cv-01518 JWH (JDEx)
    **CROSSROADS OF THE WEST, et**
15  **al.,**                                  **STATE DEFENDANTS'**
                                              **OPPOSITION TO MOTION FOR**
16                          Plaintiffs,       **PRELIMINARY INJUNCTION**

17            v.                              Date:        January 6, 2023
                                              Time:        9:00 a.m.
18  **GAVIN NEWSOM, et al.,**                 Courtroom:   9D
                                              Judge:       The Honorable John W.
19                          Defendants.                    Holcomb
                                              Trial Date:  TBD
20                                            Action Filed: August 12, 2022

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

    I.     The Parties...............................................................................2

    II.    AB 893 and the Del Mar Fairgrounds......................................3

    III.   SB 264 and the Orange County Fair & Event Center...............4

    IV.   SB 915 and State Property .......................................................5

    V.    This Lawsuit ............................................................................5

LEGAL STANDARD ..............................................................................5

ARGUMENT ...........................................................................................6

    I.     Plaintiffs Are Not Likely to Succeed on the Merits .................6

          A.    Various Immunities Apply as to the State Defendants..............6

               1.     The § 1983 Claims Against Governor Newsom Are Barred Under Absolute Legislative Immunity................6

               2.     All Claims Against Governor Newsom and Secretary Ross Are Barred Under Sovereign Immunity ...............................................................7

               3.     The Damages Claims Against Governor Newsom, Attorney General Bonta, and Secretary Ross Are Not Cognizable Under § 1983.....................................8

               4.     Governor Newsom, Attorney General Bonta, and Secretary Ross Are Also Entitled to Qualified Immunity ...............................................................8

          B.    Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claim...................................................10

               1.     SB 264 and SB 915 Do Not Regulate Speech or Expressive Conduct, and They Survive Rational Basis Review ......................................................10

               2.     SB 264 and SB 915 Apply to a Limited Public Forum, and They Satisfy the Reasonableness Standard ...............................................................13

               3.     SB 264 and SB 915 Do Not Ban Protected Commercial Speech................................................15

               4.     SB 264 and SB 915 Are Not Content-Based Laws........16

               5.     The Prior Restraint Claim Fails Because SB 264 and SB 915 are State Statutes that the District Must Follow ...............................................................18

          C.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Equal Protection Claim .................................................19

          D.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Second Amendment Claim ............................................20

i

1

**TABLE OF CONTENTS**
**(continued)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

1. New Analytical Framework for Second
Amendment Claims.......................................................................20

2. SB 264 and SB 915 Do Not Meaningfully Restrict
Plaintiffs' Access to Firearms ........................................21

II. Plaintiffs Have Not Established Irreparable Harm ............................24

III. The Balance of the Equities and Public Interest Weigh Strongly
Against Injunctive Relief ........................................................24

CONCLUSION..............................................................................25

1

# TABLE OF AUTHORITIES

2

3

**Page**

4

**Cases**

5

*Arkansas Educ. Television Comm'n v. Forbes,*
   523 U.S. 666 (1998) .................................................................................. 14

6

7

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) .................................................................................... 9

8

9

*Atascadero State Hosp. v. Scanlon,*
   473 U.S. 234 (1985) .................................................................................... 7

10

11

*B&L Prods., Inc. v. Newsom,*
   No. 21-CV-01718-AJB-DDL, 2022 WL 3567064 (S.D. Cal. Aug.
   18, 2022) ................................................................................................. 8, 9

12

13

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
   492 U.S. 469 (1989) .................................................................................. 12

14

15

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ...................................................................................... 6

16

17

*Boyer v. City of Los Angeles,*
   No. CV 12-04005, 2012 WL 13013037 (C.D. Cal. Aug. 23, 2012) ................. 16

18

19

*Brown v. Cal. Dep't of Transp.,*
   321 F.3d 1217 (9th Cir. 2003) .................................................................. 15

20

21

*Central Hudson Gas,*
447 U.S. at 561-563 .............................................................................. 15, 16

22

23

*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) .................................................................................. 10

24

25

*Cmty. House, Inc. v. City of Boise, Idaho,*
   623 F.3d 945 (9th Cir. 2010) ...................................................................... 6

26

27

*Dariano v. Morgan Hill Unified Sch. Dist.,*
   767 F.3d 764 (9th Cir. 2014) .................................................................... 19

28

iii

1
2

### TABLE OF AUTHORITIES
### (continued)

3

Page

4

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ..........................................................................21, 23

5

*Dobbs v. Jackson Women's Health Org.*,
    142 S. Ct. 2228 (2022) ...........................................................................17

6

7

*Doe v. Lawrence Livermore Nat'l Lab.*,
    131 F.3d 836 (9th Cir. 1997)......................................................................8

8

9

*Duncan v. Becerra*,
    970 F.3d 1133 (9th Cir. 2020)...................................................................21

10

*Duncan v. Bonta*,
    19 F.4th 1087 (9th Cir. 2021), *cert. granted*, *judgment vacated*, 142
    S. Ct. 2895 (2022).......................................................................13, 17, 18

11

12

13

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
    666 F.3d 1216 (9th Cir. 2012).....................................................................9

14

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995) .................................................................................18

15

16

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) .................................................................................18

17

18

*Grunert v. Campbell*,
    248 F. App'x 775 (9th Cir. 2007)................................................................8

19

20

*Haynie v. Harris*,
    658 F. App'x 834 (9th Cir. 2016)................................................................9

21

22

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
    452 U.S. 640 (1981) .................................................................................14

23

24

*Hopper v. City of Pasco*,
    241 F.3d 1067 (9th Cir. 2001)............................................................14, 15

25

26

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011)....................................................................12

27

28

iv

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3    *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los*
4        *Angeles,*
5        764 F.3d 1044 (9th Cir. 2014)............................................................... 14

6    *Interpipe Contracting, Inc. v. Becerra,*
        898 F.3d 879 (9th Cir. 2018)............................................................... 11

7
8    *Kisela v. Hughes,*
        138 S. Ct. 1148 (2018) ......................................................................... 9

9
10   *L.A. County Bar Ass'n v. Eu,*
        979 F.2d 697 (9th Cir. 1992)............................................................ 7, 8

11
12   *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.,*
        714 F.2d 946 (9th Cir. 1983)................................................................. 7

13
14   *Maryland v. King*
         567 U.S. 1301 (2012) .......................................................................... 24

15
16   *McDonald v. City of Chicago, Ill.,*
        561 U.S. 742 (2010) ............................................................................ 23

17   *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of*
18       *Psych.,*
        228 F.3d 1043 (9th Cir. 2000)............................................................. 12

19
20   *Nat'l Audubon Soc'y, Inc. v. Davis,*
        307 F.3d 835 (9th Cir. 2002)................................................................. 7

21
22   *New York State Rifle & Pistol Assoc., Inc. v. Bruen,*
        142 S. Ct. 2111 (2022) ..........................................................20, 21, 23

23
24   *Nichols v. Brown,*
        859 F. Supp. 2d 1118 (C.D. Cal. 2012)................................................. 6

25   *Nken v. Holder,*
26       556 U.S. 418 (2009) .............................................................................. 6

27   *Nordyke v. King,*
        319 F.3d 1185 (9th Cir. 2003)..............................................10, 11, 12
28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4
*Nordyke v. King,*
   644 F.3d 776 (9th Cir. 2011)............................................................15, 17, 18, 19

