ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
NICOLE J. KAU
Deputy Attorney General
State Bar No. 292026
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6220
  Fax:  (916) 731-2125
  E-mail:  Nicole.Kau@doj.ca.gov
*Attorneys for Defendants Governor Gavin Newsom,
Attorney General Rob Bonta, Secretary Karen Ross,
and 32nd District Agricultural Association*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 8:22-cv-01518 JWH (JDEx)<br><br>**STATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:           January 6, 2022<br>Time:           9:00 a.m.<br>Courtroom:   9D<br>Judge:          The Honorable John W. Holcomb<br>Trial Date:    TBD<br>Action Filed: August 12, 2022 |

i

# INTRODUCTION

Under Federal Rule of Evidence 201, Defendants Governor Gavin Newsom, in his official and individual capacity; Attorney General Rob Bonta, in his official and individual capacity; Karen Ross, Secretary of California Department of Food & Agriculture, in her official and individual capacity; and the 32nd District Agricultural Association (collectively, "State Defendants"), respectfully request the Court to take judicial notice of the following documents in support of the State Defendants' Opposition to Motion for Preliminary Injunction:

1.      Attached as **Exhibit A** is a true and correct copy of the Complaint (ECF No. 1), filed on October 4, 2021, in *B&L Prods., Inc., et al. v. Gavin Newsom, et al.*, Case No. 21-CV-1718-AJB-DDL, in the Southern District of California.

2.      Attached as **Exhibit B** is a true and correct copy of the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint (ECF No. 17-1), filed on January 24, 2022, in *B&L Prods., Inc., et al. v. Gavin Newsom, et al.*, Case No. 21-CV-1718-AJB-DDL, in the Southern District of California.

3.      Attached as **Exhibit C** is a true and correct copy of the Order Granting Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 35), filed on August 18, 2022, in *B&L Prods., Inc., et al. v. Gavin Newsom, et al.*, Case No. 21-CV-1718-AJB-DDL, in the Southern District of California.  This can also be found at 2022 WL 3567064.

4.      Attached as **Exhibit** D is a true and correct copy of the online docket of *B&L Prods., Inc., et al. v. Gavin Newsom, et al.*, Case No. 21-CV-1718-AJB-DDL, as of December 8, 2022.

# STANDARD OF REVIEW

The Court may take judicial notice of any fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's

1    territorial jurisdiction; or (2) can be accurately and readily determined from sources

2    whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  A

3    court must take judicial notice of such a fact if requested by a party and supplied

4    with the necessary information.  *Id*. 201(c)(2).  "It is well established that a court

5    can take judicial notice of its own files and records under Rule 201 of the Federal

6    Rules of Evidence."  *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011,

7    1034 (C.D. Cal. 2015).  Courts "may take judicial notice of matters of public record

8    without converting a motion to dismiss into a motion for summary judgment."

9    *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting

10   *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

11                              **DISCUSSION**

12           All exhibits attached hereto are public records filed in the United States

13   District Court, Southern District of California, and their accuracy cannot reasonably

14   be questioned.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (noting

15   that a court may take judicial notice of its own records in other cases, as well as the

16   records of an inferior court in other cases).  The State Defendants request judicial

17   notice of these exhibits because they are from a related case challenging the

18   constitutionality of AB 893, which addresses the same issues as the above-

19   captioned matter.  Because each of these exhibits is a public record, the request

20   should be granted.

21                              **CONCLUSION**

22           The State Defendants request judicial notice of all exhibits attached.

23

24

25

26

27

28

Dated:  December 9, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General

/s/ NICOLE J. KAU
Deputy Attorney General
*Attorneys for Defendants Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and 32nd District Agricultural Association*

SA2022303648
65477895.docx

# EXHIBIT A

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs B&L Productions, Inc., Barry Bardack, Ronald J. Diaz, Sr., John Dupree, Christopher Irick, Robert Solis, Lawrence Michael Walsh, Captain Jon's Lockers, LLC, L.A.X. Firing Range, Inc., California Rifle & Pistol Association, Incorporated, and South Bay Rod and Gun Club, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST; BARRY BARDACK; RONALD J. DIAZ, SR.; JOHN DUPREE; CHRISTOPHER IRICK; ROBERT SOLIS; LAWRENCE MICHAEL WALSH; CAPTAIN JON'S LOCKERS, LLC; L.A.X. FIRING RANGE, INC., d/b/a LAX AMMO; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; SOUTH BAY ROD AND GUN CLUB, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity; ROBERT BONTA, in his official capacity as Attorney General of the State of California and in his personal capacity; KAREN ROSS, in her | CASE NO: '21CV1718 AJB KSC <br><br> **COMPLAINT FOR MONETARY, DECLARATORY & INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** <br><br> **(1) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH - POLITICAL];** <br><br> **(2) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-MIXED POLITICAL/ COMMERCIAL];** <br><br> **(3) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH-COMMERCIAL];** <br><br> **(4) VIOLATION OF 42 U.S.C. § 1983 [PRIOR RESTRAINT ON SPEECH];** <br><br> **(5) VIOLATION OF 42 U.S.C. § 1983 [RIGHT TO ASSEMBLY];** <br><br> **(6) VIOLATION OF 42 U.S.C. § 1983 [EQUAL PROTECTION];** |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | |
|---|---|
| official capacity as Secretary of California Department of Food & Agriculture and in his personal capacity; STEPHAN SUMMER, in his official capacity as District Attorney of San Diego County; THOMAS MONTGOMERY, in his official capacity as County Counsel of San Diego County; 22nd DISTRICT AGRICULTURAL ASSOCIATION; DOES 1-50; | **(7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br><br>**(8) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br><br>**(9) INTENTIONAL INTERFERENCE WITH CONTRACT.** |
| Defendants. | **DEMAND FOR JURY TRIAL**<br><br>**NOTICE OF UNCONSTITUTIONALITY OF STATE STATUTE**<br><br>**NOTICE OF RELATED CASE** |

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.     Plaintiff B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST has operated popular, safe, heavily regulated, legal and family-friendly gun shows as a business in California for over 30 years, including at the Del Mar Fairgrounds.

2.     Crossroads produces gun shows at the Fairgrounds where like-minded individuals gather to engage in commerce related to, and necessary for, the lawful and regulated exercise of Second Amendment rights for themselves, their exhibitors, their patrons, their customers, and the general public. This safe and regulated marketplace promotes public safety, even for people who do not attend gun shows because it will tend to reduce the unregulated transfer of firearms within San Diego County. Furthermore, by providing a convenient forum for Californians to exercise their right to acquire firearms locally, gun shows at the Fairgrounds will have the tendency to discourage the sale and importation of firearms from other states with less strict gun laws than California.

3.     Plaintiffs Barry Bardack, Ronald J. Diaz, Sr., John Dupree, Christopher Irick, Robert Solis, Lawrence Michael Walsh, Captain Jon's Lockers, LLC, L.A.X Firing Range, d/b/a LAX Ammo, California Rifle & Pistol Association, Incorporated, South Bay Rod and Gun Club, Inc., and Second Amendment Foundation, Inc., attend and participate in the Crossroads gun show to engage in First Amendment activities that are both necessary and essential to the open, robust, and lawful exercise of their Second Amendment rights.

4.     At the gun show, Plaintiffs associate with like-minded people, participate in public discussions, attend informational forums, distribute and collect information, make offers for sale, make offers to buy, and engage in legal and political discussions related to the Second Amendment, which are all forms of speech protected by the First Amendment. Discussions include, but are not limited to, firearms and ammunition, firearm technology, firearm safety, and firearm law

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  and politics. Participants also exchange information about where to hunt and where

2  to practice shooting, where and from whom to receive training, gunsmithing, gun

3  repair, gun art, and many other topics that arise from the right to acquire, own,

4  possess, enjoy, and celebrate arms as a quintessentially American artifact with

5  constitutional significance.

6      5.     Defendants are government actors who, through the adoption and

7  enforcement of Assembly Bill 893, codified at California Food & Agricultural Code

8  section 4158,[1] which prohibits the sale of firearms and ammunition at the

9  Fairgrounds with the intention and effect of shuttering gun show events altogether,

10  have engaged in and will continue to engage in action that violates Plaintiffs'

11  constitutional rights to free speech, assembly, and equal protection. Their actions

12  also constitute prior restraint.

13      6.     What's more, the conduct of Defendants Newsom, Bonta, Ross, and the

14  22nd District Agricultural Association also constitutes intentional and/or negligent

15  interference with the prospective economic advantage of Plaintiffs Crossroads,

16  Walsh, LAX Ammo, CRPA, and SAF, as well as intentional interference with

17  Plaintiff Crossroads' contracts.

18      7.     This action seeks declaratory and injunctive relief against Defendants

19  for violating the United States Constitution. It also seeks damages for lost profits,

20  lost opportunities, and diminished marketing value, and reimbursement for

21  reasonable attorney's fees, costs, and other expenses in bringing this action.

22                        **JURISDICTION AND VENUE**

23      8.     The Court has original jurisdiction of this civil action under 28 U.S.C. §

24  1331 because the action arises under the Constitution and laws of the United States,

25  thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. §

26  1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation,

27

28  _____
[1] Plaintiffs refer to the challenged law, California Food & Agricultural Code section 4158, as AB 893 throughout this complaint.

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    under color of the laws, statutes, ordinances, regulations, customs and usages of the

2    State of California and political subdivisions thereof, of rights, privileges or

3    immunities secured by the United States Constitution and by Acts of Congress

4        9.    Plaintiffs' claims for declaratory and injunctive relief are authorized by

5    28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is

6    authorized by 42 U.S.C. § 1988.

7        10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the

8    22nd District Agricultural Association is located in San Diego County and a

9    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

10    in this district. Further, the state of California maintains an office for service of

11    process in San Diego County at 600 West Broadway, Suite 1800, San Diego,

12    California 92101.

## PARTIES

### [Plaintiffs]

15        11.    Plaintiff B & L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE

16    WEST, is a for-profit event promoter operating in several western states. Crossroads

17    is in the business of promoting and organizing trade shows throughout the state of

18    California and other western states, including their long-running gun show events

19    held at the Del Mar Fairgrounds ("the Fairgrounds") operated under the d/b/a

20    Crossroads of the West ("Crossroads"). Crossroads currently is the largest vendor of

21    gun show events in California and at the Del Mar Fairgrounds. The gun shows

22    occupy thousands of square feet of the Fairgrounds. Typically, thousands of people

23    attend the gun show on each of the weekends they are held. They have successfully

24    produced and operated multiple safe, legal, and family-friendly gun show events in

25    California and at the Fairgrounds every year for over 30 years.

26        12.    Plaintiff BARRY BARDACK is a resident of El Cajon, California, and

27    he is a part-time flight instructor. He regularly attends the gun shows at the

28    Fairgrounds where he purchases ammunition for his target shooting hobby and

5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1     volunteers at the CRPA booth to talk to others about their rights, the importance of

2     membership in the CRPA, and the Second Amendment. The ban on sales of

3     firearms and ammunition at the Fairgrounds burdens his right to engage in otherwise

4     lawful commercial speech in a public forum and restricts his ability to purchase

5     ammunition for lawful purposes—this is especially true for Plaintiff Bardack

6     because the nearest vendor that could serve his particular ammunition needs is some

7     two hours from his home. And because the ban is intended to make gun shows less

8     profitable and effectively shutter them, it also restricts his right to engage in the

9     unique types of political, educational, and commercial speech that takes place at the

10     gun show.

11        13.     Plaintiff RONALD J. DIAZ, SR., is a resident of Alpine, California,

12     and he is a retired federal contractor. He regularly attends gun shows at the

13     Fairgrounds to purchase ammunition reloading supplies. Plaintiff Diaz also attends

14     the Crossroads gun show events at the Del Mar Fairgrounds to engage in expressive

15     activities with like-minded people, including discussions related to firearms,

16     ammunition, and firearm accessories, the shooting sports, politics, and the Second

17     Amendment. The ban on sales of firearms and ammunition at the Fairgrounds,

18     which is intended to make gun shows less profitable and effectively shutter them,

19     burdens his right to engage in otherwise lawful commercial and educational speech

20     in a public forum with vendors that offer him the expertise and variety of reloading

21     supplies available at Crossroads gun shows. It also restricts his right to engage in the

22     unique types of political, educational, and commercial speech that takes place at the

23     gun show.

24        14.     Plaintiff JOHN DUPREE is a resident of Alpine, California, and he

25     works for the federal government. He regularly attends the Crossroads gun shows at

26     the Fairgrounds. He is a competitive shooter and has the need to purchase bulk

27     ammunition in order to compete. Plaintiff Dupree also attends the Crossroads gun

28     show events at the Del Mar Fairgrounds to engage in expressive activities with like-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  minded people, including discussions related to firearms, ammunition, and firearm

2  accessories, the shooting sports, politics, and the Second Amendment. The ban on

3  sales of firearms and ammunition at the Fairgrounds burdens his right to engage in

4  otherwise lawful commercial speech in a public forum and restricts his ability to

5  purchase ammunition for lawful purposes—this is especially true for Plaintiff

6  Dupree because the nearest vendor that could serve his particular ammunition needs

7  is several hours from his home. And because the ban is intended to make gun shows

8  less profitable and effectively shutter them, it also restricts his right to engage in the

9  unique types of political, educational, and commercial speech that takes place at the

10  gun show.

11        15.    Plaintiff CHRISTOPHER PAUL IRICK is a resident of Carlsbad,

12  California, and he regularly attends the Crossroads guns shows at the Fairgrounds.

13  He is self-employed and enjoys going to the shows for good prices on firearms and

14  accessories, as well as the variety of merchandise available at the events. Plaintiff

15  Irick also attends the Crossroads gun show events at the Fairgrounds to engage in

16  expressive activities with like-minded people who hunt and support the Second

17  Amendment, while learning about new and innovative products available to firearms

18  owners and sportsmen. The ban on sales of firearms and ammunition at the

19  Fairgrounds burdens his right to engage in otherwise lawful commercial speech in a

20  public forum and restricts his ability to purchase firearms and ammunition for lawful

21  purposes. And because the ban is intended to make gun shows less profitable and

22  effectively shutter them, it also restricts his right to engage in the unique types of

23  political, educational, and commercial speech that takes place at the gun show.

24        16.    Plaintiff ROBERT SOLIS is a resident of Oxnard, California, and he is

25  a regular vendor at the Crossroads gun shows at the Fairgrounds. At the Crossroads

26  gun show, he sells firearms-related accessories and, though not in the business of

27  selling firearms, he occasionally engages in the lawful private sale of firearms and

28  ammunition at the show. Plaintiff Solis also attends gun show events at the Del Mar

7

1 Fairgrounds to engage in expressive activities with like-minded people, including
2 discussions related to firearms, ammunition, and firearm accessories, the shooting
3 sports, politics, and the Second Amendment. The ban on sales of firearms and
4 ammunition at the Fairgrounds directly burdens Plaintiff Solis' right to engage in
5 otherwise lawful commercial speech in a public forum and to access firearms and
6 ammunition for lawful purposes. And because the ban on sales of firearms and
7 ammunition at the Fairgrounds is intended to make gun shows less profitable and
8 effectively shutter them, it restricts his right to engage in otherwise lawful
9 commercial speech related to the sales of firearms accessories and his ability to
10 engage in the unique types of political, educational, and commercial speech that
11 takes place at the gun show.

12      17.    Plaintiff LAWRENCE MICHAEL WALSH is a resident of Grass
13 Valley, California, and is the owner of Miwall Corporation, d/b/a Wholesale
14 Ammunition. Miwall is one of the major gun ammunition distributors on the west
15 coast and has been in business for decades. He is a regular vendor at the Crossroads
16 gun shows at the Fairgrounds. Plaintiff Walsh's business currently does not have a
17 physical store, and it only sells its product at gun shows across the state and online.
18 Wholesale Ammunition also supplies ammunition to many of the law enforcement
19 agencies and officers in the state, some of which purchase their ammunition from
20 him at the gun shows because of the amount available, the cost, and the variety they
21 can find. Plaintiff Walsh enjoys being able to talk with other Second Amendment
22 supporters with like interests and views. If the gun shows at the Fairgrounds, or any
23 of the other state venues, were to be shut down, it would be devastating to Plaintiff
24 Walsh's business. The ban on sales of firearms and ammunition at the Fairgrounds
25 directly burdens Plaintiff Walsh's right to engage in otherwise lawful commercial
26 speech in a public forum and to access firearms and ammunition for lawful
27 purposes. And because the ban on sales of firearms and ammunition at the
28 Fairgrounds is intended to make gun shows less profitable and effectively shutter

Case 3:21-cv-04778-WJB-KSC Document 21-2 Filed 10/04/22 PageID 19 of Page 9 of 366
Case 8:22-cv-01313-JWH-PJSC Document 21-2 Filed 02/09/22 PageID 14 of Page 9 of 366
#:1455

1     them, it restricts his right to engage in the unique types of political, educational, and

2     commercial speech that takes place at the gun show.

3          18.   Plaintiff CAPTAIN JON'S GREEN CAN LOCKERS, LLC, is a

4     limited liability corporation incorporated under the laws of California, with

5     headquarters in Alpine, California. It is wholly owned and operated by Jon J.

6     Winslow, a Retired Fire Captain, who invented and, through the Captain Jon's

7     business, sells a device that safely and effectively locks the widely popular green

8     metal surplus ammunition cans to prevent unauthorized access to their contents.

9     Captain Jon's has no physical store but has been a regular vendor at the Crossroads

10    gun shows at the Fairgrounds since 2015. The Fairgrounds is only 45 minutes from

11    Captain Jon's headquarters, and the next nearest gun show event is at least two

12    hours away. Captain Jon's thus depends on the Del Mar gun show for a significant

13    portion of its annual revenues. Indeed, Captain Jon's has built a loyal following of

14    repeat buyers at the Del Mar show, which make up approximately 50% of the

15    business' sales at the gun show. What's more, Mr. Winslow, Captain Jon's only

16    employee, also attends gun show events at the Fairgrounds to engage in expressive

17    activities with like-minded people, including discussions related to firearms,

18    ammunition, and firearm accessories, the shooting sports, politics, and the Second

19    Amendment. Because the ban on sales of firearms and ammunition at the

20    Fairgrounds is intended to make gun shows less profitable and effectively shutter

21    them, it restricts the lawful commercial speech that Captain Jon's and its sole owner,

22    operator, and employee, Mr. Winslow, engage in at the gun show. It also restricts

23    Mr. Winslow's ability to engage in the unique types of political, educational, and

24    commercial speech that takes place at the gun show.

25         19.   Plaintiff L.A.X. FIRING RANGE, INC., d/b/a LAX AMMO LLC, is a

26    limited liability corporation incorporated under the laws of California, with

27    headquarters in Inglewood, California. LAX Ammo is a regular vendor at the

28    Crossroads gun shows at the Fairgrounds. At the Crossroads gun show, LAX Ammo

                                    9
             COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  sells "high quality reloads and factory new ammunition in various calibers for rifles,

2  handguns, and shotguns at affordable prices." The ban on sales of firearms and

3  ammunition at the Fairgrounds directly burdens the right of LAX Ammo, its owners,

4  and employees, to engage in otherwise lawful commercial speech in a public forum

5  and to access firearms and ammunition for lawful purposes. And because the ban on

6  sales of firearms and ammunition at the Fairgrounds is intended to make gun shows

7  less profitable and effectively shutter them, it restricts the right of LAX Ammo, its

8  owners, and employees, to engage in the unique types of political, educational, and

9  commercial speech that takes place at the gun show.

10      20.   Plaintiff CALIFORNIA RIFLE & PISTOL ASSOCIATION,

11  INCORPORATED ("CRPA") is a nonprofit membership organization incorporated

12  under the laws of California, with headquarters in Fullerton, California. Among its

13  other activities, CRPA works to preserve and expand constitutional and statutory

14  rights of gun ownership, including the right to self-defense and the right to keep and

15  bear arms. CRPA accomplishes this through its educational offerings, publications,

16  member engagement events, and legislative advocacy and initiatives. CRPA is also a

17  regular vendor at the Crossroads gun shows at the Fairgrounds, where it engages the

18  public in discussions about the organization and its purposes, the shooting sports,

19  firearms and firearm safety, and the Second Amendment and other political issues. It

20  also attends gun shows at the Fairgrounds to sell organization memberships,

21  advertise its events, distribute its publications, and sell its merchandise, some of

22  which includes expressly pro-gun messaging. CRPA has also hosted political rallies,

23  educational seminars, and range safety officer training at gun shows throughout the

24  state, including those at the Fairgrounds. What's more, CRPA has tens of thousands

25  of members and supporters, many of whom (including Plaintiffs Bardack, Diaz,

26  Dupree, Irick, Solis, and Winslow) attend the Crossroads gun shows at the

27  Fairgrounds to engage in expressive activities with like-minded people, including

28  discussions related to firearms, ammunition, and firearm accessories, the shooting

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 3:21-cv-01518-AJB-KSC    Document 22-2 Filed 10/04/21 PageID.11 of Page 16 of 366
Case 3:22-cv-01518-AJB-KSC    Document 22-2 Filed 12/09/22 PageID.16 of 128 Page 16 of 66
#:1457

1   sports, politics, and the Second Amendment. Because the ban on sales of firearms

2   and ammunition at the Fairgrounds is intended to make gun shows less profitable

3   and effectively shutter them, it restricts the rights of CRPA, its employees,

4   volunteers, members, and supporters, to engage in the unique types of political,

5   educational, and commercial speech that takes place at the gun show. Through this

6   lawsuit, CRPA represents not only its own interests as a gun show vendor, but also

7   the interests of its members as gun show attendees and supporters of the right to

8   keep and bear arms for lawful purposes.

9        21.    Plaintiff SOUTH BAY ROD AND GUN CLUB, INC. ("South Bay") is

10  a private nonprofit corporation incorporated under the laws of California, with

11  headquarters in San Diego County, California. It was formed in 1955 with a mission

12  to operate a properly managed nonprofit shooting club that is efficiently designed,

13  contracted, and safely operated with diligently maintained shooting ranges, support

14  structures, and facilities so that all authorized members and guests may use the

15  facility with pride, confidence, and satisfaction. South Bay endeavors to promote

16  and encourage the safe handling and use of firearms. South Bay is a regular vendor

17  at the Crossroads gun shows at the Fairgrounds, where it engages the public in

18  discussions about the organization and its purposes, the shooting sports, and

19  firearms and firearm safety. What's more, South Bay has some 4,000 members,

20  many of whom reside in San Diego County and attend the Crossroads gun shows at

21  the Fairgrounds to engage in expressive activities with like-minded people,

22  including discussions related to firearms, ammunition, and firearm accessories, the

23  shooting sports, politics, and the Second Amendment. Because the ban on sales of

24  firearms and ammunition at the Fairgrounds is intended to make gun shows less

25  profitable and effectively shutter them, it restricts the rights of South Bay, its

26  employees, volunteers, and members, to engage in the unique types of political,

27  educational, and commercial speech that takes place at the gun show. Through this

28  lawsuit, South Bay represents not only its own interests as a gun show vendor, but

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   also the interests of its members as gun show attendees and supporters of the right to

2   keep and bear arms for lawful purposes.

3       22.   Plaintiff SECOND AMENDMENT FOUNDATION, INC. ("SAF") is a

4   non-profit membership organization. It is incorporated under the laws of the state of

5   Washington and was founded in 1974. SAF has over 650,000 members and

6   supporters nationwide, include thousands of members in California.  The purposes

7   of SAF include education, research, publishing, and litigation. It is critical to the

8   success of SAF that its promotional material, publications, and messages about the

9   "right to keep and bear arms" reach demographic groups that are saturated with gun

10  owners, gun buyers, and people of the "gun culture."  Gun Shows like the one

11  threatened by the Defendants' actions interfere with this effort. SAF is dedicated to

12  promoting a better understanding about our constitutional heritage to privately own

13  and possess firearms through educational and legal action programs designed to

14  better inform the public about gun control issues. SAF has been a pioneer in

15  innovative defense of the right to keep and bear arms, through its publications and

16  public education programs like the Gun Rights Policy Conference. Those

17  publications and other SAF materials and information are offered at gun show

18  events. Second Amendment Foundation also expends significant sums of money

19  sponsoring public interest litigation to defend its own interests to disseminate

20  information to like-minded individuals, in and individualized setting, but SAF also

21  seeks to defend the interests of its member in lawsuits like this present effort.

22                          **[Defendants]**

23      23.   Defendant GAVIN NEWSOM is the Governor of the State of

24  California. As Governor, he is vested with "the supreme executive power" of the

25  state and "shall see that the law is faithfully executed." Cal. Const. art. 5, §1. The

26  injunctive and declaratory relief portions of this suit are brought against Defendant

27  Newsom in his official capacity. Claims for damages are brought against Defendant

28  Newsom in his personal capacity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

24.   Defendant ROBERT BONTA is the Attorney General of the State of California. He is the "chief law officer" of the state and has the duty to 'see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. 5, § 1. Additionally, Defendant Bonta has "direct supervision over every district attorney" within the State. *Id.* If, at any point a district attorney of the State fails to enforce adequately "any law of the State," Defendant Bonta must "prosecute any violations of the law." *Id.* Finally, Defendant Bonta, as Attorney General of the State of California, "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor. . . ." *Id.* The injunctive and declaratory relief portions of this suit are brought against Defendant Bonta in his official capacity. Claims for damages are brought against Defendant Bonta in his personal capacity.

25.   Defendant STEPHAN SUMMER is the District Attorney responsible for enforcing the law within the county of San Diego. Under the California Government Code, the district attorney must prosecute "all actions for the recovery" of fines and penalties. Cal. Gov't Code § 26521. The injunctive and declaratory relief portions of this suit are brought against District Attorney Summer in his official capacity.

