C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs B&L Productions, Inc., California Rifle & Pistol Association, Incorporated, Gerald Clark, Eric Johnson, Chad Littrell, Jan Steven Merson, Asian Pacific American Gun Owner Association, Second Amendment Law Center, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST; GERALD CLARK; ERIC JOHNSON; CHAD LITTRELL; JAN STEVEN MERSON; CALIFORNIA RIFLE & PISTOAL ASSOCIATION, INCORPORATED; ASIAN PACIFIC AMERICAN GUN OWNERS ASSOCIATION; SECOND AMENDMENT LAW CENTER, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>          Plaintiffs,<br><br>     v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; KAREN ROSS, in her official capacity as Secretary of California Department of Food & Agriculture and in his personal capacity; TODD SPITZER, in his official capacity as District Attorney of Orange County; 32nd DISTRICT AGRICULTURAL ASSOCIATION; DOES 1-10;<br><br>          Defendants. | CASE NO.: 8:22-cv-01518 JWH (JDEx)<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:   January 6, 2023<br>Hearing Time:   9:00 a.m.<br>Courtroom:       9D<br>Judge:              John W. Holcomb<br><br>Action Filed:     August 12, 2022 |

PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Are Likely To Succeed on the Merits ................................................. 1

    A. The Challenged Statutes Violate the First Amendment .......................... 1

        1. The Challenged Statutes Regulate Protected Speech .................... 1

        2. The Challenged Statutes Are Content-based and Viewpoint-discriminatory ................................................................................. 2

        3. The Type of Forum Makes No Difference in this Case ................ 4

        4. The Challenged Statutes Cannot Survive Any Level of Review .. 5

        5. The State's Prior Restraint Argument Is Based on a Misreading of State Law ................................................................................... 6

    C. The Challenged Statutes Violate the Second Amendment ..................... 6

    B. The Challenged Statutes Violate the Equal Protection Clause ............... 9

    D. The State Defendants Are Not Entitled to Immunity Under Any of the State's Theories, But Even If They Were, It Would Not Affect the Outcome of Plaintiffs' Motion for Preliminary Injunction ................... 11

II. The Remaining Preliminary Injunction Factors Warrant Relief ...................... 11

III. Conclusion ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Alvarez*,
　679 F.3d 583 (7th Cir. 2012) .................................................................................. 12

*B&L Prods. v. 22nd Dist. Agric. Ass'n* (*B&L I*),
　394 F. Supp. 3d 1226 (S.D. Cal. 2019) ..................................................................... 3

*Christian Legal Soc. v. Martinez*,
　561 U.S. 661 (2010) ................................................................................................. 5

*City of Austin v. Reagan National Advertising of Austin, LLC*,
　__U.S.__, 142 S. Ct. 1464 (2022) .................................................................... 2, 3, 4

*City of Renton v. Playtime Theatres, Inc.*,
　475 U.S. 41 (1986) ................................................................................................... 4

*Dariano v. Morgan Hill Unified Sch. Dist.*,
　767 F.3d 764 (9th Cir. 2014) ................................................................................. 10

*District of Columbia v. Heller*,
　554 U.S. 570 (2008) ..................................................................................... 1, 6, 7, 9

*Frisby v. Schultz*,
　487 U.S. 474 (1988) ................................................................................................. 6

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*,
　452 U.S. 640 (1981) ................................................................................................. 3

*Index Newsps. LLC v. U.S. Marshalls Serv.*,
　977 F.3d 817 (9th Cir. 2020) ................................................................................. 11

*Kuba v. 1-A Agric. Ass'n*,
　387 F.3d 850 (9th Cir. 2004) ................................................................................... 5

*McDonald v. City of Chicago*,
　561 U.S. 742 (2010) ................................................................................................. 9

*Melendres v. Arpaio*,
　695 F.3d 990 (9th Cir. 2012) ................................................................................. 11

*Mont. Shooting Sports Ass'n v. Holder*,
 727 F.3d 975 (9th Cir. 2013) .............................................................................. 11

*N.Y. State Rifle & Pistol Assn., Inc. v. Bruen*,
 __ U.S. __, 142 S. Ct. 2111 (2022) .............................................................. *passim*

