1   ROB BONTA
    Attorney General of California
2   R. MATTHEW WISE
    Supervising Deputy Attorney General
3   NICOLE J. KAU
    Deputy Attorney General
4   State Bar No. 292026
      300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013-1230
      Telephone:  (213) 269-6220
6     Fax:  (916) 731-2125
      E-mail:  Nicole.Kau@doj.ca.gov
7   *Attorneys for Defendants Governor Gavin Newsom,*
    *Attorney General Rob Bonta, Secretary Karen Ross,*
8   *and 32nd District Agricultural Association*

9                   IN THE UNITED STATES DISTRICT COURT

10                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13  | **B&L PRODUCTIONS, INC., d/b/a** | 8:22-cv-01518 JWH (JDEx) |
    | **CROSSROADS OF THE WEST, et** | |

14  | **al.,** | **STATE DEFENDANTS' REPLY IN** |
    | | **SUPPORT OF SUPPLEMENTAL** |

15  | Plaintiffs, | **BRIEF IN OPPOSITION TO** |
    | | **MOTION FOR PRELIMINARY** |

16  | **v.** | **INJUNCTION** |

17  | **GAVIN NEWSOM, et al.,** | Date:        April 6, 2023 |
    | | Time:        9:00 a.m. |

18  | Defendants. | Courtroom:   9D |
    | | Judge:       The Honorable John W. |

19  | | Holcomb |
    | | Action Filed: August 12, 2022 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 4

    I.     The Challenged Statutes Fall Within The Government's Well-
           Established Authority to Regulate Conduct on Its Own Property ........ 4

    II.    The Challenged Statutes Fall Within The Government's Well-
           Established Authority to Regulate Commerce .................................... 7

    III.   The Challenged Statutes Fall Within the Government's Well-
           Established Authority to Regulate Firearms in Sensitive Places .......... 8

CONCLUSION .................................................................................................. 10

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4

**Cases**

5

*B&L Prods., Inc. v. Newsom*,
    No. 21-CV-01718-AJB-KSC (S.D. Cal. Mar. 14, 2023) .................................. 1, 6

6

7

*B&L Productions, Inc. v. 22nd District Agric. Ass'n*,
    394 F. Supp. 3d 1226 (S.D. Cal. 2019) ................................................................. 6

8

9

*Bonidy v. U.S. Postal Serv.*,
    790 F.3d 1121 (10th Cir. 2015) ......................................................................... 4, 5

10

11

*Christopher v. Ramsey Cty.*,
    No. CV 21-2292, 2022 WL 3348276 (D. Minn. Aug. 12, 2022) .......................... 5

12

13

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .......................................................................................... 5, 8

14

15

*Engquist v. Or. Dep't of Agric.*,
    553 U.S. 591 (2008) .............................................................................................. 5

16

17

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*,
    212 F. Supp. 3d 1348 (N.D. Ga. 2016) ............................................................. 4, 5

18

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) .............................................................................................. 2

19

20

*National Rifle Ass'n, v. Bondi*,
    No. 21-12314, 2023 WL 2484818 (11th Cir. Mar. 9, 2023) ................................. 3

21

22

*New York State Rifle & Pistol Ass'n v. Bruen*,
    142 S. Ct. 2111 (2022) ..............................................................................*passim*

23

24

*Nordyke v. Santa Clara Cty.*,
    110 F.3d 707 (9th Cir. 1997) ................................................................................ 6

25

26

*Police Dep't of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) ................................................................................................ 6

27

*United States v. Class*,
    930 F.3d 460 (D.C. Cir. 2019) ......................................................................... 4, 5

28

1
2

**TABLE OF AUTHORITIES**
(continued)

3

Page

4

*United States v. Flores*,
   No. CR H-20-427, 2023 WL 361868 (S.D. Tex., Jan. 23, 2023) ........................ 2

5

*United States v. Kelly*,
   No. 3:22-CR-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16,
   2022) ..................................................................................................................2, 8

6
7

*United States v. Perez-Garcia*,
   No. 22-CR-1581-GPC, 2022 WL 17477918 (S.D. Cal. Dec. 6,
   2022) .................................................................................................................... 2

8
9

*United States v. Rowson*,
   No. 22 CR. 310 (PAE), 2023 WL 431037 (S.D.N.Y. Jan. 26, 2023) ................. 2