5

6
*Nordyke v. King,*
   681 F.3d 1041 (9th Cir. 2012)...............................................................15, 20

7

8
*Nordyke v. Santa Clara County,*
   110 F.3d 707 (9th Cir. 1997)............................................................10, 12, 15, 16

9
*OSU Student All. v. Ray,*
   699 F.3d 1053 (9th Cir. 2012)............................................................... 19

10

11
*Pearson v. Callahan,*
   555 U.S. 223 (2009) .......................................................................... 9

12

13
*Quern v. Jordan,*
   440 U.S. 332 (1979) .......................................................................... 7

14

15
*Retail Digital Network, LLC v. Prieto,*
   861 F.3d 839 (9th Cir. 2017).......................................................12, 16

16

17
*Romero-Ochoa v. Holder,*
   712 F.3d 1328 (9th Cir. 2013)........................................................... 13

18

19
*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
   547 U.S. 47 (2006) .......................................................................... 17

20
*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011) .......................................................................... 11

21

22
*Teixeira v. Cty. of Alameda,*
   822 F.3d 1047 (9th Cir. 2016).......................................................19, 22, 23, 24

23

24
*Teixeira v. Cty. of Alameda,*
   873 F.3d 670 (9th Cir. 2017).....................................................................*passim*

25

26
*Texas v. Johnson,*
   491 U.S. 397 (1989) .......................................................................... 10

27

28

vi

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3  *Tracy Rifle & Pistol LLC v. Harris*,
4      118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401
       (9th Cir. 2016) ............................................................................................... 25
5

6  *U.S. v. O'Brien*,
       391 U.S. 367 (1968) ........................................................................................ 17
7

8  *United States v. Chovan*,
       735 F.3d 1127 (9th Cir. 2013) ......................................................................... 13
9

10 *United States v. Grace*,
       461 U.S. 171 (1983) ........................................................................................ 14

11
12 *Vill. of Willowbrook v. Olech*,
       528 U.S. 562 (2000) ........................................................................................ 19

13
14 *White v. Pauly*,
       137 S.Ct. 548 (2017) ......................................................................................... 9

15
16 *Winter v. Natural Res. Def. Council, Inc.*,
       555 U.S. 7 (2008) .............................................................................................. 5

17 *Ex parte Young*,
       209 U.S. 123 (1908) .......................................................................................... 7
18

19 **Statutes**

20 California Code of Regulations, Title 11
       § 4303 ................................................................................................................ 2
21     § 5507(v) ............................................................................................................ 2

22 California Food and Agriculture Code
23     § 3951(a) ............................................................................................................ 2
       § 4158 ................................................................................................................ 3
24

25 California Government Code
       § 12550 .............................................................................................................. 7
26

27
28

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

California Penal Code

4
    § 16170 ................................................................................................ 2

5
    § 26805 .............................................................................................. 18

    § 27545 .............................................................................................. 18

6
    § 27573 ................................................................................. 5, 15, 17

    § 27573(a) ............................................................................... 5, 10

7
    § 27573(b) ........................................................................................ 5

8
    § 27575 ................................................................................. 4, 15, 17

    § 27575(a) ............................................................................... 4, 10

9
    § 27575(b)(1)-(4) ................................................................... 4, 15

10
    § 27590 ............................................................................................. 4

11

Public Contract Code

12
    §10334 ............................................................................................. 5

13

**Other Authorities**

14

Assembly Bill 311 ................................................................................... 3

15

California Constitution

16
    Article I, § 13 .................................................................................. 7

    Article V, § 1 .................................................................................. 7

17

18

Senate Bill

    264 ................................................................................................... 1

19
    915 ................................................................................................... 1

20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiffs are a gun show operator, a collection of gun show vendors and attendees, and non-profits claiming that Senate Bill 264 (SB 264) and Senate Bill 915 (SB 915) violate their First Amendment, equal protection, and Second Amendment rights.  They argue that both laws prohibit gun shows at the Orange County Fair & Event Center (Fairgrounds) and all other state property.  But that is wrong.  SB 264 prohibits only the act of selling firearms, precursor parts, and ammunition at the Fairgrounds, while allowing all other conduct—including all expressive activity, firearms training, and sales of other firearm-related products.  SB 915 applies the same prohibitions to all state property with similar allowances.

Indeed, at the gun shows that have been held at the Fairgrounds, *over 60 percent* of the vendors do not sell firearms or ammunition.  And the Ninth Circuit has long held that the sale of firearms and ammunition itself is not speech.  Even if SB 264 and SB 915 were viewed as regulating speech, they would pass constitutional muster no matter the analytical test applied.  Both laws make clear the Legislature's intent to prevent illegal firearm and ammunition transactions that occur at gun shows despite the regulations governing such events.  Plaintiffs' equal protection claim falls with their First Amendment claim, and their Second Amendment claim fails because there is no constitutional right to sell firearms or purchase them at a certain location.

Beyond misapprehending SB 264 and SB 915, Plaintiffs' claims against Governor Gavin Newsom, Secretary Karen Ross of the California Department of Food and Agriculture (CDFA), and Attorney General Rob Bonta fail on threshold grounds because they are barred by legislative, sovereign, and qualified immunity.

Because Plaintiffs have not shown that they are likely to succeed on the merits or that the balance of the harms favors granting an injunction, they are not entitled to injunctive relief.

# BACKGROUND

## I.   THE PARTIES

Plaintiffs are B&L Productions, Inc., dba Crossroads of the West (B&L), a gun show event promoter that has operated gun shows at the Fairgrounds (FAC ¶ 11); two people who regularly attend gun shows at the Fairgrounds (*id*. ¶¶ 12-13); two "regular vendor[s]"—one that sells upper receivers,[1] firearm precursor parts,[2] and AR-15 rifles (*id.* ¶ 14), and another that sells firearm precursor parts (*id.* ¶ 15); and four nonprofit organizations that promote Second Amendment rights (*id.* ¶¶ 16-19).

Defendants are Governor Newsom, Secretary Ross, Attorney General Bonta, the 32nd District Agricultural Association (District), and Todd Spitzer, the District Attorney of Orange County; all individuals are sued in their official capacities. FAC ¶¶ 20-24.  Todd Spitzer has separate counsel from the other defendants.

California's District Agricultural Associations, including the defendant District here, are state institutions formed to hold fairs and exhibitions to showcase and encourage diverse industries.  Cal. Food & Agric. Code § 3951(a); *id*. § 3953. The District Agricultural Associations act through their Boards of Directors.  *Id.*, §§ 3954, 3956.  The District covers Orange County.  *Id.* § 3884.

---

[1] "Receiver, upper" means the top portion of a two part receiver. Cal. Code Regs., tit. 11, § 5507(v); § 5471(dd).

[2] "'Firearm precursor part'" means any forging, casting, printing, extrusion, machined body or similar article: (A) that has reached a stage in manufacture where it may readily be completed, assembled or converted to be used as the frame or receiver of a functional firearm; or (B) that is marketed or sold to the public to become or be used as the frame or receiver of a functional firearm once completed, assembled or converted. 'Firearm precursor part' does not include firearm parts that can only be used on antique firearms, as defined in Penal Code section 16170, subdivision (c)."  Cal. Code Regs. tit. 11, § 4303

## II.   AB 893 AND THE DEL MAR FAIRGROUNDS

Before SB 264 and SB 915 were signed into law, AB 893 was enacted on October 11, 2019, with an effective date of January 1, 2021.  It prohibits the sale of firearms or ammunition at the Del Mar Fairgrounds in the County of San Diego, or any other property under control by the 22nd District Agricultural Association. Cal. Food and Agric., § 4158.[3]  AB 893 is thus largely the same as SB 264 but governs a different district.