26.   Defendant THOMAS MONTGOMERY is the County Counsel responsible for enforcing the law within the County of San Diego. In that capacity, he must "discharge all the duties vested in the district attorney." Cal. Gov't Code § 26529. The injunctive and declaratory relief portions of this suit are brought against County Counsel Montgomery in his official capacity.

27.   Defendant 22nd DISTRICT AGRICULTURAL ASSOCIATION ("District") is a Governor-appointed Board of Directors that manages the state-owned Del Mar Fairgrounds public venue. The District is governed by a nine-member board, each member serving a four-year term. The District Board of Directors appoints a CEO charged with the daily operations of the facilities but

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  maintains control over activities not delegated to the CEO, including contracting

2  with those seeking to host events, including gun shows, at the Fairgrounds. It is

3  responsible for ensuring that all state laws governing gun shows at the Fairgrounds,

4  including AB 893, are faithfully enforced. In 2018, Defendant District adopted a

5  moratorium on contracting with third parties to host gun show events at the

6  Fairgrounds. That moratorium was enjoined by order of the court and later

7  permanently repealed through settlement of a related lawsuit, *B&L Productions,*

8  *Inc., et al. v. 22nd District Agricultural Association*, Case No. 3:19-cv-134-CAB.

9     28.   Defendant KAREN ROSS is the Secretary of the California Department

10  of Food & Agriculture—the entity responsible for the policy oversight of the

11  network of California fair venues, which includes the Del Mar Fairgrounds. Through

12  the Department, Defendant Ross issues guidance for governance and contracting to

13  all agricultural districts throughout California (including Defendant District) and

14  requires reporting from the districts on operational issues. The Department

15  maintains an office of legal counsel for any actions brought against Agricultural

16  Association Districts in the state. The injunctive and declaratory relief portions of

17  this suit are brought against Defendant Ross in her official capacity. Claims for

18  damages are brought against Defendant Ross in her personal capacity.

19     29.   The true names and capacities of Defendants named as DOES 1

20  through 50, inclusive, are individual, corporate, associate or otherwise, and are

21  unknown to Plaintiffs. They are, however, believed to be responsible in some way

22  for Plaintiffs' loss and damages. Each Doe Defendant is, and at all times mentioned

23  here was, a partner, agent, principal, co-conspirator, or are otherwise vicariously or

24  directly responsible for the acts or omissions of the other defendants or themselves.

25  They are each sued individually and are joined as party defendants. Plaintiffs thus

26  sue each Doe Defendant under rules 15 and 21 of the Federal Rules of Civil

27  Procedure. Plaintiffs are informed and believed that the Doe Defendants are all

28  California residents. Plaintiffs will amend this complaint to show such true names

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   and capacities of Doe Defendants when they have been ascertained.

2   ## FACTUAL ALLEGATIONS

3   ### [Regulation of Gun Show Events in California]

4   30.   The state of California has the most rigorous regulatory regime for

5   commerce in firearms and ammunition in the United States. That regulatory regime

6   applies to the operation of gun show events throughout California. The laws related

7   to the acquisition and sale of firearms is arguably stricter at a gun show, than at

8   brick-and-mortar stores or internet sales.

9   31.   Only state approved, licensed gun show "producers" may operate gun

10   shows in California. All gun show producers, including Plaintiff Crossroads, must

11   have an individual (the "promoter") who holds a valid "Certificate of Eligibility"

12   issued by the California Department of Justice.

13   32.   Gun show producers must also, among other things:

14       a.   Certify that they are familiar with all California laws regarding

15            gun shows, Cal. Penal Code § 27200;

16       b.   Possess a minimum of $1,000,000 liability insurance, *id.*;

17       c.   Provide an annual list of shows or events to be held to the

18            California Department of Justice, *id.*; and

19       d.   Notify the California Department of Justice no later than 30 days

20            prior to the gun show or event of any changes to the above, *id.*

21       e.   Make available to law enforcement a complete and accurate list

22            of all vendors that will participate in the show to sell, lease, or

23            transfer firearms. Cal. Penal Code § 27205.

24   33.   Gun show promoters must submit an annual event and security plan and

25   schedule to the California Department of Justice and any local law enforcement

26   agency. The plan must include:

27       a.   Type of show or event;

28       b.   Estimated number of vendors offering for sale or display

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1                      firearms;

2          c.      Estimated number of attendees;

3          d.      Number of entrances and exits at the event;

4          e.      Location, dates, and times of the event;

5          f.      Contact person and telephone number for both promoter and

6                facility;

7          g.      Number of sworn peace officers employed by the producer or

8                facility who will be present at the event;

9          h.      Number of non-sworn security personnel employed by the

10                producer or the facility who will be present at the event; and

11          i.      Promoters must inform all prospective vendors of all California

12                laws regarding gun shows.

13 Cal. Penal Code §§ 27210, 27215.

14      34.      Promoters must also provide a list of all prospective vendors and

15 designated firearm transfer agents who are licensed firearm dealers to the California

16 Department of Justice no later than seven days prior to the event for the purpose of

17 determining whether the vendor possess a valid license and are thus eligible to

18 participate in the event. Cal. Penal Code § 27220.

19      35.      If a vendor is not approved by the California Department of Justice or

20 fails to comply with all applicable California laws, they cannot participate. Cal.

21 Penal Code § 27220.

22      36.      If a promoter fails to inform all prospective vendors of California's

23 state laws or fails to submit a list of all prospective vendors to the California

24 Department of Justice, the event cannot commence. Cal. Penal Code § 27230.

25      37.      A promoter must have written contracts with each vendor selling

26 firearms at the event. Cal. Penal Code § 27235.

27      38.      Promoters must post signs in a readily visible location at each public

28 entrance to the event that includes all of the following notices:

- "This gun show follows all federal, state, and local firearms and weapons laws, without exception."
- "Any firearm carried onto the premises by any member of the public will be checked, cleared of any ammunition, and secured in a manner that prevents it from being operated, and an identification tag or sticker will be attached to the firearm before the person is allowed admittance to the show."
- "No member of the public under the age of 18 years shall be admitted to the show unless accompanied by a parent, grandparent, or legal guardian."
- "All firearm transfers between private parties at the show shall be conducted through a licensed dealer in accordance with applicable state and federal laws."
- "Persons possessing firearms in this facility must have in their immediate possession government-issued photo identification and display it upon the request to any security officer or any peace officer, as defined in Section 830."

Cal. Penal Code § 27240(a).

39. Producers must also post signs in a readily visible location at each entrance to the parking lot stating: "The transfer of firearms on the parking lot of this facility is a crime." Cal. Penal Code § 27240(b).

40. A willful failure of a producer to comply with any of California's applicable laws is a misdemeanor punishable with a fine of up to $2,000 dollars and would render the producer ineligible for a gun show producer license for up to one year, which could cost a producer hundreds of thousands of dollars in lost revenue for a willful infraction. Cal. Penal Code § 272459(c).

41. Except in very limited exceptions applicable only to law enforcement, actual firearm transfers are already prohibited from taking place at any gun show in

17

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

California.[2] The firearm sale can be started through an on-site licensed "transfer dealer," but it cannot be completed on site. Instead, purchasers must pick up their purchase at a licensed firearm retailer at a different licensed location--but only after a 10-day waiting period and background check. There is no "Gun Show Loophole" at gun shows operated in accordance with California Law.

42.     The Gun Show Act of 2000, California Penal Code sections 27200-27245, places even more restrictions on the operation of a gun show in California by requiring that:

a.     Vendors not display, possess, or offer for sale any firearms, knives, or weapons for which possession or sale is prohibited;

b.     Vendors acknowledge that they are responsible for knowing and complying with all applicable federal, state, and local laws dealing with the possession and transfer of firearms;

c.     Vendors will not engage in activities that incite or encourage hate crimes;

d.     Vendors will process all transfers of firearms through licensed firearms dealers as required by state law;

e.     Vendors will verify that all firearms in their possession will be unloaded and that the firearms will be secured in a manner that prevents them from being operated except for brief periods, when the mechanical condition of the firearm is being demonstrated to prospective buyer;

---

[2] Cal. Penal Code § 27310 (requiring all firearm transfers at gun shows to comply with state and federal law); *id.* § 26805 (prohibiting the sale and transfer of a firearm by a licensed dealer at any location other than the dealer's premises as listed on their license but allowing dealer to prepare documents at a gun show in preparation for completion of the sale at the dealer's premises); *id.* § 27545 (requiring all firearm transactions to be processed through a licensed dealer when neither party is a licensed firearm dealer).

18

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

   f. Vendors provide all required information under Penal Code § 27320;

   g. Vendors will not display or possess black powder or offer it for sale;

   h. Ammunition only be displayed in closed original factory boxes or other closed containers, with the only exception for showing the ammunition to a prospective buyer. On July 1, 2019, additional state-law restrictions on the sale of ammunition will become effective and gun shows must comply;

   i. No member of the public under 18 years old may enter a gun show unless accompanied by a parent or legal guardian;

   j. No person other than security personnel or law enforcement possess both a firearm and ammunition for that firearm at the same time, with the exception of vendors who are selling both.

43. Plaintiff Crossroads diligently operates all of its gun shows in accordance with state law, and it takes immediate remedial measures if irregularities are discovered.

44. Vendors at Crossroads gun shows, like Plaintiffs Walsh and LAX Ammo, are some of the same licensed vendors that have brick and mortar stores in the community or operate legally over the internet and are registered with the state as lawful businesses.

45. Vendors at Crossroads gun shows sell legal products and enjoy being able to attend gun shows so they can better interact with customers in a more meaningful and intimate way.

46. Even with all of the state and federal regulations that promoters and vendors must abide, through the adoption and enforcement of AB 893, Defendants now seek to wholly prohibit constitutionally protected, highly regulated, and otherwise perfectly legal activity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

023

**[The Gun Show Cultural Experience]**

47. Gun shows are a modern bazaar—a convention of like-minded individuals who meet in this unique public forum that has been set aside by state and local governments for all manner of commerce. This convention-like setting is of incalculable benefit to the gun-buying consumer and promotes public safety.

48. Gun shows, in general, and the Del Mar show, in particular, are a celebration of America's "gun culture" that is a natural and essential outgrowth of the constitutional rights that flow from the Second Amendment to the United States Constitution.

49. Gun shows, in general, and the Del Mar show, in particular, are a First Amendment forum where literature and information are shared, speakers provide valuable lectures, classes are conducted, political forums are held where gun rights discussions take place, and candidates for political office can meet to discuss political issues, the government, and the constitution with constituents who are part of the California gun culture.

50. Gun shows just happen to include the exchange of products and ideas, knowledge, services, education, entertainment, and recreation related to the lawful uses of firearms. Those lawful uses include (but are not limited to):

      a. Firearm safety training

      b. Self-defense

      c. Defense of others

      d. Defense of community

      e. Defense of state

      f. Defense of nation

      g. Hunting

      h. Target shooting

      i. Gunsmithing

      j. Admiration of guns as art

20

k.    Appreciation of guns as technological artifacts

l.    Study of guns as historical objects.

51.    Gun shows, in general, and the Del Mar show, in particular, are cultural marketplaces for those members of the "gun culture" who attend to celebrate their constitutional rights and to pass their beliefs in patriotism and the rights of the individual on to the next generation. It is a place where parents take their children and grandparents take their grandchildren to share with them, among other things, a love of historic firearms, stories of American war heroes, and their love of hunting.

52.    Gun shows, in general, and the Del Mar show, in particular, are places where parents can learn to protect their families and their homes, and how to stay in compliance with California's ever-changing gun laws.

53.    Gun shows, in general, and the Del Mar show, in particular, are places where people can discuss the positions of political candidates and whether those values line up with their own beliefs in protecting the Second Amendment.

54.    Gun shows, in general, and the Del Mar show, in particular, are held and promoted, and considerable investment is made, precisely to promote and "normalize" the "gun culture" and the constitutional principles that gun show participants hold dear.

55.    This forum is vitally important especially in California where government actors at all levels of government (federal, state, and local) are openly hostile to the cultural values of the Second Amendment and where supporters of those cultural values are not considered "mainstream."

56.    Participating in "gun culture" is an important reason people attend Crossroads gun shows as vendors, exhibitors, customers, and guests (even if particular vendors or attendees are not in the firearm business or in the market to buy a gun at a particular event).

57.    While less than 40% of vendors at Crossroads' events offer firearms or ammunition for sale (the remaining vendors offer accessories, collectibles, home

21

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  goods, lifestyle products, food, and other refreshments), the principle draw of gun

2  shows is the availability of firearms and ammunition for sale.

3      58.    Indeed, many people attend gun shows to learn about the technology

4  and use of various firearms and ammunition when they are considering whether to

5  buy or sell a firearm (or ammunition) and to exchange knowledge with experienced

6  dealers and firearm enthusiasts that they cannot get anywhere else. *Teixeira v.*

7  *County of Alameda*, No. 13-17132 (9th Cir. 2017).[3]

8      59.    Without the ability to buy and sell firearms and ammunition at gun

9  shows at the Fairgrounds, the events will no longer be able to draw many of its

10  vendors and attendees, making the events unprofitable and economically infeasible.

11      60.    Defendants wish to end this celebration of "gun culture" and Second

12  Amendment rights because they do not understand the culture or the people. To that

13  end, Defendants have attempted, first through an unconstitutional moratorium on

14  gun show events, *see B&L Prods. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226

15  (S.D. Cal. 2019), and then through AB 893's ban on sales of firearms and

16  ammunition at the Fairgrounds, to permanently deprive Plaintiffs of their right to

17  engage in constitutionally protected conduct at the Fairgrounds.

18                **[The Del Mar Fairgrounds Venue]**

19      61.    The Fairgrounds is owned by the state of California and managed by

20  the Board of Directors of Defendant District, which must regularly report its

21  activities to the California Department of Food & Agriculture. *See* Table of

22  Fairground Information (Dec. 31. 2010) attached as Exhibit 1.

23      62.    Among other things, Defendant District is charged with maintaining the

24  Fairgrounds and ensuring that is used for public purposes.

25

26      [3] The *Teixeira* court did not answer whether the Second Amendment includes

27  a right to purchase a firearm. Plaintiffs allege, in good faith, that the right to keep
   and bear arms *necessarily* includes the rights to purchase and sell them. Indeed,

28  those rights are paramount to the exercise of the Second Amendment.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

63.    Defendant Ross, as the Secretary of the California Department of Food & Agriculture, oversees the operation of the various agricultural districts in the state, including Defendant District.

64.    The California Department of Food & Agriculture, under Secretary Ross, provides policies and guidance for the operation of all agricultural districts in the state, including the use of facilities as directed by Department policy.

65.    The California Department of Food & Agriculture maintains a *CDFA Contracts Manual for Agricultural Districts* ("Manual"). Section 6.25 of the Manual states that "[w]hether or not a fair rents out their facilities for gun shows is a policy decision to be made by the fair board and their community."

66.    Due to its large size and unique urban location, the Fairgrounds is a unique, publicly owned venue. There is no other public or private venue of similar size in the area. Effectively, the government has a monopoly on venues of this size and type in the area.

67.    The Fairgrounds is a state-owned property maintained and opened for use by the public. By virtue of being opened by the state for use by the public, it is a "public forum," from which the government may not generally exclude expressive activity. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 569 (9th Cir. 1984) (*quoting Perry Educ. Ass'n v. Perry Local Educators' Assn*, 460 U.S. 37, 45-46 (1983)).

68.    The Fairgrounds is used by many different public groups and is a major event venue for large gatherings of people to engage in expressive activities, including concerts, festivals, and industry shows.

69.    The Fairgrounds actively promotes the use of the property by the public through contracting for available space at the Fairgrounds.

70.    Indeed, the Fairgrounds plays host not only to events, like the San Diego County Fair, produced by Defendant District, but to "events and activities produced by third-party promoters, which range from concerts and festivals, trade

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   shows and consumer expos, equestrian competitions and animal shows, sporting

2   events, fundraisers and personal celebrations." Del Mar Fairgrounds, About Us,

3   https://delmarfairgrounds.com/about-us/ (last visited Sept. 29, 2021).

4         71.   The Fairgrounds' 2008 Master Plan, which is still in use, states that

5   Defendant District's mission is "[t]o manage and promote a world-class, multi-use,

6   public assembly facility with an emphasis on agriculture, education, entertainment,

7   and recreation in a fiscally sound and environmentally conscientious manner *for the*

8   *benefit of all*." 22nd District Agricultural District, *2008 Master Plan: Del Mar*

9   *Fairgrounds and Horsepark* 13 (April 2011), *available at*

10  https://delmarfairgrounds.com/pdf/11EIR_000_2008_master_plan.pdf (last visited

11  Sept. 29, 2021) (emphasis added).

12        72.   The Fairgrounds has held non-gun-show events in which criminal

13  activity has taken place—including theft and a shooting. These criminal incidents

14  are no more likely to happen at a gun show than at other types of events, but the

15  Defendants have not banned these promoters or their events.

16                 **[Contracting for Use of the Fairgrounds]**

17        73.   Defendant District has a process for securing returning contractors who

18  would like to secure specific dates into future years before the contracts can be

19  drafted and executed.

20        74.   Each year, returning and regular contractors, including Plaintiff

21  Crossroads, submit preferred dates for the next calendar year, so Defendant District

22  can confirm availability and so that Plaintiff Crossroads can begin to reserve

23  vendors and materials for the show weekends.

24        75.   Due to the size and extensive planning that goes into producing gun

25  show events, Defendant District has—for decades—provided and held preferred

26  dates for Plaintiff Crossroads, a long-time contractor, until the contracts can fully be

27  executed.

28        76.   Defendant District's "hold" system essentially operates as a right of

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   first refusal to the benefit of returning contractors. For example, if another contractor

2   wanted the same preferred dates as Plaintiff Crossroads, Defendant District would

3   not allow another vendor to come in and take those dates from Plaintiff Crossroads

4   even though there is no official contract in place yet.

5        77.    The "hold" system also provides Defendant District with the security of

6   knowing its venue is booked with experienced and knowledgeable repeat contractors

7   that have a demonstrated record of running safe and profitable events at the

8   Fairgrounds.

9        78.    The "hold" system also permits the promoter to spend advertising

10   dollars to promote its events, but when governments announce plans to ban gun

11   shows at particular venues, vendors and patrons rationally make plans to attend gun

12   show events at other venues or seek other states to conduct their commerce.

13        79.    Defendant District also considers the "hold" dates and shows during

14   budget discussions which are typically held in the year before the contracts are

15   commenced.

16        80.    Upon information and belief, Plaintiffs allege that the "hold" system is

17   widely used by similar state fair board venues and is standard industry practice.

18        81.    Plaintiff Crossroads, after doing business in this customary manner for

19   more than 30 years, had no reason to doubt that Defendant District would continue

20   to honor such relationship with Plaintiff Crossroads.

21   **[Previous Ban on Gun Shows at the Fairgrounds & Resulting Litigation]**

22        82.    Despite the long history that Plaintiff Crossroads has had with the

23   Fairgrounds in operating safe and legal events, the political environment has become

24   hostile toward gun show events and (more generally) toward the "gun culture" in

25   recent years.

26        83.    Indeed, gun-show-banning activists are at work throughout the state

27   and the country to ban *all* gun shows *everywhere*, not because they are "dangerous

28   for the community," but because they do not subscribe to the same values as gun

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  show promoters, vendors, and participants.

2      84.    These activists rely on unfounded fears about the security of gun show

3  events, false claims that gun shows are inherently dangerous because they normalize

4  the "gun culture," and stereotypes about the people that attend gun shows. *See City*

5  *of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (striking an ordinance

6  requiring a special permit for a group home for the intellectually disabled and citing

7  direct evidence of negative attitudes toward persons with disabilities expressed by

8  community members and recorded in the legislative history).

9      85.    In 2017, gun-show-banning activists using the same tactics described

10  above began pressuring Defendant District to prohibit gun show events at the

11  Fairgrounds.

12     86.    In response, Defendant District began a series of meetings and public

13  comment periods to determine whether it would continue to contract with Plaintiff

14  Crossroads or other promoters for the use of the Fairgrounds for gun show events.

15     87.    Defendant District also engaged in communications with other

16  government agencies and with Crossroads to determine whether gun shows at the

17  Fairgrounds were operated in full compliance with state and federal law, and if the

18  events pose any real danger to the community.

19     88.    Defendant District also appointed a non-public, ad hoc committee of

20  two members of the District to investigate the gun show operation at the Fairgrounds

21  and report back to the District with recommendations for the continued use of the

22  Fairgrounds for gun show events.

23     89.    On April 23, 2018, Defendant Newsom sent a letter to the District

24  urging the District to ban gun shows at the Fairgrounds, citing his concerns that

25  "[p]ermitting the sale of firearms and ammunition on state-owned property only

26  perpetuates America's gun culture." Letter from Governor Gavin Newsom to Board

27  Members of 22nd District Agricultural Association (April 23, 2018) attached as

28  Exhibit 2.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

90. On September 10, 2018, Assembly member Todd Gloria (D) sent a letter to the District, stating his "firm belief that the State of California should in no way help to facilitate the sale of firearms." He also expressed his support for the District's "willingness to consider options for limiting or eliminating these gun shows" and vowed to "act by way of legislation should the 22nd DAA Board be unable to take meaningful action." Letter from Assembly Member Todd Gloria to Board Members of 22nd District Agricultural Association (Sept. 10, 2018) attached as Exhibit 3.

91. At a public hearing on September 11, 2018, the ad hoc "Contracts Committee" recommended that the District "not consider any contracts with the producers of gun shows beyond December 31st 2018 until such time as the District has put into place a more thorough policy regarding the conduct of gun shows that:

  a. Considers the feasibility of conducting gun shows for only educational and safety training purposes and bans the possession of guns and ammunition on state property

  b. Aligns gun show contract language with recent changes to state and federal law

  c. Details an enhanced security plan for the conduct of future shows

  d. Proposes a safety plan

  e. Considers the age appropriateness of the event

  f. Grants rights for the DAA to perform an audit to ensure full compliance with California Penal Code Sections 171b and 12071.1 and 1207.4."

92. In testimony before the District at the September 11, 2018 hearing, Patrick Kerins, who was then the Public Safety Director for the District, reported on the laws that apply to gun shows in California, as well as Plaintiff Crossroads history of events at the Fairgrounds.

93. During his comments at the September 11, 2018 hearing, Mr. Kerins

27

031

1  referenced a memorandum that he prepared for the District's Board of Directors in.

2  In that memorandum, he reported that:

3        As Chief of Security for the 22nd DAA, I routinely inspect the
         gun show and on a regular basis communicate with the San Diego
4        Sheriff's Department re: compliance with all the applicable laws and
         regulations and the Security Plan required by the California
5        Department of Justice Firearms Division. I recently spoke to
         Detective Jaime Rodriguez of the Sheriff's North Coastal Station
6        who supervises the four Deputies assigned to the gun show security
         detail and Detective Stacey Smith who is assigned to the Sheriff's
7        Licensing Division. Both Detectives said the Crossroads of the West
         Gun Show is in complete compliance with all the local, State and
8        Federal laws that govern gun shows and that there have not been any
         violations of law. Both Detectives had high praise for the show
9        promoters and the 22 DAA staff.

10  Memorandum of Patrick Kerins, Public Safety Director, 22nd District Agricultural

11  Association, to Board of Directors, 22nd District Agricultural Association, at 17

12  (2016), attached as Exhibit 14.

13        94.   Mr. Kerins' 2016 memorandum continued:

14        In my considered opinion, as Chief of Security for the 22 DAA for
          the last 17 years, the CROSSROADS OF THE WEST GUN
15        SHOWS (5 per year) are m compliance with all the local, state and
          federal regulatory statutes and have operated without any violations
16        of those laws Under the laws of the State of California you must
          comply with all the laws of purchasing, selling and/or transferring of
17        firearms at a gun show as you would at licensed gun dealer's store
          Due to the strict California gun show regulations there are no so
18        called loop holes that you so often hear about in the media.

19  Ex. 14 at 17.

20        95.   Ultimately, the lengthy process of meetings, public comment, and

21  communications with stakeholders resulted in no finding that allowing the (already

22  heavily regulated) gun show events to continue at the Fairgrounds posed a definite

23  or unique risk to public safety.

24        96.   Indeed, Defendant District presented *no* evidence of any safety

25  concerns within the community that could be linked to the over-30-year-old gun

26  show at the Fairgrounds.

27        97.   To the contrary, banning highly regulated gun shows in California

28  communities, like Del Mar, serves to distort the gun market, potentially pushing

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  California gun buyers into less restrictive gun-buying environments.[4]

2      98.   Nonetheless, relying on contrived possibilities of unknown dangers and

3  unfounded claims that prohibiting gun shows might prevent suicide and violent

4  crime because the "gun culture" would be censored,[5] Defendant District voted to

5  impose a one-year moratorium (for the year 2019) on gun show events at the

6  Fairgrounds while they study potential safety concerns.

7      99.   Plaintiffs Crossroads, Bardack, Diaz, Dupree, Irick, Walsh, CRPA,

8  South Bay, SAF, and others sued Defendants District, Ross, and others in federal

9  court under to prevent enforcement of the moratorium, alleging violations of various

10  constitutional rights, including the rights to free speech, assembly, and equal

11  protection. *See B&L Prods. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226 (S.D.