*Nordyke v. Santa Clara Cnty.* (*Nordyke '97*),
 110 F.3d 707 (9th Cir. 1997) ............................................................................ 1, 5

*Police Dep't of Chic. v. Mosley*,
 408 U.S. 92 (1972) ................................................................................................ 9

*R.A.V. v. City of St. Paul*,
 505 U.S. 377 (1992) .............................................................................................. 3

*Reed v. Town of Gilbert*,
 576 U.S. 155 (2015) .............................................................................................. 2

*Rumsfeld v. FAIR*,
 547 U.S. 47 (2006) .............................................................................................. 11

*Teixeira v. County of Alameda*,
 873 F.3d 670 (9th Cir. 2017) ................................................................................ 8

*United States v. O'Brien*,
 391 U.S. 367 (1968) .............................................................................................. 3

*Vill. of Willowbrook v. Olech*,
 528 U.S. 562 (2000) ............................................................................................ 10

**Statutes**

Cal. Penal Code § 26805 ............................................................................................ 6

Cal. Penal Code § 27310 ............................................................................................ 6

Cal. Penal Code § 27545 ............................................................................................ 6

**Other Authorities**

U.S. Const. amend. I ........................................................................................ *passim*

U.S. Const. amend. II ....................................................................................... *passim*

U.S. Const. amend. XIV ..................................................................................... 9, 12

# I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

## A. The Challenged Statutes Violate the First Amendment

### 1. The Challenged Statutes Regulate Protected Speech

Because the Challenged Statutes expressly ban only "the sale of any firearm, firearm precursor part, or ammunition" at state-owned properties, the State pretends that the laws do not bar speech at all because "the act of exchanging money for a gun is not 'speech'." Opp'n 10 (quoting *Nordyke v. Santa Clara Cnty.* (*Nordyke '97*), 110 F.3d 707, 710 (9th Cir. 1997). The State's reliance on *Nordyke '97* for this point is surprising because, as Plaintiffs' moving papers explain, *Nordyke '97* struck the county's ban on the "sale" of firearms on county property as overbroad <u>*because it abridged commercial speech associated with the sale of lawful products*</u>. Mot. 12 (citing *Nordyke 1997*, 110 F.3d at 713). Sure the act of exchanging money is not inherently expressive, but the Challenged Statutes ban on "sales" necessarily restricts more than that act. It also bans all manner of speech necessarily associated with a sale, including the words constituting offer and acceptance and the exchange of information required by state and federal law for any firearm or ammunition transaction.[1]

The State also argues that because the Challenged Statutes ban firearm sales, speech attendant to those sales is not protected commercial speech under *Nordyke '97*. Opp'n 15-16. Because it was decided in a pre-*Heller* world, *Nordyke '97* assumes that banning firearm sales would be constitutional and that, if the sale of firearms were illegal, commercial speech promoting such sales can also be restricted. *Nordyke '97*, 110 F.3d at 710-11. But that premise is no longer sound. After *Heller* and *Bruen*, the State cannot simply ban sales of bearable arms without sufficient historical justification. *N.Y. State Rifle & Pistol Assn., Inc. v. Bruen*, __ U.S. __, 142 S. Ct.

---

[1] If the only conduct the Challenged Statutes ban is the act of exchanging money for firearms and related products, the State should make clear that gun show vendors may offer firearms and related products for sale at the Fairgrounds and begin the sales transaction with a prospective buyer. They need only wait to exchange money till seller and buyer are off state property. Of course, if the State does so, it would be hard to defend its restrictions even on rational basis grounds.

1
PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

2111, 2126 (2022). And the State does not even try to establish that its ban on sales is constitutional under *Bruen*, so its use of the existence of the Challenged Statutes to justify the existence of the Challenged Statutes is both circular and unconvincing.