10
11

12

**Statutes**

13

1825 N.H. Laws 74, § 5 ..................................................................................... 7

14

Cal. Penal Code
   § 27340(b) ........................................................................................................... 9
   § 27340(c) ........................................................................................................... 9

15
16

17

**Constitutional Provisions**

18

First Amendment ................................................................................................. 6

19

Second Amendment ...................................................................................*passim*

20

Fourteenth Amendment .................................................................................2, 3, 8

21

22

**Other Authorities**

23

California Department of Justice, *Armed and Prohibited Persons
   System Report 2021* ........................................................................................... 9

24

OC Fair & Event Center, Property Map, available at https://s3.us-west-
   1.amazonaws.com/ocfair.com/wp-content/uploads/2021/11
   /04082618/Property-Map-Update-2019-LetterSize-GX7587-R2.pdf ................. 5

25
26

27
28

**INTRODUCTION**

Plaintiffs allege that SB 264 and SB 915, which prohibit the sale of firearms, ammunition, and precursor parts on state property, violate their Second Amendment rights.  In their latest brief, they suggest (1) that the conduct regulated by SB 264 and SB 915 is within the "plain text" of the Second Amendment, and (2) that the government may satisfy the standard set forth in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), only by identifying historical analogues enacted between 1750 and 1800 that are so strikingly similar to the challenged laws that they could be considered a "historical twin" or "dead ringer," *id*. at 2133.  Neither of these positions is correct.

First, Plaintiffs "do not provide the necessary allegations to support a Second Amendment claim under [*Bruen*'s] new framework."  *B&L Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-KSC, ECF 51 at 9 (S.D. Cal. Mar. 14, 2023).  Indeed, in the parallel case in which Plaintiff B&L Productions challenges a similar law which prohibits the sale of firearms and ammunition at the Del Mar Fairgrounds (AB 893), the court dismissed B&L's Second Amendment claim because the amended complaint failed to state a claim that AB 893 unconstitutionally burdens the ability to acquire or purchase a firearm.  *Id.* (plaintiffs "'have not plausibly alleged that AB 893 impedes them from purchasing a firearm or ammunition at a place other than a gun show at the Fairgrounds'").  The court observed that AB 893—which "'impos[es] conditions and qualifications on the commercial sale of arms'"—is among those "'presumptively lawful regulatory measures'" identified by the Supreme Court.  *B&L Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-KSC, ECF 51 at 8-9 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)).  The court further concluded that the plaintiffs had not asserted a viable claim because the Second Amendment does not "'confer[] an independent right to sell or trade weapons.'"  *Id*. (quoting *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017), and finding that the *Teixeira* holding was consistent with, and not

1

1  overruled by, *Bruen*); *see also United States v. Flores*, No. CR H-20-427, 2023 WL
2  361868 (S.D. Tex., Jan. 23, 2023), at *4-5 (dismissing challenge to statute
3  regulating commercial firearm dealing because the proposed conduct was not
4  covered by the Second Amendment's plain text, and the defendant failed to show
5  that the law "meaningfully increase[d] gun prices or impede[d] any citizen's
6  access" to guns.  The reasoning applies with equal force here.

7      Second, Plaintiffs misconstrue *Bruen*'s historical analysis.  *Bruen* made clear
8  that the Second Amendment is not a "regulatory straightjacket," 142 S. Ct. at 2133,
9  confining permissible government regulations to only those laws that had been
10 enacted when the Second and Fourteenth Amendments were ratified.[1]  To the
11 contrary, governments may adopt a "'variety' of gun regulations," *id.* at 2162
12 (Kavanaugh, J., concurring) (citation omitted), and "experiment[] with reasonable
13 firearms regulations" to address threats to public safety, *McDonald v. City of*
14 *Chicago,* 561 U.S. 742, 785 (2010) (plurality opinion).  Requiring the government
15 to spot a "near perfect match between a modern-day regulation[] and historical
16 regulations would likely render *Bruen*'s analogical historical reasoning exactly th[e]
17 'regulatory straight jacket'" that the Second Amendment is not.  *United States v.*
18 *Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *5 (S.D. Cal. Dec. 6,
19 2022).  Even an "imperfect match" can provide useful insight into the broader
20 historical traditions that may justify a modern firearm regulation.  *United States v.*
21 *Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037, at *24 (S.D.N.Y. Jan. 26,
22 2023).