The legislative findings for AB 893 state that the bill is intended to address gun violence and other illegal firearm activity at gun shows.  FAC, Ex. 6.  The findings describe several concerning incidents at gun shows, including alleged trafficking of illegal firearms by an official vendor, sales of firearms to individuals who are prohibited from possessing firearms, and illegal importation of large-capacity magazines.  FAC, Ex. 6, at 2.  Indeed, from 2013 to 2017, the San Diego County Sheriff recorded 14 crimes at gun shows held by B&L at the Del Mar Fairgrounds. *Id.*

B&L, along with other plaintiffs, filed suit in the United States District Court, Southern District of California (3:21-cv-01718), on October 4, 2021, challenging AB 893 on First Amendment, equal protection, and state tort grounds.  Request for Judicial Notice (RJN), Ex. A (Complaint).  The defendants, including Governor Newsom, Secretary Karen Ross, Attorney General Rob Bonta, and the 22nd District Agricultural Association, filed a motion to dismiss all causes of actions for failure to state a claim and asserted various immunities.  The district court granted the motion to dismiss, which made substantially similar arguments to those set forth in this brief.  RJN, Ex. B (AB 893 Defendants' Motion to Dismiss).  The court, citing *Nordyke v. Santa Clara County,* 110 F.3d 707, 710 (9th Cir. 1997), observed that the "'act of exchanging money for a gun is not "speech" within the meaning of the

---

[3] AB 893 has been amended by Assembly Bill 311 so that, beginning January 1, 2023, the prohibition will also include firearm precursor parts.

1    First Amendment,'" and dismissed all claims, granting leave to amend the

2    complaint.  RJN, Ex. C (Order Granting Motion to Dismiss Plaintiffs' Complaint).

3    The plaintiffs filed an amended complaint on August 31, 2022, and the defendants

4    filed a second motion to dismiss.  RJN, Ex. D (online docket).  The court has not

5    yet ruled on the second motion to dismiss.  *Id.*

6    **III.  SB 264 AND THE ORANGE COUNTY FAIR & EVENT CENTER**

7            On October 8, 2021, SB 264 added section 27575 to the Penal Code, which

8    states, "Notwithstanding any other law, an officer, employee, operator, lessee, or

9    licensee of the 32nd District Agricultural Association . . . shall not contract for,

10   authorize, or allow the sale of any firearm, firearm precursor part, or ammunition

11   on the property or in the buildings that comprise the OC Fair and Event Center, in

12   the County of Orange, the City of Costa Mesa . . . ."  Cal. Pen. Code § 27575(a).

13   Only firearm, precursor part, and ammunition sales are prohibited, not gun shows

14   generally.  This prohibition, which did not become operative until January 1, 2022,

15   does not apply to (1) "a gun buyback event held by a law enforcement agency," the

16   (2) "sale of a firearm by a public administrator, public conservator, or public

17   guardian within the course of their duties," the (3) "sale of a firearm, firearm

18   precursor part, or ammunition on state property that occurs pursuant to a contract

19   that was entered into before January 1, 2022," and (4) the "purchase of ammunition

20   on state property by a law enforcement agency in the course of its regular duties."

21   Cal. Pen. Code § 27575(b)(1)-(4).  Subject to exceptions, a violation of this section

22   is a misdemeanor.  Cal. Pen. Code § 27590 [listing exceptions].

23           SB 264's legislative findings echo those in AB 893, describing the "grave

24   danger" gun shows can bring to a community.  FAC, Ex. 11 at 3.  These concerns

25   are heightened by "gun-related tragedies . . . increasing [in] severity and frequency

26   in the last 30 years, including mass murders [at schools], and an increasing rate of

27   suicide by gun among all levels of society."  *Id.*

28

**IV.  SB 915 AND STATE PROPERTY**

On July 21, 2022, the Governor signed into law SB 915, codified in section 27573 of the Penal Code.  It enacts the same prohibition as AB 893 on "the sale of any firearm, firearm precursor part, or ammunition" but applies this prohibition to "state property or in the buildings that sit on state property or property otherwise owned, leased, occupied, or operated by the state."  Cal. Pen. Code § 27573(a).  It has largely the same exceptions as SB 264.[4]

**V.  THIS LAWSUIT**

The FAC describes gun shows as "a modern bazaar," a "celebration of America's 'gun culture,'" and a "cultural marketplace[] for those members of the 'gun culture.'"  FAC ¶¶ 61-62, 67.  More than 60 percent of the vendors at B&L gun shows do not sell firearms or ammunition; rather, they sell "accessories, collectibles, home goods, lifestyle products, educational information, food, and other refreshments[.]"  FAC ¶ 73.  Although the challenged laws prohibit none of these activities, Plaintiffs nevertheless allege that SB 264 and SB 915 will render B&L gun shows "unprofitable and economically infeasible" and that their "intended and practical effect" was to end gun shows at the Fairgrounds.  *Id.* ¶¶ 75, 169.  Plaintiffs bring First Amendment, equal protection, and Second Amendment claims, and they seek declaratory and injunctive relief, along with damages.

**LEGAL STANDARD**

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The court must determine (1) whether the moving party has made a strong showing that it is likely to succeed on the

---

[4] Under SB 915, the exception allowing for sales pursuant to a contract applies to contracts entered into before January 1, 2023, and the exception allowing for the purchase of ammunition by a law enforcement agency in the course of its regular duties also allows for the purchase of firearms and firearm precursor parts.  Cal. Pen. Code § 27573(b).  SB 915 also adds an exception for "the sale or purchase of a firearm pursuant to subdivision (b) or (c) of Section 10334 of the Public Contract Code."  *Id.*

1   merits; (2) whether it will be irreparably injured absent an injunction; (3) whether

2   issuance of the injunction will substantially injure the other parties interested in the

3   proceeding; and (4) where the public interest lies.  *See Nken v. Holder*, 556 U.S.

4   418, 434 (2009).

5                                           **ARGUMENT**

6   I.      **PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS**

7           A.      **Various Immunities Apply as to the State Defendants**

8                   1.      **The § 1983 Claims Against Governor Newsom Are Barred
9                           Under Absolute Legislative Immunity**

10          To the extent Plaintiffs' § 1983 claims against the Governor stem from

11  Governor Newsom signing SB 264 and SB 915 into law (see FAC ¶ 20, 161), those

12  claims, including the requests for damages and for declaratory and injunctive relief,

13  are barred by absolute legislative immunity.  *Cmty. House, Inc. v. City of Boise,*

14  *Idaho*, 623 F.3d 945, 959 (9th Cir. 2010).  "Absolute legislative immunity attaches

15  to all actions taken in the sphere of legitimate legislative activity."  *Bogan v. Scott-*

16  *Harris*, 523 U.S. 44, 54 (1998) (citation and internal punctuation omitted).  The

17  signing of a bill into law by a state governor is an "integral step[] in the legislative

18  process."  *See id*.  Thus, "[a] governor is entitled to absolute immunity for the act of

19  signing a bill into law."  *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal.

20  2012) (dismissing claim against previous governor for signing bill banning open

21  carry of unloaded handgun in public).  On this basis, Governor Newsom is entitled

22  to absolute legislative immunity against the § 1983 claims.