12  Cal. 2019) ("*B&L I*") attached as Exhibit 4.

13      100.   Denying Defendant District's motion to dismiss and granting plaintiffs

14  a preliminary injunction—*sua sponte*—on the ground that plaintiffs were

15  exceedingly likely to succeed on the merits of their constitutional claims, the court

16

17  ---
   [4] Joyce Lupiani, *Nevada Gun Shows Tied to California Gun Violence*, KTNV
18  (2017), https://www.ktnv.com/news/crime/study-nevada-gun-shows-tied-to-
   california-gun-violence (last visited Jan. 21, 2019); Brett Israel, Study*: Gun Deaths,*
19  *Injuries in California Spike Following Nevada Gun Shows*, Berkeley News (2017),
   https://news.berkeley.edu/2017/10/23/embargoed-until-1023-2pm-pdt-study-gun-
20  deaths-injuries-in-california-spike-following-nevada-gun-shows/ (last visited Jan.
21  21, 2019). *But see* Mariel Alper, Ph.D., & Lauren Glaze, Bureau of Justice Statistics,
   *Source and Use of Firearms Involved in Crimes: Survey of Prison Inmates, 2016*
22  (2019), *available at* https://www.bjs.gov/content/pub/pdf/suficspi16.pdf (last visited
   Jan. 21, 2019); Garen J. Wintemute, et al., *Gun Shows and Gun Violence: Fatally*
23  *Flawed Study Yields Misleading Results*, 100 Am. J. Pub. Health 1856-60 (2010),
24  *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2936974/ (last visited
   Jan. 21, 2019).
25      [5] *But see* Alvaro Castillo-Caniglia, Ph.D., et al., *California's Comprehensive*
26  *Background Check and Misdemeanor Violence Prohibition Policies and Firearm*
   *Mortality*, Annals of Epidemiology (Oct. 11, 2018) (noting that, in California
27  communities with the most stringent gun restrictions, there has been a marked
28  increase in both property and violent crime).

29

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  in *B&L I* temporarily enjoined the enforcement of the District's gun show

2  moratorium and ordered the District to contract with Crossroads as it would any

3  other similar event promoter at the Fairgrounds. Ex. 4.

4      101.   Shortly thereafter, the *B&L I* plaintiffs negotiated a settlement with the

5  District, represented by attorneys for the California Department of Justice,

6  permanently terminating the 2019 gun show moratorium, reinstating Crossroads'

7  right to promote gun show events at the Fairgrounds, and permanently barring the

8  District from unilaterally halting B&L's gun show events at the Fairgrounds. *See*

9  Parties' Joint Notice of Settlement and Motion for Dismissal, *B&L Prods. v. 22nd*

10  *Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226 (S.D. Cal. 2020) attached as Exhibit 5.

11              **[California's Assembly Bill 893 (Gloria)]**

12      102.   Making good on his threat, and fully aware of the court's decision in

13  *B&L I*, Assembly member Gloria introduced Assembly Bill 893 ("AB 893") on or

14  about February 20, 2019. Assem. Bill 893, 2019-2020 Reg. Sess. (Cal. 2019)

15  attached as Exhibit 6.

16      103.   AB 893, which added Section 4158 to the California Food &

17  Agricultural Code, bars any "officer, employee, operator, lessee, or licensee of the

18  [District]" from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any

19  firearm or ammunition on the property or in the buildings that comprise the Del Mar

20  Fairgrounds...." Violation of the law is a misdemeanor. Ex. 6.

21      104.   AB 893 does not bar the possession of firearms or ammunition on the

22  property or in the buildings that comprise the Del Mar Fairgrounds. Ex. 6.

23      105.   The text of AB 893 expressly identifies the ongoing presence at the

24  Fairgrounds of "marketplaces popularly known as 'gun shows,' at which firearms

25  and ammunition and other items are sold to the public approximately five times a

26  year." Ex. 6.

27      106.   AB 893 also clearly recognizes that "[p]romoters maintain relationships

28  with a core group of vendors, some selling guns and some selling other

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    merchandise, who travel as the schedule dictates from city to city and state to state

2    and in the West, for example, many of the same vendors can be seen at Crossroads

3    of the West Gun Shows from San Francisco, California, to Tucson, Arizona." Ex. 6.

4        107.   AB 893 failed to identify, however, any real public safety or security

5    concern specifically related to the existence of gun show events at the Fairgrounds.

6        108.   To be sure, AB 893 claims, without support, that "[g]un shows bring

7    grave danger to a community" and that "dangerous incidents" have taken place at

8    guns shows at the Fairgrounds, including "an official vendor accused of trafficking

9    illegal firearms, sales of firearms to individuals registered in the Department of

10   Justice Bureau of Firearms Armed Prohibited Persons System, and illegal

11   importation of large-capacity magazines." But AB 893 makes no effort to show that

12   these incidents are any more likely to occur at gun shows in California, which are

13   regulated at least as heavily as retailers operating out of brick-and-mortar stores.

14       109.   AB 893 also claims that "between the years 2013 and 2017, the San

15   Diego County Sheriff recorded 14 crimes" at gun shows at the Fairgrounds. Ex. 6.

16   But even if the Legislature had proof of these crimes, AB 893 makes no attempt to

17   compare this to the number of crimes recorded at other similarly sized events at the

18   Fairgrounds during that period. Nor does it distinguish between the type of crimes

19   this bill purports to target (e.g., illegal firearm transfers, straw purchases, sales of

20   illegal firearms or accessories) and run-of-the-mill crimes that are likely to occur

21   whenever thousands of people descend on one venue for a trade show or fair (e.g.,

22   petty thefts, parking or traffic violations, public drunkenness, simple assault).

23       110.   Instead, AB 893's legislative history reveals only general concerns

24   about gun violence occurring all over the country and legislators' beliefs that the

25   state should not profit from sales of firearms and ammunition. *See* Matthew

26   Fleming, Assem. Comm. Pub. Safety, Bill Analysis Re: AB 819 (Gloria), 2019-2020

27   Reg. Sess., at 3 (Cal. 2019) attached as Exhibit 7.

28       111.   Indeed, AB 893 opens with a list of tragedies, including the horrific

31

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    mass murders that took place at Columbine High School, Sandy Hook Elementary

2    School, and Marjory Stoneman Douglas High School—none of which were carried

3    out with firearms traced to gun show events at the Fairgrounds. Ex. 6.

4         112.  What's more, a March 26, 2019 analysis of AB 893 presented to the

5    Assembly Committee on Public Safety quoted claims by Assembly member Gloria,

6    the bill's sponsor, that "[t]here is an ever apparent link between the gun violence we

7    see virtually every week and the number of guns in our communities." These

8    statements, however, made no attempt to link gun violence to gun shows, generally,

9    or to gun shows at the Fairgrounds, specifically. Ex. 7 at 2.

10        113.  The Public Safety Committee's March 26, 2019 analysis also quoted

11   Gloria as lamenting that "the State of California should not be profiting or

12   benefitting from the sale of firearms." He continued, "[f]undamentally, I believe it is

13   wrong for the state of California to profit or to benefit from the sale of firearms and

14   ammunition." Ex. 7 at 2.

15        114.  Assembly member Lorena Gonzalez, who co-sponsored AB 893,

16   expressed a similar sentiment, arguing that "[t]he State of California shouldn't be in

17   the business of using our public land to join with the firearms industry to profit off

18   the sale of guns and ammo." Chris Jennewein, *Assembly Passes Todd Gloria's Bill*

19   *to Thwart Gun Shows at Del Mar Fairgrounds*, timesofsandiego.com (April 25,

20   2019), https://timesofsandiego.com/politics/2019/04/25/assembly-passes-todd-

21   glorias-bill-to-thwart-gun-shows-at-del-mar-fairgrounds/ (last visited Sept. 29,

22   2021).

23        115.  The Public Safety Committee's March 26, 2019 analysis also cited a

24   decade-old report from the Violence Prevention Research Program at the UC Davis

25   School of Medicine, identifying gun shows as a source of illegally trafficked

26   firearms. Ex. 7 at 3. But neither the VPRP report nor AB 893's legislative history

27   links any illegally trafficked firearm or gun used in crime to gun shows at the

28   Fairgrounds (or even to gun shows in California). *See* Garen Wintemute, MD, *Inside*

32

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Gun Shows: What Goes on When Everybody Thinks Nobody's Watching*, ch. 1 (2009), attached as Exhibit 8. This is unsurprising because, as the study states, "[m]uch of the concern about gun shows as a source of crime guns focuses on private party gun sales, *since no background checks are conducted and no records are kept*." Ex. 8 at 32. But such concerns are simply irrelevant in California where private party transfers—even those initiated at gun shows—must be processed by a licensed firearm dealer and are subject to background checks and registration under state law.

116.   The VPRP report cited by the Public Safety Committee's analysis of AB 893 also attempts to implicate licensed firearm retailers operating at gun shows as sources of crime guns in America, claiming that "30% of dealers with gun show sales, but 22% of all dealers, had previously had a crime gun traced to them." But it expressly recognizes that "in California, where both gun shows themselves and gun commerce generally are regulated, *sales at gun shows are not a risk factor among licensed retailers for disproportionate sales of crime guns*." Ex. 8 at 33 (emphasis added).

117.   The Public Safety Committee's March 26, 2019 analysis also cited a report from the Government Accountability Office, claiming that a GAO report "regarding gun trafficking to Mexico confirmed that many traffickers buy guns at gun shows." Ex. 7 at 3. But again, neither the BATFE report nor AB 893's legislative history links any illegally trafficked firearm to gun shows at the Fairgrounds (or even to gun shows in California). *See* U.S. Gov't Accountability Off., GAO-16-223, *Firearms Trafficking: U.S. Efforts to Combat Firearms Trafficking to Mexico Have Improved, but Some Collaboration Challenges Remain* (2016) attached as Exhibit 9. To be sure, the GAO report identifies U.S. Southwest border states, including Texas (41%), California (19%), and Arizona (15%), as the largest sources of firearms illegally trafficked into Mexico from the United States. Ex. 9 at 14. But it does not trace these illegally trafficked guns to licensed dealers,

33

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 generally, or to those operating at gun shows, specifically. Rather, it says only that

2 "there were about 10,134 licensed dealers and pawnbrokers in the four Southwest

3 border states, many of them along the border," and that "these licensed dealers and

4 pawnbrokers can operate in locations such as gun shops, pawn shops, their own

5 homes, or gun shows." *Id.*

6     118.   The Public Safety Committee's March 26, 2019 analysis did concede

7 that "less than one percent of inmates incarcerated in state prisons for gun crimes

8 acquired their firearms at a gun show"—though it transparently tries to diminish that

9 fact by citing only a website of the National Rifle Association as the source of the

10 statistic, instead of the U.S. Department of Justice, Bureau of Justice Statistics

11 reports from which the NRA drew it. Ex. 7 at 2-3 (citing NRA-ILA, *Background*

12 *Checks|NICS*, https://www.nraila.org/get-the-facts/background-checks-nics (last

13 visited Sept. 29, 2021)); *but see* Caroline Wolf Harlow, Ph.D., Bureau of Justice

14 Statistics, *Firearm Use by Offenders* (Nov. 2001) attached as Exhibit 10.

15     119.   While the Public Safety Committee's March 26, 2019 analysis also

16 concedes that "violent criminals do not appear to regularly purchase their guns

17 directly from gun shows," the analysis immediately shifts to "criticism" (from the

18 partisan Center for American Progress) that gun shows are somehow "the critical

19 moment in the chain of custody for many guns, the point at which they move from

20 the somewhat-regulated legal market to the shadowy, no-questions-asked illegal

21 market." Ex. 7 at 3 (citing Arkadi Gerney, Center for American Progress, *The Gun*

22 *Debate 1 Year After Newtown: Assessing Six Key Claims About Gun Background*

23 *Checks* (Dec. 2013), *available at* https://www.americanprogress.org/issues/guns-

24 crime/reports/2013/12/13/80795/the-gun-debate-1-year-after-newtown/ (last visited

25 Sept. 29. 2021). Neither the Center for American Progress editorial nor AB 893's

26 bill analysis show how, in California where sales at gun shows are regulated *at least*

27 as heavily as sales at brick-and-mortar retailers, guns originating at gun shows are

28 any more likely to enter the "shadowy, no-questions-asked illegal market" than

34

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 │ those sold at gun stores.

2 │     120.   Councilman Dwight Worden from the city of Del Mar, which was "at

3 │ the helm of city-level efforts to oppose the shows," spoke in strong support of AB

4 │ 893. He made clear that hostility toward the pro-gun speech that occurs at gun

5 │ shows has long driven the movement to put an end to the events: "Councilman

6 │ Dwight Worden said Del Mar's City Council is 'unanimously on the same page with

7 │ this [AB 893] and very much behind the effort to discontinue the sale of guns and

8 │ ammo' at the Fairgrounds. 'For decades in Del Mar, we felt that the *promotion and*

9 │ *glorification of guns at the gun show are not consistent with our community*

10 │ *values*.' " Lexy Brodt, *Boerner Horvath, Gloria Introduce Bill to Ban Gun Shows at*

11 │ *Fairgrounds*, Coast News Group (Feb. 28, 2019), https://thecoastnews.com/boerner-

12 │ horvath-gloria-introduce-bill-to-ban-gun-shows-on-state-land-2/ (last visited Sept.

13 │ 29, 2019) (emphasis added).

14 │     121.   On October 11, 2019, Governor Newsom signed AB 893 into law.

15 │     122.   Defendant Newsom, who is ultimately responsible for the enforcement

16 │ of the law, has long harbored animus towards gun show promotion.

17 │     123.   Indeed, Defendant Newsom has supported the closure of gun shows at

18 │ other state venues and specifically wrote to Defendant District in 2018 in support of

19 │ its unconstitutional gun show moratorium. He wrote: "[p]ermitting the sale of

20 │ firearms and ammunition on state owned property only perpetuates America's gun

21 │ culture at a time when 73 percent of Californians support gun reform measures."

22 │     **[The Impact of AB 893 on the Del Mar Gun Show]**

23 │     124.   The sale of firearms and ammunition is an essential function of gun

24 │ shows, and it is one of the main reasons people attend these events; if gun shows are

25 │ not economically viable because they have been stripped of an essential function,

26 │ they will cease to exist.

27 │     125.   AB 893 thus has the same practical effect as the District's

28 │ unconstitutional gun show moratorium—that is, by permanently banning the

35

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    commercial sale of firearms and ammunition at the Fairgrounds, it has the effect of

2    banning gun shows at the Fairgrounds.

3         126.   The Legislature was well-aware when it passed AB 893 that a

4    "gunless" gun show would not survive financially. Indeed, the intended purpose of

5    AB 893 was to end gun shows at the Fairgrounds.

6         127.   Indeed, the Public Safety Committee's March 26, 2019 analysis of AB

7    893 expressly admitted that:

8              This bill would add a section to the Food and Agricultural Code
             that prohibits the sale of firearms and ammunitions at the Del Mar
9              Fairgrounds. By default, a violation of any provision of the Food and
             Agricultural code is a misdemeanor, unless otherwise specified.
10             Therefore, this bill would effectively terminate the possibility for
             future gun shows at the Del Mar Fairgrounds.
11

12   Ex. 7 at 4.

13        128.   Similarly, the April 1, 2019 Assembly Appropriations Committee's

14   April 1, 2019 analysis of AB 893 acknowledged:

15             This bill would add a section to the Food and Agricultural Code that
             prohibits the sale of firearms and ammunitions at the Del Mar
16             Fairgrounds. By default, a violation of any provision of the Food and
             Agricultural code is a misdemeanor, unless otherwise specified.
17             Therefore, this bill would effectively terminate the possibility for
             future gun shows at the Del Mar Fairgrounds. On three prior
18             occasions, former Governors Brown and Schwarzenegger vetoed
             similar legislation to ban gun shows at the Cow Palace in San
19             Francisco.

20   See Kimberly Horiuchi, Assem. Comm. Approps., Bill Analysis Re: AB 819

21   (Gloria), 2019-2020 Reg. Sess., at 1-2 (Cal. 2019) attached as Exhibit 11.

22        129.   Reporting that AB 893 "would effectively shut down gun shows like

23   Crossroads of the West at the fairgrounds," the Times of San Diego quoted Gloria as

24   saying that "[t]he communities around the Del Mar Fairgrounds have been clear:

25   they do not want these gun shows taking place on this state-owned land." Chris

26   Jennewein, *Assembly Passes Todd Gloria's Bill to Thwart Gun Shows at Del Mar*

27   *Fairgrounds*, timesofsandiego.com (April 25, 2019),

28   https://timesofsandiego.com/politics/2019/04/25/assembly-passes-todd-glorias-bill-

                                          36
     COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

to-thwart-gun-shows-at-del-mar-fairgrounds/ (last visited Sept. 29, 2021).

130.   And further evidencing the Legislature's intended effect of AB 893, Senator Dave Min recently wrote to the Board of the 32nd District Agricultural Association in Orange County, warning the Board Members not to stand in the way of his bill that would ban sales of firearms, firearm precursor parts, and ammunition at the Orange County Fairgrounds in Costa Mesa. In that letter, he addressed members' concerns that their venue was being unfairly and exclusively targeted, responding that AB 893 was a similar action banning gun shows at a single fairground:

> Furthermore, the substantive merits of any such communication to the Governor are dubious. While Item 6A expresses a concern that SB 264 "exclusively targets the 32nd DAA," such action to **ban gun shows** at a single fairground site has recent precedent. In 2019, Gov. Newsom signed Assembly Bill 893 (Gloria) into law, ending the sale of firearms and ammunition at the Del Mar Fairgrounds, operated by the 22nd District Agricultural Association.

Letter from Senator Dave Min to Board Members of 32nd District Agricultural Association attached as Exhibit 12 (emphases added).

131.   Nonetheless, Plaintiff Crossroads has repeatedly reached out to Defendant District to request dates for events at the Fairground in 2021.

132.   Plaintiff Crossroads has been unable to secure dates and enter into new contracts for events at the Fairgrounds in 2021 due to the Defendants' intentional act of adopting and enforcing AB 893.

133.   Indeed, in compliance with AB 893, Defendant District cannot and will not enter into contracts for gun shows at the Fairgrounds if firearms and ammunition will be sold.

134.   Even though Plaintiff Crossroads has offered to attempt to hold events without sales of firearms or ammunition to preserve its longstanding relationship with the District, mitigate damages, and continue planning and promoting its family-friendly events until its claims can be heard, Defendant District has dragged its feet and has not provided dates for events in 2021.

135.   As a result of Defendant District's stalling, most of Plaintiff Crossroads' requested dates in 2021 have either passed or have become unavailable.

136.   Because of the time and resources needed to plan and implement its gun show events, Plaintiff Crossroads must plan its shows about one year in advance, but Defendant District has not allowed Plaintiff Crossroads to secure dates in 2022 either.

137.   What's more, Defendant District seems to have stripped Plaintiff Crossroads of its effective right of first refusal under the District's "hold" system described above. Indeed, it has not only failed to give Crossroads first choice of its dates for the coming year, but it has also prohibited Crossroads from securing dates for gun show events at the Fairgrounds since 2020.

138.   Because California prohibits the building of similar venues within their districts as a way of preventing competition for available space, there are no venues in the area that offer comparable space and parking needed for gun show events. Plaintiff Crossroads has thus been unable to find a suitable alternate location to the Fairgrounds.

139.   Defendants' adoption and enforcement of AB 893, which has the intended and practical effect of banning gun shows at the Fairgrounds, has and will continue to cause Plaintiff Crossroads significant economic damages, including loss of event revenue, breakdown of relationships and agreements with long-time event vendors and companies used as suppliers for gun show events, relinquishment of future show dates, and loss of business reputation and goodwill that has been built by Plaintiff Crossroads for more than 30 years.

140.   Plaintiff Crossroads has already lost all revenue for gun show events at the Fairgrounds in 2021 because the Fair Board will not finalize event dates, citing AB 893 as the reason. If shows do not return to the Fairgrounds in 2022, Plaintiff Crossroads will lose all revenue for gun show events at the Fairgrounds in 2022 as well.

141.   Even if Plaintiff Crossroads could secure dates, plan, promote, and host gun shows in the remainder of 2021 and in 2022, AB 893 stands in the way of Crossroads generating the profits the events typically generate because the ban on firearm and ammunition sales will significantly impact paid event attendance and the types and numbers of paid vendors who will do business with Crossroads at the Del Mar gun show.

142.   Plaintiff Crossroads has and will continue to suffer loss of business goodwill resulting from Defendants' adoption and enforcement of AB 893 under the (unsupported) pretense that gun shows, generally, and Crossroads' shows, in particular, threaten public safety. The message this sends to other venues, attendees, and vendors that do business with Crossroads will no doubt affect Crossroads for years.

143.   Defendants' adoption and enforcement of AB 893, which has the intended and practical effect of banning gun shows at the Fairgrounds, also causes economic damage to the organizational plaintiffs, CRPA, SAF, and South Bay, which use their vendor spaces, in part, to sell organization memberships, advertise their educational courses, request donations, and sell organization merchandise, like hats and stickers.

144.   Defendants' adoption and enforcement of AB 893, which has the intended and practical effect of banning gun shows at the Fairgrounds, also causes economic damage to the vendor plaintiffs, Solis, Walsh, Captain Jon's, and LAX Ammo, who uses their vendor spaces, in part, to sell firearms, ammunition, and/or related accessories.

145.   Defendants' adoption and enforcement of AB 893, which has the intended and practical effect of banning gun shows at the Fairgrounds, prohibits Plaintiffs and all those similarly situate from making sue of a state-owned "public assembly facility" to host gun show events, a lawful business activity, in violation of Plaintiffs' rights to engage in free speech and peaceful assembly, and their right to

39

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

043

1     equal protection under the law.

2        146.   Specifically, Defendants' conduct complained of here strips Plaintiffs

3    Bardack, Diaz, Dupree, Irick, Solis, and Walsh, as well as the organizational

4    plaintiffs, CRPA, SAF, and South Bay, of a vital opportunity to assemble and

5    engage in pure speech about, among other things, the rights and responsibilities of

6    gun owners, the Second Amendment, patriotism, and political activism with like-

7    minded individuals.

8        147.   Defendants' conduct complained of here also strips Plaintiff Crossroads

9    of the right to promote gun show events, acting as a "clearinghouse" for both

10    political speech and commercial speech.

11       148.   Defendants' conduct complained of here also strips Plaintiffs Solis,

12    Walsh, Captain Jon's, and LAX Ammo of a vital opportunity to assemble and

13    engage in lawful commercial speech, including the offer and acceptance of sales of

14    firearms, ammunition, and related accessories.

15       149.   Furthermore, even if the Court grants injunctive relief, Plaintiff

16    Crossroads will have incurred damages in having to devote extraordinary advertising

17    dollars to inform the public that gun shows will continue to be held and have not

18    been banned at the Fairgrounds.

19       150.   The economic and non-economic harms and injuries to Plaintiffs are of

20    a continuing nature; they continue to compound everyday AB 893 remains the law.

21                        **[Government Tort Claim]**

22       151.   On August 2, 2021, Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA

23    and SAF notified Defendants Newsom, Bonta, Ross, and District of their claims for

24    intentional and/or negligent interference with prospective advantage by filing a

25    timely Government Tort Claim pursuant to California's Tort Claims Act. B&L

26    Productions, Inc., et al., Government Tort Claim (filed Aug. 2, 2021) attached

27    Exhibit 13.

28       152.   Defendants Newsom, Bonta, Ross, and District neither accepted nor

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  rejected Plaintiffs' Government Tort Claim in writing within 45 days, so the claim
2  was rejected by operation of law.

3      153.  On August 2, 2021, Plaintiff Crossroads of its claim for intentional
4  interference with contract by filing a timely Government Tort Claim pursuant to
5  California's Tort Claims Act. Ex. 7.

6      154.  Defendants Newsom, Bonta, Ross, and District neither accepted nor
7  rejected Plaintiffs' Government Tort Claim in writing within 45 days, so the claim
8  was rejected by operation of law.

9                        **FIRST CAUSE OF ACTION**
10     **Violation of Right to Free Speech Under U.S. Const., amend. I**
11                            **42 U.S.C. § 1983**
12  (By Plaintiffs CRPA, South Bay, SAF, and All Individuals Against All Defendants)

13     155.  Plaintiffs incorporate by reference paragraphs 1 through 154 of this
14  Complaint as though fully set forth herein in their entirety.

15     156.  The First Amendment provides that "Congress shall make no law . . .
16  abridging the freedom of speech. . .."

17     157.  The First Amendment's Freedom of Speech Clause is incorporated and
18  made applicable to the states and their political subdivisions by the Fourteenth
19  Amendment to the United States Constitution and by 42 U.S.C. § 1983.

20     158.  The First Amendment does not tolerate the suppression of speech based
21  on the viewpoint of the speaker. Public property made available for lease by
22  community groups to engage in expressive activity must thus be available without
23  regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such
24  venues cannot be opened to some and closed to others, suppressing protected
25  expression, absent a compelling government interest. *Id.* at 571.

26     159.  The state of California owns the Fairgrounds, a public venue. It is
27  rented to the public, including community-based organizations and businesses, for
28  its use and enjoyment, including for concerts, festivals, and industry shows.

41

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

160.    Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that AB 893 is enforced and thus have the authority to prosecute violations of AB 893.

161.    Defendants Ross and District interpret, implement, and enforce state laws and policies as regards the Fairgrounds, including AB 893.

162.    Plaintiffs CRPA, South Bay, SAF, and Individuals Bardack, Diaz, Dupree, Irick, Solis, and Walsh have attended in the past and wish to again attend Crossroads of the West Gun Show at the Fairgrounds so they may exchange ideas, information, and knowledge, as well discuss political issues and the importance of protecting and defending the Second Amendment.

163.    Plaintiffs CRPA, South Bay, SAF, and Individuals Bardack, Diaz, Dupree, Irick, Solis and Walsh have a right under the First Amendment to use the Fairgrounds for their expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express.

164.    Defendants' enforcement of AB 893, which prohibits the sale of firearms and ammunition at the Fairgrounds with the purpose and intention (or at least the effect) of ending gun show events at the Fairgrounds, is an impermissible content-based restriction of speech. Such enforcement constitutes a direct violation of the First Amendment.

165.    There is no compelling (or even legitimate) governmental interest to support the ban on the commercial sales of all firearms and ammunition at the Fairgrounds, effectively shuttering gun show events at the Fairgrounds and destroying a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere.