What's more, the Challenged Statutes also ban non-commercial speech because they effectively ban gun shows altogether. The State seems to think that Plaintiffs' allegation that only about 40% of vendors sell firearms or related products at gun shows means that the Challenged Statutes is responsible for ending gun shows. Opp'n 1. But as Plaintiffs' moving papers explain, while vendors of firearm-related products do not make up the majority of gun show vendors, they are the *primary draw* for gun show participants. Mot. 1. Without the ability to interact with firearm and ammunition vendors, participant attendance drops off. *Id.* And when people no longer attend, non-firearm vendors also drop off. *Id.* Though it feigns ignorance now, the State knew all of this when it adopted SB 264 and SB 915.

But even if Plaintiffs' gun shows could survive without the economic cornerstone that props them up, Plaintiffs have been denied their right to engage in all manner of speech—both commercial and non-commercial—because the DAA refuses to give Plaintiffs dates or finalize contracts for events with B&L on the grounds that the Challenged Statutes ban gun shows. Mot. 10; Olcott Decl. ¶ 7; FAC ¶¶ 162-65.

### 2. The Challenged Statutes Are Content-based and Viewpoint-discriminatory

Government restrictions that selectively ban speech based on its "particular subject matter" or "its function or purpose" are "content-based regulations." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Supreme Court recently revisited *Reed* (without overruling it) in *City of Austin v. Reagan National Advertising of Austin, LLC*, __U.S.__, 142 S. Ct. 1464 (2022). In a 5-4 opinion, the *Reagan* Court clarified that *Reed* does not stand for the broad holding that "any classification that considers function or purpose is *always* content based." *Id.* at 1474 (emphasis added). But in doing so, the *Reagan* Court did not disturb the rule that regulations of "speech 'requesting or seeking to obtain something' or '[a]n attempt or effort to gain

business,'" *id.* at 1473, "do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' *so long as they do not discriminate based on topic, subject matter, or viewpoint*," id. (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)) (emphasis added). Driving this point home, the Court noted its determination that "the City's ordinance is facially content neutral *does not* end the First Amendment inquiry. If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *Id.* at 1475-76.

There is indeed evidence of an "impermissible purpose or justification" here. *Id.* The State argues that the Challenge Statutes were adopted to address public safety concerns and not because of disagreement with any message. Opp'n 15. But the record shows that the real motivation behind the Challenged Statutes is the impermissible goal of banning gun shows at public venues. Mot. 7-10 & nn. 2-3. The State cannot hide behind its seemingly neutral invocation of broad public safety concerns in the face of "evidence that [this] impermissible purpose or justification underpins a facially content-neutral restriction." *Reagan*, 142 S. Ct. at 1475-76. And "because the speech at gun shows is likely to be predominantly, if not exclusively, favorable to guns and gun rights, '[i]n its practical operation,' the [Challenged Statutes go] 'beyond mere content discrimination, to actual viewpoint discrimination.'" *B&L Prods. v. 22nd Dist. Agric. Ass'n* (*B&L I*), 394 F. Supp. 3d 1226, 1246 (S.D. Cal. 2019) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992)).[2]

---

[2] The State attacks Plaintiffs' use of the statements of Governor Newsom and Senator Min as evidence that the law was driven by animus. Opp'n 17. Concededly, the Supreme Court has cautioned against "void[ing] a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of [legislators] said about it." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). But Plaintiffs do not ask this Court to void a law that is constitutional on its face based on the isolated comments of a few legislators. To the contrary, the legislative history is clear that the intended effect was to ban gun shows on state-owned property. That goal is impermissible. Min's statements merely confirm that the bills' *sponsor* was motivated by animus to draft, introduce, and adopt the Challenged Statutes. While his statements may not be dispositive, they are at the very least revealing.

Finally, contrary to the State's contention, just because the Challenged Statutes ban sales of firearms and related products at all events at state-owned property does not make the laws content- or viewpoint-neutral. Opp'n 13. The (intended) effect of the Challenged Statutes is to ban pro-gun events that rely on such sales for their very existence (i.e., gun shows). Concerts, boat shows, and beer and wine festivals do not rely on the sales of firearms and ammunition for their very survival. Most such events do not even include such sales. So the Challenged Statutes simply do not impact them in any meaningful way. They certainly have not prompted Defendant DAA to refuse to host such events. So unlike other laws regulating events at state venues that would have the same application and impact on all events, like fire codes, the Challenged Statutes' has an unequal effect on only gun shows—events that the State does not like, has targeted for years, and is trying to ban altogether.