23 _____
24 [1] As one district court recently put it, "There is simply no logically sound argument
   that the Second Amendment—or any other constitutional prohibition—would
25 forbid all laws other than those that *actually existed* at or around the time of the
   provision's adoption.  Rather, the Second Amendment must, at most, forbid laws
26 that *could not have existed* under the understanding of the right to bear arms that
   prevailed at the time."  *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL
27 17336578, at *5 n.7 (M.D. Tenn. Nov. 16, 2022).
28

And while Plaintiffs invoke *Bruen* to limit the historical analysis to laws from the latter half of the eighteenth century, *Bruen* did not resolve whether the historical analysis should emphasize laws from the Founding era or from the ratification of the Fourteenth Amendment. *Bruen*, 142 S. Ct. at 2138 ("We also acknowledge that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified[.] . . . We need not address this issue today . . . .") But the Court did provide some guidance on this question, observing that "'[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*,'" and that "[h]istorical evidence that long predates or postdates" the periods when the Second Amendment and the Fourteenth Amendment were adopted "may not illuminate the scope of the right." *Id*. at 2136, quoting *Heller*, 554 U.S. at 634-35. Plaintiffs' fixation on laws enacted between 1750 and 1800 is thus unduly narrow.[2]

When properly considered in view of all relevant historical laws, SB 264 and SB 915 are relevantly similar to at least three historical traditions. First, the challenged statutes were enacted under the government's well-established authority to set limits on the use of its property when it is acting as a proprietor. Second, they are consistent with historical regulations of commercial products, including firearms and ammunition.[3] And third, they fall within a long tradition of regulating firearms in sensitive places. Like those predecessors, SB 264 and SB 915 are constitutionally sound. In short, there is no historical right under the Second Amendment to sell firearms and related products on state property.

---

[2] Indeed, an Eleventh Circuit panel recently concluded that "Reconstruction Era historical sources are the most relevant to [the Second Amendment] inquiry . . . because those sources reflect the public understanding of the right to keep and bear arms at the very time the states made that right applicable to the state governments by ratifying the Fourteenth Amendment." *National Rifle Ass'n, v. Bondi*, No. 21-12314, 2023 WL 2484818, at *3 (11th Cir. Mar. 9, 2023).

[3] The State Defendants' first supplemental brief also showed that the challenged statutes are consistent with the tradition of regulating firearms to prevent those considered not law-abiding from acquiring them. ECF No. 26 at 10-11.

1

**ARGUMENT**

2

**I.   THE CHALLENGED STATUTES FALL WITHIN THE GOVERNMENT'S WELL-ESTABLISHED AUTHORITY TO REGULATE CONDUCT ON ITS OWN PROPERTY**

3

4        Just as a private property owner may control conduct on its own land, the

5   government holds a similar right when it operates as a proprietor.  *See*, *e.g.*,

6   *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 212 F. Supp. 3d 1348, 1363

7   (N.D. Ga. 2016) (upholding prohibition of firearms on U.S. Army Corps of

8   Engineers property, which included public recreation areas).  Plaintiffs concede that

9   two circuit courts have recognized "that the government has some managerial

10  authority to restrict the activities that take place on its property."  Pls.' Response to

11  State's Supplemental Br., ECF No. 32 at 12 (citing *Bonidy v. U.S. Postal Serv.*, 790

12  F.3d 1121, 1126 (10th Cir. 2015), and *United States v. Class*, 930 F.3d 460, 464

13  (D.C. Cir. 2019), *abrogated by Bruen*, 142 S. Ct. 2111 (2022)).  They argue,

14  however, that the holdings in *Bonidy* and *Class* were predicated on the fact that the

15  property at issue—in each case, a parking lot—was adjacent to a sensitive place.

16  *Id.*  And because they assert that California's fairgrounds are not sensitive places,

17  they suggest that these holdings "are unpersuasive."  *Id.*

18        Plaintiffs misread the holdings in *Bonidy* and *Class*.  To be sure, the Tenth

19  Circuit and D.C. Circuit did conclude that the parking lots in those cases—together

20  with the government buildings they were adjacent to—were sensitive places.