23          Governor Newsom's intent when signing the challenged bills is irrelevant to

24  this immunity.  Plaintiffs allege that Governor Newsom has long attempted to ban

25  gun shows (FAC ¶ 20), and that before AB 893's enactment, he sent a letter to the

26  22nd District Agricultural Association urging such a ban.  FAC ¶ 103, Ex 2.  But

27  "[w]hether an act is legislative turns on the nature of the act, rather than on the

28  motive or intent of the official performing it."  *Bogan*, 523 U.S. at 54.

1

## 2.   All Claims Against Governor Newsom and Secretary Ross Are Barred Under Sovereign Immunity

2

3      The Eleventh Amendment bars a private party from suing a state and its

4    agencies unless the state consents to the suit.  *Los Angeles Branch NAACP v. Los*

5    *Angeles Unified Sch. Dist.*, 714 F.2d 946, 950 (9th Cir. 1983).[5]  Under the

6    exception created by *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity

7    does not bar "actions seeking only prospective declaratory or injunctive relief

8    against state officers in their official capacities" who are acting unconstitutionally.

9    *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  For this exception

10   to apply, "the state officer sued 'must have some connection with the enforcement

11   of the [allegedly unconstitutional] act.'"  *Id.* (quoting *Ex parte Young*, 209 U.S. at

12   157).  This connection "must be fairly direct" and the state official must have more

13   than "a generalized duty to enforce state law or general supervisory power over the

14   persons responsible for enforcing the challenged provision."  *Id*.  Plaintiffs cannot

15   establish this connection as to Governor Newsom and Secretary Ross.

16      Plaintiffs allege that Governor Newsom is "the supreme executive power"

17   over the state and must "see that the law is faithfully executed."  FAC ¶ 20, quoting

18   Cal. Const. art. V, § 1.  But the Ninth Circuit has repeatedly rejected such claims

19   because California's governor lacks the "direct authority and practical ability to

20   enforce" the law in the way *Ex parte Young* requires.  *Nat'l Audubon Soc'y, Inc. v.*

21   *Davis*, 307 F.3d 835, 846-847 (9th Cir. 2002).  Plaintiffs also allege that Governor

22   Newsom has the authority to enforce SB 264 and SB 915.  FAC ¶ 186.  That is

23   incorrect, because it is the Attorney General, not the Governor, who is the "chief

24   law officer of the State."  Cal. Const. art. I, § 13; *see also* Cal. Gov't Code § 12550.

25

26

27   _____

[5] Section 1983 did not abrogate a state's Eleventh Amendment immunity (*Quern v. Jordan*, 440 U.S. 332, 341 (1979)), and California has not waived that immunity with respect to claims brought under § 1983 in federal court.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

28

The requisite connection between Secretary Ross and both SB 264 and SB 915 is similarly nonexistent.  Plaintiffs allege that Secretary Ross "issues guidance for governance and contracting to all agricultural districts throughout California" (FAC ¶ 23), "oversees the operation of the various agricultural districts in the state" (*id.* ¶ 79), and "interpret[s], implement[s], and enforce[s] state laws and policies as to the Fairgrounds, including SB 264 and SB 915" (*id.* ¶ 184).  This "general supervisory power" over the entity that must comply with the challenged laws—the District—is not a sufficient connection.  *L.A. County Bar Ass'n*, 979 F.2d at 704; RJN, Ex. C (Order Granting Motion to Dismiss Plaintiffs' Complaint in *B&L Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-DDL, 2022 WL 3567064, at *3 (S.D. Cal. Aug. 18, 2022).

### 3.   The Damages Claims Against Governor Newsom, Attorney General Bonta, and Secretary Ross Are Not Cognizable Under § 1983

Plaintiffs seek "an order for damages, including nominal damages" (FAC at 63, Prayer for Relief, ¶ 17), but State officials sued in their official capacity for damages are not considered persons for purposes of § 1983.  *See Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997).  Accordingly, the damages claims against Governor Newsom, Secretary Ross, and Attorney General Bonta in their *official* capacities fail as a matter of law.  *See id*.  Any individual-capacity claim for damages also fails because it is "a mere pleading device" that simply repackages the official-capacity claims into individual capacity claims. *Grunert v. Campbell*, 248 F. App'x 775, 778 (9th Cir. 2007).

### 4.   Governor Newsom, Attorney General Bonta, and Secretary Ross Are Also Entitled to Qualified Immunity

Any damages claims against Governor Newsom, Secretary Ross, and Attorney General Bonta also fail based on qualified immunity.  Qualified immunity shields government officials from suits for monetary damages unless a plaintiff presents plausible factual allegations showing "(1) that the official violated a statutory or

1  constitutional right, and (2) that the right was 'clearly established' at the time of the

2  challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation

3  omitted).  This Court can decide "which of the two prongs of the qualified

4  immunity analysis should be addressed first in light of the circumstances in the

5  particular case at hand," and can rule based on the second prong alone.[6]  *Pearson v.*

6  *Callahan*, 555 U.S. 223, 236 (2009).  In conducting the inquiry under the second

7  prong, the dispositive issue is "whether the violative nature of particular conduct is

8  clearly established."  *al-Kidd*, 563 U.S. at 742.  Courts may not define what is

9  "clearly established law" at a "high level of generality."  *White v. Pauly*, 137 S.Ct.

10  548, 552 (2017).  There need not be a case "directly on point," but existing

11  precedent must "be particularized to the facts of the case" and place the question at

12  issue "beyond debate."  *Id.* at 551-552.

13     For the reasons explained below, *post* Argument I.B-D, it is not clearly

14  established that SB 264 and SB 915 violate any rights.  From when they became

15  law until now, it has never been "beyond debate" that they violated the First

16  Amendment or equal protection.  A right is not clearly established unless, at a

17  minimum, there is controlling appellate court precedent providing that the "'right's

18  contours were sufficiently definite that any reasonable official in the defendant's

19  shoes would have understood that he was violating it.'"  *Kisela v. Hughes*, 138 S.

20  Ct. 1148, 1153 (2018) (citation omitted).  Plaintiffs cannot point to any such

21  precedent.  Indeed, the court in *B&L Prods., Inc. v. Newsom* rejected the same

22  argument.  *See* No. 21-CV-01718-AJB-DDL, 2022 WL 3567064, at *5 (S.D. Cal.

23  Aug. 18, 2022).[7]

24

25     [6] Plaintiffs cannot meet the first prong for the reasons explained in Argument I.B-D.

26     [7] In addition, the Second Amendment Foundation (SAF) lacks standing because there is no allegation that it distributes materials at gun shows at the

27  Fairgrounds or that its members have attend such shows.  FAC ¶ 18; *see Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th

28  Cir. 2012); *Haynie v. Harris*, 658 F. App'x 834, 836 (9th Cir. 2016).

9

**B.** **Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claim**

**1.** **SB 264 and SB 915 Do Not Regulate Speech or Expressive Conduct, and They Survive Rational Basis Review**

Plaintiffs allege that SB 264 and SB 915 violate their First Amendment rights to free speech, association, and assembly.  Yet the First Amendment is not implicated if the challenged statute does not regulate speech or expressive conduct, which is conduct undertaken with an "'intent to convey a particularized message'" when the "'likelihood was great that the message would be understood by those who viewed it.'"  *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted).  It is Plaintiffs' burden "to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).  Plaintiffs cannot meet their burden here.