166.    As a direct and proximate result of Defendants' conduct, Plaintiffs CRPA, South Bay, SAF and Individuals Bardack, Diaz, Dupree, Irick, Solis, and Walsh have suffered irreparable harm, including the violation of their constitutional right to freedom of expression, entitling them to declaratory and injunctive relief.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## SECOND CAUSE OF ACTION

### Violation of Right to Free Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By Plaintiff Crossroads Against All Defendants)

167.   Plaintiffs incorporate by reference paragraphs 1 through 166 of this Complaint as though fully set forth herein in their entirety.

168.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . .."

169.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

170.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

171.   Event promoters, though they generally promote events for profit, "still enjoy the protections of the First Amendment." *Id.* at 567. For "[t]he role of a promoter in ensuring access to the public is at least as critical as the role of a bookseller or theater owner and . . . is in a far better position than a concert goer or individual performers to vindicate First Amendment rights and ensure public access." *Id.* at 568. The conduct they engage in is protected expression.

172.   The state of California owns the Fairgrounds, a public venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

173.   Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that AB 893 is enforced and thus have the

43

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 | authority to prosecute violations of AB 893.

2 |     174.   Defendants Ross and District interpret, implement, and enforce state

3 | laws and policies as regards the Fairgrounds, including AB 893.

4 |     175.   Plaintiff Crossroads seeks to engage in protected speech at the

5 | Fairgrounds, a noted "public assembly facility," through the promotion and

6 | production of events for lawful expressive activity, including events that bring

7 | together like-minded individuals to engage in pure political and educational speech,

8 | as well as commercial speech of vendor and individual participants to communicate

9 | offer and acceptance for the sale of legal goods and services.

10 |     176.   Plaintiff Crossroads has a right under the First Amendment to use the

11 | Fairgrounds for its expressive activity on the same basis as other members of the

12 | public without regard to the content or viewpoint it seeks to express and promote.

13 |     177.   Defendants' enforcement of AB 893, which prohibits the sale of

14 | firearms and ammunition at the Fairgrounds with the purpose and intention (or at

15 | least the effect) of ending gun show events at the Fairgrounds, is an impermissible

16 | content-based restriction of speech. Such enforcement constitutes a direct violation

17 | of the First Amendment.

18 |     178.   There is no compelling (or even legitimate) governmental interest to

19 | support the ban on the commercial sales of all firearms and ammunition at the

20 | Fairgrounds, effectively shuttering gun show events at the Fairgrounds and

21 | destroying a vital outlet for the expression and exchange of ideas related to

22 | promoting and preserving the "gun culture" in California and elsewhere.

23 |     179.   As a direct and proximate result of Defendants' conduct, Plaintiff

24 | Crossroads has suffered and will continue to suffer irreparable harm, including the

25 | violation of its constitutional right to freedom of expression, entitling Plaintiff to

26 | declaratory and injunctive relief.

27 | ///

28 | ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**THIRD CAUSE OF ACTION**

**Violation of Right to Free Speech Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By Plaintiffs Solis, Walsh, Captain Jon's, and LAX Ammo Against All Defendants)

180.   Plaintiffs incorporate by reference paragraphs 1 through 179 of this Complaint as though fully set forth herein in their entirety.

181.   The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . . ."

182.   The First Amendment's Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

183.   The First Amendment does not tolerate the suppression of speech based on the viewpoint of the speaker. Public property made available for lease by community groups to engage in expressive activity must thus be available without regard to the viewpoint sought to be expressed. *Cinevision*, 745 F.2d 560. Such venues cannot be opened to some and closed to others, suppressing protected expression, absent a compelling government interest. *Id.* at 571.

184.   AB 893 violates the commercial free speech rights of the Plaintiffs, both on its face and as applied. This violation is especially egregious given the well-established law of this Circuit with regard to the commercial speech rights at gun shows that are protected by the First Amendment. *Nordyke v. Santa Clara Cty.*, 110 F.3d 707 (9th Cir. 1997).

185.   The state of California owns the Fairgrounds, a public venue. It is rented to the public, including community-based organizations and businesses, for its use and enjoyment, including for concerts, festivals, and industry shows.

186.   Defendants Newsom, Becerra, Summers, and Montgomery are the state and local actors responsible for ensuring that AB 893 is adequately enforced and thus have the authority to prosecute violations of AB 893.

45

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

187. Defendants Ross and District interprets, implements, and enforces state laws and policies as regards the Fairgrounds, including AB 893.

188. Plaintiffs Solis, Walsh, Captain Jon's, and LAX Ammo have attended in the past and wish to again attend Crossroads gun shows at the Fairgrounds to engage in lawful commercial speech with individual attendees.

189. Plaintiffs Solis, Walsh, Captain Jon's, and LAX Ammo have a right under the First Amendment to use the Fairgrounds for expressive activity on the same basis as other members of the public without regard to the viewpoints they seek to express and promote.

190. Defendants' enforcement of AB 893, which prohibits the sale of firearms and ammunition at the Fairgrounds with the purpose and intention (or at least the effect) of ending gun show events at the Fairgrounds, is an impermissible content-based restriction of speech. Such enforcement constitutes a direct violation of the First Amendment commercial speech rights of the Plaintiffs.

191. Further, by directly barring the rights of vendors, like Plaintiffs Solis, Walsh, and LAX Ammo, to sell firearms and ammunition (which necessarily involves commercial speech), AB 893 defies existing case law in the Ninth Circuit protecting the commercial speech associated with firearm sales on public property. *See Nordyke v. Santa Clara Cty.*, 110 F. 3d 707 (9th Cir. 1997).

192. There is no governmental interest—let alone a substantial one—to support the ban on the commercial sales of all firearms and ammunition at the Fairgrounds, effectively shuttering gun show events at the Fairgrounds and destroying a vital outlet for the expression and exchange of ideas related to promoting and preserving the "gun culture" in California and elsewhere. This is especially true where the state maintains an interest in tax revenue from the lawful sale of firearms and ammunition at locations other than gun shows.

193. Even if there were a substantial governmental interest in restricting gun shows and the commercial speech that occurs at such events, banning commercial

46

1  speech about firearms and ammunition at the Fairgrounds altogether is more

2  extensive than necessary to serve any such interest. *See Nordyke*, 110 F.3d 707

3  (holding that a ban on the sale of firearms on county-owned land was overbroad as

4  abridging commercial speech associated with the sale of lawful products).

5      194.   As a direct and proximate result of Defendants' conduct, Plaintiffs

6  Solis, Walsh, Captain Jon's, and LAX Ammo will suffer irreparable harm, including

7  the violation of their constitutional right to freedom of expression, entitling them to

8  declaratory and injunctive relief.

9                    **FOURTH CAUSE OF ACTION**

10    **Prior Restraint on Right to Free Speech Under U.S. Const., amend. I**

11                       **42 U.S.C. § 1983**

12                 (By All Plaintiffs Against All Defendants)

13     195.   Plaintiffs incorporate by reference paragraphs 1 through 194 of this

14  Complaint as though fully set forth herein in their entirety.

15     196.   The First Amendment provides that "Congress shall make no law . . .

16  abridging the freedom of speech. . .."

17     197.   The First Amendment's Freedom of Speech Clause is incorporated and

18  made applicable to the states and their political subdivisions by the Fourteenth

19  Amendment to the United States Constitution and by 42 U.S.C. § 1983.

20     198.   The First Amendment affords special protection against policies or

21  orders that impose a previous or prior restraint on speech. "[P]rior restraints on

22  speech and publication are the most serious and least tolerable infringement on First

23  Amendment Rights." *Ass'n for L.A. Deputy Sheriffs*, 239 Cal. App. 4th at 811 (citing

24  *Neb. Press Ass'n*, 427 U.S. at 559. A prior restraint is particularly egregious when it

25  falls upon the communication of news, commentary, current events, political speech,

26  and association. *N.Y. Times Co.*, 403 U.S. at 715.

27     199.   Prior restraint also involves the "unbridled discretion doctrine" where a

28  policy, or lack thereof, allows for a single person or body to act at their sole

                              47

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    discretion, without regard for any constitutional rights possessed by the person upon

2    which the action is taken, and where there is no remedy for challenging the

3    discretion of the decision makers. *Lakewood*, 486 U.S. at 757.

4       200.   The Defendants are the state and local actors responsible for enforcing

5    AB 893, which is a content-based restriction of speech that will have a chilling

6    effect on Plaintiffs' First Amendment rights, thus acting as a de facto prior restraint

7    on Plaintiffs' rights.

8       201.   Under AB 893, Defendant District has unfettered discretion to

9    determine what constitutes a "sale" under the law and is thereby prohibited at the

10   Fairgrounds.

11      202.   Defendants' policies and practices complained of here impose an

12   unconstitutional prior restraint because they vest the District with unbridled

13   discretion to permit or refuse protected expression by members of the public,

14   including Plaintiffs.

15      203.   Defendants' policies and practices complained of here give unbridled

16   discretion to local agricultural district boards and board members to decide what

17   forms of expression members of the public may engage in on at the Fairgrounds and

18   to ban any other expression at the whim of those boards and board members in

19   violation of the First Amendment.

20      204.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

21   suffered and will continue to suffer irreparable harm, including the violation of their

22   constitutional right to freedom of expression, entitling them to declaratory and

23   injunctive relief and nominal damages.

24                           **FIFTH CAUSE OF ACTION**

25   **Violation of Right to Assembly and Association Under U.S. Const., amend. I**

26                              **42 U.S.C. § 1983**

27                        (By All Plaintiffs Against All Defendants)

28      205.   Plaintiffs incorporate by reference paragraphs 1 through 204 of this

                                    48

1    Complaint as though fully set forth herein in their entirety.

2      206. The First Amendment protects the rights to association and assembly.

3 Indeed, "[e]ffective advocacy of both public and private points of view, particularly

4 controversial ones, is undeniably enhanced by group association." *NAACP*, 377 U.S.

5 at 462.

6      207. Plaintiffs are attempting to engage in their protected right to free

7 assembly and association through lawful activities that bring together like-minded

8 individuals to engage in lawful commerce, expressive activities, including political

9 and educational speech, and fellowship.

10      208. Defendants violate Plaintiffs' right to freedom of assembly by denying

11 them the right to use the Fairgrounds, a "public assembly facility", to assemble and

12 engage in political and other types of expression—a right Defendants extend to other

13 members of the public so long as they are not meeting for the purposes of holding a

14 gun show event.

15      209. Defendants have no legitimate and substantial interest in prohibiting the

16 sale of firearms and ammunition, effectively shuttering gun shows at the

17 Fairgrounds, and by extension the rights of Plaintiffs to associate and assemble at

18 the Fairgrounds.

19      210. Defendants have expressly banned the sale of firearms and ammunition

20 at the Fairgrounds, which is an essential function of gun show and one of the main

21 reasons people attend these events. By eliminating the sale of firearms and

22 ammunition, Defendants have stripped gun shows of an essential function, limiting

23 the number and types of vendors at the gun shows and the number of individuals in

24 attendance. Thus, having a chilling effect on the First Amendment.

25      211. Not only does AB 893 eliminate Plaintiffs' ability to engage in

26 discussion with event attendees about the sale and purchase of firearms and

27 ammunition, but it does also so unnecessarily because of California's already

28 extensive regulation of gun show events. For instance, California's mandatory 10-

49

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   day waiting period prevents any attendee from taking possession of firearms on the

2   premises of the Fairgrounds, requiring that they instead go to a *different* location at

3   least 10 days later to take possession of any firearm purchased at the gun show.

4   Before a gun show attendee would take possession of ammunition purchased on the

5   premises, the attendee would have to rely on a vendor to retrieve the ammunition

6   from stock, pass a background check conducted electronically by the California

7   Department of Justice, pay a fee, and wait for the vendor to upload the purchaser's

8   personal information and details of the specific ammunition being transferred.

9   What's more, no person other than security personnel or law enforcement may

10   possess both a firearm and ammunition for that firearm at the same time, with the

11   exception of vendors who are selling both.

12       212.   But even if Defendants had a "legitimate and substantial" interest in

13   limiting a key aspect of gun show events, and thus barring Plaintiffs from freely

14   assembling at the Fairgrounds, they have imposed an unconstitutional and overly

15   broad restriction on Plaintiffs' rights to assembly by prohibiting the sale of firearms

16   and ammunition at the Fairgrounds.

## SIXTH CAUSE OF ACTION

**Violation of the Right to Equal Protection Under U.S. Const., amend. XIV**

**42 U.S.C. § 1983**

(By All Plaintiffs Against All Defendants)

21       213.   Plaintiffs incorporate by reference paragraphs 1 through 212 of this

22   Complaint as if fully set forth herein in their entirety.

23       214.   The Fourteenth Amendment to the United States Constitution,

24   enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person

25   within its jurisdiction the equal protection of the laws.

26       215.   Generally, equal protection is based upon protected classes of person

27   who are similarly situated; however, individuals who suffer irrational and intentional

28   discrimination or animus can bring claims of equal protection where the government

50

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    is subjecting only the Plaintiffs to differing and unique treatment compared to others

2    who are similarly situated, *Engquist*, 553 U.S. 591, even if not based on group

3    characteristics, *Village of Willowbrook*, 528 U.S. 562.

4        216.   Disparate treatment under the law, when one is engaged in activities

5    that are fundamental rights, is actionable under the Equal Protection Clause of the

6    Fourteenth Amendment. *Mosley*, 408 U.S. 92; *Carey*, 447 U.S. 455.

7        217.   Although Plaintiff Crossroads operates a legal and legitimate business

8    and the Fairgrounds is suitable for the purposes of hosting a gun show at its public

9    facility, as demonstrated by over 30 years of uninfringed use of the Fairgrounds, AB

10   893 prevents Plaintiffs from equally participating in the use of the publicly owned

11   venue by unconstitutionally eliminating Plaintiffs' ability to freely conduct

12   otherwise lawful business transactions and freely express their beliefs with like-

13   minded people.

14       218.   Defendants' refusal to permit Plaintiffs equal access to the Fairgrounds

15   for its promotion of gun shows does not further any compelling governmental

16   interest.

17       219.   Defendants' refusal to allow Plaintiffs equal use of the public facility

18   while continuing to allow contracts for the use of the facility with other similarly

19   situated legal and legitimate businesses is a violation of Plaintiffs' right to equal

20   protection under the law because it is based on a "bare desire to harm a politically

21   unpopular group." *Moreno*, 413 U.S. at 534.

22       220.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

23   suffered irreparable harm, including the violation of their constitutional right to

24   equal protection under the law, entitling them to declaratory and injunctive relief

25   and nominal damages.

26   / / /

27   / / /

28   / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SEVENTH CAUSE OF ACTION**

**Intentional Interference with Prospective Economic Advantage**

(By Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF Against Defendants Newsom, Bonta, Ross, and District)

221. Plaintiffs incorporate by reference paragraphs 1 through 220 of this Complaint as if fully set forth herein in their entirety.

222. For more than 30 years, Plaintiff Crossroads has maintained contracts with Defendant District, under which Plaintiff Crossroads annually hosts about five gun-show events at the Fairgrounds. An economic relationship has been in effect between Plaintiff Crossroads and Defendant District to operate gun shows on the state fairground property for over 30 years.

223. In turn, Plaintiff Crossroads maintains countless economic relationships with for-profit and nonprofit vendors, including but not limited to, Plaintiffs Walsh, LAX Ammo, CRPA and SAF. These vendors pay for space at Plaintiff Crossroads' Del Mar gun shows in order to sell merchandise (including firearms and ammunition) and organization memberships, among other things.

224. Defendants Newsom, Bonta, Ross, and District had actual knowledge of the existence of these relationships.

225. By adopting and enforcing AB 893, which bans the sale of firearms and ammunition at the Fairgrounds and effectively bans gun shows at the Fairgrounds, Defendants Newsom, Bonta, Ross, and District engaged in an intentional act designed to disrupt these economic relationships.

226. The adoption and enforcement of AB 893 by Defendants Newsom, Bonta, Ross, and District did, in fact, disrupt the known economic relationships between Plaintiff Crossroads and Defendant 2nd DAA and between Plaintiff Crossroads and its vendors, including Plaintiffs Walsh, LAX Ammo, CRPA and SAF.

227. Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF have

52

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    suffered actual damages as a result of the conduct of Defendants Newsom, Bonta,

2    Ross, and District complained of herein.

3        228.   Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF notified

4    Defendants Newsom, Bonta, Ross, and District of this claim by filing a Government

5    Tort Claim pursuant to California's Tort Claims Act. Ex. 7.

6        229.   Defendants Newsom, Bonta, Ross, and District neither accepted nor

7    rejected Plaintiffs' Government Tort Claim in writing within 45 days, so the claim

8    was rejected by operation of law.

9                    **EIGHTH CAUSE OF ACTION**

10        **Negligent Interference with Prospective Economic Advantage**

11    (By Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF Against Defendants

12                  Newsom, Bonta, Ross, and District)

13        230.   Plaintiffs incorporate by reference paragraphs 1 through 229 of this

14    Complaint as if fully set forth herein in their entirety.

15        231.   For more than 30 years, Plaintiff Crossroads has maintained contracts

16    with Defendant District, under which Plaintiff Crossroads annually hosts about five

17    gun-show events at the Fairgrounds. An economic relationship has been in effect

18    between Plaintiff Crossroads and Defendant District to operate gun shows on the

19    state fairground property for over 30 years.

20        232.   In turn, Plaintiff Crossroads maintains countless economic relationships

21    with for-profit and nonprofit vendors, including but not limited to, Plaintiffs Walsh,

22    LAX Ammo, CRPA and SAF. These vendors pay for space at Plaintiff Crossroads'

23    Del Mar gun shows in order to sell merchandise (including firearms and

24    ammunition) and organization memberships, among other things.

25        233.   Defendants Newsom, Bonta, Ross, and District had actual knowledge

26    of the existence of these relationships.

27        234.   Defendants Newsom, Bonta, Ross, and District knew that, by adopting

28    and enforcing AB 893, which bans the sale of firearms and ammunition at the

53

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 8:21-cv-01518-AJB-KSC   Document 12-2 Filed 10/04/21   PageID.54   Page 54 of 366
Case 8:22-cv-01518-JWH-KSC   Document 12-2 Filed 12/09/22   Page 59 of 128   Page ID
#:1500

Fairgrounds and effectively bans gun shows at the Fairgrounds, these economic

relationships would be disrupted if they did not act with reasonable care.

235.   Defendants Newsom, Bonta, Ross, and District knew that, by adopting

and enforcing AB 893, which bans the sale of firearms and ammunition at the

Fairgrounds and effectively bans gun shows at the Fairgrounds, in fact failed to act

with reasonable care.

236.   The adoption and enforcement of AB 893 by Defendants Newsom,

Bonta, Ross, and District did, in fact, disrupt the known economic relationships

between Plaintiff Crossroads and Defendant 2nd DAA and between Plaintiff

Crossroads and its vendors, including Plaintiffs Walsh, LAX Ammo, CRPA and

SAF.

237.   Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF have

suffered actual damages as a result of the conduct of Defendants Newsom, Bonta,

Ross, and District complained of herein.

238.   Plaintiffs Crossroads, Walsh, LAX Ammo, CRPA and SAF notified

Defendants Newsom, Bonta, Ross, and District of this claim by filing a Government

Tort Claim pursuant to California's Tort Claims Act. Ex. 7.

239.   Defendants Newsom, Bonta, Ross, and District neither accepted nor

rejected Plaintiffs' Government Tort Claim in writing within 45 days, so the claim

was rejected by operation of law.

## NINTH CAUSE OF ACTION

### Intentional Interference with Contract

(By Plaintiff Crossroads Against Defendants Newsom, Bonta, Ross, and District)

240.   Plaintiffs incorporate by reference paragraphs 1 through 239 of this

Complaint as if fully set forth herein in their entirety.

241.   For more than 30 years, Plaintiff Crossroads has maintained contracts

with Defendant District, under which Plaintiff Crossroads annually hosts about five

gun-show events at the Fairgrounds. Thus, an economic relationship has been in

54

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

effect between Plaintiff Crossroads and the District to operate gun shows on state fairground property for over 30 years.

242.   For decades, Defendant District has given Plaintiff Crossroads an effective right of first refusal to secure event dates for the coming year as a returning contractor at the Fairgrounds under the District's longstanding "hold" system.

243.   Defendants Newsom, Bonta, Ross, and District had actual knowledge of the existence of these relationships.

244.   By adopting and enforcing AB 893, which bans the sale of firearms and ammunition at the Fairgrounds and effectively bans gun shows at the Fairgrounds, Defendants Newsom, Bonta, Ross, and District engaged in an intentional act designed to disrupt these economic relationships.

245.   The adoption and enforcement of AB 893 by Defendants Newsom, Bonta, Ross, and District did, in fact, disrupt the known economic relationships between Plaintiff Crossroads and Defendant 2nd DAA and between Plaintiff Crossroads and its vendors, including Plaintiffs Walsh, LAX Ammo, CRPA and SAF.

246.   Plaintiffs Crossroads has suffered actual damages as a result of the conduct of Defendants Newsom, Bonta, Ross, and District complained of herein.

247.   Plaintiff Crossroads notified Defendants Newsom, Bonta, Ross, and District of this claim by filing a Government Tort Claim pursuant to California's Tort Claims Act. Ex. 7,

248.   Defendants Newsom, Bonta, Ross, and District neither accepted nor rejected Plaintiffs' Government Tort Claim in writing within 45 days, so the claim was rejected by operation of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.   A declaration that AB 893, codified at California Food & Agricultural Code section 4158, violates the free speech rights of Plaintiffs CRPA, South Bay,

55

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Case 3:21-cv-01718-AJB-KSC   Document 21-2   Filed 10/24/22   PageID.56   of Page 56 of 366
Case 3:22-cv-01518-JWH-JDE   Document 21-2   Filed 01/24/22   PageID.56 of Page 56 of 366
#:1502

1   SAF, and Individual Plaintiffs Bardack, Diaz, Dupree, Irick, Solis, and Walsh under

2   the First Amendment to the United States Constitution;

3       2.    A declaration that AB 893 violates the free speech rights of Plaintiff

4   Crossroads under the First Amendment to the United States Constitution;

5       3.    A declaration that AB 893, codified at California Food & Agricultural

6   Code section 4158, violates the free speech rights of Plaintiffs Solis, Walsh, Captain

7   Jon's, and LAX Ammo under the First Amendment to the United States

8   Constitution;

9       4.    A declaration that AB 893, codified at California Food & Agricultural

10  Code section 4158, violates the free speech rights of all Plaintiffs under the First

11  Amendment to the United States Constitution because it imposes a prior restraint on

12  their speech;

13      5.    A declaration that AB 893, codified at California Food & Agricultural

14  Code section 4158, violates the rights of assembly and association of all Plaintiffs

15  under the First Amendment to the United States Constitution;

16      6.    A declaration that AB 893, codified at California Food & Agricultural

17  Code section 4158, violates the rights of all Plaintiffs to equal protection under the

18  law per the Fourteenth Amendment to the United States Constitution;

19      7.    An preliminary and permanent injunction prohibiting all Defendants or

20  any of their agents from enforcing AB 893, codified at California Food &

21  Agricultural Code section 4158;

22      8.    An order for damages, including nominal damages, according to proof;

23      9.    An award of costs and expenses, including attorney's fees, pursuant to

24  42 U.S.C. § 1988 or other appropriate state or federal law; and

25

26  / / /

27  / / /

28  / / /

56

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      10.    Any such other relief the Court deems ust and e uita le.