The Challenged Statutes, in both their intent and effect, "discriminate based on topic, subject matter, or viewpoint." *Reagan*, 142 S. Ct. at 1474. They are thus content- and viewpoint-based and subject to strict scrutiny. But the State is so confident that its laws are neither, it does not even attempt to defend them under strict scrutiny. It has thus waived any argument that the Challenged Statutes could survive such review. So if the Court agrees that the laws likely impose a content-based restriction on protected speech, it should hold that Plaintiffs have shown a likelihood of success on the merits of their First Amendment free speech claim.

### 3. The Type of Forum Makes No Difference in this Case

Whether the Fairgrounds is a public forum or a "limited public forum," as the State argues, Opp'n 13-14, does not change the result. Regardless of the type of forum, "the fundamental principle that underlies [the Court's] concern about 'content-based' speech regulations [is] that 'government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views.'" *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48-49 (1986). So even in the State is correct, any restriction based on the

limited nature of the forum is subject to a "key caveat: Any access barrier must be reasonable and viewpoint neutral." *Christian Legal Soc. v. Martinez*, 561 U.S. 661, 679 (2010). As explained in Plaintiffs' moving papers and detailed further below, the Challenged Statues cannot meet even this more-forgiving standard because the laws are both content-based and viewpoint-discriminatory.

### 4. The Challenged Statutes Cannot Survive Any Level of Review

The Challenged Statutes cannot meet any level of heightened scrutiny because they are *far* broader than necessary to serve any legitimate government interest. The State's ban on the commercial speech necessary to the sale of all firearms and ammunition (offer and acceptance) at the Fairgrounds—instead of simply enforcing the many laws that already regulate the sales of such products—defies common sense and circuit precedent. *Nordyke '97*, 110 F.3d 707. The State argues that the laws address public safety. Opp'n 16. But the State's interest must be authentic and sincerely invoked. "[M]erely invoking interests ... is insufficient. The government must also show that the proposed communicative activity endangers those interests." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 859 (9th Cir. 2004) (citation omitted).

The State claims that its "existing legal framework (FAC, ¶¶ 43-56) is not a sufficient alternative because, as the legislative findings indicate, illegal transactions still occur at gun shows." Opp'n 17. But aside from being hearsay that the State provides no evidence to corroborate, the legislative history reveals only the most general concerns about gun violence around the country and legislators' beliefs that the State should not profit from gun sales. None of the reports the legislature relied on are relevant to gun shows in California because such events are regulated much more strictly than similar events outside the state. Mot. 16-17.

The Challenged Statute's legislative findings also allege that a handful of crimes have occurred at gun shows. But again, the State has provided *no* proof of such crimes, nor has the State shown that such crimes are any more likely to occur at gun shows on public property than other large-scale events where thousands of people

gather or at brick-and-mortar gun stores or gun shows held on private property (which are still completely lawful). Yet the State seeks only to ban sales (and effectively gun shows) at state-owned venues. The distinction is not even rational.

Ultimately, as the record shows, the State's "actual interest" is not public safety, but animus for America's gun culture. Mot. 18 (quoting Req. Jud. Ntc., Ex. 14 at 77). But even if the State wants to make a public safety argument, *for which it bears the burden of proof*, it cannot prove that the Challenged Statutes are sufficiently tailored to that end. To meet that burden the government must target the exact wrong it seeks to remedy and no more. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Complete prohibition is disproportionate and unnecessarily restrictive of the First Amendment activities that take place at gun shows. Because the State cannot meet its burden under any level of heightened scrutiny, Plaintiffs are likely to succeed on the merits.

### 5. The State's Prior Restraint Argument Is Based on a Misreading of State Law

The State next argues that Plaintiffs' that there is no "unbridled discretion" to determine what constitutes a "sale" under the Challenged Statutes (and so no prior restraint) because Penal Code sections 27310, 26805, and 27545 guide the decision. Opp'n 18. But these codes do not define "sale" under the Challenged Statutes or for any other purpose. They outline the requirements for lawfully transferring a firearm in California. But they do not explain what act begins a "sale" or when a "sale" is complete. Questions about whether beginning the paperwork or whether transferring firearms via raffle constitutes a "sale" under the Challenged Statutes have already proven hard to answer, Compl. ¶ 48, with the potential for varied interpretations at each venue. The Challenged Statutes are a prior restraint on free speech.