21  *Bonidy*, 790 F.3d at 1125; *Class*, 930 F.3d at 464.  But they also regarded as

22  significant the government's status as property owners.  *Bonidy*, 790 F.3d at 1126;

23  *Class*, 930 F.3d at 464.  For example, the Tenth Circuit observed that "the fact that

24  the government is acting in a proprietary capacity, analogous to that of a person

25  managing a private business, is often relevant to constitutional analysis."  *Bonidy*,

26  790 F.3d at 1126.  The court explained that in other constitutional contexts, the high

27  court drew a "basic distinction [] between States as market *participants* and States

28  as market *regulators*."  *Id.* (quotation marks omitted) (citing *Reeves, Inc. v. Stake*,

447 U.S. 429, 436 (1980) (market participant exception in Commerce Clause doctrine)); *see also Class*, 930 F.3d at 464 (citing *Adderley v. Florida*, 385 U.S. 39, 47 (1966) (government has power to control the use of its property in the free-speech context)).[4]  And the court concluded that such a distinction "is relevant" in the context of Second Amendment claims involving government property.  *Bonidy*, 790 F.3d at 1126.

In any event, California fairgrounds may be regulated as sensitive places.  Fairgrounds property consists of government buildings with indoor and outdoor spaces that are frequently rented out for events hosting large gatherings of people.[5]  Citing *Heller*, Plaintiffs argue that such property is not a sensitive place because it is not "analogous to courthouses, polling places, and legislative buildings."  Pls.' Response to State's Second Supplemental Br., ECF No. 32 at 19.  But *Heller* "clearly did not limit 'sensitive places' to schools and government buildings or to other indoor spaces."  *GeorgiaCarry.org*, 212 F. Supp. 3d at 1366 (citing *Heller*, 554 U.S. at 626).  Nor did *Bruen*.  *Bruen*, 142 S. Ct. at 2133.  Plaintiffs fail to explain why government properties where people regularly congregate for large-scale events—implicating concerns about public safety—cannot be sensitive places.  Indeed, at least one post-*Bruen* court has recognized that, because "thousands of people and children [are] present in often crowded conditions" at a state fair, fairgrounds property is a sensitive place.  *Christopher v. Ramsey Cty.*, No. CV 21-2292 (JRT/ECW), 2022 WL 3348276, at *5 (D. Minn. Aug. 12, 2022) (citing, among other cases, *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated on*

---

[4] This distinction has also been made in Equal Protection Clause cases.  *See, e.g, Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008) (recognizing the "unique considerations applicable when the government acts as employer as opposed to sovereign" as a factor in concluding "that the class-of-one theory of equal protection does not apply in the public employment context").

[5] For context, see the property map for the OC Fair & Event Center, available at https://s3.us-west-1.amazonaws.com/ocfair.com/wp-content/uploads/2021/11/04082618/Property-Map-Update-2019-LetterSize-GX7587-R2.pdf.

1  *other grounds by* 611 F.3d 1015 (9th Cir. 2010), which similarly held that

2  fairgrounds property was a sensitive place).

3      Plaintiffs also argue that the government's authority to regulate activities on

4  its property "has long been circumscribed" by the First Amendment and Equal

5  Protection Clause. Pls.' Response to State's Second Supplemental Br., ECF No. 32

6  at 10. They cite *Police Department of City of Chicago v. Mosley*, 408 U.S. 92, 100

7  (1972), where the Supreme Court held that content-based restrictions of picketing

8  near schools were unconstitutional, and *Nordyke v. Santa Clara County*, 110 F.3d

9  707, 711 (9th Cir. 1997), where the Ninth Circuit held that restrictions of

10  commercial speech were unconstitutional when the underlying transaction was a

11  lawful activity. Pls.' Response to State's Second Supplemental Br., ECF No. 32 at

12  10. But a nearly identical argument that the challenged sales prohibition implicates

13  some First Amendment right to commercial speech was rejected by a district court

14  in the Southern District of California, and this court should do the same. *See B&L*

15  *Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-KSC, ECF 51 at 6-7 (dismissing

16  plaintiffs' First Amendment claims); *see also* State Defs.' Opp'n to Mot. for

17  Prelim. Inj., ECF No. 22 at 10-18.[6] With respect to the Equal Protection Clause,

18  Plaintiffs have not alleged facts showing animus or discrimination, and there is no

19  protected class here. *B&L Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-KSC,

20  ECF 51 at 10-11 (S.D. Cal. Mar. 14, 2023) (dismissing plaintiffs' equal protection

21  claims); *see also* State Defs.' Opp'n to Mot. for Prelim. Inj., ECF No. 22 at 19-20.