SB 264 solely prohibits "the sale of any firearm, firearm precursor part, or ammunition on the property or in the buildings that comprise the OC Fair and Event Center . . . or any successor or additional property owned, leased, or otherwise occupied or operated by the district."  Cal. Penal Code § 27575(a).  SB 915 similarly prohibits the same activity on state property.  Cal. Penal Code § 27573(a).

The Ninth Circuit has long held that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment."  *Nordyke v. Santa Clara Cty.*, 110 F.3d 707, 710 (9th Cir. 1997) (*Nordyke 1997*).  Thus, hindering of such sales does not implicate the First Amendment.  *Nordyke v. King*, 319 F.3d 1185, 1191 (9th Cir. 2003) (*Nordyke 2003*) (ordinance banning the possession of firearms on county property did not violate the First Amendment even when ban impaired the sale of firearms).

Plaintiffs assert that gun shows are entitled to First Amendment protection because the challenged laws' "intent and effect is to ban gun shows from publicly owned spaces altogether."  MPI at 9.  While SB 264 and SB 915 do not themselves prohibit gun shows, Plaintiffs allege that they have the "practical effect" of doing so

1   (FAC ¶ 154) because gun shows would become "unprofitable and economically

2   infeasible" with the laws in effect (*id.* ¶ 75). But Plaintiffs admit that more than 60

3   percent of vendors at the B&L gun shows do not sell firearms and ammunition;

4   instead, they sell items that contribute to the other reasons that people attend gun

5   shows, e.g., to exchange ideas about the lawful uses of firearms, engage in a

6   cultural marketplace advancing "gun culture," and learn how to comply with

7   firearms laws. *Id.* ¶¶ 73-76. If third parties make their own independent business

8   decisions not to sell accessories or provide firearms education at a site where

9   firearms sales are prohibited, it is those parties' intervening decisions—not the

10  challenged laws—that determine whether gun shows remain financially viable.

11      Said otherwise, Plaintiffs are not exempt from non-speech restrictions—

12  whether fire-code restrictions on maximum capacity, business taxes, or a

13  prohibition on firearm sales—that might ultimately prevent their event from being

14  *profitable. See Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 891, 895 (9th

15  Cir. 2018) (rejecting argument that "[l]aws that restrict the ability to fund one's

16  speech are burdens on speech," and concluding that there "exists no standalone

17  right to receive the funds necessary to finance one's own speech"). A restriction on

18  non-speech conduct (the sale of firearms and ammunition) does not become a

19  restriction on speech just because it might impact the profitability of separate and

20  unrestricted expressive conduct (the alleged "gun culture" at gun shows). *See*

21  *Nordyke 2003*, 319 F.3d at 1191; *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567

22  (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce

23  or conduct from imposing incidental burdens on speech.").[8]

24      To the extent Plaintiffs may contend that the sale of firearms, firearm

25  precursor parts, and ammunition at gun shows is "inextricably intertwined" with

26  ⎯⎯⎯⎯⎯⎯⎯
    [8] Plaintiff B&L's declarant alleges that the District has not cooperated with
27  B&L in scheduling events. Olcott Decl. ¶¶ 7, 9. B&L last communicated with the
    District in December of 2021. Olvera Decl. ¶ 7. The District is willing to work
28  with B&L in reserving the venue for lawful events. *Id.*, ¶ 10.

11

expressive activity, this argument also fails.  Under this theory, when commercial speech (speech that proposes a transaction) is inextricably intertwined with non-commercial speech, the entirety of the speech is entitled to non-commercial speech protections.  *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Hunt v. City of Los Angeles*, 638 F.3d 703, 715-716 (9th Cir. 2011).  But, as stated previously, the sale of a firearm or ammunition is not even commercial speech; it is not speech at all.  *Nordyke 1997*, 110 F.3d at 710.  Also, "a gun itself is not speech," nor is the possession of a gun generally.  *Nordyke 2003*, 319 F.3d at 1189.  There is thus no commercial speech with which the non-commercial speech may intertwine.

In addition, this theory does not apply when "the two components of speech can be easily separated."  *Hunt*, 638 F.3d at 715.  The only nexus alleged by Plaintiffs is the purported profitability of gun shows that include firearm sales.  But profitability is not a "meaningful nexus" supporting a determination that firearm sales and non-commercial speech are inextricably intertwined.  *Hunt*, 638 F.3d at 716.  Courts have repeatedly rejected the argument that the *sale* of a regulated item is inextricably intertwined with *speech pertaining to* that item, and this Court should do the same.  *Id.* at 716-717 (the plaintiffs' sale of shea butter and incense was not inextricably intertwined with the spiritual messages they incorporated into their sales pitches); *see also Fox*, 492 U.S. at 474 (prohibiting the sale of housewares in a college dorm did not "prevent[] the speaker from conveying, or the audience from hearing" non-commercial speech about home economics).

Because SB 264 and SB 915 do not regulate speech or inherently expressive conduct, they are subject to rational basis review, which they satisfy.  *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017).  Under rational basis review, duly enacted laws are presumed to be constitutional, and it is enough that "the government *could* have had a legitimate reason for acting as it did."  *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psych.*, 228 F.3d

1043, 1050 (9th Cir. 2000) (internal quotation marks and citation omitted).  SB

264's legislative findings describe multiple public safety concerns related to the

sale of firearms, firearm precursor parts, and ammunition at gun shows held at the

Fairgrounds and elsewhere, including the trafficking of illegal firearms by a vendor,

sales of firearms to prohibited persons, and the illegal importation of large-capacity

magazines.  FAC, Ex. 11 at 3.  Similarly, the Senate Committee on Public Safety's

analysis of SB 915 concluded that it is designed to promote public safety, prevent

circumvention of gun safety laws at gun shows, and reduce the risk of illegally

trafficked firearms.  FAC, Ex. 16 at 1.

The Legislature could reasonably conclude that because the root of these

public safety issues was the buying and selling of firearms, firearm precursor parts,

and ammunition at gun shows, it was necessary to prohibit such transactions to

enhance safety for gun show attendees and for the communities surrounding the

county fairgrounds.  Preventing and mitigating gun violence is an "undoubtedly

important" interest. *Duncan v. Bonta*, 19 F.4th 1087, 1109 (9th Cir. 2021), *cert.*

*granted*, *judgment vacated*, 142 S. Ct. 2895 (2022), and *vacated and remanded*, 49

F.4th 1228 (9th Cir. 2022).  Moreover, the Ninth Circuit has recognized the

important government interests implicated by some of the public safety concerns

addressed by SB 264 and SB 915, including the harms that result from large-

capacity magazines (*id.*) and from prohibited persons possessing firearms (*see*

*United States v. Chovan*, 735 F.3d 1127, 1139-1140 (9th Cir. 2013)).  These are

"plausible reasons" for the passage of SB 264 and SB 915, and thus, the "'inquiry is

at an end.'" *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013)

(citation omitted).