2

3   Dated  Octo er 4, 2021        **MICHEL  ASSOCIATES P.C.**

4

5                                  *s/ Anna M. Barvir*

                                  Anna M.  ar ir

6                                   Counsel for Plaintiffs   &L Productions, Inc.,

                                  arry  ardac , Ronald J. Dia , Sr., John

7                                   Dupree, Christopher Iric , Ro ert Solis,

                                  La rence Michael  alsh, Captain Jon s

8                                   Loc ers, LLC, L.A.  . Firing Range, Inc.,

                                  California Rifle & Pistol Association,

                                  Incorporated, South  ay Rod and Gun Clu ,

9                                   Inc.

10   Dated  Octo er 4, 2021        LA   OFFICES OF DON   ILMER

11

12                                  *s/ Don Kilmer*

                                 Don   ilmer

13                                  Counsel for Plaintiff Second Amendment

                                 Foundation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT B

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone: (213) 269-6356
  Fax: (916)731-2119
  E-mail:  Charles.Sarosy@doj.ca.gov
*Attorneys for Governor Gavin Newsom,*
*Attorney General Rob Bonta, Secretary*
*Karen Ross, and 22nd District Agricultural*
*Association*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity, et al.,**<br><br>Defendants. | 3:21-cv-01718 AJB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>Date:          April 7, 2022<br>Time:          2:00 p.m.<br>Courtroom:  4A<br>Judge:         The Honorable Anthony J. Battaglia<br>Trial Date:<br>Action Filed:      10/4/2021 |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................1

Background...................................................................................2

    I.     The 22nd District Agricultural Association and the Del Mar
         Fairgrounds ........................................................................2

    II.    Prior Lawsuit About Gun Shows at the Del Mar Fairgrounds ............3

    III.   Before the Settlement, AB 893 Was Enacted to Prohibit the Sale
         of Firearms and Ammunition at the Del Mar Fairgrounds...................4

    IV.   Brief Summary of Plaintiffs' Claims and AB 893's Alleged
         Impact On Gun Shows at The Del Mar Fairgrounds ...........................5

Legal Standard ............................................................................6

Argument....................................................................................7

    I.     The § 1983 Claims Against Governor Newsom are Barred
         Under Absolute Legislative Immunity ...............................................7

    II.    Sovereign Immunity Bars All Claims Against Governor
         Newsom and Secretary Ross; the *Ex Parte Young* Exception
         Does Not Apply Because They Do Not Enforce the Law...................8

    III.   The Damages Claims Against Governor Newsom, Attorney
         General Bonta, and Secretary Ross Are Not Cognizable Under
         § 1983 ..............................................................................10

    IV.   Governor Newsom, Attorney General Bonta, and Secretary Ross
         are also Entitled to Qualified Immunity ...........................................10

    V.     The First Amendment Claims Fail to State a Claim ...........................11

         A.    AB 893 Does Not Regulate Speech or Expressive
              Conduct, and Survives Rational Basis Review.......................11

         B.    AB 893 Applies to a Limited Public Forum, a Type of
              Nonpublic Forum, and Satisfies the Reasonableness
              Standard.......................................................................15

         C.    AB 893 Satisfies the Tests Applicable for Commercial
              Speech Regulations and for Content-Neutral Regulations......17

               1.    AB 893 Does Not Ban Protected Commercial
                     Speech ..............................................................17

               2.    AB 893 Serves an Important Public Safety Interest
                     and is a Straightforward Response to the Relevant
                     Harms ................................................................18

         D.    The Prior Restraint Claim Fails Because AB 893 is a State
              Statute That the District Has No Discretion Not to Follow......21

    VI.   The Equal Protection Claim Fails to State a Claim............................22

    VII.  The State-Law Tort Claims Should Be Dismissed ...........................23

         A.    There is No Alleged Statutory Basis for the Tort Claims ........24

1

**TABLE OF CONTENTS**
(continued)

**Page**

B.     The Claims Were Not Timely Presented and Are Thus
Barred ......................................................................................24

Conclusion...........................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arkansas Educ. Television Comm'n v. Forbes*
523 U.S. 666 (1998)..................................................................................16

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011).............................................................................10, 11

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013)......................................................................9

*Atascadero State Hosp. v. Scanlon*
473 U.S. 234 (1985)....................................................................................8

*Bogan v. Scott-Harris*
523 U.S. 44 (1998)..................................................................................7, 8

*Boyer v. City of Los Angeles*
No. CV 12-04005, 2012 WL 13013037 (C.D. Cal. Aug. 23, 2012)..................18

*Brown v. Cal. Dep't of Transp.*
321 F.3d 1217 (9th Cir. 2003)..................................................................16

*Cal. Rest. Mgmt. Sys. v. City of San Diego*
195 Cal. App. 4th 1581 (2011).............................................................24, 25

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
447 U.S. 557 (1980)............................................................................17, 18

*City of Dallas v. Stanglin*
490 U.S. 19 (1989)..................................................................................22

*Clark v. Cmty. for Creative Non-Violence*
468 U.S. 288 (1984)..................................................................................12

*Cmty. House, Inc. v. City of Boise, Idaho*
623 F.3d 945 (9th Cir. 2010)......................................................................7

*Coble v. Ventura Cnty. Health Care Agency*
No. B311670, 2021 WL 6132855 (Cal. Ct. App. Dec. 29, 2021) ....................24

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*Dariano v. Morgan Hill Unified Sch. Dist.*
  767 F.3d 764 (9th Cir. 2014)..........................................................................22

*Doe v. Lawrence Livermore Nat'l Lab.*
  131 F.3d 836 (9th Cir. 1997)..........................................................................10

*Duncan v. Bonta*
  19 F.4th 1087 (9th Cir. 2021) (en banc) ....................................................14, 20

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*
  666 F.3d 1216 (9th Cir. 2012)........................................................................21

*Fla. Bar v. Went For It, Inc.*
  515 U.S. 618 (1995)......................................................................................20

*FW/PBS, Inc. v. City of Dallas*
  493 U.S. 215 (1990)......................................................................................21

*Grunert v. Campbell*
  248 F. App'x 775 (9th Cir. 2007)....................................................................10

*Haynie v. Harris*
  658 F. App'x 834 (9th Cir. 2016)....................................................................21

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*
  452 U.S. 640 (1981)................................................................................15, 16

*Herd v. Cnty. of San Bernardino*
  311 F. Supp. 3d 1157 (C.D. Cal. 2018) ...........................................................24

*Hopper v. City of Pasco*
  241 F.3d 1067 (9th Cir. 2001)...................................................................15, 16

*Howard Jarvis Taxpayers Ass'n v. City of La Habra*
  25 Cal.4th 809 (2001) ...................................................................................25

*Int'l Soc'y for Krishna Consciousness of California, Inc. v. City of Los
  Angeles*
  764 F.3d 1044 (9th Cir. 2014).........................................................................15

# TABLE OF AUTHORITIES
### (continued)

Page

*Interpipe Contracting, Inc. v. Becerra*
   898 F.3d 879 (9th Cir. 2018)........................................................................13

*Johnson v. Riverside Healthcare Sys., LP*
   534 F.3d 1116 (9th Cir. 2008).......................................................................7

*Jones v. Allison*
   9 F.4th 1136 (9th Cir. 2021).........................................................................7

*Kisela v. Hughes*
   138 S.Ct. 1148 (2018)..................................................................................11

*L.A. County Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992).....................................................................8, 9

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*
   714 F.2d 946 (9th Cir.1983)........................................................................8

*NAACP v. City of Richmond*
   742 F.2d 1346 (9th Cir. 1984).....................................................................16

*Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psych.*
   228 F.3d 1043 (9th Cir. 2000).....................................................................14

*Nat'l Audubon Soc'y, Inc. v. Davis*
   307 F.3d 835 (9th Cir.2002).........................................................................9

*Nichols v. Brown*
   859 F. Supp. 2d 1118 (C.D. Cal. 2012) .......................................................7

*Nordyke v. King*
   319 F.3d 1185 (9th Cir. 2003)................................................................12, 13

*Nordyke v. King*
   644 F.3d 776 (9th Cir. 2011)............................................ 16, 17, 19, 20, 22

*Nordyke v. King*
   681 F.3d 1041 (9th Cir. 2012).................................................................16, 23

# TABLE OF AUTHORITIES
### (continued)

Page

*Nordyke v. Santa Clara Cnty.*
  110 F.3d 707 (9th Cir. 1997)................................................................. 12, 17, 18

*Oliver v. Ralphs Grocery Co.*
  654 F.3d 903 (9th Cir. 2011)................................................................................24

*OSU Student All. v. Ray*
  699 F.3d 1053 (9th Cir. 2012)..............................................................................22

*Pearson v. Callahan*
  555 U.S. 223 (2009)..............................................................................................11

*Pennhurst State Sch. & Hosp.*,
  465 U.S. 89 (1984)........................................................................................10, 23

*Porter v. Bowen*
  496 F.3d 1009 (9th Cir. 2007)..............................................................................11

*Quern v. Jordan*
  440 U.S. 332 (1979)................................................................................................8

*Retail Digital Network, LLC v. Prieto*
  861 F.3d 839 (9th Cir. 2017)........................................................................14, 18

*Romero-Ochoa v. Holder*
  712 F.3d 1328 (9th Cir. 2013)..............................................................................15

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*
  547 U.S. 47 (2006)................................................................................................20

*Searcy v. Hemet Unified Sch. Dist.*
  177 Cal. App. 3d 792 (1986)................................................................................24

*Sorrell v. IMS Health Inc.*
  564 U.S. 552 (2011)..............................................................................................13

*Teixeira v. Cnty. of Alameda*
  822 F.3d 1047 (9th Cir. 2016)..............................................................................23

*Teixeira v. Cnty. of Alameda*
  873 F.3d 670 (9th Cir. 2017)................................................................................23

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Texas v. Johnson*
    491 U.S. 397 (1989)..................................................................12

*Torres Rivera v. Calderon Serra*
    412 F.3d 205 (1st Cir. 2005) ...................................................7, 8

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013)..................................................15

*United States v. Grace*
    461 U.S. 171 (1983)..................................................................16

*United States v. O'Brien*
    391 U.S. 367 (1968) .................................................... 17, 19, 20

*Vill. of Willowbrook v. Olech*
    528 U.S. 562 (2000)..................................................................22

*White v. Pauly*
    137 S.Ct. 548 (2017)................................................................11

*Ex parte Young*
    209 U.S. 123 (1908)...............................................................8, 9

**STATUTES**

28 U.S.C.
    § 1367(c)(3) ............................................................................24

42 U.S.C.
    § 1983............................................................................*passim*

Cal. Bus. & Prof. Code
    § 19620....................................................................................2

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

1
2

# TABLE OF AUTHORITIES
### (continued)

Page

Cal. Food & Agric. Code

   § 3951(a)...............................................................................2

   § 3954....................................................................................2

   § 3956....................................................................................2

   § 3965(b)...............................................................................2

   § 4051(a)(1)..........................................................................2

   § 4158...............................................................................4, 19

   § 4158(a).....................................................................4, 12, 17

   § 3873....................................................................................2

Cal. Gov't Code

   § 810 et seq........................................................................24

   § 815(a)...............................................................................24

   § 815.6.................................................................................24

   § 900.2(b)............................................................................24

   § 901....................................................................................25

   § 911.2.................................................................................25

   § 911.2(a)............................................................................24

   § 945.4.................................................................................24

   § 12550..................................................................................9

Cal. Penal Code

   § 26805...............................................................................21

   § 27545...............................................................................21

**CONSTITUTIONAL PROVISIONS**

First Amendment ........................................................*passim*

Second Amendment...........................................................21

Eleventh Amendment...................................................8, 10

Cal. Const. Article I, § 13 ..................................................9

Cal. Const. Article V, § 1 ...................................................9

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(6) ...........................6

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

# INTRODUCTION

Plaintiffs are a gun show operator and a collection of gun show vendors and attendees claiming that California Assembly Bill 893 ("AB 893") violates their First Amendment and equal protection rights. The gravamen of their Complaint is that AB 893 entirely prohibits gun shows at the Del Mar Fairgrounds. But that is simply not the case. AB 893 prohibits only the act of selling firearms and ammunition at the Fairgrounds, while allowing all other conduct—including all expressive activity, firearms training, and the sales of other firearm-related products that *over 60 percent* of gun show vendors sell instead of firearms—to continue at the Fairgrounds. And the Ninth Circuit has long held that the sale of firearms and ammunition itself is not speech. Even if AB 893 were viewed as a speech regulation, though, it would pass constitutional muster no matter the analytical test applied. AB 893 makes clear its intent to prevent illegal firearm and ammunition transactions at gun shows that occur despite the various regulations governing such events. AB 893 is a straightforward and tailored response to addressing the gun violence that can result from illicit transactions.

Beyond misapprehending AB 893, Plaintiffs' claims against Governor Gavin Newsom ("Governor Newsom"), California Department of Food and Agriculture ("CDFA") Secretary Karen Ross ("Secretary Ross"), and Attorney General Rob Bonta ("Attorney General Bonta") fail for the threshold reasons that they are barred by legislative, sovereign, and/or qualified immunity. Finally, this Court need not even exercise its supplemental jurisdiction over Plaintiffs' state-law tort claims. But if it does, it should conclude that they are procedurally barred under California's Government Claims Act. For all of these reasons, and as further explained below, Plaintiffs' claims should be dismissed without leave to amend.

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

**BACKGROUND**

**I.    THE 22ND DISTRICT AGRICULTURAL ASSOCIATION AND THE DEL MAR FAIRGROUNDS**

California's District Agricultural Associations are state institutions formed for the purpose of "[h]olding fairs, expositions and exhibitions for the purpose of exhibiting all of the industries and industrial enterprises, resources and products of every kind or nature of the state with a view toward improving, exploiting, encouraging, and stimulating them."  Cal. Food & Agric. Code § 3951(a); *id.* § 3953.  The Associations, which act through their Boards of Directors, "may do any and all things necessary to carry out the powers and the objects and purposes" for which the Associations were formed.  *Id.*, §§ 3954, 3956.  The 22nd District Agricultural Association ("District") covers San Diego County.  *Id.* § 3873.

The CDFA is a state agency that provides "oversight of activities carried out by each California fair," including, for example, "[c]reating a framework for administration of the network of California fairs allowing for maximum autonomy and local decisionmaking authority."  Cal. Bus. & Prof. Code § 19620.  With the approval of the CDFA, the District's Board may "[m]anage the affairs of the [District]."  Cal. Food & Agric. Code § 3965(b).  However, the Board may, without prior approval from the CDFA, "arrange for and conduct, or cause to be conducted, or by contract permit to be conducted, any activity by any individual, institution, corporation, or association upon its property at a time as it may be deemed advisable."  *Id.*, § 3965.1(a).  Any such contract must accord with the District's written policies and procedures for contracting as well as all applicable state laws governing contracts.  *Id.*, § 4051(a)(1).  Through the Board, the District contracts with third-party event organizers to conduct events at the Del Mar Fairgrounds (the "Fairgrounds"), such as concerts, festivals, gun shows, trade shows, and sporting events.  Compl. ¶ 70.  The CDFA's *Contracts Manual for Agricultural Districts*

1 provides that "[w]hether or not a fair rents out their facilities for gun shows is a

2 policy decision to be made by the fair board and their community."  *Id.* ¶ 65.

3 **II.    PRIOR LAWSUIT ABOUT GUN SHOWS AT THE DEL MAR FAIRGROUNDS**

4       Plaintiff B&L Productions, Inc. ("B&L") has rented the Fairgrounds and held

5 gun shows there for the past 30 years.  Compl. ¶ 11.  Plaintiffs allege that in 2017

6 "gun-show-banning activists" began pressuring the District to prohibit gun shows at

7 the Fairgrounds.  *Id.* ¶ 85.  In 2018, the District communicated with other

8 government agencies and B&L to determine the history of legal compliance and

9 dangers presented by gun shows at the Fairgrounds.  *Id.* ¶ 87.  The District

10 appointed a committee to develop recommendations for the continued use of the

11 Fairgrounds for gun shows.  *Id.* ¶ 88.  In September 2018, this committee

12 recommended that the District not consider contracts with gun show promoters

13 beyond December 31, 2018 until, among other things, the District could consider

14 the feasibility of conducting gun shows focused on education and safety training,

15 and ensure gun shows complied with state and federal laws.  *Id.* ¶ 91.  The District

16 accordingly "voted to impose a one-year moratorium (for the year 2019)" on gun

17 shows at the Fairgrounds.  *Id.* ¶ 98.

18       B&L and some of the other Plaintiffs in this action then sued the District, the

19 District's committee members, and Secretary Ross.  Compl. ¶ 99.  In June 2019, the

20 Honorable Cathy Ann Bencivengo dismissed the claims against the committee

21 members because they had qualified immunity, dismissed the claims against

22 Secretary Ross because she had sovereign immunity, preliminarily enjoined the

23 District from enforcing the moratorium, and gave the District more time to conduct

24 discovery to oppose the plaintiffs' summary judgment motion.  *Id.*, Exh. 4 at 15-19.

25 On April 30, 2020, the plaintiffs dismissed their claims pursuant to a settlement

26 agreement ("April 2020 Agreement") with the District.  Compl., Exh. 5.  Under this

27 agreement, the District would allow B&L to reserve dates for gun shows at the

28 Fairgrounds, but the District "maintain[ed] authority to evaluate, consider, propose,

3

1  and implement changes to its policies, consistent with state and federal law,

2  regarding the operation of all events at the Fairgrounds, including gun show

3  events." *Id.*, Exh. 5 at 36. Judge Bencivengo declined to retain jurisdiction to

4  enforce the agreement's terms. Req. Judicial Notice, Ex. A.

5  ### III. BEFORE THE SETTLEMENT, AB 893 WAS ENACTED TO PROHIBIT THE SALE OF FIREARMS AND AMMUNITION AT THE DEL MAR FAIRGROUNDS

6

7  As the April 2020 Agreement acknowledged in multiple sections, AB 893 was

8  signed into law on October 11, 2019. Compl., Exh. 5 at 35, 38 & Exh. 6.[1] AB 893

9  added section 4158 to the Food and Agricultural Code, which provides: "an officer,

10  employee, operator, lessee, or licensee of the 22nd District Agricultural

11  Association . . . shall not contract for, authorize, or allow the sale of any firearm or

12  ammunition on the property or in the buildings that comprise the Del Mar

13  Fairgrounds in the County of San Diego." Compl., Exh. 6 at 54; Cal. Food &

14  Agric. Code § 4158(a). Only firearm and ammunition *sales* are prohibited, not gun

15  shows generally. This prohibition, which did not become operative until January 1,

16  2021, "does not apply to a gun buyback event held by a law enforcement agency."

17  *Id.*, § 4158(c), (d). A violation of section 4158 is a misdemeanor. *Id.*, § 9.

18  AB 893 listed seven legislative findings. Compl., Exh. 6 at 53-54. These

19  findings described how the District had leased the Fairgrounds "to entities that

20  sponsor marketplaces popularly known as 'gun shows,' at which firearms and

21  ammunition and other items are sold to the public approximately five times a year."

22  *Id.*, Exh. 6 at 53. The findings further explained that "[g]un shows bring grave

23  danger to a community," in part because there were 14 crimes at B&L gun shows

24  held at the Fairgrounds from 2013 to 2017. *Id.*, Exh. 6 at 54. There had also been

25  incidents at gun shows where firearms were sold to prohibited persons and large-

26  capacity magazines were illegally imported. *Id.*, Exh. 6 at 54. The April 2020

27

28  [1] AB 893 was introduced in February 2019, months before Judge Bencivengo preliminarily enjoined the District from enforcing the moratorium. Compl. ¶ 102.

4

Agreement acknowledged that AB 893 prohibited the sale of firearms and ammunition at the Fairgrounds, beginning January 1, 2021, and specified that "[n]o action carried out in accordance with this Agreement is intended to modify or violate the provisions of A.B. 893." *Id.*, Exh. 5 at 35, 38.

## IV. BRIEF SUMMARY OF PLAINTIFFS' CLAIMS AND AB 893'S ALLEGED IMPACT ON GUN SHOWS AT THE DEL MAR FAIRGROUNDS

Plaintiffs include: a gun show event promoter that has operated gun shows at the Fairgrounds (Compl. ¶ 11); four people who regularly attend gun shows at the Fairgrounds (*id.* ¶¶ 12-15); four "regular vendor[s]" that sell firearms-related accessories and ammunition at Fairgrounds gun shows (*id.* ¶¶ 16-19); two nonprofit organizations that are "regular vendor[s]" at Fairgrounds gun shows (*id.* ¶¶ 20-21); and one nonprofit organization that offers educational materials at gun shows generally (*id.* ¶ 22). They describe gun shows at the Fairgrounds as "a modern bazaar," a "celebration of America's 'gun culture,'" and a "cultural marketplace[] for those members of the 'gun culture.'" *Id.* ¶¶ 47-48, 51. Gun shows, Plaintiffs allege, "include the exchange of products and ideas, knowledge, services education, entertainment, and recreation related to the lawful uses of firearms." *Id.* ¶ 50. An "important reason people attend" B&L gun shows at the Fairgrounds is to "[p]articipat[e] in 'gun culture,'" regardless of the vendor or attendee's interest in the sale of firearms or ammunition. *Id.* ¶ 56. People also attend gun shows "to learn about the technology and use of various firearms and ammunition when they are considering whether to buy or sell a firearm (or ammunition)." *Id.* ¶ 58.

More than 60 percent of the vendors at B&L gun shows do not sell firearms or ammunition; rather, they sell "accessories, collectibles, home goods, lifestyle products, food, and other refreshments." Compl. ¶ 57. Although AB 893 prohibits none of these activities, Plaintiffs nevertheless allege that AB 893 will render the B&L gun shows "unprofitable and economically infeasible" because without firearm and ammunition sales as well, "the events will no longer be able to draw

1  many of its vendors and attendees." *Id.* ¶ 59.  "[O]ne of the main reasons people

2  attend" B&L gun shows is allegedly the sale of firearms and ammunition.  *Id.*

3  ¶ 124.  AB 893's prohibition allegedly removes an "essential function" of gun

4  shows and has the "same practical effect" as the District's previous one-year

5  moratorium on gun shows.  *Id.* ¶¶ 124-125.  Plaintiffs assert AB 893's "intended

6  and practical effect" was to end gun shows at the Fairgrounds.  *Id.* ¶¶ 139-145.

7      The Complaint raises six claims under 42 U.S.C. § 1983 for violations of First

8  Amendment and equal protection rights, as well as three state-law tort claims.

9  Compl. ¶¶ 155-248.  The § 1983 claims are raised against the State Defendants

10  (Governor Newsom, Attorney General Bonta, Secretary Ross, and the District) and

11  the San Diego County Defendants (County Counsel Lonnie Eldridge and District

12  Attorney Summer Stephan), but the state-law claims are asserted against only the

13  State Defendants.  The § 1983 claims allege that: (1) enforcement of AB 893

14  constitutes an impermissible content-based restriction on political, educational, and

15  commercial speech (*id.*, ¶¶ 164, 175, 184; First through Third Claims); (2) AB 893

16  is a prior restraint on speech (*id.* ¶ 200; Fourth Claim); (3) AB 893 violates

17  Plaintiffs' assembly and association rights (*id.* ¶¶ 208-210; Fifth Claim); and (4)

18  "AB 893 prevents Plaintiffs from equally participating in the use" of the

19  Fairgrounds (*id.* ¶ 217; Sixth Claim).  Plaintiffs raise a facial and as-applied First

20  Amendment challenge.  *Id.* ¶ 184.  The three state-law tort claims allege that the

21  adoption of AB 893 disrupted B&L's economic relationship with the District and

22  its relationship with its vendors.  *See, e.g.*, *id.* ¶¶ 225-226.  Plaintiffs seek

23  declaratory and injunctive relief as well as damages.  *Id.*, Prayer for Relief, ¶¶ 1-10.

24  ## LEGAL STANDARD

25      The standards applicable to a motion to dismiss under Federal Rule of Civil

26  Procedure 12(b)(6) are well known.  In sum, dismissal may be based on either a

27  "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under

28

a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).

## ARGUMENT

### I. THE § 1983 CLAIMS AGAINST GOVERNOR NEWSOM ARE BARRED UNDER ABSOLUTE LEGISLATIVE IMMUNITY

Plaintiffs' § 1983 claims against the Governor stem from the allegation that "[o]n October 11, 2019, Governor Newsom signed AB 893 into law." Compl. ¶ 121. But, as to the Governor, those claims are barred by absolute legislative immunity, including the requests for damages and for declaratory and injunctive relief. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010).

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (citation and internal punctuation omitted). Because "legislative immunity does not depend on the actor so much as the functional nature of the act itself" (*Jones v. Allison*, 9 F.4th 1136, 1140 (9th Cir. 2021)), "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan*, 523 U.S. at 55. The signing of a bill into law by a state governor is an "integral step[] in the legislative process." *See id.* (citing *Smiley v. Holm*, 285 U.S. 355, 372-373 (1932) (recognizing that a governor's signing or vetoing of a bill is part of the legislative process)). Thus, "[a] governor is entitled to absolute immunity for the act of signing a bill into law." *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012); *see also Torres Rivera v. Calderon Serra*, 412 F.3d 205, 213 (1st Cir. 2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is [ ] entitled to absolute immunity for that act."). Indeed, *Nichols* held as much in the context of dismissing a claim against the previous Governor of California for signing a bill that banned the open carrying of an unloaded handgun in public. *Nichols*, 859 F. Supp. 2d. at 1132. Here as well,

1  Governor Newsom's signing of AB 893 after California's Legislature enacted it

2  thus entitles him to absolute legislative immunity against the § 1983 claims.

3       Governor Newsom's intent when signing AB 893 is irrelevant to this

4  immunity.  Plaintiffs allege that Governor Newsom "has supported the closure of

5  gun shows at other state venues," citing a letter he wrote—as lieutenant governor,

6  before he was governor—urging the District to prohibit gun shows at the

7  Fairgrounds.  Compl. ¶¶ 89, 123 & Exh. 2.  But the Supreme Court has made clear

8  that "[w]hether an act is legislative turns on the nature of the act, rather than on the

9  motive or intent of the official performing it."  *Bogan*, 523 U.S. at 54; *see also*

10  *Torres Rivera*, 412 F.3d at 213 (rejecting plaintiff's similar argument against a

11  governor).

12  **II.   SOVEREIGN IMMUNITY BARS ALL CLAIMS AGAINST GOVERNOR
        NEWSOM AND SECRETARY ROSS; THE *EX PARTE YOUNG* EXCEPTION**
13  **DOES NOT APPLY BECAUSE THEY DO NOT ENFORCE THE LAW**

14       The Eleventh Amendment bars a private party from suing a state and its

15  agencies unless the state consents to the suit.  *Los Angeles Branch NAACP v. Los*

16  *Angeles Unified School Dist.*, 714 F.2d 946, 953 (9th Cir. 1983).[2]  Under the

17  exception created by *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity

18  does not bar "actions seeking only prospective declaratory or injunctive relief

19  against state officers in their official capacities" who are acting unconstitutionally.

20  *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  For this exception

21  to apply, however, "the state officer sued 'must have some connection with the

22  enforcement of the [allegedly unconstitutional] act.'"  *Id.* (quoting *Ex parte Young*,

23  209 U.S. at 157).  This connection "must be fairly direct" and the state official must

24  have more than "a generalized duty to enforce state law or general supervisory

25  power over the persons responsible for enforcing the challenged provision."  *Id.*

26  _____

27       [2] Section 1983 did not abrogate a state's Eleventh Amendment immunity
    (*Quern v. Jordan*, 440 U.S. 332, 341 (1979)), and California has not waived that
28  immunity with respect to claims brought under § 1983 in federal court.  *Atascadero*
    *State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

1    Plaintiffs cannot establish this connection as to Governor Newsom and

2    Secretary Ross.  Plaintiffs allege that Governor Newsom must "see that the law is

3    faithfully executed" (Compl. ¶ 23, quoting Cal. Const. art. V, § 1), and that he is

4    "ultimately responsible for enforcement of the law."  Compl. ¶ 122.  But the Ninth

5    Circuit has repeatedly rejected such claims because California's governor lacks the

6    "direct authority and practical ability to enforce" the law in the way *Ex parte Young*

7    requires.  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846-847 (9th

8    Cir.2002); *see, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,

9    729 F.3d 937, 943 (9th Cir. 2013) (California governor entitled to sovereign

10   immunity when the only connection to the challenged statute was a general duty to

11   enforce state law).  Plaintiffs further allege that Governor Newsom has the authority

12   to prosecute violations of AB 893.  Compl. ¶ 160.  This is incorrect, because it is

13   the Attorney General, not the Governor, who is the "chief law officer of the State."