### C. The Challenged Statutes Violate the Second Amendment

When faced with a Second Amendment challenge, the analysis must begin with the Second Amendment's "plain text." *Bruen*, 142 S. Ct. at 2126 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). Once the "plain text" is implicated, the challenged law is *presumed* unconstitutional. *Id.* And the burden shifts to the State to

prove that its gun control law is part of a tradition of regulating arms that stretches back to the Founding. *Id.*

The State is clearly struggling to justify its gun-control laws under the standard for reviewing Second Amendment challenges recently clarified by the Supreme Court in *Bruen*. So rather than analyze the historical support for its ban on sales of "firearm-related products" on public property, the State tries to short-circuit the inquiry by claiming that its ban does not "meaningfully restrict Plaintiffs' access to firearms." Opp'n 21. Essentially, the State argues that because the Challenged Statutes ban only the sales of "firearm-related products" at state-owned properties, and because Plaintiffs have not shown that they cannot acquire such products elsewhere, the core Second Amendment right to armed self-defense remains intact, and the Challenged Statutes do not implicate the Second Amendment.

But this argument simply retreads the (abrogated) two-step, interest-balancing test while pretending it is faithful to *Bruen*'s text-and-history-based analysis. It is just another way to say that because the Challenged Statutes do not destroy Plaintiffs' Second Amendment right to possess a firearm for self-defense, the laws are constitutional. This is the wrong analysis. Neither *Heller* nor *Bruen* held that only laws that destroy the right to armed self-defense implicate the Second Amendment. And *Bruen* expressly tossed aside the two-step analysis that required courts to consider the severity of a challenged law's burden on Second Amendment conduct. So analyzing how substantially the Challenged Statutes burden Plaintiffs' rights is improper at this step of the analysis. Instead, the Court should simply ask whether the challenged law *implicates* the Second Amendment's "plain text." *Bruen*, 142 S. Ct. at 2129-30. It is a borderline rhetorical question that should almost always elicit a "yes."

While Plaintiffs no doubt have other options for purchasing some firearms and ammunition they might find at a gun show, that is irrelevant. The focus here is not on what crumbs the Challenged Statutes leave for Plaintiffs to nibble, the focus is on what the laws take away and whether the State has proven it has valid historical

7
PLS' MEMORANDUM ISO MOTION FOR PRELIMINARY INJUNCTION

justification to do so. The State bans the sale of firearms, ammunition, and firearm precursor parts on publicly owned properties. Because the sale and purchase of these bearable arms are vital to the exercise of the right to keep and bear them, the Challenged Statutes, at least, implicate the "plain text" of the Second Amendment.

Even so, the State tries to find support for its position in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017), a pre-*Bruen* challenge to a county zoning ordinance that effectively barred a gun store from opening a planned location in the county. Opp'n 22-24. The *Teixeira* court upheld the law, holding (1) that there is no "freestanding right" "to sell a firearm unconnected to the rights of citizens to 'keep and bear' arms," and (2) that plaintiffs had not shown that the law "meaningfully restricted" their ability to purchase firearms. The State claims that "*Teixeira*'s reasoning remains sound after *Bruen*" because the court "did not apply means-end scrutiny, but rather, examined the Second Amendment's text and historical record." Opp'n 23 (citing *Teixeira*, 873 F.3d at 678-87). But the State is only partially right.

The *Teixeira* court did analyze text and history to find that there is no freestanding right to engage in firearm sales. 873 F.3d at 678-87. But the court's holding that the ordinance did not meaningfully restrict the ability to acquire firearms was based not on text or history, but on the modern existence of other gun stores. *Id.* at 687-88. After *Bruen*, it is no longer appropriate (if it ever was) for courts to look to the severity of the burden a challenged gun control law imposes at the first step of the Second Amendment analysis. Indeed, any inquiry into *how* a given law impacts the right may arise only when necessary to aid in the analogical analysis at step two of the text-and-history test. *Bruen*, 142. S. Ct. at 2133 (explaining that courts might look to "how" and "why" a historical enactment restricted the right to keep and bear arms to determine whether it is an appropriate historical analog).