22      Plaintiffs' assertion that "the State is in a box," Pls.' Response to State's

23  Second Supplemental Br., ECF 32 at 10 —in other words, that it lacks any

24  meaningful authority to regulate activities on government-owned property—is

25  incorrect. The State has the right to regulate the use of its property, including by

26

27  [6] Plaintiffs also rely on *B&L Productions, Inc. v. 22nd District Agricultural Association*, 394 F. Supp. 3d 1226, 1244 (S.D. Cal. 2019), but that case does not support their position because the law challenged there prohibited gun shows

28  entirely, whereas here, only certain sales are prohibited while gun shows are not.

prohibiting the commercial sale of firearms, ammunition, and precursor parts.  And that right, as exercised in SB 264 and SB 915, is grounded in longstanding English and American legal tradition.  *See* State Defs.' Second Supplemental Br., ECF No. 31 at 2-5, 11-16.

## II.  THE CHALLENGED STATUTES FALL WITHIN THE GOVERNMENT'S WELL-ESTABLISHED AUTHORITY TO REGULATE COMMERCE

Plaintiffs "do not generally disagree" that laws regulating the commercial sale of firearms and ammunition "have some historical pedigree."  Pls.' Response to State's Second Supplemental Br., ECF 32 at 13.  They concede that early zoning regulations, such as mid-nineteenth century regulations of shooting galleries, for example, share similarities with SB 264 and SB 915.  *Id.* at 14.  And they grudgingly acknowledge that New Hampshire's 1825 law restricting the commercial sale of gunpowder on "any highway, or in any street, lane, or alley, or on any wharf, or on parade or common," 1825 N.H. Laws 74, § 5, appears to be a "genuine historical analogue."  Pls.' Response to State's Second Supplemental Br., ECF 32 at 17.

Yet they resist the conclusion that SB 264 and SB 915 fit within the historical tradition of regulation that those laws represent.  That is the result of their rigid, Goldilocks-style analysis of the historical analogues produced by Defendants.  Plaintiffs reject analogues that predate 1750 as "too early."  Pls.' Response to State's Second Supplemental Br., ECF 32 at 9.  They reject analogues that postdate 1800 as "too late."  *Id.*  And when Defendants identify a "genuine" analogue, such as New Hampshire's 1825 law restricting gunpowder sales, they call it an "outlier," *id.* at 17—even if it is among many similar regulations, *see* State Defs.' Second Supplemental Br., ECF No. 31 at 8-9.

Plaintiffs' analytical approach is irreconcilable with *Bruen*.  Under *Bruen*'s historical analysis, a government may justify a modern firearm-related regulation by identifying a "relevantly similar" restriction enacted when the Second

Amendment or Fourteenth Amendment was ratified. *Bruen*, 142 S. Ct. at 2132-23. In determining whether a restriction is "relevantly similar," a court should examine "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. A "more nuanced approach" is needed in certain circumstances, such as when a modern regulation addresses "unprecedented societal concerns." *Id.* at 2131-32. A proper *Bruen* analysis thus requires a holistic and contextualized examination of the historical record. *See id.* at 2130.

When viewed under this standard, Plaintiffs' historical argument fails. Defendants' historical analogues, particularly eighteenth- and nineteenth-century laws regulating where gunpowder could be sold and where shooting galleries could be located, establish a relevant tradition of regulation of firearms-related commercial activity in specific locations to promote public safety. State Defs.' Second Supplemental Br., ECF No. 31 at 6-11. *Bruen* does not call for a "minutely precise analogy to historical prohibitions, but rather an evaluation of the challenged law in light of the broader attitudes and assumptions demonstrated by those historical prohibitions." *Kelly*, 2022 WL 17336578, at *5 n.7. Defendants—through their submission of supplemental briefing and expert declarations—have satisfied that standard here.

### III. THE CHALLENGED STATUTES FALL WITHIN THE GOVERNMENT'S WELL-ESTABLISHED AUTHORITY TO REGULATE FIREARMS IN SENSITIVE PLACES

It is "settled" law that certain areas are "'sensitive places'" where firearms can be regulated consistent with the Second Amendment. *Bruen*, 142 S. Ct. at 2133; *Heller*, 554 U.S. at 626. Sensitive places laws have existed for centuries, and courts have affirmed the validity of laws restricting firearms in such places since the time of the Fourteenth Amendment's ratification. State Defs.' Supplemental Br., ECF No. 26 at 11-13; State Defs.' Second Supplemental Br., ECF No. 31 at 11-16. For the reasons discussed above, *ante* Argument I, fairgrounds property, like

1    other government-owned property, is among those sensitive places where
2    regulation is permissible.