**2.    SB 264 and SB 915 Apply to a Limited Public Forum, and**
**They Satisfy the Reasonableness Standard**

Although SB 264 and SB 915 do not regulate speech or expressive conduct,

they would nevertheless satisfy the deferential standard for speech regulations in a

1   limited public forum if that standard were to apply.  Courts use "a forum based
2   approach for assessing restrictions that the government seeks to place on the use of
3   its property." *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los*
4   *Angeles*, 764 F.3d 1044, 1049 (9th Cir. 2014) (internal quotation marks and
5   citations omitted).  "[T]he two main categories of fora are public (where strict
6   scrutiny applies) and non-public (where a more lenient 'reasonableness' standard
7   governs)." *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001).  A third
8   category is the designated public forum, which is a forum "'where the government
9   intentionally opens up a nontraditional forum for public discourse.'"  *Id.* (citation
10  omitted).  A sub-category of the designated public forum is the limited public
11  forum, where the reasonableness test applies and which is "'a type of nonpublic
12  forum that the government has intentionally opened to certain groups or to certain
13  topics.'"  *Id.* at 1074-1075 (citation omitted).
14          The various events the Fairgrounds and other similar state property host—such
15  as gun shows, concerts, and industry shows—demonstrate that the Fairgrounds
16  "exists to provide a means for a great number of exhibitors temporarily to present
17  their products or views, be they commercial, religious, or political, to a large
18  number of people in an efficient fashion." *Heffron v. Int'l Soc'y for Krishna*
19  *Consciousness, Inc.*, 452 U.S. 640, 655 (1981).  Accordingly, the Fairgrounds is a
20  limited public forum, as is similar state property.  *See id.* at 643, 655 (Minnesota
21  State Fair, a "major public event" on state land, was a limited public forum).  In
22  contrast, "[p]ublicly owned or operated property does not become a 'public forum'
23  simply because members of the public are permitted to come and go at will."
24  *United States v. Grace*, 461 U.S. 171, 177 (1983).  And "the government does not
25  create a designated public forum when it does no more than reserve eligibility for
26  access to the forum to a particular class of speakers, whose members must then, as
27  individuals, 'obtain permission' [citation omitted] to use it." *Arkansas Educ.*
28  *Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998).

In a limited public forum, a permissible restriction need only be "'viewpoint neutral and reasonable in light of the purpose served by the forum[.]'" *Hopper*, 241 F.3d at 1074 (citation omitted). The reasonableness inquiry "is a deferential one." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1223 (9th Cir. 2003). SB 264 and SB 915 are viewpoint neutral; they apply to any event on the Fairgrounds and all state property, not just to gun shows. Cal. Penal Code §§ 27573, 27575. And they enact a reasonable restriction on illegal firearm, firearm precursor part, and ammunition transactions at gun shows for the purpose of mitigating gun violence. *See Nordyke v. King*, 644 F.3d 776, 792 (9th Cir. 2011) (*Nordyke 2011*) (the reduction of gun violence on county property was a plausible purpose for an ordinance banning the possession of firearms or ammunition on county property).[9] The allowances within these statutes (mostly for law enforcement) are tailored to and consistent with their public safety purpose. Cal. Pen. Code § 27575(b)(1)-(4); *Cf. Nordyke 2011*, 644 F.3d at 793 (exempting gun-bearing military reenactors from the ban on the possession of firearms was not constitutionally suspect). SB 264 and SB 915 thus meet the reasonableness standard applicable to limited public forums.

### 3.   SB 264 and SB 915 Do Not Ban Protected Commercial Speech

Commercial speech is "expression related solely to the economic interests of the speaker and its audience," and is accorded less protection than non-commercial speech. *Central Hudson Gas*, 447 U.S. at 561-563. Plaintiffs cite *Nordyke v. Santa Clara County*, 110 F.3d 707, 713 (9th Cir. 1997) (*Nordyke 1997*), for the principle that "[a]n offer to sell firearms or ammunition" is commercial speech. *Nordyke 1997*, 110 F.3d at 710. *Nordyke 1997* concerned a contract provision that explicitly prohibited the "offering for sale" of firearms (*id.* at 708-709), but in that case no

---

[9] An en banc panel of the Ninth Circuit "affirm[ed] the district court's ruling on the First Amendment for the reasons given by the three-judge panel." *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (*Nordyke 2012*).

1    law banned the sale of firearms at the county fairgrounds, and thus the offer to sell

2    firearms there concerned a lawful activity.  *Id.* at 710-711.  Here, SB 264 and SB

3    915 prohibit the sale of firearms, firearm precursor parts, and ammunition at the

4    Fairgrounds and state property, respectively, and thus an offer to make such sales,

5    assuming that it does not concern a lawful activity, is not protected commercial

6    speech.  *See id.*

7          In any event, SB 264 and SB 915 would satisfy intermediate scrutiny, which is

8    the standard that applies to regulations of commercial speech.  *See Retail Digit.*

9    *Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017).  First, there is a

10    "substantial interest in protecting the people from those who acquire guns illegally

11    and use them to commit crimes resulting in injury or death of their victims."

12    *Nordyke 1997*, 110 F.3d at 713.  Second, SB 264 and SB 915 "directly advance[]"

13    this government interest (*Central Hudson*, 447 U.S. at 566) because prohibiting

14    firearm, firearm precursor part, and ammunition transactions addresses the threat of

15    illegal transactions that occur despite existing state laws.  *See* FAC, Ex. 11 at 3, Ex.

16    16 at 3-4.  Third, SB 264 and SB 915's exceptions, such as gun buyback events,

17    reasonably fit with this public safety interest because such events can help reduce

18    gun violence.  *Cf. Boyer v. City of Los Angeles*, No. CV 12-04005, 2012 WL

19    13013037, at *5 (C.D. Cal. Aug. 23, 2012) (describing gun buyback program in

20    which people voluntarily surrendered firearms to law enforcement in exchange for

21    gift cards).  SB 264 and SB 915 are thus the "[s]ubstantial, effective, and carefully

22    drafted legislative act[]" the Ninth Circuit indicated could satisfy the *Central*

23    *Hudson* test.  *Nordyke 1997*, 110 F.3d at 713.

24         **4.    SB 264 and SB 915 Are Not Content-Based Laws**

25          Even if SB 264 and SB 915 were to restrict *non*-commercial speech, the

26    restriction would be content-neutral and would satisfy the applicable intermediate

27    scrutiny standard.  Plaintiffs allege that SB 264 and SB 915 effectively end gun

28    shows at the Fairgrounds and state property, thereby destroying a vital "gun

culture" platform.  *See, e.g.*, FAC ¶ 62.  A law is content-based, and thus triggers strict scrutiny, only if it "hits speech because it aimed at it."  *Nordyke 2011*, 644 F.3d at 792.  Here, SB 264 and SB 915 apply to *all events* at the Fairgrounds and state property, not just to gun shows; firearms, ammunition, and firearm precursor parts may not be sold at *any* event of *any* type at the Fairgrounds or on state property, except for gun buyback events and exempted sales and purchases.  Cal. Penal Code §§ 27573, 27575.  And as in *Nordyke 2011*, the plain language of each challenged law "suggests that gun violence, not gun culture, motivated its passage"—which is why each law targets sales of firearms, firearm precursor parts, and ammunition exclusively, not expressive activities or other conduct.  644 F.3d at 792.

Plaintiffs emphasize personal statements made by Governor Newsom and Senator Min, but courts and litigants should "analyze[] the statute in terms of the interests the state declared, not the personal likes or dislikes of the law's backers." *Nordyke 2011*, 644 F.3d at 792.  The Supreme Court "has long disfavored arguments based on alleged legislative motives."  *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255 (2022).  After all, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *U.S. v. O'Brien*, 391 U.S. 367, 384 (1968).