14   Cal. Const. art. I, § 13; see also Cal. Gov't Code § 12550.

15       Similarly, the requisite connection between Secretary Ross and AB 893 is

16   nonexistent.  Plaintiffs allege that Secretary Ross "issues guidance for governance

17   and contracting" to the District (Compl. ¶ 28), "oversees the operation of" the

18   District (*id.* ¶ 63), and "interpret[s], implement[s], and enforce[s] state laws and

19   policies" as to the Fairgrounds (*id.* ¶ 161).  This "general supervisory power" over

20   the entity that must comply with AB 893, the District, is not a sufficient connection.

21   *L.A. County Bar Ass'n*, 979 F.2d at 704.  Judge Bencivengo reached a similar

22   conclusion as to Secretary Ross (Compl., Exh. 4 at 16-17), and the same result is

23   warranted here.  Secretary Ross had no role in AB 893 becoming law and has no

24   role in enforcing it either.  There is also no allegation that she was involved in any

25   decision by the District to reject a contract for a gun show due to AB 893.

26       Because Plaintiffs have not plausibly alleged facts that would allow the *Ex*

27   *parte Young* exception to apply to Governor Newsom and Secretary Ross, they are

28   entitled to sovereign immunity.  This immunity applies equally to the § 1983 and

9

state-law claims.  See *Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 120-121 (1984)

(the Eleventh Amendment bars state-law claims in federal court pursuant to

supplemental jurisdiction).

### III. THE DAMAGES CLAIMS AGAINST GOVERNOR NEWSOM, ATTORNEY GENERAL BONTA, AND SECRETARY ROSS ARE NOT COGNIZABLE UNDER § 1983

State officials sued in their official capacity for damages are not considered

persons for purposes of § 1983.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131

F.3d 836, 839 (9th Cir. 1997).  Accordingly, the damages claims against Governor

Newsom, Attorney General Bonta, and Secretary Ross in their *official* capacities

fail as a matter of law.  *See id.*  The individual-capacity claims for damages against

the same three State Defendants also fail because they are "a mere pleading device"

that simply repackage the official-capacity claims.  *Grunert v. Campbell*, 248 F.

App'x 775, 778 (9th Cir. 2007).  The gravamen of Plaintiffs' claims is the adoption

and enforcement of AB 893, but Governor Newsom could sign AB 893 into law

only while acting in his official capacity, and Attorney General Bonta could enforce

AB 893 only while doing the same.  The individual-capacity claims are thus merely

"damage actions against the official's office," and are barred by the Eleventh

Amendment.  *Id.* (internal quotation marks omitted).

### IV. GOVERNOR NEWSOM, ATTORNEY GENERAL BONTA, AND SECRETARY ROSS ARE ALSO ENTITLED TO QUALIFIED IMMUNITY

Any damages claims against Governor Newsom, Attorney General Bonta, and

Secretary Ross also fail based on qualified immunity.  On a motion to dismiss,

qualified immunity shields government officials from suits for monetary damages

unless a plaintiff presents plausible factual allegations showing "(1) that the official

violated a statutory or constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S.

731, 735 (2011) (citation omitted).  This Court can decide "which of the two prongs

of the qualified immunity analysis should be addressed first in light of the

10

circumstances in the particular case at hand," and can rule based on the second prong alone.[3] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In conducting the inquiry under the second prong, the dispositive issue is "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742.  Courts may not define what is "clearly established law" at a "high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017).  There need not be a case "directly on point," but existing precedent must "be particularized to the facts of the case" and place the question at issue "beyond debate." *Id.* at 551-552.

For the reasons noted below, AB 893 is not unconstitutional even now.  But when AB 893 became law in October 2019 and became operative in January 2021, it was certainly not *beyond debate* that the law violated the First Amendment or equal protection.  A right is not clearly established unless, at a minimum, there is controlling appellate court precedent so that the "'right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (citation omitted).  Plaintiffs cannot point to any such precedent existing before AB 893 became law.  Further, mere uncertainty—assuming there is *any* uncertainty—about whether AB 893 is constitutional is not enough.  *See Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007) (qualified immunity applied where court had to "wrestle with difficult and unsettled questions").  Governor Newsom, Attorney General Bonta, and Secretary Ross are thus entitled to qualified immunity from Plaintiffs' claims for monetary damages.

## V.   THE FIRST AMENDMENT CLAIMS FAIL TO STATE A CLAIM

### A.   AB 893 Does Not Regulate Speech or Expressive Conduct, and Survives Rational Basis Review

The First Amendment is not implicated if the challenged statute does not regulate speech or expressive conduct, which is conduct undertaken with an "'intent

---

[3] Plaintiffs cannot meet the first prong for the reasons explained in Section V.

11

1     to convey a particularized message'" when the "'likelihood was great that the

2     message would be understood by those who viewed it.'" *Texas v. Johnson*, 491

3     U.S. 397, 404 (1989) (citation omitted). It is the Plaintiffs' burden "to demonstrate

4     that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*,

5     468 U.S. 288, 293 n.5 (1984). Plaintiffs cannot meet their burden here.

6        Unlike the District's prior moratorium, which prohibited gun shows outright

7     and which Judge Bencivengo concluded was facially a content-based restriction

8     (Compl., Exh. 4 at 22), AB 893 solely prohibits "the sale of any firearm or

9     ammunition on the property or in the buildings that comprise the Del Mar

10    Fairgrounds." Cal. Food & Agric. Code § 4158(a). The Ninth Circuit has long

11    held that "the act of exchanging money for a gun is not 'speech' within the meaning

12    of the First Amendment." *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th

13    Cir. 1997) ("*Nordyke 1997*"). Hindering actions that are not speech, such as the

14    sale of firearms or ammunition or most other products, does not render a law

15    unconstitutional. *Nordyke v. King*, 319 F.3d 1185, 1191 (9th Cir. 2003) ("*Nordyke*

16    *2003*") (an ordinance that banned the possession of firearms on county property did

17    not violate the First Amendment even when the ban impaired the sale of firearms).

18        Plaintiffs ultimately acknowledge that the law they are challenging, AB 893,

19    does not itself prohibit gun shows. Instead, they allege that AB 893 has the

20    "practical effect" of prohibiting gun shows at the Fairgrounds (Compl. ¶ 125),

21    thereby "destroying a vital outlet for the expression and exchange of ideas related to

22    promoting and preserving the 'gun culture' in California and elsewhere" (*id.* ¶ 165).

23    They assert that firearm and ammunition sales are an "essential function" of gun

24    shows (Compl. ¶ 124), which would become "unprofitable and economically

25    infeasible" without such sales (*id.* ¶ 59). Plaintiffs admit that more than 60 percent

26    of vendors at the B&L gun shows do not sell firearms and ammunition; instead,

27    they sell other items that contribute to all the other reasons that people allegedly

28    attend gun shows, e.g., to exchange ideas about the lawful uses of firearms, to

1 engage in a "gun culture" cultural marketplace, and to learn how to comply with

2 firearms laws. *Id.* ¶¶ 50-58. Nevertheless, Plaintiffs assert such activities are

3 insufficient to financially justify gun shows at the Fairgrounds if there is a

4 prohibition on the sale of firearms and ammunition. *Id.* ¶¶ 59, 124.

5      But AB 893 does not itself prevent Plaintiffs from putting on a gun show that

6 allows for the exchange of ideas that they allege typically occurs at gun shows, as

7 Plaintiffs acknowledge. Compl. ¶¶ 47-59, 124. And if third parties make their own

8 independent business decisions not to sell accessories or provide firearms education

9 at a site where firearms sales are prohibited, it is those parties' intervening

10 decisions—not AB 893—that cause Plaintiffs' alleged First Amendment injuries.

11 Said otherwise, although Plaintiffs have a First Amendment right to speak about

12 and support a "gun culture" at the Fairgrounds (*id.* ¶ 51), they have no right to be

13 freed from other, non-speech restrictions—whether fire-code restrictions on

14 maximum capacity or business taxes or a prohibition on firearm sales—that might

15 ultimately prevent their event from being *profitable*. *See Interpipe Contracting,*

16 *Inc. v. Becerra*, 898 F.3d 879, 891, 895 (9th Cir. 2018) (rejecting argument that

17 "[l]aws that restrict the ability to fund one's speech are burdens on speech," and

18 concluding there "exists no standalone right to receive the funds necessary to

19 finance one's own speech"). A restriction on non-speech conduct (the sale of

20 firearms and ammunition) does not become a restriction on speech just because it

21 might impact the profitability of separate and unrestricted expressive conduct (the

22 alleged "gun culture" at gun shows). *See Nordyke 2003*, 319 F.3d at 1191 ("It is

23 difficult to argue then that making the sale (non[-]speech) more difficult by barring

24 possession (non-speech) infringes speech."); *Sorrell v. IMS Health Inc*., 564 U.S.

25 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at

26 commerce or conduct from imposing incidental burdens on speech.").

27      AB 893's legislative findings make clear that it is firearm and ammunition

28 sales at gun shows that the law prohibits, not the exchange of ideas at gun shows.

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

The first finding defines "gun shows," for the purpose of AB 893, as marketplaces where these sales occur. Compl., Exh. 6 at 53. The remaining findings mainly focus on the dangers resulting from crimes connected to the sale of firearms and ammunition at gun shows. *Id.* at 53-54. The findings even highlight the District's previous effort to study the possibility of "conducting gun shows for only educational and safety training purposes." *Id.* at 54. On its face, AB 893 was aimed at prohibiting non-speech conduct—the sale of firearms and ammunition.

Because AB 893 does not regulate speech or inherently expressive conduct, it is subject to rational basis review, which it satisfies. *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017). Under rational basis review, duly enacted laws are presumed to be constitutional, and it is enough that "the government *could* have had a legitimate reason for acting as it did." *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psych.*, 228 F.3d 1043, 1050 (9th Cir. 2000) (internal quotation marks and citation omitted). AB 893's legislative findings describe multiple public safety concerns related to the sale of firearms and ammunition at gun shows held at the Fairgrounds and elsewhere, including: the trafficking of illegal firearms by a vendor, sales of firearms to prohibited persons, the illegal importation of large-capacity magazines, and the occurrence of 14 crimes between 2013 and 2017 at B&L gun shows at the Fairgrounds. Compl., Exh. 6 at 54. The Legislature could reasonably conclude that because the root of these public safety issues was the buying and selling of firearms and ammunition at gun shows, it was necessary to prohibit such transactions to enhance the safety for gun show attendees and for the surrounding communities of the Fairgrounds. Preventing and mitigating gun violence is an "undoubtedly important" interest. *Duncan v. Bonta*, 19 F.4th 1087, 1109 (9th Cir. 2021) (en banc). Moreover, the Ninth Circuit has recognized that some of the public safety issues identified in AB 893 are indeed important government objectives, including the harm that could result from large-capacity magazines (*id.*) and from prohibited

14

1    persons possessing firearms (*see United States v. Chovan*, 735 F.3d 1127, 1139-

2    1140 (9th Cir. 2013)).  These are "plausible reasons" for the passage of AB 893,

3    and thus, the "'inquiry is at an end.'"  *Romero-Ochoa v. Holder*, 712 F.3d 1328,

4    1331 (9th Cir. 2013) (citation omitted).

**B.    AB 893 Applies to a Limited Public Forum, a Type of Nonpublic**
**Forum, and Satisfies the Reasonableness Standard**

7        Although AB 893 does not regulate speech or expressive conduct, it would

8    nevertheless satisfy the deferential standard for speech regulations in a limited

9    public forum if that standard were to apply.  Courts use "a forum based approach

10   for assessing restrictions that the government seeks to place on the use of its

11   property."  *Int'l Soc'y for Krishna Consciousness of California, Inc. v. City of Los*

12   *Angeles*, 764 F.3d 1044, 1049 (9th Cir. 2014) (internal quotation marks and

13   citations omitted).  "[T]he two main categories of fora are public (where strict

14   scrutiny applies) and non-public (where a more lenient 'reasonableness' standard

15   governs)."  *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001).  A third

16   category is the designated public forum, which is a forum "'where the government

17   intentionally opens up a nontraditional forum for public discourse.'"  *Id.* (citation

18   omitted).  A sub-category of the designated public forum—where strict scrutiny

19   applies—is the limited public forum—where the reasonableness test applies and

20   which is "'a type of nonpublic forum that the government has intentionally opened

21   to certain groups or to certain topics.'"  *Id.* at 1074-1075 (citation omitted).

22       Use of the Fairgrounds for third-party events, such as B&L gun shows, can be

23   done only "through contracting for available space at the Fairgrounds."  Compl.

24   ¶¶ 68-69, 73-75.  The various events the Fairgrounds allegedly hosts—such as gun

25   shows, concerts, and industry shows (*id.* ¶ 68)—demonstrates that the Fairgrounds

26   "exists to provide a means for a great number of exhibitors temporarily to present

27   their products or views, be they commercial, religious, or political, to a large

28   number of people in an efficient fashion."  *Heffron v. Int'l Soc'y for Krishna*

15

*Consciousness, Inc.*, 452 U.S. 640, 655 (1981). Accordingly, the Fairgrounds is a

limited public forum. *See id.* at 643, 655 (concluding that the Minnesota State Fair,

a "major public event" on state-owned land with an average daily attendance of

115,000 to 160,000 people, was a limited public forum); *NAACP v. City of*

*Richmond*, 743 F.2d 1346, 1355 n.8 (9th Cir. 1984) (citing *Heffron* for the

proposition that there is a "distinction between public streets and the more limited

public forum of a fairground"). Being a "state-owned property maintained and

opened for use by the public" (Compl. ¶ 67) does not convert the Fairgrounds into a

public forum or designated public forum. "Publicly owned or operated property

does not become a 'public forum' simply because members of the public are

permitted to come and go at will." *United States v. Grace*, 461 U.S. 171, 177

(1983). And "the government does not create a designated public forum when it

does no more than reserve eligibility for access to the forum to a particular class of

speakers, whose members must then, as individuals, 'obtain permission' to use it."

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998).

In a limited public forum, a permissible restriction need only be "'viewpoint

neutral and reasonable in light of the purpose served by the forum.'" *Hopper*, 241

F.3d at 1074 (citation omitted). This reasonableness inquiry "is a deferential one."

*Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1223 (9th Cir. 2003). As explained

previously, AB 893's legislative findings describe its public safety purpose: to

mitigate gun violence by preventing illegal firearm and ammunition transactions at

gun shows. *See Nordyke v. King*, 644 F.3d 776, 792 (9th Cir. 2011) ("*Nordyke*

*2011*") (the reduction of gun violence on county property was a plausible purpose

for an ordinance banning the possession of firearms or ammunition on county

property).[4] AB 893 is also viewpoint neutral because it applies to any event on the

---

[4] Although the Ninth Circuit granted rehearing en banc of the *Nordyke 2011* panel decision, the en banc court "affirm[ed] the district court's ruling on the First Amendment for the reasons given by the three-judge panel." *Nordyke v. King*, 681 F.3d 1041, 1043 n. 2 (9th Cir. 2012) ("*Nordyke 2012*").

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

1  Fairgrounds, not just to gun shows.  Cal. Food & Agric. § 4158(a).  The only

2  exception to AB 893 is for a "gun buyback event held by a law enforcement

3  agency," which is tailored to and consistent with AB 893's public safety purpose.

4  *Cf. Nordyke 2011*, 644 F.3d at 793 (exempting gun-bearing military reenactors

5  from the ban on the possession of firearms was not constitutionally suspect).  AB

6  893 thus meets the reasonableness standard applicable to limited public forums.

7      **C.  AB 893 Satisfies the Tests Applicable for Commercial Speech**

8          **Regulations and for Content-Neutral Regulations**

9      Although AB 893 does not regulate speech and applies in a limited public

10  forum, it would additionally satisfy the test for regulations of commercial speech

11  established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*,

12  447 U.S. 557 (1980), as well as the test applicable to content-neutral regulations of

13  expressive conduct set forth in *United States v. O'Brien,* 391 U.S. 367 (1968).

14      **1.  AB 893 Does Not Ban Protected Commercial Speech**

15      Commercial speech is "expression related solely to the economic interests of

16  the speaker and its audience," and is accorded less protection than non-commercial

17  speech.  *Central Hudson Gas*, 447 U.S. at 561-563.  The Ninth Circuit has held that

18  "[a]n offer to sell firearms or ammunition" is commercial speech.  *Nordyke 1997*,

19  110 F.3d at 710.  *Nordyke 1997* concerned a contract provision that explicitly

20  prohibited the "offering for sale" of firearms (*id.* at 708-709), but AB 893 is silent

21  on its application to offers.  In any event, even an "offer" can be prohibited if it is

22  an offer to engage in unlawful activity.  In *Nordyke 1997*, the Ninth Circuit held

23  that because no law banned the sale of firearms at the county fairgrounds, the offer

24  to sell firearms there concerned a lawful activity.  *Id.* at 710-711.  It was "critical"

25  to this conclusion that only a contract provision, and not any local or state law,

26  prohibited firearm sales.  *Id.*; *see also id.* at 712 ("The proscribed activity [selling

27  firearms], to repeat, is not contrary to federal or state law.").  But AB 893 is

28  different.  AB 893 indeed prohibits the sale of firearms and ammunition at the

1 Fairgrounds and makes it a misdemeanor to allow such sales. Accordingly, an offer

2 to make such sales at the Fairgrounds does not concern a lawful activity and is not

3 protected commercial speech. *See id.* at 710-711.

4      Nevertheless, AB 893 would still satisfy the *Central Hudson* test. *See Retail*

5 *Digit. Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017) (notwithstanding

6 ongoing debates about its clarity, the *Central Hudson* test still applies). First, there

7 is a "substantial government interest in protecting the people from those who

8 acquire guns illegally and use them to commit crimes resulting in injury or death of

9 their victims." *Nordyke 1997*, 110 F.3d at 713. Second, AB 893 "directly

10 advances" this government interest (*Central Hudson*, 447 U.S. at 566) because

11 prohibiting firearm and ammunition transactions eliminates the possibility of illegal

12 transactions that occur despite existing state laws. Compl. ¶¶ 30-46, Exh. 6 at 54.

13 Third, AB 893's exemption for gun buyback events reasonably fits with its public

14 safety interest because such events can help reduce gun violence. *Cf. Boyer v. City*

15 *of Los Angeles*, No. CV 12-04005, 2012 WL 13013037, at *5 (C.D. Cal. Aug. 23,

16 2012) (in a Los Angeles gun buyback program, people voluntarily surrendered

17 firearms to law enforcement in exchange for a gift card). AB 893 is thus the

18 "[s]ubstantial, effective, and carefully drafted legislative act[]" the Ninth Circuit

19 predicted could satisfy the *Central Hudson* test. *Nordyke 1997*, 110 F.3d at 713.

20      **2.    AB 893 Serves an Important Public Safety Interest and is a**
            **Straightforward Response to the Relevant Harms**

21

22      Even if AB 893 restricted *non*-commercial speech, it would be content-neutral

23 and satisfy the applicable intermediate scrutiny standard. Plaintiffs allege that AB

24 893 effectively and intentionally ends gun shows at the Fairgrounds, thereby

25 destroying a vital "gun culture" platform. *See, e.g.*, Compl. ¶¶ 164-165. AB 893's

26 legislative findings discuss the public safety issues related to gun shows, but only as

27 it relates to gun shows where firearms are sold. *Id.*, Exh. 6 at 53-54. These

28

1 findings do not disapprove of the "gun culture" or gun shows in general, including

2 shows of firearm-related accessories or educational gun shows without firearm

3 sales. *Id.*, Exh. 6 at 54. Moreover, AB 893 applies to *all events* at the Fairgrounds,

4 not just to gun shows; firearms and ammunition may not be sold at *any* event of *any*

5 type at the Fairgrounds except for gun buyback events. Cal. Food & Agric. § 4158.

6 AB 893 would be content-based, and thus trigger strict scrutiny, only if it "hits

7 speech because it aimed at it." *Nordyke 2011*, 644 F.3d at 792. That is not the case

8 here. If gun shows cannot be held at the Fairgrounds because they would be

9 unprofitable, as Plaintiffs allege (Compl. ¶ 59), that is a decision made by gun show

10 promoters and not one mandated by AB 893. Rather, to the extent AB 893 impacts

11 any non-commercial speech, "it hits speech without having aimed at it," thus

12 triggering only intermediate scrutiny. *Nordyke 2011*, 644 F.3d at 792.

13       Plaintiffs' allegations about the personal feelings or motivations of Governor

14 Newsom when he was lieutenant governor, AB 893's authors, and the authors of

15 legislative committee bill analyses (*e.g.*, Compl. ¶¶ 89-90, 102, 112-114, 122, 127-

16 129) do not change this result. When evaluating the constitutionality of a county

17 ban on the possession of firearms on county property, the Ninth Circuit made clear

18 that the feelings and views of one official—there, a county supervisor—"do not

19 necessarily bear any relation to the aims and interests" of the legislative body.

20 *Nordyke 2011*, 644 F.3d at 792. The Ninth Circuit limited its analysis to "the

21 statute in terms of the interests the state declared," and put aside the "legislative

22 history or the stated motives of any legislator." *Id.*; *see also O'Brien*, 391 U.S. at

23 384 ("What motivates one legislator to make a speech about a statute is not

24 necessarily what motivates scores of others to enact it, and the stakes are

25 sufficiently high for us to eschew guesswork."). Here, as in *Nordyke 2011*, 644

26 F.3d at 792, AB 893's plain language "suggests that gun violence, not gun culture,

27 motivated its passage"—and that is why the law targets sales of firearms and

28

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

1    ammunition exclusively, not the expressive activities and other conduct that makes

2    up the majority of gun shows.  AB 893 is accordingly content-neutral.

3         AB 893 would survive intermediate scrutiny under *O'Brien*, 391 U.S. at 377,

4    because it furthers an important or substantial government interest "'that would be

5    achieved less effectively absent the regulation.'"  *Rumsfeld v. Forum for Acad. &*

6    *Institutional Rights, Inc.*, 547 U.S. 47, 67 (2006) (citation omitted).  When applying

7    intermediate scrutiny, courts "defer to reasonable legislative judgments" because

8    "'[s]ound policymaking often requires legislators to forecast future events and to

9    anticipate the likely impact of these events based on deductions and inferences for

10   which complete empirical support may be unavailable.'"  *Duncan*, 19 F.4th at 1108

11   (citations omitted).  Indeed, "history, consensus, and 'simple common sense'" can

12   suffice.  *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (citation omitted).

13        AB 893's plain language shows that it serves the "undoubtedly important"

14   interest of preventing and mitigating gun violence.  *Duncan*, 19 F.4th at 1109.

15   Plaintiffs allege that AB 893 does not directly serve this purpose because it fails to

16   identify a public safety concern specific to B&L gun shows held at the Fairgrounds.

17   Compl. ¶¶ 107-119.  But such a nexus is not required.  Even though AB 893

18   identifies the occurrence of 14 crimes at B&L gun shows (*id.*, Exh. 6 at 54), AB

19   893 need only generally further its public safety interest.  *Nordyke 2011*, 644 F.3d

20   at 793.  "[E]ven for an as-applied challenge, the government need not show that the

21   litigant himself actually contributes to the problem that motivated the law he

22   challenges."  *Id.*  Moreover, AB 893's prohibition is no more restrictive than

23   necessary because it "is a straightforward response" to the danger of illegal

24   transactions occurring at the Fairgrounds.  *Id.* at 794.  California's existing legal

25   framework with respect to gun shows (Compl. ¶¶ 30-46) is not a sufficient

26   alternative because, as AB 893 shows, illegal transactions still occur at gun shows.

27

28

In sum, no matter the applied analysis, AB 893 does not violate Plaintiffs' First Amendment free speech rights as a matter of law.[5]

### D. The Prior Restraint Claim Fails Because AB 893 is a State Statute That the District Has No Discretion Not to Follow

Plaintiffs additionally claim that AB 893 is a prior restraint on speech because it gives the District "unfettered discretion to determine what constitutes a 'sale' under the law and is thereby prohibited at the Fairgrounds." Compl. ¶ 201. This allegation contradicts another allegation regarding the various Penal Code provisions that govern firearm sales at gun shows. *Id.* ¶ 41 (citing Cal. Penal Code §§ 27310, 26805, 27545). As demonstrated in Plaintiffs' own allegation, it is the Penal Code, not the District's discretion, that determines what constitutes a sale under the law. Unlike the 2019 moratorium at issue in the prior litigation—which the District enacted—AB 893 is a state statute that the District has no discretion not to follow. Because AB 893 does not create a scheme placing "unbridled discretion in the hands of a government official or agency" (*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990)), and because it does not regulate speech in the first place, there is no prior restraint violation.

Plaintiffs' reliance on the April 2020 Agreement is similarly misplaced. That agreement post-dated AB 893's enactment and expressly contemplated that the District would have to comply with generally applicable laws like AB 893. So AB 893 does not affect the District's compliance with the settlement agreement. Moreover, Plaintiffs should not be permitted to use this federal lawsuit—the brunt of which raises federal constitutional claims—as a vehicle to challenge the District's compliance with the April 2020 Agreement, particularly when Judge

---

[5] In addition, the Second Amendment Foundation ("SAF") lacks standing entirely, because there is no allegation the SAF distributes materials at gun shows at the Fairgrounds or that its members have attended the gun shows. Compl. ¶ 22; *see Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012); *Haynie v. Harris*, 658 F. App'x 834, 836 (9th Cir. 2016).