Finally, the State reasons that because the Challenged Statutes prohibit the sale of firearms and related products on state property, they are mere "conditions and qualifications on the commercial sale of arms" that regulate conduct that is "not

protected" by the Second Amendment at all. Opp'n 23 (quoting *Heller*, 554 U.S. at 626-627; citing *McDonald v. City of Chicago*, 561 U.S. 742, 787 (2010); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring)). The State's argument stretches *Heller*'s dicta that "laws imposing conditions and qualifications on the commercial sale of arms" might be "presumptively lawful" far beyond its intended meaning. 554 U.S. at 628. This language is essentially speculation that such laws will *likely* survive the *Bruen* analysis. It does not mean that the Second Amendment does not protect the commercial sale of firearms. And it does not create a safe harbor from the *Bruen* analysis for all laws that regulate commerce in arms in some way.

The Challenged Statutes, which regulate the sale of bearable arms, implicate the "plain text" of the Second Amendment. The State thus bears the burden of proving that its modern gun show ban is part of an enduring American tradition of firearms regulation dating to the Founding. The State refused to engage in this analysis at all, so it has failed to meet that burden.[3] Plaintiffs have thus shown a likelihood of succeeding on the merits of their Second Amendment claims.

B.   **The Challenged Statutes Violate the Equal Protection Clause**

Because the Challenged Statutes single out Plaintiffs based on the content of their speech, they violate not only the rights to free speech, assembly, and association, but also violate Plaintiffs' rights to equal protection under the law. U.S. Const. amend. XIV. Indeed, the Supreme Court long ago recognized that both the Equal Protection Clause and the First Amendment forbid the government from granting "the use of a forum to people whose views it finds acceptable, but deny[ing] use to those wishing to express less favored or more controversial views." *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 96 (1972). As the State concedes, "[a]n equal protection claim relating to

---

[3] The State asks for "an opportunity to compile the relevant historical record" if the Court disagrees that the Challenged Statutes do not implicate the Second Amendment. Opp'n 24, n.12. But the time for making its case that the Challenged Statutes have sufficient historical analogues was in opposing Plaintiffs' motion. That the State knowingly chose not to do so is not a good reason to keep violating Plaintiffs' rights while the State engages in a search for historical analogues.

allegedly expressive conduct is evaluated through 'essentially the same' analysis used for the First Amendment claim." Opp'n 19 (quoting *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 780 (9th Cir. 2014)). So if the Court holds that Plaintiffs are likely to succeed on the merits of their First Amendment claims, the Court should also find that they are likely to succeed on the merits of their equal protection claim.

But even if Plaintiffs' First Amendment claims are destined to fail, their equal protection claim survives under the "class-of-one" theory. The State argues that Plaintiffs' reliance on this theory fails because "a class-of-one claim requires a showing of intentional and differential treatment as compared to similarly situated persons or groups." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Contrary to the State's characterization, Plaintiffs do not "admit [that] they are not similarly situated to other groups." *Id.* (citing FAC ¶ 43). They do recognize that gun shows are more heavily regulated than many other businesses, but Plaintiffs are still similarly situated to other event promoters, vendors, and participants conducting business at the Fairgrounds. Just like those similarly situated businesses, they attract thousands of people to the venue to interact with vendors and members of the public, disseminate information about businesses and the products and services they offer, and buy and sell lawful goods and services. They contract and pay for use of the space, maintain insurance, and ensure their events are profitable for both the promoter and vendors, as well as the DAA itself. In short, they are not materially different from the other commercial businesses that operate at the Fairgrounds, like promoters of concerts, industry shows, auto shows, and beer and wine festivals.

But even if they were and rational basis review applied, Plaintiffs' equal protection claim is still likely to succeed. The State can only make broad claims that the Challenged Statutes are necessary to promote public safety (1) without proving any relationship between crime and (highly regulated) gun shows in California, (2) while allowing identical purchases to take place at gun shows on private property and at brick-and-mortar stores. The State's actions are irrational and arbitrary.