3         Plaintiffs argue that sensitive places laws are not analogous to SB 264 and SB
4    915. Pls.' Response to State's Second Supplemental Br., ECF No. 32 at 18. They
5    speculate that any statute that bans the sale of firearms but not their possession "is
6    clearly not about the potential danger to groups of people gathering at gun shows,"
7    but rather "is about decreasing the overall supply and demand for firearms in hopes
8    that doing so will have some impact on gun violence." *Id.* But as Plaintiffs
9    acknowledge, the possession of firearms at a gun show is not unregulated. Pls.'
10   Response to State's Second Supplemental Br., ECF No. 32 at 12. Any firearms
11   brought into a gun show by a member of the public must be checked, cleared of any
12   ammunition, secured in a manner to prevent operation, and tagged before the
13   person is admitted to the show. Cal. Penal Code § 27340(b). Similarly, any
14   ammunition brought into a gun show by a member of the public must be checked
15   and secured in a manner that prevents the ammunition from being discharged. Cal.
16   Penal Code § 27340(c).

17        In any event, the legislative history reflects that the challenged laws are about
18   public safety. As described in Defendants' first supplemental brief, the California
19   Legislature enacted SB 264 and SB 915 to address gun trafficking and prevent
20   dangerous or prohibited persons from acquiring firearms. State Defs.'
21   Supplemental Br., ECF No. 26 at 14; Pls.' RJN, ECF No. 21-2, Ex. 10 at 2, Ex. 17
22   at 2. The challenged laws reflect the Legislature's concern that, absent regulation,
23   illicit sales of firearms, ammunition, and precursor parts are likely to occur on
24   government-owned property, and that such sales would endanger public safety.[7]

25   _____
     [7] Indeed, the California Department of Justice's *Armed and Prohibited
26   Persons System Report 2021* confirms that illicit sales of firearm-related products
     *have* occurred at gun shows in recent years. *See* California Department of Justice,
27   *Armed and Prohibited Persons System Report 2021*, at 54, https://oag.ca.gov
     /system/files/media/2021-apps-report.pdf (describing September 2021 enforcement
28   operation at a Southern California gun show where a convicted felon purchased "an
     AR15 upper receiver, a complete pistol ghost gun kit, and a gun magazine").

9

1   State Defs.' Supplemental Br., ECF No. 26 at 14.  SB 264 and SB 915, together

2   with restrictions on possession on fairgrounds, operate like sensitive place

3   analogues by protecting the public welfare in spaces where large gatherings occur,

4   and they are comparably justified.

5                                      **CONCLUSION**

6          Plaintiffs' motion for preliminary injunction should be denied.

7   Dated:  March 24, 2023                      Respectfully submitted,

8                                               ROB BONTA
                                                Attorney General of California
9                                               R. MATTHEW WISE
                                                Supervising Deputy Attorney General
10
                                                /s/NICOLE J. KAU
11                                              NICOLE J. KAU
                                                Deputy Attorney General
12                                              *Attorneys for Defendants Governor*
                                                *Gavin Newsom, Attorney General*
13                                              *Rob Bonta, Secretary Karen Ross,*
                                                *and 32nd District Agricultural*
14                                              *Association*

15  SA2022303648
    65834227.docx
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for State Defendants, certifies that this

brief contains 3,133 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 24, 2023                    Respectfully submitted,

ROB BONTA
Attorney General of California

/s/NICOLE J. KAU
Nicole J. Kau
Deputy Attorney General
*Attorneys for Defendants Governor*
*Gavin Newsom, Attorney General*
*Rob Bonta, Secretary Karen Ross,*
*and 32nd District Agricultural*
*Association*

# CERTIFICATE OF SERVICE

Case Name:  **B&L Productions, Inc., et al. v. Gavin Newsom, et al.**      No.  **8:22-cv-01518 JWH (JDEx)**

I hereby certify that on <u>March 24, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 24, 2023</u>, at Los Angeles, California.

|  |  |
|---|---|
| Carol Chow | */s/Carol Chow* |
| Declarant | Signature |

SA2022303648