The challenged laws would survive intermediate scrutiny because they further an important or substantial government interest "'that would be achieved less effectively absent the regulation.'"  *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 67 (2006) (citation omitted).  When applying intermediate scrutiny, courts "defer to reasonable legislative judgments" because "'[s]ound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable.'"  *Duncan*, 19 F.4th at 1108

1    (citations omitted).  Indeed, "history, consensus, and 'simple common sense'" can

2    suffice.  *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (citation omitted).

3         As previously discussed, SB 264 and SB 915 serve the "undoubtedly

4    important" interest of preventing and mitigating gun violence.  *Duncan*, 19 F.4th at

5    1109.  Plaintiffs allege that the laws do not directly serve this purpose because they

6    fail to identify a public safety concern specific to B&L gun shows held at the

7    Fairgrounds and state property.  *E.g.*, FAC ¶ 136.  But such a nexus is not required.

8    The laws need only generally further a public safety interest.  *Nordyke 2011*, 644

9    F.3d at 793 ("[E]ven for an as-applied challenge, the government need not show

10   that the litigant himself actually contributes to the problem that motivated the law

11   he challenges.").  Moreover, the prohibitions are no more restrictive than necessary

12   because they are a "straightforward response" to the danger of illegal transactions

13   occurring at the Fairgrounds and state property.  *Id.* at 794.  California's existing

14   legal framework (FAC, ¶¶ 43-56) is not a sufficient alternative because, as the

15   legislative findings indicate, illegal transactions still occur at gun shows.

16           **5.    The Prior Restraint Claim Fails Because SB 264 and SB
                      915 are State Statutes that the District Must Follow**
17

18        Plaintiffs also claim that SB 264 and SB 915 are a prior restraint on speech

19   because they give the District "unfettered discretion to determine what constitutes a

20   'sale' under the law and is thereby prohibited at the Fairgrounds."  FAC ¶ 219.  As

21   is evident in Plaintiffs' other allegations, however it is the Penal Code determines

22   what is a sale under the law.  *Id.* ¶ 55, n.4 (citing Cal. Penal Code §§ 27310, 26805,

23   27545).  Because SB 264 and SB 915 do not create a scheme placing "'unbridled

24   discretion in the hands of a government official or agency'" (*FW/PBS, Inc. v. City

25   of Dallas*, 493 U.S. 215, 225 (1990)), they are not a prior restraint on speech.

26

27

28

1

2

**C.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Equal Protection Claim**

3    Plaintiffs' equal protection claim is subsumed by their First Amendment

4    claim, and does not plausibly allege a "class of one claim."  Plaintiffs allege that SB

5    264 and SB 915 abridge Plaintiffs' right to equal protection because they are

6    viewpoint-discriminatory and animus-based restrictions on Plaintiffs' protected

7    speech that serve no compelling governmental interest.  FAC ¶ 235.  An equal

8    protection claim relating to allegedly expressive conduct is evaluated through

9    "'essentially the same'" analysis used for the First Amendment claim.  *Dariano v.*

10   *Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 780 (9th Cir. 2014).  The claim

11   "rise[]s and fall[s] with the First Amendment claims" because Plaintiffs "do not

12   allege membership in a protected class or contend that the [challenged] conduct

13   burdened any fundamental right other than their speech rights."  *OSU Student All. v.*

14   *Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

15   Even if the equal protection claim were to survive independently of the First

16   Amendment claim, gun-show promoters and participants are not considered a

17   suspect class.  *Nordyke 2011*, 644 F.3d at 794.  Plaintiffs must then rely on a "class-

18   of-one" theory, in which no membership in a class is alleged.  *Vill. of Willowbrook*

19   *v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiffs aver that the State Defendants refuse

20   to allow them "equal use of the public facilities while continuing to allow contracts

21   for the use of these facilities with other similarly situated legal and legitimate

22   businesses . . . ."  FAC ¶ 238.  However, a class-of-one claim requires a showing of

23   intentional and differential treatment as compared to similarly situated persons or

24   groups.  *Vill. of Willowbrook*, 528 U.S. at 564.  As Plaintiffs admit, they are not

25   similarly situated to other groups because of California's "rigorous regulatory

26   regime" for gun shows.  FAC ¶ 43.  The class-of-one claim cannot stand without

27   identifying a similarly situated business.  *Teixeira v. Cty. of Alameda*, 822 F.3d

28   1047, 1053 (9th Cir. 2016) (rejecting a class-of-one claim given appellant's

1  acknowledgement that gun stores "are materially different from other retail

2  businesses" due to the regulations such stores must follow).[10]

3      Rational basis review thus applies to this claim, *Nordyke 2012*, 681 F.3d at

4  1043 n.2—which, for the reasons previously discussed, is satisfied here. *Ante*

5  Argument I.B.1.

### D. Plaintiffs Are Not Likely to Succeed on the Merits of Their Second Amendment Claim

#### 1. New Analytical Framework for Second Amendment Claims

9      In *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022)

10 (*Bruen*) the Supreme Court set forth a new analytical framework for Second

11 Amendment claims.  The Court rejected the use of means-end scrutiny in the "two-

12 step test" that most federal courts of appeals had adopted for resolving those claims.

13 *Bruen*, 142 S. Ct. at 2126-2127.  Instead, *Bruen* held that courts must initially

14 assess whether the "Second Amendment's plain text covers" an individual's

15 "proposed course of conduct," in other words, whether the regulation at issue

16 prevents any "people" from "keep[ing]" or "bear[ing]" "Arms."  *Id.* at 2126, 2134.

17 If the answer is no, there is no violation of the Second Amendment.  If the answer

18 is yes, the government can still justify its regulation—and overcome a

19 constitutional challenge—by showing that the challenged law is "consistent with

20 the Nation's historical tradition of firearm regulation."  *Id.* at 2130.

21      While *Bruen* announced a new rubric for analyzing Second Amendment

22 claims, it also made clear that governments may continue to adopt reasonable gun

23 safety regulations.  The Court recognized that the Second Amendment is not a

24 "regulatory straightjacket."  *Bruen*, 142 S. Ct. at 2133.  Nor is it a right to "keep

25 and carry any weapon whatsoever in any manner whatsoever and for whatever

26 purposes."  *Id.* at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626

27 ───────────────

28 [10] An en banc panel of the Ninth Circuit affirmed the district court's rejection of the equal protection claim "for the reasons given in the panel opinion." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 676 n.7 (9th Cir. 2017).

(2008)).  And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Id.* at 2161 (Kavanaugh, J., concurring).  Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636).  And he emphasized that the "presumptively lawful regulatory measures" that *Heller* identified—including laws "imposing conditions and qualifications on the commercial sale of arms," "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws "forbidding the carrying of firearms in sensitive places," and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[11]

### 2.  SB 264 and SB 915 Do Not Meaningfully Restrict Plaintiffs' Access to Firearms

It is undisputed that SB 264 and SB 915 "do[] not bar the possession of firearms, ammunition, or firearm precursor parts . . . ." FAC ¶ 147.  Instead, Plaintiffs allege that SB 264 and SB 915 violate their "right to *buy and sell* firearms and the ammunition and parts necessary for the effective operation of those firearms." FAC ¶¶ 238, emphasis added.  Plaintiffs rely on case law addressing the acquisition of arms, ammunition, and accessories (MPI at 22-23, citing *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014), and *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020)), but "gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017).