1   Bencivengo declined to retain jurisdiction to enforce its terms.  Req. Judicial

2   Notice, Ex. A.[6]

3   ## VI.  THE EQUAL PROTECTION CLAIM FAILS TO STATE A CLAIM

4          Plaintiffs' equal protection claim is subsumed by the First Amendment claims

5   and does not plausibly allege a "class of one claim."  First, Plaintiffs allege that AB

6   893 subjects them to "disparate treatment" while they are "engaged in activities that

7   are fundamental rights," which presumably refers to the alleged First Amendment

8   violations.  Compl. ¶ 216.  An equal protection claim relating to allegedly

9   expressive conduct is evaluated through "'essentially the same'" analysis used for

10  the First Amendment claim.  *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d

11  764, 780 (9th Cir. 2014).  The claim "rise[]s and fall[s] with the First Amendment

12  claims" because Plaintiffs "do not allege membership in a protected class or

13  contend that the [challenged] conduct burdened any fundamental right other than

14  their speech rights."  *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

15         Even if the equal protection claim survives independently of the First

16  Amendment claims, gun-show promoters and participants are not considered a

17  suspect class.  *Nordyke 2011*, 644 F.3d at 794.  Plaintiffs must then rely on a "class-

18  of-one" theory, in which no membership in a class is alleged.  *Vill. of Willowbrook*

19  *v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiffs aver that the State Defendants refuse

20  to allow them "equal use of the public facility while continuing to allow contracts

21  for the use of the facility with other similarly situated legal and legitimate

22  businesses."  Compl. ¶ 219.  However, a class-of-one claim requires a showing of

23  intentional and differential treatment as compared to similarly situated persons or

24  groups.  *Vill. of Willowbrook*, 528 U.S. at 564.  But as Plaintiffs admit, they are not

25  _____

26         [6] Plaintiffs contend that AB 893 violates their First Amendment associational
    rights.  Compl. ¶ 208.  The claim fails because the conduct Plaintiffs wish to engage
27  in is not protected expressive association.  The Constitution does not recognize a
    "generalized right of 'social association.'"  *City of Dallas v. Stanglin*, 490 U.S. 19,
    25 (1989).  Plaintiffs' desire to hold, make sales at, and attend a gun show at the
28  Fairgrounds is accordingly not protected under the First Amendment.

22

similarly situated to other groups because of California's "rigorous regulatory regime" for gun shows. Compl. ¶ 30. Plaintiffs' unspecified "other similarly situated legal and legitimate businesses" (*id.* ¶ 219) are presumably not gun show operators, and so are not subject to the numerous laws applicable to gun shows (*id.* ¶¶ 30-46). The class-of-one claim cannot stand without identifying a similarly situated business. *Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1053 (9th Cir. 2016) (rejecting a class-of-one claim given appellant's acknowledgement that gun stores "are materially different from other retail businesses" due to the regulations such stores must follow).[7] Moreover, other than gun buyback events, AB 893 applies to any event at the Fairgrounds.

This claim would be subject to only rational basis review because AB 893 does not "classify shows or events on the basis of a suspect class," nor does it violate the First Amendment. *Nordyke 2012*, 681 F.3d at 1043 n.2. AB 893's prohibition, and its exception for gun buyback events, passes rational basis review for all of the reasons previously discussed in the context of the tests that could apply to the First Amendment claims. *See Nordyke 2012*, 681 F.3d at 1043 n.2 (rational basis review satisfied because the government "could reasonably conclude that gun shows are more dangerous than military reenactments"). The equal protection claim thus fails on multiple grounds.

## VII. THE STATE-LAW TORT CLAIMS SHOULD BE DISMISSED

As explained in Section II, sovereign immunity bars these claims against Governor Newsom and Secretary Ross. *Pennhurst*, 465 U.S. at 121. Additionally, once the § 1983 claims are dismissed for the remaining reasons explained above, this Court need not exercise its supplemental jurisdiction over the state-law claims.

---

[7] Although the Ninth Circuit granted rehearing en banc of the *Teixeira* panel decision, the en banc court affirmed the district court's rejection of the equal protection claim for the reasons given in the panel opinion." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 676 n.7 (9th Cir. 2017).

23

1    *See* 28 U.S.C. § 1367(c)(3); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th

2    Cir. 2011).  Even if it does, dismissal of the state-law claims is still warranted.

3    ### A.    There Is No Alleged Statutory Basis for The Tort Claims

4    The gravamen of the three state-law tort claims is that the adoption and

5    enforcement of AB 893 disrupted B&L's economic relationships with the District

6    and with its vendors, such as those who are also Plaintiffs here.  *See, e.g.*, Compl.

7    ¶ 236.  But the fatal flaw in all three claims is the lack of a statutory basis

8    authorizing the Plaintiffs to bring such claims against the State Defendants.  To

9    plausibly allege a government tort claim, "every fact essential to the existence of

10   statutory liability must be pleaded with particularity, including the existence of a

11   statutory duty." *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802

12   (1986).  None of the state-law tort claims identify a *statute* or *enactment* that

13   establishes the duty the State Defendants allegedly violated.  Cal. Gov't Code

14   §§ 815(a), 815.6.  Rather, the three claims merely allege, or implicitly suggest, the

15   State Defendants had a general duty under the law.  *See, e.g.*, Compl. ¶¶ 225-226,

16   234.  But that "is a conclusion of law, not an allegation of fact." *Searcy*, 177 Cal.

17   App. 3d at 802.  The state-law claims accordingly must be dismissed.  *See, e.g.*,

18   *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1171 (C.D. Cal. 2018).

19   ### B.    The Claims Were Not Timely Presented and Are Thus Barred

20   Claims against a public entity are barred if they are not first timely presented

21   to the California Department of General Services ("DGS"). *Cal. Rest. Mgmt. Sys.*

22   *v. City of San Diego*, 195 Cal. App. 4th 1581, 1591 (2011); Cal. Gov't Code §§ 810

23   et seq., 900.2(b), 945.4.  The claims here had to be presented to the DGS "not later

24   than one year after the accrual of the cause of action." Cal. Gov't Code § 911.2(a).[8]

25   Plaintiffs allege they presented their claims to DGS on August 2, 2021.  Compl.

26   _____

27   [8] For claims accruing before June 30, 2021, this period was extended by 120
     days pursuant to three executive orders issued by Governor Newsom in relation to
     the Covid-19 pandemic. *Coble v. Ventura Cnty. Health Care Agency*, No.

28   B311670, 2021 WL 6132855, at *2 (Cal. Ct. App. Dec. 29, 2021).

¶ 151; *see also id.*, Exh. 13.  Because the tort claims are rooted in a facial challenge to the *adoption* of AB 893 (*id.* ¶¶ 225, 234, 244), they began accruing when Governor Newsom signed AB 893 into law on October 11, 2019 (*id.* ¶ 121).  *See* Cal. Gov't Code § 901; *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal.4th 809, 815 (2001) (a claim challenging the validity of a city's utility tax "first arose when the Ordinance was adopted," even though the ordinance became operative at a later date).  Plaintiffs were clearly aware of when AB 893 became law because the April 2020 Agreement repeatedly acknowledged this (Compl., Exh. 5 at 35, 38), and Plaintiffs B&L and California Rifle and Pistol Association actively opposed AB 893's passage (*id.*, Exh. 7 at 63).  However, Plaintiffs presented their claims to DGS in August 2021, about six months after the statutory period—with the 120-day extension included—had passed.  The three tort claims are thus time-barred and must be dismissed.  *Cal. Rest. Mgmt. Sys.*, 195 Cal. App. 4th at 1591.[9]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint without leave to amend.

---

[9] DGS concluded similarly when it rejected Plaintiffs' claims.  Specifically, DGS stated that it "has no jurisdiction to consider claims presented more than one year after accrual of the cause of action, pursuant to Government Code section 911.2."  Req. Judicial Notice, Exs. B-F.

25

Dated:  January 24, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General


*/s/Charles J. Sarosy*_____
CHARLES J. SAROSY
Deputy Attorney General
*Attorneys for Governor Gavin
Newsom, Attorney General Rob
Bonta, Secretary Karen Ross, and
22nd District Agricultural Association*

SA2021305596
64829620.docx

MEMO OF P&A'S ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718)

# EXHIBIT C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al., <br> Plaintiffs, <br> v. <br> GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity, et al., <br> Defendants. | Case No.: 21-cv-01718-AJB-KSC <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> **(Doc. Nos. 17, 20)** |

Presently pending before the Court are motions to dismiss, filed by Defendants Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and the 22nd District Agricultural Association (collectively, "State Defendants"), (Doc. No. 17), and Defendants District Attorney of San Diego County, Summer Stephan, and County Counsel of San Diego County, Lonnie Eldridge[1] (collectively, "County Defendants"), (Doc. No. 20). The motions are fully briefed, (Doc. Nos. 28, 29, 30, & 33), and the matter is suitable for determination on the papers. For the reasons stated herein, the Court **GRANTS** the motions to dismiss Plaintiffs' Complaint.

---

[1] County Counsel Lonnie Eldridge was substituted as a defendant in place of former County Counsel Thomas Montgomery. (*See* Doc. No. 10.)

1

# I.   BACKGROUND[2]

Plaintiff B&L Productions, Inc., d/b/a Crossroads of the West, operates gun show events in California, including at the Del Mar Fairgrounds (the "Fairgrounds"). (Complaint ("Compl."), Doc. No. 1, ¶¶ 1, 11.) Plaintiffs California Rifle & Pistol Association, Inc.; South Bay Rod and Gun Club, Inc.; Second Amendment Foundation, Inc.; Barry Bardack; Ronald J. Diaz, Sr.; John Dupree; Christopher Irick; Lawrence Michael Walsh; Robert Solis; Captain Jon's Lockers, LLC; and L.A.X. Firing Range, d/b/a LAX Ammo, attend and participate in the Crossroads gun show at the Fairgrounds. (*Id.* ¶ 3.)

According to the Complaint, individuals attending and participating in these gun shows engage in First Amendment activities (*id.* ¶ 3), and these gun shows "just happen to include the exchange of products and ideas, knowledge, services, education, entertainment, and recreation related to the lawful use of firearms[,]" (*id.* ¶ 50).

The Fairgrounds is owned by the State of California and managed by the board of directors of Defendant 22nd District Agricultural Association (the "District"). (*Id.* ¶¶ 27, 61.) The Fairgrounds "is used by many different public groups and is a major event venue for large gatherings of people to engage in expressive activities, including concerts, festivals, and industry shows." (*Id.* ¶ 68.)

Defendant Gavin Newsom is the Governor of the State of California and is "vested with 'the supreme executive power' of the state and 'shall see that the law is faithfully executed.'" (*Id.* ¶ 23 (citing Cal. Const. art. 5, § 1).) According to the Complaint, Newsom urged the District to ban gun shows at the Fairgrounds in a letter dated April 23, 2018, citing his concerns that "[p]ermitting the sale of firearms and ammunition on state-owned property only perpetuates America's gun culture." (*Id.* ¶ 89 (alterations in

---

[2] The following allegations are taken from the Plaintiffs' Complaint and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

original).) Thereafter, Newsom signed Assembly Bill 893 ("AB 893") into law on October 11, 2019. (*Id.* ¶ 121.)

Defendant Karen Ross is the Secretary of the California Department of Food & Agriculture, the entity responsible for policy oversight of the Fairgrounds. (*Id.* ¶ 28.) According to the Complaint, she oversees the operation of the District and authorizes the other Defendants to "interpret, implement, and enforce state laws and policies as regards the Fairgrounds . . . ." (*Id.* ¶¶ 161, 174, 187.)

Defendant Robert Bonta is the Attorney General of the State of California and "has the duty to 'see that the laws of the State are uniformly and adequately enforced.'" (*Id.* ¶ 24 (citing Cal. Const. art. 5, § 1).) Bonta has "direct supervision over every district attorney" within California and "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor . . . ." (*Id.*)

County Defendants Summer Stephan and Lonnie Eldridge are "responsible for enforcing the law within the County of San Diego." (*Id.* ¶¶ 25, 26.) According to the Complaint, Summers and Eldridge "are the state and local actors responsible for ensuring that AB 893 is enforced and thus have the authority to prosecute violations of AB 893." (*Id.* ¶¶ 160, 173, 186.)

AB 893, which added Section 4158 to the California Food & Agriculture Code, bars "any officer, employee, operator, lessee, or licensee of the [District]" from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . . ." (*Id.* ¶ 103.) Violation of the law is a misdemeanor. (*Id.*)

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim."

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.   REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 states a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

State Defendants request judicial notice of several documents, including an order by the Southern District of California and several letters from the California Department of General Services' Government Claims. (Doc. No. 17-2 at 2–3.) Plaintiffs also request judicial notice of several exhibits, including reports by governmental departments or agencies, newspaper articles, and legislative official records. (Doc. No. 28-1 at 2–3.) Because the Court does not rely on these documents in deciding this motion, Defendants' and Plaintiffs' requests for judicial notice are **DENIED AS MOOT**.

///

///

4

## IV.    DISCUSSION

### A.    Absolute Legislative Immunity as to Governor Newsom

State Defendants first argue the § 1983 claims against Newsom must be dismissed because he has absolute legislative immunity. (Doc. No. 17-1 at 17–18.) Plaintiffs are suing Newsom in his official capacity for the injunctive and declaratory relief portions of this suit, and in his personal capacity for claims for damages.[3] (Compl. ¶ 23.)

Under the doctrine of legislative immunity, state legislators are entitled to absolute immunity from civil damages for their performance of lawmaking functions. *See Tenney v. Brandhove*, 341 U.S. 367, 376–77, 379 (1951) (finding state legislators were absolutely immune from damages when acting within the "sphere of legitimate legislative activity"); *see also Jones v. Allison*, 9 F.4th 1136, 1139–40 (9th Cir. 2021). Legislative immunity, however, is not limited to officials who are members of legislative bodies. *See Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." (citation omitted) (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978))). "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions . . . ." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). Thus, the Supreme Court has held that legislative immunity does not depend on the actor so much as the functional nature of the act itself. *See id.* at 54–55, ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (quoting *Tenney*, 341 U.S. at 376)).

Here, State Defendants claim a governor is entitled to absolute legislative immunity for the act of signing a bill into law. (Doc. No. 17-1 at 16–17.) Plaintiffs sue Newsom in his official capacity because "he is vested with 'the supreme executive power' of the state and 'shall see that the law is faithfully executed.'" (Compl. ¶ 23.)

---

[3] Plaintiffs raise punitive damages for the first time in their Response in Opposition to Defendants' motions to dismiss. (Doc. No. 28 at 30.) However, because this prayer for relief is raised for the first time on reply, the Court declines to consider it.

This generalized enforcement power, however, is insufficient to establish the requisite connection between Newsom and Plaintiffs' alleged injury. *See Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) (suit challenging laws prohibiting the carrying or use of firearms in certain circumstances failed to establish "required nexus" between the governor and plaintiff's injury where complaint relied solely on governor's "general oversight of State laws"). A governor is entitled to absolute immunity for the act of signing a bill into law. *See Torres-Rivera v. Calderon-Serra*, 412 F.3d 205, 213 (1st Cir. 2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); *Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.") (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Moreover, Newsom is entitled to immunity under the Eleventh Amendment. The Eleventh Amendment poses a general bar against federal lawsuits brought against a state. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). And, while it does not bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law, *Ex parte Young*, 209 U.S. 123, 155–56 (1908), the individual state official sued "must have some connection with the enforcement of the act," *id.* at 157, and that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Newsom, sued in his official capacity, has no alleged factual connection to the enforcement of AB 893, other than a general duty to enforce California law as the governor. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor entitled to Eleventh Amendment immunity where his only connection to challenged California statute was a general duty to enforce California law).

1    Plaintiffs imply this legislative immunity may be abrogated if the enactment of the

2    legislation was motivated by impermissible intent. (Compl. ¶¶ 89, 123.) However, that

3    argument was expressly rejected by the Supreme Court in *Bogan*, which extended

4    absolute legislative immunity from suit under § 1983 to local legislators for their

5    legislative activities. *Bogan*, 523 U.S. at 54; *see Torres-Rivera*, 412 F.3d at 213.

6    Moreover, Newsom's ability as the Governor of California to appoint members to the

7    board of the District has no bearing on the matter. As such, the § 1983 claims against

8    Newsom are **DISMISSED WITH PREJUDICE**.

9    **B.    Sovereign Immunity as to Governor Newsom and Secretary Ross**

10    State Defendants next assert all claims against Newsom and Ross should be

11    dismissed because they have sovereign immunity under the Eleventh Amendment to the

12    Constitution. (Doc. No. 17-1 at 18.)

13    The Eleventh Amendment states "[t]he Judicial power of the United States shall

14    not be construed to extend to any suit in law or equity, commenced or prosecuted against

15    one of the United States by Citizens of another State, or by Citizens or Subjects of any

16    Foreign State." It "enacts a sovereign immunity from suit." *Idaho v. Coeur d'Alene Tribe*

17    *of Idaho*, 521 U.S. 261, 267 (1997). The Supreme Court has "extended a State's

18    protection from suit to suits brought by the State's own citizens . . . . [and] suits invoking

19    the federal-question jurisdiction of Article III courts may also be barred by the

20    Amendment." *Id.* at 268. Thus, "Eleventh Amendment immunity represents a real

21    limitation on a federal court's federal-question jurisdiction." *Id.* at 270. Sovereign

22    immunity is an affirmative defense, and therefore, "[l]ike any other such defense, . . .

23    must be proved by the party that asserts it and would benefit from its acceptance." *ITSI*

24    *T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993).

25    "Naming state officials as defendants rather than the state itself will not avoid the

26    eleventh amendment when the state is the real party in interest. The state is the real party

27    in interest when the judgment would tap the state's treasury or restrain or compel

28    government action." *Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1033 (9th

Cir. 1985). Under the exception created by *Ex parte Young*, however, "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 U.S. at 155–56. Pursuant to this exception, "the eleventh amendment does not bar an injunctive action against a state official that is based on a theory that the officer acted unconstitutionally." *Almond Hill Sch.*, 768 F.2d at 1034. This exception does not allow suit against officers of the state simply "to enjoin the enforcement of an act alleged to be unconstitutional" unless the officer has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. Otherwise, the suit "is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party." *Id.*

Newsom and Ross do not have a connection with the enforcement of the AB 893. As to Newsom, Plaintiffs merely allege that Newsom must "see the law is faithfully executed," (Compl. ¶ 23), and that he is "ultimately responsible for enforcement of the law, (*id.* ¶ 122). However, Newsom lacks the "direct authority and practical ability to enforce the challenged statute" as required by *Ex parte Young*. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846–47 (9th Cir. 2002); *Ass'n des Eleveurs de Canards*, 729 F.3d at 943.

Similarly, the only allegations about Ross in the Complaint are that she is "responsible for the policy oversight of the . . . Del Mar Fairgrounds[,]" (Compl. ¶ 28), and "interpret[s], implement[s], and enforce[s] state laws and policies as regards the Fairgrounds, including AB 893[,]" (*id.* ¶ 161). Indeed, Ross' alleged wrongdoing amounts to supervision over the District, who is alleged to be "responsible for ensuring that all state laws governing gun shows at the Fairgrounds, including AB 893, are faithfully enforced." (*See id.* ¶ 27.) This "general supervisory power over the persons responsible for enforcing" AB 893 does not subject Ross to suit. *Eu*, 979 F.2d at 704.

8

Thus, barred by sovereign immunity, Plaintiffs' § 1983 and supplemental state law claims against Newsom and Ross in their official capacities are **DISMISSED WITH PREJUDICE**.

### C.  Qualified Immunity as to Governor Newsom, Attorney General Bonta, and Secretary Ross

Next, the motion to dismiss argues that Newsom, Ross, and Bonta are entitled to qualified immunity as to Plaintiffs' federal claims. "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law,'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and it assumes that government actors "do not knowingly violate the law," *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). Because "[i]t is 'an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller*, 576 F.3d at 992 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether Newsom, Ross, and Bonta are immune from suit, the Court must "evaluate two independent questions: (1) whether [their] conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro*, 833 F.3d at 1066. "[A] right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 1067 (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mueller*, 576 F.3d at 994 (internal quotation

marks and citation omitted). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The standard is an objective one that leaves 'ample room for mistaken judgments.'" *Mueller*, 576 F.3d at 992 (quoting *Malley*, 475 U.S. at 343).

Here, the Court need not resolve whether Newsom, Ross, and Bonta violated Plaintiffs' constitutional rights, because even assuming they did, those rights were not clearly established. Plaintiffs' constitutional rights "would be 'clearly established' if 'controlling authority or a robust consensus of cases of persuasive authority' had previously held that" it is a violation of the First Amendment right to free speech or Fourteenth Amendment right to equal protection to enforce a rule banning the sale of guns or ammunition from a public fairground. *Hines v. Youseff*, 914 F.3d 1218, 1229–30 (9th Cir. 2019) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018)). Plaintiffs point to no such precedent, and the Court has not located any on its own. The absence of such authority means the rights in question here were not clearly established when Newsom, Ross, and Bonta took actions related to AB 893. Accordingly, they are entitled to qualified immunity from Plaintiffs' claims for monetary damages.

## D. Individual Capacity Claims as to Governor Newsom, Attorney General Bonta, and Secretary Ross

Next, state officials can be sued when acting in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). The distinction is "more than a mere pleading device." *Id.* at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72 (1989)). State officials are liable for "acts" taken under color of state law, but the Eleventh Amendment "prohibits damage actions against the 'official's office'—actions that are in reality suits against the state itself, rather than its individual officials." *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

Plaintiffs sue Newsom, Bonta, and Ross in their individual capacities, but they have alleged no facts that relate to individual capacity—that is, they have treated

individual capacity as a "mere pleading device." The heart of Plaintiffs' claims is the passage of AB 893, but this was done only in State Defendants' official capacities pursuant to state law. As such, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' claims for damages against Newsom, Bonta, and Ross in their individual capacities.

### E.     County Counsel Eldridge

Plaintiffs further allege in their Complaint that County Counsel is the local actor "responsible for ensuring that AB 893 is enforced and thus ha[s] the authority to prosecute violations of AB 893." (Compl. ¶¶ 160, 173, 186.) Specifically, Plaintiffs contend AB 893 requires Defendant District Attorney Stephan to prosecute violations of AB 893, and that this statutory mandate to prosecute extends to Eldridge because he must "discharge all the duties vested in the district attorney." (*Id.* ¶ 26.) County Defendants assert in their motion to dismiss that Eldridge is not authorized or charged by California law with enforcing AB 893 or prosecuting violations of that statute. (Doc. No. 20-1 at 4.) Plaintiffs do not address or oppose County Defendants' arguments for County Counsel Eldridge. (*See* Doc. No. 28; *see also* Doc. No. 33 at 3.)

By failing to respond to the arguments raised by County Defendants on these claims, Plaintiffs failed to oppose the motion to dismiss these claims. Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate. *See, e.g.*, *Silva v. U.S. Bancorp*, No. 5:10-cv-1854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.") (citations omitted); *Qureshi v. Countrywide Home Loans, Inc.*, No. 09-4198, 2010 WL 841669, at *9 & n.2 (N.D. Cal. Mar. 10, 2010) (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)) (dismissing claims as abandoned where the plaintiff did not oppose dismissal); *In re TFT-LCD (Flat Pan el) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (dismissing a claim without leave to amend where the plaintiff did not address the defendant's arguments); s*ee also Walsh v.*

*Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir.2006) (where opposition to motion to dismiss failed to address arguments in motion to dismiss, the plaintiff failed to demonstrate a continuing interest in pursuing a claim for relief and it was "effectively abandoned" and could not be raised on appeal).

As such, the Court **DISMISSES** claims one through six as to Defendant Eldridge **WITHOUT PREJUDICE**.

However, the Court reminds Plaintiffs that because they failed to oppose County Defendants' arguments, despite having a clear opportunity to do so, Plaintiffs cannot simply re-allege the same claims in an amended complaint. Any amended complaint must address the arguments which County Defendants raised and which Plaintiffs have apparently conceded. Plaintiffs will not be permitted to raise arguments in defense of an amended complaint which Plaintiffs could have, but failed to, properly raise in defense of the original complaint.

### F. First Amendment Claims

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Under the First Amendment, "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). "Content-based regulations 'target speech based on its communicative content.'" *Nat'l Inst. of Fam. & Life Advocs.*, 138 S. Ct. at 2371 (quoting *Reed*, 576 U.S. at 163).

Defendants contend AB 893 is not properly subject to First Amendment analysis because it does not abridge anyone's freedom of speech or expressive conduct. (Doc. No.

17-1 at 20–24.) Rather, they claim, AB 893 merely prohibits the sale of guns, and the sale of guns is not "speech" within the meaning of the First Amendment. The Court agrees.

"[T]he act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997). Here, AB 893 covers no more than the simple exchange of money for a gun or ammunition, solely prohibiting "the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . . ." (Doc. No. 1 at 113.) In their opposition, Plaintiffs cite no authority for their proposition that barring sales infringes speech. *See Nordyke v. King* ("*Nordyke 2003*"), 319 F.3d 1185, 1191 (9th Cir. 2003). Rather, Plaintiffs merely assert that "by permanently banning the commercial sale of firearms and ammunition at the Fairgrounds, it has the effect of banning gun shows at the Fairgrounds." (Compl. ¶ 125; *see also* Doc. No. 28 at 28.) "As [the sale of guns] itself is not commercial speech and a ban on [sales] at most interferes with sales that are not commercial speech, . . . the [Defendants'] prohibition on [the sale of guns] does not infringe [Plaintiffs'] right to free commercial speech." *Nordyke 2003*, 319 F.3d at 1191.

As such, Plaintiffs' First Amendment claims are **DISMISSED WITH LEAVE TO AMEND**.

## G. Equal Protection Claim

Plaintiffs further raise equal protection claims on the theory that Defendants treated them differently than similarly situated persons by preventing Plaintiffs from "equally participating in the use of the publicly owned venue by unconstitutionally eliminating Plaintiffs' ability to freely conduct otherwise lawful business transactions and freely express their beliefs with like-minded people." (Compl. ¶ 217.) Plaintiffs assert their equal protection claim is "based on the State's denial of the exercise of [their First Amendment] rights in a public forum in a way that treats similarly situated persons differently." (Doc. No. 28 at 12.)