### D. The State Defendants Are Not Entitled to Immunity Under Any of the State's Theories, But Even If They Were, It Would Not Affect the Outcome of Plaintiffs' Motion for Preliminary Injunction

The State makes four arguments that some of the state official defendants are entitled to various immunities from suit as to some or all of Plaintiffs' claims.[4] But Plaintiffs' motion for preliminary injunction is a strange vehicle for the State to raise such arguments. Even if (1) Newsom is entitled to legislative immunity, (2) Newsom and Ross are entitled to sovereign immunity, and (3&4) Newsom, Ross, and Bonta are entitled to immunity from damages, Plaintiffs would still be entitled to preliminary relief. That is because even if Newsom and Ross are dismissed *entirely* and Bonta is not liable for damages (which Plaintiffs are not seeking anyway), Plaintiffs can still succeed on the merits of their claims against Defendants Bonta, Spitzer, and DAA and effective declaratory and injunctive relief against those parties can be had.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WARRANT RELIEF

Irreparable Harm: Again, "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation omitted). The State does not try to challenge this well-established principle. Instead, it simply argues that because Plaintiffs' "claims are not likely to succeed on the merits … their allegations of irreparable harm also fail." Opp'n 24. But if the Court holds that Plaintiffs are likely to succeed on even one of their constitutional claims, it must also find that Plaintiffs have alleged sufficient irreparable harm to warrant preliminary relief.

Balance of Equities & Public Interest: "It is always in the public interest to prevent the violation of a party's constitutional rights. *Index Newsps. LLC v. U.S. Marshalls Serv.*, 977 F.3d 817 (9th Cir. 2020). Enjoining the enforcement of the

---

[4] The State also argues that Plaintiff SAF lacks standing. Opp'n 9, n.7 (citing FAC ¶ 18). But even if that is so, the remaining Plaintiffs can still succeed on the merits. And, where even just one plaintiff has standing, this Court "need not address whether the Second Amendment Foundation … satisfy[ies] the requirements for organizational standing." *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013) (citing *Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006)).

Challenged Statutes will end the irreparable harm Plaintiffs are now suffering, including the violation of their rights under the First, Second, and Fourteenth Amendments. On the other hand, allowing the lawful sale of firearms and related products at the Fairgrounds to resume does not harm the State. On the contrary, "the public interest is not harmed by preliminarily enjoining the enforcement of a law that is probably unconstitutional." *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).

Still, the State claims it has a "compelling interest in public safety" that will be compromised if enforcement of the Challenged Statutes is halted. Opp'n 24. To be sure, the State may have a public safety interest in preventing "gun violence" or curbing the illegal transfer of firearms. But the State has not produced a shred of evidence that removing the already highly regulated sale of lawful firearms and related products from state-owned properties (and nowhere else) will do anything at all to promote public safety.

### III. CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunction and enjoin the Challenged Statutes while this case proceeds on the merits.

Dated: December 16, 2022          **MICHEL & ASSOCIATES, P.C.**

                                  *s/ Anna M. Barvir*
                                  Anna M. Barvir
                                  Counsel for Plaintiffs B&L Productions, Inc., California Rifle & Pistol Association, Incorporated, Gerald Clark, Eric Johnson, Chad Littrell, Jan Steven Merson, Asian Pacific American Gun Owner Association, Second Amendment Law Center, Inc

Dated: December 16, 2022          **LAW OFFICES OF DONALD KILMER, APC**

                                  *s/ Donald Kilmer*
                                  Donald Kilmer
                                  Counsel for Plaintiff Second Amendment Foundation

# ATTESTATION OF E-FILED SIGNATURES

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: December 16, 2022  */s/ Anna M. Barvir*
Anna M. Barvir

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *B & L Productions, Inc., et al. v. Gavin Newsom, et al.*
Case No.: 21CV1718 AJB KSC

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Nicole J. Kau, Deputy Attorney General
nicole.kau@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
   *Attorney for Defendants*

I declare under penalty of perjury that the foregoing is true and correct. Executed December 16, 2022.

*[signature]*
Laura Palmerin