---

[11] Justice Kavanaugh's observations in concurrence, with which Chief Justice Roberts joined, warrant special consideration because his and the Chief Justice's votes were necessary to secure a majority for the lead *Bruen* opinion. *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun.  Nor does it decide anything about the kinds of weapons that people may possess.").

1      In *Teixeira*, a business partnership sought to open a gun store in an

2  unincorporated area of Alameda County. *Teixeira*, 873 F.3d at 673-674.  Before

3  opening the store, the partnership had to obtain a conditional use permit from the

4  county and comply with a county zoning ordinance. *Id.*  The ordinance required

5  that any business selling firearms be at least 500 feet away from a residentially

6  zoned district, school, other gun store, and other specified properties. *Id.*  Because

7  the planned location for the partnership's gun store was less than 500 feet away

8  from a residentially zoned district, the conditional use permit was ultimately denied.

9  *Id.* at 674-676.  The partnership was unable to identify another suitable location in

10  unincorporated Alameda County and subsequently sued the county claiming that

11  the ordinance infringed the Second Amendment rights of the partnership to sell

12  firearms and the rights of the potential customers to buy firearms. *Id.* at 673, 676.

13      An en banc panel of the Ninth Circuit held that the county zoning ordinance

14  "survive[d] constitutional scrutiny." *Teixeira*, 873 F.3d at 673.  The Ninth Circuit

15  separately analyzed the claims of a Second Amendment right to sell firearms and a

16  right to purchase firearms.  As to the former, the Ninth Circuit conducted a textual

17  and historical analysis of the Second Amendment to evaluate whether there was a

18  freestanding right to sell firearms. *Id.* at 681-683.  Beginning with the Second

19  Amendment's text, the Court concluded that "[n]othing in the specific language of

20  the Amendment suggests that sellers fall within the scope of its protection." *Id.* at

21  683.  Specifically, the operative language of "keep" and "bear" arms confers a right

22  to have and carry weapons, but does not "confer[] an independent right to sell or

23  trade weapons." *Id.*  The Court's historical analysis "confirm[ed] that the right to

24  sell firearms was not within" the historical understanding of the Second

25  Amendment's scope. *Id.*  After highlighting the relevant historical evidence, the

26  Ninth Circuit concluded that "no historical authority suggests that the Second

27  Amendment protects an individual's right to sell a firearm unconnected to the rights

28  of citizens to 'keep and bear' arms." *Id.* at 684-687.

As to whether the ordinance violated any right of potential customers to purchase firearms, the Ninth Circuit held that the complaint "did not adequately allege . . . that Alameda County residents cannot purchase firearms within the County as a whole, or within the unincorporated areas of the County in particular." *Teixeira*, 873 F.3d at 678.  The "vague allegations" failed to show that the ordinance meaningfully restricted the ability of Alameda County residents to purchase firearms, and exhibits to the complaint indeed showed that residents could freely purchase firearms in the county.  *Id.* at 679.  The Ninth Circuit added that the "Second Amendment does not elevate convenience and preference over all other considerations." *Id.* at 680.

*Teixeira*'s reasoning remains sound after *Bruen*.  *Teixeira* did not apply means-end scrutiny, but rather, examined the Second Amendment's text and historical record.  873 F.3d at 678-687.  Because the same analysis applies here, *Teixeira* forecloses Plaintiffs' Second Amendment claim.

First, to the extent that Plaintiffs suggest otherwise, the Second Amendment's plain text does not confer a standalone right to sell firearms.  *See Teixeira*, 873 F.3d at 683; *Tilotta*, 2022 WL 3924282, at *5-6.  The Second Amendment "right to possess and carry weapons in case of confrontation," *Bruen*, 142 S. Ct. at 2127, "does not imply a further right to sell and transfer firearms." *Tilotta*, 2022 WL 3924282, at *5.  The Supreme Court has thrice made clear that its Second Amendment opinions "should not be taken to cast doubt . . . on laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-627; *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 787 (2010); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).  SB 264 and SB 915, which prohibit the sale of firearms, precursor parts and ammunition on state-owned property, falls squarely within this category of laws.  Because the proposed conduct is not

protected, there is no need to review the relevant historical evidence. *Tilotta*, 2022 WL 3924282 at *5-6.[12]

As to Plaintiffs' contention that the challenged laws infringe their Second Amendment right to buy and access firearms, they have not plausibly alleged that SB 264 and SB 915 impede them from purchasing a firearm or ammunition at a place other than a gun show at the Fairgrounds or other state property. *See Teixeira*, 873 F.3d at 673, 678-680. Nor could they do so. The very nature of gun shows is that they are a temporary marketplace during specified dates. *See* FAC ¶ 90. A gun show is not akin to a brick-and-mortar gun store with a permanent location like the store at issue in *Teixeira*. Plaintiffs fail to allege that the challenged laws meaningfully restrict their access to purchase firearms and ammunition. *See, e.g.*, FAC ¶ 55. This claim is thus unlikely to succeed.

## II. PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM

Plaintiffs do not allege any economic injury—only that they have suffered a constitutional violation. Because their claims are not likely to succeed on the merits, *ante* Argument I, their allegations of irreparable harm also fail.

## III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH STRONGLY AGAINST INJUNCTIVE RELIEF

"'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012), citation omitted. That is true here, where the challenged laws address the State's compelling interest in public safety and reducing gun violence in the legislative findings. *Ante* Background. The legislative history for these laws also supports this conclusion, noting that "gun shows rank second to corrupt dealers as a source for illegally trafficked firearms" because gun shows are "'the critical moment in the chain of custody for many

---

[12] If the Court disagrees, then State Defendants request an opportunity to compile the relevant historical record to supplement the historical evidence examined in *Teixeira*.

guns, the point at which they move from the somewhat-regulated legal market to the shadowy, no-questions-asked illegal market."  MPI, RJN, Ex. 2 at 3, Ex. 10 at 2, Ex. 17 at 2.[13]  Gun shows "are [also] a common venue for straw purchases and illegal gun transfers."  MPI, RJN, Ex. 10. at 3; Ex. 17 at 4.[14]

Given the rationale for the challenged statutes, "[t]he costs of being mistaken[] on the issue of whether the injunction would have a detrimental effect on []gun crime, violence . . . would be grave.  These costs would affect members of the public, and they would affect the Government which is tasked with managing []gun violence."  *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016).  In contrast, without an injunction, the public can still engage in gun-related activities and speech, and can still purchase and bear arms.

## CONCLUSION

This Court should deny the motion for preliminary injunction.

Dated:  December 9, 2022        Respectfully submitted,

Rob Bonta
Attorney General of California
R. Matthew Wise
Supervising Deputy Attorney General

/s/Nicole J. Kau
Deputy Attorney General
*Attorneys for Defendants Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and 32nd District Agricultural Association*

SA2022303648; 65562519_3

[13] Citing the Center for American Progress and the Bureau of Alcohol, Tobacco, and Firearms, which states that gun shows are a "major trafficking channel" and "were the second largest source of illegally trafficked firearms."
[14] Citing the Giffords Law Center to Prevent Gun Violence.

# CERTIFICATE OF SERVICE

Case Name:  **B&L Productions, Inc., et al. v.**      No.   **8:22-cv-01518 JWH (JDEx)**
**Gavin Newsom, et al.**

I hereby certify that on <u>December 9, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 9, 2022</u>, at Los Angeles, California.

<table>
<tr><td>Carol Chow</td><td><em>/s/Carol Chow</em></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2022303648