The equal protection claims rise and fall with the First Amendment claims. *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012). Plaintiffs do not allege

membership in a protected class or contend that Defendants' conduct burdened any fundamental right other than their speech rights. Therefore, Defendants' differential treatment of Plaintiffs will draw strict scrutiny (as opposed to rational basis review) under the Equal Protection Clause only if it impinged Plaintiffs' First Amendment rights. *See ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 797–98 (9th Cir. 2006); *Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir. 1987) (noting, with regard to "equal protection claims relating to expressive conduct," that "[o]nly when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged").

As explained above, the Complaint fails to allege that Defendants infringed Plaintiffs' speech rights by the passage of AB 893. Therefore, the Complaint also fails to state equal protection claims for differential treatment that trenched upon a fundamental right. *See OSU Student All.*, 699 F.3d at 1067. Thus, Plaintiffs' sixth claim under the Fourteenth Amendment's Equal Protection Clause is **DISMISSED WITH LEAVE TO AMEND**.

### H. The Court Lacks Jurisdiction Over the State Law Claims Against Defendants Newsom, Bonta, Ross, and the District

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States." *Id.* "Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Id.* Such jurisdiction arises under Title 28 U.S.C. § 1367(a).

///

The Supreme Court has characterized § 1367(a) as providing district courts "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp.*, 545 U.S. at 558. The Ninth Circuit has explained that the term "'[o]riginal jurisdiction' in subsection (a) refers to jurisdiction established by looking for any claim in the complaint over which there is subject matter jurisdiction." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001), *holding modified by Exxon Mobil Corp.*, 545 U.S. 546.

Here, Plaintiffs assert the Court maintains subject matter jurisdiction over this action because their federal law claims, brought under § 1983, raise a federal question. (Compl. ¶ 8.) Plaintiffs make no mention of supplemental jurisdiction over their state law claims. (*See generally id.*)

As detailed above, the Court dismissed all federal law claims against both State and County Defendants. The remaining claims against them rest on only California state law. (*Id.* ¶¶ 221–29 (intentional interference with prospective economic advantage); ¶¶ 230–39 (negligent interference with prospective economic advantage); ¶¶ 240–48 (intentional interference with contract).) Both State Defendants and County Defendants are California residents. (*Id.* ¶ 10.) Thus, the Court lacks any basis to assert subject matter jurisdiction over Plaintiffs' action as it pertains to them. Absent such basis, the Court may not exercise supplemental jurisdiction over the state law claims against them. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002). Accordingly, the Court **DISMISSES** all remaining state law claims against State Defendants and County Defendants **WITHOUT PREJUDICE**. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

///

///

15

## V.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' motions to dismiss **WITH LEAVE TO AMEND**. (Doc. Nos. 17, 20.) Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein by **<u>August 31, 2022</u>**.

**IT IS SO ORDERED.**

Dated:  August 18, 2022

Hon. Anthony J. Battaglia
United States District Judge

21-cv-01718-AJB-KSC
114

# EXHIBIT D

**U.S. District Court**
**Southern District of California (San Diego)**
**CIVIL DOCKET FOR CASE #: 3:21–cv–01718–AJB–DDL**

B & L Productions, Inc. et al v. Newsom et al
Assigned to: Judge Anthony J. Battaglia
Referred to: Magistrate Judge David D. Leshner
Cause: 42:1983cv Civil Rights Act – Civil Action for
Deprivation of Rights

Date Filed: 10/04/2021
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**B & L Productions, Inc.**
*doing business as*
Crossroads of the West

represented by **Alexander A. Frank**
Severson & Werson APC
19100 Von Karman Avenue
Suite 700
Irvine, CA 92612
949–442–7110
Fax: 949–442–7118
Email: afrank@michellawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
Michel & Associates, P. C.
180 East Ocean Blvd.
Suite 200
Long Beach, CA 90802
562–216–4444
Fax: 562–216–4445
Email: abarvir@michellawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
Michel & Associates PC
180 East Ocean Boulevard
Suite 200
Long Beach, CA 90802
(562)216–4444
Fax: (562)216–4445
Email: cmichel@michellawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
Michel & Associates PC
180 East Ocean Boulevard
Suite 200
Long Beach, CA 90802
562–216–4444
Fax: 562–216–4445
Email: tcheuvront@michellawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barry Bardack**

represented by **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)

116

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Ronald J. Diaz, Sr.**                    represented by   **Alexander A. Frank**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Anna M. Barvir**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Carl D. Michel**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Tiffany D. Cheuvront**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**John Dupree**                            represented by   **Alexander A. Frank**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Anna M. Barvir**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Carl D. Michel**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Tiffany D. Cheuvront**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Christopher Irick**                      represented by   **Alexander A. Frank**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Anna M. Barvir**
                                                            (See above for address)

117

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Robert Solis**                                 represented by  **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Lawrence Michael Walsh**                       represented by  **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Captain Jon's Lockers, LLC**                   represented by  **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)

118

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**L.A.X. Firing Range, Inc.**
*doing business as*
LAX AMMO

represented by **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**California Rifle & Pistol Association, Incorporated**

represented by **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**South Bay Rod and Gun Club, Inc.**

represented by **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)

119

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany D. Cheuvront**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Second Amendment Foundation**                represented by   **Anna M. Barvir**
(See above for address)
*TERMINATED: 02/17/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald Edward Kilmer , Jr.**
Law Offices of Donald Kilmer, A
Professional Corporation
14085 Silver Ridge Road
Caldwell, ID 83607
408–264–8489
Email: don@dklawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Gavin Newsom**                               represented by   **Anthony R Hakl , III**
*in his official capacity as Governor of the*                   California Department of Justice
*State of California and in his personal*                       Office of the Attorney General
*capacity*                                                      1300 I Street
17th Floor
Sacramento, CA 95814
(916) 210–6065
Fax: (916)324–8835
Email: Anthony.Hakl@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Joseph Sarosy**
California Attorney General
300 South Spring Street
Suite 1702
Los Angeles, CA 90013
213–269–6356
Fax: 916–731–2128
Email: charles.sarosy@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rob Bonta**
300 South Spring Street, Suite 1702
Los Angeles, CA 90013–6356
(213) 269–6356
Fax: (916)731–2119
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

120

**Defendant**

**Robert Bonta**
*in his official capacity as Attorney
General of the State of California and in
his personal capacity*

represented by **Anthony R Hakl , III**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Charles Joseph Sarosy**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Rob Bonta**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Karen Ross**
*in her official capacity as Secretary of
California Department of Food &
Agriculture and in his personal capacity*

represented by **Anthony R Hakl , III**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Charles Joseph Sarosy**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Rob Bonta**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Summer Stephan**
*in her official capacity as District
Attorney of San Diego County*

represented by **Timothy M. White**
Office of County Counsel
1600 Pacific Highway, Rm 355
San Diego, CA 92101
6195314865
Fax: 6195316005
Email: timothy.white@sdcounty.ca.gov
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas Montgomery**
*in his official capacity as County Counsel
of San Diego County
TERMINATED: 11/16/2021*

**Defendant**

**22nd District Agricultural Association**

represented by **Alexander A. Frank**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Charles Joseph Sarosy**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Rob Bonta**

121

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1–50**

**Defendant**

**Lonnie J. Eldridge**                       represented by **Timothy M. White**
*in his official capacity as County Counsel*                (See above for address)
*of San Diego County*                       *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/04/2021 | 1 | COMPLAINT with Jury Demand against Gavin Newsom, Robert Bonta, Karen Ross, Summer Stephan, Thomas Montgomery, 22nd District Agricultural Association, Does 1–50, ( Filing fee $ 402 receipt number ACASDC−16192698.), filed by B & L Productions, INC., Barry Bardack, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, Robert Solis, Lawrence Michael Walsh, Captain Jon's Lockers LLC, L.A.X. Firing Range, INC., California Rifle & Pistol Association Incorporated, South Bay Rod and Gun Club, Inc., Second Amendment Foundation. (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:21−cv−1718−AJB−KSC. Judge Anthony J. Battaglia and Magistrate Judge Karen S. Crawford are assigned to the case. (Barvir, Anna)(axc) (rmc). (Entered: 10/05/2021) |
| 10/04/2021 | 2 | NOTICE OF RELATED CASE(S) by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, INC., Second Amendment Foundation, Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh of case(s) 19cv134−CAB−AHG. (axc) (rmc). (Entered: 10/05/2021) |
| 10/05/2021 | 3 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (axc) (rmc). (Entered: 10/05/2021) |
| 10/07/2021 | 4 | NOTICE of Appearance by Carl D. Michel on behalf of B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh (Michel, Carl)Attorney Carl D. Michel added to party B & L Productions, Inc.(pty:pla), Attorney Carl D. Michel added to party Barry Bardack(pty:pla), Attorney Carl D. Michel added to party California Rifle & Pistol Association, Incorporated(pty:pla), Attorney Carl D. Michel added to party Captain Jon's Lockers, LLC(pty:pla), Attorney Carl D. Michel added to party Ronald J. Diaz, Sr(pty:pla), Attorney Carl D. Michel added to party John Dupree(pty:pla), Attorney Carl D. Michel added to party Christopher Irick(pty:pla), Attorney Carl D. Michel added to party L.A.X. Firing Range, Inc.(pty:pla), Attorney Carl D. Michel added to party Robert Solis(pty:pla), Attorney Carl D. Michel added to party South Bay Rod and Gun Club, Inc.(pty:pla), Attorney Carl D. Michel added to party Lawrence Michael Walsh(pty:pla)(jrm). (Entered: 10/07/2021) |
| 10/14/2021 | 5 | NOTICE of Appearance by Tiffany D. Cheuvront on behalf of B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh (Cheuvront, Tiffany)Attorney Tiffany D. Cheuvront added to party B & L Productions, Inc.(pty:pla), Attorney Tiffany D. Cheuvront added to party Barry Bardack(pty:pla), Attorney Tiffany D. Cheuvront added to party California Rifle & Pistol Association, Incorporated(pty:pla), Attorney Tiffany D. Cheuvront added to party Captain Jon's Lockers, LLC(pty:pla), Attorney Tiffany D. Cheuvront added to |

| | | |
|---|---|---|
| | | party Ronald J. Diaz, Sr(pty:pla), Attorney Tiffany D. Cheuvront added to party John Dupree(pty:pla), Attorney Tiffany D. Cheuvront added to party Christopher Irick(pty:pla), Attorney Tiffany D. Cheuvront added to party L.A.X. Firing Range, Inc.(pty:pla), Attorney Tiffany D. Cheuvront added to party Robert Solis(pty:pla), Attorney Tiffany D. Cheuvront added to party South Bay Rod and Gun Club, Inc.(pty:pla), Attorney Tiffany D. Cheuvront added to party Lawrence Michael Walsh(pty:pla)(jrm). (Entered: 10/14/2021) |
| 10/14/2021 | 6 | NOTICE of Appearance by Alexander Asch Frank on behalf of B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh (Frank, Alexander)Attorney Alexander Asch Frank added to party B & L Productions, Inc.(pty:pla), Attorney Alexander Asch Frank added to party Barry Bardack(pty:pla), Attorney Alexander Asch Frank added to party California Rifle & Pistol Association, Incorporated(pty:pla), Attorney Alexander Asch Frank added to party Captain Jon's Lockers, LLC(pty:pla), Attorney Alexander Asch Frank added to party Ronald J. Diaz, Sr(pty:pla), Attorney Alexander Asch Frank added to party John Dupree(pty:pla), Attorney Alexander Asch Frank added to party Christopher Irick(pty:pla), Attorney Alexander Asch Frank added to party L.A.X. Firing Range, Inc.(pty:pla), Attorney Alexander Asch Frank added to party Robert Solis(pty:pla), Attorney Alexander Asch Frank added to party South Bay Rod and Gun Club, Inc.(pty:pla), Attorney Alexander Asch Frank added to party Lawrence Michael Walsh(pty:pla)(jrm). (Entered: 10/14/2021) |
| 11/09/2021 | 7 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. Gavin Newsom served. (Barvir, Anna) (jrm). (Entered: 11/09/2021) |
| 11/09/2021 | 8 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. Robert Bonta served. (Barvir, Anna)(jrm). (Entered: 11/09/2021) |
| 11/09/2021 | 9 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. Karen Ross served. (Barvir, Anna)(jrm). (Entered: 11/09/2021) |
| 11/16/2021 | 10 | NOTICE *of Substitution of Party in Official Capacity* by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh (Barvir, Anna)(jrm). (Entered: 11/16/2021) |
| 11/19/2021 | 11 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. 22nd District Agricultural Association served. (Barvir, Anna) (zda). (Entered: 11/19/2021) |
| 11/19/2021 | 12 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. Summer Stephan served. (Barvir, Anna) (zda). (Entered: 11/19/2021) |
| 11/22/2021 | 13 | Joint MOTION for Extension of Time to File Response/Reply *to Complaint* by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Attachments: # 1 Declaration Declaration of Charles J. Sarosy in Support of Joint Motion to Extend Time to Respond to the Complaint)(Sarosy, Charles)Attorney Charles Joseph Sarosy added to party 22nd District Agricultural Association(pty:dft), Attorney Charles Joseph Sarosy added to party Robert Bonta(pty:dft), Attorney |

| | | |
|---|---|---|
| | | Charles Joseph Sarosy added to party Gavin Newsom(pty:dft), Attorney Charles Joseph Sarosy added to party Karen Ross(pty:dft) (zda). (Entered: 11/22/2021) |
| 11/24/2021 | 14 | ORDER To Extend Time To Respond To The Complaint. Signed by Judge Anthony J. Battaglia on 11/24/2021. (dxf) (Entered: 11/24/2021) |
| 12/08/2021 | 15 | Amended Summons Issued. **Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (jrm) (Entered: 12/08/2021) |
| 12/20/2021 | 16 | SUMMONS Returned Executed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Christopher Irick. Lonnie J. Eldridge served. (Barvir, Anna) (jmo). (Entered: 12/20/2021) |
| 01/24/2022 | 17 | Motion to Dismiss Complaint by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross re 1 Complaint, (Attachments: # 1 Memo of Points and Authorities ISO Defendants' Motion to Dismiss Complaint, # 2 Request for Judicial Notice ISO Defendant Motion to Dismiss Complaint, # 3 Proof of Service Certificate of Service)(Sarosy, Charles) Modified event on 1/25/2022 (jrm). (Entered: 01/24/2022) |
| 01/24/2022 | 18 | ORDER BY JUDGE BATTAGLIA: Setting Briefing Schedule : Responses due by 2/7/2022; Replies due by 2/14/2022; sur–replies will not be accepted. Motion Hearing set for 4/7/2022 at 2:00 PM in Courtroom 4A before Judge Anthony J. Battaglia.(no document attached) (sc) (Entered: 01/24/2022) |
| 01/24/2022 | 19 | NOTICE of Joinder by Lonnie J. Eldridge, Summer Stephan re 17 Notice (Other), *Motion to Dismiss Complaint* (Attachments: # 1 Proof of Service)(White, Timothy)(jrm). (Entered: 01/24/2022) |
| 01/24/2022 | 20 | MOTION to Dismiss for Failure to State a Claim by Lonnie J. Eldridge, Summer Stephan. (Attachments: # 1 Memo of Points and Authorities, # 2 Proof of Service)(White, Timothy)Attorney Timothy M. White added to party Lonnie J. Eldridge(pty:dft), Attorney Timothy M. White added to party Summer Stephan(pty:dft)(jrm). (Entered: 01/24/2022) |
| 01/25/2022 | 21 | AMENDED ORDER BY JUDGE BATTAGLIA: Setting Briefing Schedule re 17 Dismiss Party, 20 MOTION to Dismiss for Failure to State a Claim : Responses due by 2/7/2022; Replies due by 2/14/2022; sur–replies will not be accepted. Motion Hearing set for 4/7/2022 at 2:00 PM in Courtroom 4A before Judge Anthony J. Battaglia.(no document attached) (sc) (Entered: 01/25/2022) |
| 01/27/2022 | 22 | Joint MOTION for Extension of Time to File *Briefing for Defendants' Motions to Dismiss the Complaint* by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh. (Attachments: # 1 Declaration of Anna M. Barvir)(Barvir, Anna)(jrm). (Entered: 01/27/2022) |
| 01/28/2022 | 23 | ORDER Granting Joint Motion of the Parties to Extend Briefing Schedule for Defendants' Motions to Dismiss the Complaint. The deadline for Plaintiffs to respond to Defendants' Motions to Dismiss is continued from 2/7/2022 to 2/24/2022. The deadline for Defendants to reply to Plaintiffs' response is continued from 2/14/2022 to 3/17/2022. Motion hearing continued to 5/19/2022 at 2:00 p.m. before Judge Anthony J. Battaglia. Signed by Judge Anthony J. Battaglia on 1/28/2022. (jrm) (Entered: 01/28/2022) |
| 02/07/2022 | 24 | ***Document stricken per Order 25 *** NOTICE *of Substitution of Attorney* by Second Amendment Foundation (Barvir, Anna)(jrm). Modified to strike on 2/14/2022 (jrm). (Additional attachment(s) added on 2/14/2022: # 1 Stricken Document Form) (jrm). (Entered: 02/07/2022) |
| 02/14/2022 | 25 | Notice of Document Discrepancies and Order Thereon by Judge Anthony J. Battaglia Accepting re 24 Notice (Other), from Plaintiff Second Amendment Foundation. Non–compliance with local rule(s), ECF 2(h): Includes a proposed order or requires judges signature. IT IS HEREBY ORDERED: The document is rejected. It is ordered |

124

| | | that the Clerk STRIKE the document from the record, and serve a copy of this order on all parties. Signed by the Chambers of Judge Anthony J. Battaglia on 2/8/2022.(All non–registered users served via U.S. Mail Service)(jrm) Modified docket text; NEF regenerated on 2/14/2022 (jrm). (Entered: 02/14/2022) |
|---|---|---|
| 02/17/2022 | 26 | Joint MOTION to Substitute Attorney by Second Amendment Foundation. (Barvir, Anna)(jrm). (Entered: 02/17/2022) |
| 02/17/2022 | 27 | ORDER Granting Joint Motion for Substitution of Attorney for Plaintiff Second Amendment Foundation. Signed by Judge Anthony J. Battaglia on 2/17/2022. (All non–registered users served via U.S. Mail Service)(jrm) (Entered: 02/17/2022) |
| 02/24/2022 | 28 | RESPONSE in Opposition re 17 Dismiss Party, 20 MOTION to Dismiss for Failure to State a Claim filed by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Second Amendment Foundation, Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh. (Attachments: # 1 Request for Judicial Notice)(Barvir, Anna)(jrm). (Entered: 02/24/2022) |
| 03/17/2022 | 29 | REPLY to Response to Motion re 17 Dismiss Party *BRIEF IN SUPPORT OF STATE DEFENDANTS MOTION TO DISMISS THE COMPLAINT* filed by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Sarosy, Charles)(jrm). (Entered: 03/17/2022) |
| 03/17/2022 | 30 | REPLY – Other re 28 Response in Opposition to Motion,, *STATE DEFENDANTS OPPOSITION TO PLAINTIFFS REQUEST FOR JUDICIAL NOTICE OF EXHIBITS 1–5* filed by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Sarosy, Charles)(jrm). (Entered: 03/17/2022) |
| 03/17/2022 | 31 | Certificate of Service RE: REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS MOTION TO DISMISS THE COMPLAINT AND STATE DEFENDANTS OPPOSITION TO PLAINTIFFS REQUEST FOR JUDICIAL NOTICE OF EXHIBITS 1–5 by Defendants 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Sarosy, Charles) Modified on 3/18/2022 (jrm). (Entered: 03/17/2022) |
| 03/17/2022 | 32 | NOTICE of Joinder by Lonnie J. Eldridge, Summer Stephan *Defendants Summer Stephan and Lonnie Eldgridge's Notice of Joinder and Joinder in: (1) State Defendants' Reply Brief in Support of Motion to Dismiss Plaintiffs' Complaint; and (2) State Defendants' Opposition to Plaintiffs' Request for Judicial Notice of Exhibits 1–5 [Joinder in ECF Nos. 29 and 30]* (Attachments: # 1 Proof of Service Declaration of Service)(White, Timothy)(jrm). (Entered: 03/17/2022) |
| 03/17/2022 | 33 | REPLY to Response to Motion re 20 MOTION to Dismiss for Failure to State a Claim *Defendants Summer Stephan and Lonnie Eldridge's Reply Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint (And Each Cause of Action Therein That is Stated Against These Defendants) for Failure to State a Claim* filed by Lonnie J. Eldridge, Summer Stephan. (Attachments: # 1 Proof of Service Declaration of Service)(White, Timothy)(jrm). (Entered: 03/17/2022) |
| 03/25/2022 | 34 | ORDER BY JUDGE BATTAGLIA, Motions Submitted 17 Dismiss Party, 20 MOTION to Dismiss for Failure to State a Claim. These motions are suitable for determination on the papers and without need for oral argument pursuant to CivLR 7.1.d.1. Accordingly, no appearances are required and these motions are deemed submitted as of this date. (no document attached) (sc) (Entered: 03/25/2022) |
| 08/18/2022 | 35 | ORDER Granting Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. Nos. 17 , 20 ). Signed by Judge Anthony J. Battaglia on 8/18/2022. (All non–registered users served via U.S. Mail Service)(jrm) (Entered: 08/18/2022) |
| 08/31/2022 | 36 | AMENDED COMPLAINT with Jury Demand against All Defendants, filed by Robert Solis, Barry Bardack, L.A.X. Firing Range, Inc., South Bay Rod and Gun Club, Inc., B & L Productions, Inc., Lawrence Michael Walsh, John Dupree, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, Second Amendment Foundation, Christopher Irick. (Barvir, Anna)(jrm). (Entered: 08/31/2022) |

125

| | | |
|---|---|---|
| 09/08/2022 | 37 | NOTICE *of Errata* by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh re 36 Amended Complaint, (Barvir, Anna) (jrm). (Entered: 09/08/2022) |
| 09/08/2022 | 38 | ORDER OF TRANSFER. Magistrate Judge Karen S. Crawford is no longer assigned. Case reassigned to Magistrate Judge David D. Leshner for all further proceedings. The new case number is 21CV1718−AJB−DDL. Signed by Magistrate Judge Karen S. Crawford on 9/8/2022.(All non−registered users served via U.S. Mail Service)(exs) (Entered: 09/08/2022) |
| 09/08/2022 | 39 | Joint MOTION for Extension of Time to File Response/Reply as to 36 Amended Complaint, by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Attachments: # 1 Declaration Dec. of Charles J Sarosy ISO of Joint Motion for Extended Briefing Schedule for Defendants' Motions to Dismiss the Amended Complaint, # 2 Proof of Service Declaration of Service re Jt. Mtn. for Extending Briefing Schedule for Defendants' Mtns to Dismiss the First Amended Complaint Sup. Dec.)(Sarosy, Charles)(jrm). (Entered: 09/08/2022) |
| 09/09/2022 | 40 | Notice of Document Discrepancies and Order Thereon by Judge Anthony J. Battaglia Accepting re 37 Notice (Other) filed by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh. Non−compliance with local rule(s), No provision for acceptance. Erratas prohibited. CivLR 15.1.a. Amended Pleadings. IT IS HEREBY ORDERED: The document is accepted despite the discrepancy noted above. Any further non−compliant documents may be stricken from the record. Signed by the Chambers of Judge Anthony J. Battaglia.(jrm) (Entered: 09/09/2022) |
| 09/12/2022 | 41 | Order Granting Joint Motion for Extended Briefing Schedule for Defendants' Motions to Dismiss the First Amended Complaint. Defendants' time to move to dismiss the First Amended Complaint will be extended from 9/14/2022 to 10/31/2022. The Plaintiffs' brief in opposition to the motions to dismiss will be due on 11/28/2022. Defendants' reply briefs in support of the motions to dismiss will be due on 12/19/2022. Signed by Judge Anthony J. Battaglia on 9/10/2022. (All non−registered users served via U.S. Mail Service)(jrm) (Entered: 09/12/2022) |
| 10/31/2022 | 42 | MOTION to Dismiss *First Amended Complaint* by 22nd District Agricultural Association, Robert Bonta, Gavin Newsom, Karen Ross. (Attachments: # 1 Memo of Points and Authorities Memo of P&A's ISO Motion to Dismiss First Amended Complaint, # 2 Request for Judicial Notice Request for Judicial Notce ISO Motion to Dismiss First Amended Complaint, # 3 Proof of Service Certificate of Service CM−ECF System)(Sarosy, Charles) (jrm). (Entered: 10/31/2022) |
| 10/31/2022 | 43 | NOTICE of Joinder by Summer Stephan *to Notice of State Defendants' Motion and Motion to Dismiss the First Amended Complaint* (Attachments: # 1 Proof of Service Proof of Service)(White, Timothy) (jrm). (Entered: 10/31/2022) |
| 11/28/2022 | 44 | RESPONSE in Opposition re 42 MOTION to Dismiss *First Amended Complaint* filed by B & L Productions, Inc., Barry Bardack, California Rifle & Pistol Association, Incorporated, Captain Jon's Lockers, LLC, Ronald J. Diaz, Sr, John Dupree, Christopher Irick, L.A.X. Firing Range, Inc., Robert Solis, South Bay Rod and Gun Club, Inc., Lawrence Michael Walsh. (Barvir, Anna) (jrm). (Entered: 11/28/2022) |

# CERTIFICATE OF SERVICE

Case Name:  **B&L Productions, Inc., et al. v.**            No.    **8:22-cv-01518 JWH (JDEx)**
            **Gavin Newsom, et al.**

I hereby certify that on <u>December 9, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 9, 2022</u>, at Los Angeles, California.

| Carol Chow | */s/Carol Chow* |
|---|---|
| Declarant | Signature |

SA2022303648

127